| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: <br><br> _____ District of _____ <br> (State) <br><br> Case number (*If known*): _____   Chapter _____ |

❑ Check if this is an
amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy       04/19

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

1. **Debtor's name**
   _____

2. **All other names debtor used in the last 8 years**
   _____

   Include any assumed names, trade names, and *doing business as* names
   _____

3. **Debtor's federal Employer Identification Number** (EIN)
   __ __ – __ __ __ __ __ __ __

4. **Debtor's address**

   **Principal place of business**

   _____
   Number        Street

   _____

   _____
   City                     State        ZIP Code

   _____
   County

   **Mailing address, if different from principal place of business**

   _____
   Number        Street

   _____
   P.O. Box

   _____
   City                     State        ZIP Code

   **Location of principal assets, if different from principal place of business**

   _____
   Number        Street

   _____

   _____
   City                     State        ZIP Code

5. **Debtor's website** (URL)
   _____

6. **Type of debtor**
   ❑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ❑ Partnership (excluding  LLP)
   ❑ Other. Specify: _____

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 1

Debtor _____    Case number *(if known)*_____
　　　　Name

**7. Describe debtor's business**

A. *Check one:*

❑ Health Care Business (as defined in 11 U.S.C. § 101(27A))

❑ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

❑ Railroad (as defined in 11 U.S.C. § 101(44))

❑ Stockbroker (as defined in 11 U.S.C. § 101(53A))

❑ Commodity Broker (as defined in 11 U.S.C. § 101(6))

❑ Clearing Bank (as defined in 11 U.S.C. § 781(3))

❑ None of the above

B. *Check all that apply:*

❑ Tax-exempt entity (as described in 26 U.S.C. § 501)

❑ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

❑ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

___ ___ ___ ___

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

❑ Chapter 7

❑ Chapter 9

❑ Chapter 11. *Check all that apply*:

　　❑ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).

　　❑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

　　❑ A plan is being filed with this petition.

　　❑ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

　　❑ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

　　❑ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

❑ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

❑ No

❑ Yes.　District _____　When _____　Case number _____
　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

　　　　　District _____　When _____　Case number _____
　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

❑ No

❑ Yes.　Debtor _____　Relationship _____

　　　　　District _____　When _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

　　　　　Case number, if known _____

Official Form 201　　　　　Voluntary Petition for Non-Individuals Filing for Bankruptcy　　　　　page **2**

| Debtor | _____ | Case number *(if known)* _____ |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| **11. Why is the case filed in *this district*?** | *Check all that apply:* | |
| | ☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district. | |
| | ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district. | |

| | |
|---|---|
| **12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?** | ☐ No (*See attached Rider 2.*) |
| | ☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed. |
| | **Why does the property need immediate attention?** (*Check all that apply.*) |
| | ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety. |
| | What is the hazard? _____ |
| | ☐ It needs to be physically secured or protected from the weather. |
| | ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options). |
| | ☐ Other _____ |
| | **Where is the property?** _____ |
| |       Number        Street |
| | _____ |
| | _____ |
| |       City                 State       ZIP Code |
| | **Is the property insured?** |
| | ☐ No |
| | ☐ Yes. Insurance agency _____ |
| |            Contact name _____ |
| |            Phone _____ |

### Statistical and administrative information

| | | | |
|---|---|---|---|
| **13. Debtor's estimation of available funds** | *Check one:* | | |
| | ☐ Funds will be available for distribution to unsecured creditors. | | |
| | ☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. | | |

| | | | |
|---|---|---|---|
| **14. Estimated number of creditors[1]** | ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| | ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| | ☐ 200-999 | | |

| | | | |
|---|---|---|---|
| **15. Estimated assets[2]** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

[1] The Debtors' estimated number of creditors is provided on a consolidated basis.
[2] The Debtors' estimated assets are provided on a consolidated basis.

Debtor _____    Case number *(if known)*_____

       Name

**16. Estimated liabilities**³

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## ■ Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

■ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

■ I have been authorized to file this petition on behalf of the debtor.

■ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
           MM  / DD / YYYY

✗ _____    _____
  Signature of authorized representative of debtor       Printed name

Title _____

**18. Signature of attorney**

✗ _____    Date _____
  Signature of attorney for debtor              MM  / DD / YYYY

_____
Printed name

_____
Firm name

_____
Number    Street

_____    _____
City                      State    ZIP Code

_____    _____
Contact phone                   Email address

_____    _____
Bar number                    State

³ The Debtors' estimated liabilities are provided on a consolidated basis.

Fill in this information to identify the case and this filing:

Debtor Name        **Foresight Energy LP**

United States Bankruptcy Court for the:                        **Eastern District of Missouri**
                                                                                    (State)

Case number (If known):

## Rider 1
## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Eastern District of Missouri for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Foresight Energy LP.

### Debtor Name
- Foresight Energy LP
- Adena Resources, LLC
- Akin Energy LLC
- American Century Mineral LLC
- American Century Transport LLC
- Coal Field Construction Company LLC
- Coal Field Repair Services LLC
- Foresight Coal Sales LLC
- Foresight Energy Employee Services Corporation
- Foresight Energy Finance Corporation
- Foresight Energy GP LLC
- Foresight Energy Labor LLC
- Foresight Energy LLC
- Foresight Energy Services LLC
- Foresight Receivables LLC
- Hillsboro Energy LLC
- Hillsboro Transport LLC
- LD Labor Company LLC
- Logan Mining LLC
- Mach Mining, LLC
- Macoupin Energy LLC
- MaRyan Mining LLC
- M-Class Mining, LLC
- Oeneus LLC
- Patton Mining LLC
- Seneca Rebuild LLC
- Sitran LLC
- Sugar Camp Energy, LLC
- Tanner Energy LLC
- Viking Mining LLC
- Williamson Energy, LLC

On October 29, 2019, each of the entities listed below (collectively, "Murray Energy") filed a petition in the United States Bankruptcy Court for the Southern District of Ohio for relief under chapter 11 of title 11 of the United States Code.  Murray Energy is an affiliate of the Debtors, but administration of Murray Energy's chapter 11 cases is wholly separate from the cases of the Debtors.  For the avoidance of doubt, the Debtors do not intend to seek joint administration of their cases with Murray Energy's cases.

| Debtor Name | Case Number |
| --- | --- |
| Murray Energy Holdings Co. | 19-56885 |
| AMCA Coal Leasing, Inc. | 19-56886 |
| AmCoal Holdings, Inc. | 19-56889 |
| American Compliance Coal, Inc. | 19-56893 |
| American Energy Corporation | 19-56897 |
| American Equipment & Machine, Inc. | 19-56901 |
| American Mine Services, Inc. | 19-56903 |
| American Natural Gas, Inc. | 19-56907 |
| AmericanHocking Energy, Inc. | 19-56912 |
| AmericanMountaineer Energy, Inc. | 19-56916 |
| AmericanMountaineer Properties, Inc. | 19-56920 |
| Anchor Longwall and Rebuild, Inc. | 19-56925 |
| Andalex Resources, Inc. | 19-56932 |
| Andalex Resouces Management, Inc. | 19-56929 |
| Avonmore Rail Loading, Inc. | 19-56936 |
| Belmont Coal, Inc. | 19-56940 |
| Belmont County Broadcast Studio, Inc. | 19-56945 |
| Canterbury Coal Company | 19-56949 |
| CCC Land Resources LLC | 19-56953 |
| CCC RCPC LLC | 19-56956 |
| Central Ohio Coal Company | 19-56887 |
| Coal Resources Holdings Co. | 19-56890 |
| Coal Resources, Inc. | 19-56892 |
| Consolidated Land Company | 19-56894 |
| Consolidation Coal Company | 19-56898 |
| Corporate Aviation Services, Inc. | 19-56902 |
| Eighty-Four Mining Company | 19-56904 |
| Empire Dock, Inc. | 19-56908 |
| Energy Resources, Inc. | 19-56911 |
| Energy Transportation, Inc. | 19-56915 |
| Genwal Resources, Inc. | 19-56919 |
| Kanawha Transportation Center, Inc. | 19-56922 |
| KenAmerican Resources, Inc. | 19-56926 |
| Keystone Coal Mining Corporation | 19-56930 |
| Maple Creek Mining, Inc. | 19-56935 |
| Maple Creek Processing, Inc. | 19-56938 |
| McElroy Coal Company | 19-56942 |
| Mill Creek Mining Company | 19-56946 |
| Mon River Towing, Inc. | 19-56948 |
| MonValley Transportation Center, Inc. | 19-56952 |
| Murray American Coal, Inc. | 19-56888 |
| Murray American Energy, Inc. | 19-56891 |
| Murray American Kentucky Towing, Inc. | 19-56896 |

- Murray American Minerals, Inc.    19-56900
- Murray American Resources, Inc.    19-56906
- Murray American River Towing, Inc.    19-56910
- Murray American Transportation, Inc.    19-56914
- Murray Colombian Resources, LLC    19-56918
- Murray Equipment & Machine, Inc.    19-56924
- Murray Kentucky Energy, Inc.    19-56933
- Murray Kentucky Energy Services, Inc.    19-56928
- Murray Keystone Processing, Inc.    19-56939
- Murray South America, Inc.    19-56944
- Murray Utah Energy Services, Inc.    19-56950
- Ohio Energy Transportation, Inc.    19-56955
- Ohio Valley Resources, Inc.    19-56958
- OhioAmerican Energy, Incorporated    19-56961
- Oneida Coal Company, Inc.    19-56964
- PennAmerican Coal L.P.    19-56967
- PennAmerican Coal, Inc.    19-56970
- Pennsylvania Transloading, Inc.    19-56973
- Pinski Corp.    19-56975
- Pleasant Farms, Inc.    19-56978
- Premium Coal, Inc.    19-56980
- Southern Ohio Coal Company    19-56974
- Spring Church Coal Company    19-56976
- Sumburst Resources, Inc.    19-56977
- T D K Coal Sales, Incorporated    19-56979
- The American Coal Company    19-56895
- The American Coal Sales Company    19-56899
- The Franklin County Coal Company    19-56905
- The Harrison County Coal Company    19-56909
- The Marion County Coal Company    19-56913
- The Marshall County Coal Company    19-56917
- The McLean County Coal Company    19-56921
- The Meigs County Coal Company    19-56923
- The Monongalia County Coal Company    19-56927
- The Muhlenberg County Coal Company, LLC    19-56931
- The Muskingum County Coal Company    19-56934
- The Ohio County Coal Company    19-56937
- The Ohio Valley Coal Company    19-56884
- The Ohio Valley Transloading Company    19-56941
- The Oklahoma Coal Company    19-56943
- The Washington County Coal Company    19-56947
- The Western Kentucky Coal Company, LLC    19-56951
- Twin Rivers Towing Company    19-56954
- UMCO Energy, Inc.    19-56957
- UtahAmerican Energy, Inc.    19-56959
- West Ridge Resources, Inc.    19-56960
- West Virginia Resources, Inc.    19-56962
- Western Kentucky Coal Resources, LLC    19-56963
- Western Kentucky Consolidated Resources, LLC    19-56965
- Western Kentucky Land Holding, LLC    19-56966
- Western Kentucky Rail Loadout, LLC    19-56968
- Western Kentucky Resources Financing, LLC    19-56969

- Western Kentucky Resources, LLC                    19-56971
- Western Kentucky River Loadout, LLC                19-56972
- Murray Global Commodities, Inc.                    19-56981
- Murray Energy Corporation                          19-57017

On February 11, 2020, each of the entities listed below (collectively, "<u>Murray Metallurgical</u>") filed a petition in the United States Bankruptcy Court for the Southern District of Ohio for relief under chapter 11 of title 11 of the United States Code. Murray Metallurgical is an affiliate of the Debtors, but administration of Murray Metallurgical's chapter 11 cases is wholly separate from the cases of the Debtors. For the avoidance of doubt, the Debtors do not intend to seek joint administration of their cases with Murray Metallurgical's cases.

| **Debtor Name** | **Case Number** |
|---|---|
| • Murray Metallurgical Coal Holdings, LLC | 20-10390 |
| • Murray Eagle Mining, LLC | 20-10391 |
| • Murray Alabama Coal, LLC | 20-10393 |
| • Murray Alabama Minerals, LLC | 20-10392 |
| • Murray Maple Eagle Coal, LLC | 20-10394 |
| • Murray Oak Grove Coal, LLC | 20-10395 |

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | **Foresight Energy LP** |
| United States Bankruptcy Court for the: | **Eastern District of Missouri** |
| | (State) |
| Case number (If known): | |

## Rider 2
## Real Property or Personal Property that Needs Immediate Attention

Question 12, among other things, asks the debtor to identify any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

The above-captioned debtor (the "<u>Debtor</u>") engages in the extraction, mining, and shipping of thermal coal.  The Debtor does not believe it owns or possesses any real or personal property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety.  The Debtor notes that it is not aware of any definition of "imminent and identifiable harm" as used in this form.

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, | ) | Case No. 20-[_____] |
| | ) | |
| Debtor. | ) | |
| | ) | |

**LIST OF EQUITY SECURITY HOLDERS[1]**

| Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Foresight Energy GP LLC | Metropolitan Square Building 211 North Broadway, Suite 2600 St. Louis, Missouri 63102 | 100% (General Partnership Interests) |
| Murray Energy Corporation | 46226 National Road St. Clairsville, Ohio 43950 | 100% (Subordinated Units) |
| Cline Trust Company | 3801 PGA Boulevard, Suite 903 Palm Beach Gardens, Florida 33408 | 25.40% (Common Units) |
| The Estate of Christopher Cline | 430 Harper Park Drive Beckley, West Virginia 25801 | 25.35% (Common Units) |
| Murray Energy Corporation | 46226 National Road St. Clairsville, Ohio 43950 | 12.12% (Common Units) |
| Robert D. Moore | 211 N. Broadway, Suite 2600 St. Louis, Missouri 63102 | 0.16% (Common Units) |
| Daniel S. Hermann | 211 N. Broadway, Suite 2600 St. Louis, Missouri 63102 | 0.05% (Common Units) |
| G. Nicholas Casey | 211 N. Broadway, Suite 2600 St. Louis, Missouri 63102 | 0.03% (Common Units) |

---

[1]   This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed are as of the date of commencement of the chapter 11 case.

| Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Brian D. Sullivan | 211 N. Broadway, Suite 2600<br>St. Louis, Missouri 63102 | 0.03%<br>(Common Units) |
| Public Equity Holders [2] | Not Available | 36.86%<br>(Common Units) |

---

[2]    The Debtors intend to seek a waiver of full compliance with rule 1007 of the Federal Rules of Bankruptcy Procedure with respect to disclosure of the public common unit holders concurrent with the filing of their chapter 11 petitions.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, | ) | Case No. 20-[_____] |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Foresight Energy GP LLC | 100%<br>(General Partnership Interests) |
| Murray Energy Corporation | 100%<br>(Subordinated Units) |
| Cline Trust Company | 25.40%<br>(Common Units) |
| The Estate of Christopher Cline | 25.35%<br>(Common Units) |
| Murray Energy Corporation | 12.1%<br>(Common Units) |

| Fill in this information to identify the case: |
|---|
| Debtor Name    **Foresight Energy LP** |
| United States Bankruptcy Court for the:    **Eastern**    District of    **Missouri** (State) |
| Case number (if known): |

☐  Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders **12/15**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partial | Deduction for value of collateral | Unsecured claim |
| 1 | Wilmington Trust National Association 50 South 6th Street, Suite 1290 Minneapolis, MN  55402 | Name: Brandon Bonfig Phone: 612-217-5693 Email: bbonfig@wilmingtontrust.com | Bond Debt | | | | $472,121,609.38 |
| 2 | Joy Global Underground Mining LLC P.O. Box 504794 St. Louis, MO 63150-4794 | Name: Dan Spears Phone: 724-779-4536 Email: dan.spears@mining.komatsu.com | Trade Debt | | | | $12,005,510.32 |
| 3 | Jennchem Mid-West P.O. Box 603800 Charlotte, NC  28260-3800 | Name: Tony Calandra Phone: (412) 559-6085 Email: tcalandra@jennmar.com | Trade Debt | | | | $6,734,589.53 |
| 4 | Jennchem of West Kentucky Inc. P.O. Box 603800 Charlotte, NC  28260-3800 | Name: Tony Calandra Phone: (412) 559-6085 Email: tcalandra@jennmar.com | Trade Debt | | | | $5,917,642.79 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partial | Deduction for value of collateral | Unsecured claim |
| 5 Fabick Mining Inc. P.O. Box 403943 Atlanta, GA  30384-3843 | Name: Nick Johnson Phone: 618-982-9004 Email: nicholas.johnson@fabickmining.com | Trade Debt | | | | $4,426,649.21 |
| 6 Natural Resource Partners LLP 372 Park Lane Herrin, IL  62948 | Name: Greg Wooten Phone: 304-302-2357 Email: gwooten@wpplp.com | Royalty | | | | $3,672,524.00 |
| 7 International Belt Sales LLC 29425 Chagrin Boulevard, Suite 300 Pepper Pike, OH  44122 | Name: Jeffrey Hurt Phone: 440-724-1616 Email: jeffreychurt@aol.com | Trade Debt | | | | $3,357,347.91 |
| 8 BankDirect Capital Finance 11191 Illinois Route 185 Hillsboro, IL  62049 | Name: Luther J. Grafe Phone: 877-226-5456 Email: lgrafe@bankdirectcapital.com | Insurance | | | | $3,211,538.00 |
| 9 United Central Industrial Supply P.O. Box 71206 Chicago, IL  60694-1206 | Name: Henry Looney Phone: 276-623-5872 Email: henry.Looney@unitedcentral.net | Trade Debt | | | | $2,546,439.45 |
| 10 Dewind One Pass Trenching LLC 9150 96th Avenue Zeeland, MI  49464 | Name: Steve McCullick Phone: 616-875-7580 Email: steve@dewindonepass.com | Trade Debt | | | | $2,316,000.00 |
| 11 John Fabick Tractor Company 364 Lisbon Street P.O. Box 369 Canfield, OH  44406-0369 | Name: Nick Johnson Phone: 618-982-9004 Email: nicholas.johnson@fabickmining.com | Trade Debt | | | | $2,283,204.53 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partial | Deduction for value of collateral | Unsecured claim |
| 1 2 | WPP LLC 372 Park Lane Herrin, IL  62948 | Name: Greg Wooten Phone: 304-302-2357 Email: gwooten@wpplp.com | Royalty | | | | $2,243,341.00 |
| 1 3 | Heritage Cooperative Inc. P.O. Box 71735 Chicago, IL  60694-1735 | Name: John Richards Phone: 330-308-5020 Email: jrichards@heritagecooperative.com | Trade Debt | | | | $1,875,855.83 |
| 1 4 | R.M. Wilson Inc. 46226 National Road St. Clairsville, OH  43950 | Name: Pat Popicg Phone: 304-232-5860 (o) Email: ppopicg@rmwilson.com | Trade Debt | | | | $1,806,832.38 |
| 1 5 | Mine Supply Company 2853 Ken Gray Boulevard, Suite 4 West Frankfort, IL  62896 | Name: Bob Purvis Phone: 214-358-5500 Email: bob.purvis@purvisindustries.com | Trade Debt | | | | $1,677,073.20 |
| 1 6 | State Electric Supply Co. P.O. Box 603800 Charlotte, NC  28260-3800 | Name: John Spoor Phone: 304-523-7491 Email: john.spoor@stateelectric.com | Trade Debt | | | | $1,544,700.81 |
| 1 7 | Fuchs Lubricants Co. P.O. Box 952121 St. Louis, MO  63195-2121 | Name: Steve Williams Phone: 724-216-6143 Email: steve.williams@fuchs.com | Trade Debt | | | | $1,314,315.04 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partial | Deduction for value of collateral | Unsecured claim |
| 18 Jennmar Services P.O. Box 405655 Atlanta, GA 30384-5655 | Name: Tony Calandra Phone: 412-559-6085 Email: tcalandra@jennmar.com | Trade Debt | | | | $1,305,241.81 |
| 19 Flanders Electric Motor Service 654 Main Street Rockwood, PA 15557 | Name: Shawn Collins Phone: 812-867-7421 Email: scollins@flandersinc.com | Trade Debt | | | | $1,265,929.61 |
| 20 Joy Global Conveyors Inc. P.O. Box 504794 St. Louis, MO 63150-4794 | Name: Dan Spears Phone: 724-779-4536 Email: dan.spears@mining.komatsu.com | Trade Debt | | | | $1,200,406.79 |
| 21 Mt. Olive & Staunton Coal Co. Trust P.O. Box 742784 Atlanta, GA 30374-2784 | Name: Patrick D. Cloud Phone: 618-656-4646 Email: pcloud@heylroyster.com | Land Mitigation | | | | $1,172,936.00 |
| 22 Wallace Industrial LLC P.O. Box 74008932 Chicago, IL 60674-8932 | Name: David Wallace Phone: 618-937-3440 Email: Dwallace@wallaceelectricalsystems.com | Trade Debt | | | | $1,160,230.21 |
| 23 Mayo Manufacturing Co. Inc. P.O. Box 28330 St. Louis, MO 63146 | Name: Dave Mayo Phone: 304-855-5947 Email: david.mayo@mayowv.com | Trade Debt | | | | $1,130,819.99 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partial | Deduction for value of collatera | Unsecured claim |
| 24 RGGS Land & Minerals 610 Sneed Road Carbondale, IL 62902 | Name: Bill Lawrence Phone: 205-685-5329 Email: blawrence@sginterests.com | Royalty | | | | $1,129,873.00 |
| 25 Wallace Electrical Systems LLC P.O. Box 74008932 Chicago, IL  60674-8932 | Name: David Wallace Phone: 618-937-3440 Email: dwallace@wallaceelectricalsystems.com | Trade Debt | | | | $1,116,643.37 |
| 26 Jabo Supply Corporation P.O. Box 465 West Frankfort, IL  62896 | Name: Jay Bazemore Phone: 304-736-8333 Email: jbazemore@jabosupply.com | Trade Debt | | | | $1,114,059.72 |
| 27 Polydeck Screen Corporation P.O. Box 827 Pound, VA  24279 | Name: Peter Freissle Phone: 864-579-4594 Email: p.freissle@polydeck.com | Trade Debt | | | | $967,619.43 |
| 28 Irwin Mine and Tunneling Supply P.O. Box 4835 Evansville, IN  47724 | Name: William Baker Phone: 724-852-1480 Email: wbaker@irwincar.com | Trade Debt | | | | $953,723.77 |
| 29 SNF Mining Inc. P.O. Box 890889 Charlotte, NC  28289-0889 | Name: Paul Slater Phone: 606-432-1535 Email: pslater@snfhc.com | Trade Debt | | | | $936,288.57 |
| 30 US United Bulk Terminals P.O. Box 301749 Dallas, TX  75303-1749 | Name: Brian Miles Phone: 281-457-7900 Email: UBT-AR@unitedbulkterminals.com | Port | | | | Unknown |

Fill in this information to identify the case and this filing:

Debtor Name    **Foresight Energy LP**

United States Bankruptcy Court for the:    **Eastern District of Missouri**

(State)

Case number (If known):

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐   *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐   *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐   *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐   *Schedule H: Codebtors (Official Form 206H)*

☐   *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐   Amended Schedule

☐   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒   Other document that requires a declaration    **List of Equity Security Holders, Corporate Ownership Statement, and List of Creditors Who Have the 30 Largest Unsecured Claims**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| | |
|---|---|
| 03/09/2020 | ☒   /s/  Robert D. Moore |
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | Robert D. Moore |
| | Printed name |
| | President |
| | Position or relationship to debtor |

Official Form 202    **Declaration Under Penalty of Perjury for Non-Individual Debtor**

**Omnibus Resolutions
of the
Foresight Group Companies
(as Defined Below)
and their Respective Governing Bodies**

      **WHEREAS**, (i) Foresight Energy GP LLC, a Delaware limited liability company ("GP LLC"), is the general partner of Foresight Energy LP, a Delaware limited partnership ("FELP"); (ii) FELP is the sole member of Foresight Energy LLC, a Delaware limited liability company ("FELLC"); (iii) FELLC is the sole stockholder of each Foresight Energy Employee Services Corporation, a Delaware corporation ("FEES Corp."), and Foresight Energy Finance Corporation, a Delaware corporation ("FEF Corp."); (iv) FELLC   is the sole member of Foresight Receivables LLC, a Delaware limited liability company ("Receivables LLC"), which is managed by a board of directors (the "Receivables LLC Board"); (v) FELLC and FEES Corp. are the only members of Foresight Energy Services LLC, a Delaware limited liability company ("Services LLC"), and FELLC is the manager of Services LLC; (vi) FELLC and FEES Corp. are the only members of Foresight Energy Labor LLC, a Delaware limited liability company ("Labor LLC"), and Services LLC is the manager of Labor LLC; (vii) FELLC is the sole member of each of the other Delaware limited liability companies listed on Exhibit A attached hereto (the "FELLC Other Subsidiaries") and Services LLC is the manager of each FELLC Other Subsidiary; and (viii) Labor LLC is the sole member of each of the Delaware limited liability companies listed on Exhibit B attached hereto (the "Labor LLC Subsidiaries") and Services LLC is the manager of each Labor LLC Subsidiary;

      **WHEREAS**, GP LLC, FELP, FELLC, FEES Corp., FEF Corp., Receivables LLC, Services LLC, Labor LLC, the FELLC Other Subsidiaries and the Labor LLC Subsidiaries are referred to collectively herein as the "Foresight Group Companies";

      **WHEREAS**, FELP, in its capacity as the sole member of FELLC, acknowledges that (i) there is a scrivener's error in the Fifth Amended and Restated Operating Agreement of FELLC, dated as of May 23, 2017 (the "FELLC Operating Agreement"), in that it purports to define the term "Manager" therein as meaning "Foresight Energy Services LLC," which if interpreted literally would result in the circularity of FELLC's being managed by an entity of which FELLC is the manager, (ii) instead it was the intent of FELP at the time of adopting the FELLC Operating Agreement that the term "Manager" therein be defined as "Foresight Energy LP," (iii) FELP believes that no applicable body with authority to interpret or enforce the FELLC Operating Agreement would interpret it to enforce such scrivener's error, and instead FELP's intent would control and (iv) solely if the foregoing acknowledgement would not be sufficient for any such body to so interpret or enforce the FELLC Operating Agreement, then the approval of these resolutions by the Board of Directors of GP LLC (the "GP LLC Board") shall constitute the approval by FELP (the GP LLC Board acting in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member of FELLC) of a formal amendment to the FELLC Operating Agreement that the term "Manager" therein be revised to mean "Foresight Energy LP," such amendment to be evidenced solely by this recital and to be effective as of immediately prior to the effectiveness of the adoption of the resolutions set forth below;

**WHEREAS**, each of FELLC and FEES Corp., in their capacities as the only members of Services LLC (the "Services Members"), acknowledge that (i) there is a scrivener's error in the Second Amended and Restated Operating Agreement of Services LLC, dated as of May 23, 2017 (the "Services LLC Operating Agreement"), in that it purports to define the term "Manager" therein as meaning "Foresight Energy Services LLC," which if interpreted literally would result in the impossibility of Services LLC being its own manager, (ii) instead it was the intent of the Services Members at the time of adopting the Services LLC Operating Agreement that the term "Manager" therein be defined as "Foresight Energy LLC," (iii) the Services Members believe that no applicable body with authority to interpret or enforce the Services LLC Operating Agreement would interpret it to enforce such scrivener's error, and instead the Services Members' intent would control and (iv) solely if the foregoing acknowledgement would not be sufficient for any such body to so interpret or enforce the Services LLC Operating Agreement, then the approval of these resolutions by the GP LLC Board and Board of Directors of FEES Corp. (the "FEES Corp. Board") shall constitute the approval by the Services Members (the GP LLC Board acting in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member and manager of FELLC) of a formal amendment to the Services LLC Operating Agreement that the term "Manager" therein be revised to mean "Foresight Energy LLC," such amendment to be evidenced solely by this recital and to be effective as of immediately prior to the effectiveness of the adoption of the resolutions set forth below;

**WHEREAS**, the GP LLC Board is adopting the resolutions set forth below under the headings numbered 2 and 6 on behalf of the Foresight Group Companies in the following capacities:

- With respect to GP LLC, in its capacity as the manager of GP LLC;

- With respect to FELP, in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP;

- With respect to FELLC, in its capacity as the manager of GP LLC, in its capacity as the General Partner of FELP, in its capacity as the sole member and manager of FELLC;

- With respect to FEES Corp., in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member and manager of FELLC, in its capacity as the sole stockholder of FEES Corp;

- With respect to FEF Corp., in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member and manager of FELLC, in its capacity as the sole stockholder of FEF Corp;

- With respect to Receivables LLC, in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member and manager of FELLC, in its capacity as the sole member of Receivables LLC;

Doc#: US1:13598346v9

- With respect to Services LLC, in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member and manager of FELLC, in its capacity as the manager of Services LLC;

- With respect to each of Labor LLC, the FELLC Other Subsidiaries and the Labor LLC Subsidiaries (collectively, the "Services LLC Managed Entities"), in its capacity as the manager of GP LLC, in its capacity as the general partner of FELP, in its capacity as the sole member and manager of FELLC, in its capacity as the manager of Services LLC, in its capacity as the manager of such Services LLC Managed Entity;

**WHEREAS**, the respective capacities of the GP LLC Board in respect of the Foresight Group Companies set forth to in the immediately preceding recital is referred to herein as the GP LLC Board's "Official Capacity" with respect to each such Foresight Group Company;

**WHEREAS**, the FEES Corp. Board is adopting the resolutions set forth below under the headings numbered 3 and 6 on behalf of FEES Corp.;

**WHEREAS**, the Board of Directors of FEF Corp. (the "FEF Corp. Board") is adopting the resolutions set forth below under the headings numbered 4 and 6 on behalf of FEF Corp.;

**WHEREAS**, the Receivables LLC Board is adopting the resolutions set forth below under the headings numbered 5 and 6 on behalf of Receivables LLC;

**WHEREAS**, it is hereby acknowledged that (i) pursuant to the Limited Liability Company Agreement of Receivables LLC (the "Receivables LLC Operating Agreement"), the adoption of the resolutions set forth below under the heading numbered 5 constitutes a "Material Action" that, pursuant to Section 4.10(c) of the Receivables LLC Operating Agreement, requires, among other things, the approval of the Independent Directors (as defined in the Receivables LLC Operating Agreement) until the Final Payment Date (as defined in the Receivables LLC Operating Agreement), (ii) pursuant to Section 4.11 of the Receivables LLC Operating Agreement, until the Final Payment Date, FELLC (in its capacity as the sole member of Receivables LLC) is required to cause Receivables LLC to have at least one Independent Director, (iii) the Receivables LLC Board currently comprises one director, who is not an Independent Director, (iv) the Final Payment Date has occurred and (v) accordingly, neither the absence of an Independent Director on the Receivables LLC Board nor the lack of approval of any such Independent Director will invalidate the adoption of the resolutions set forth below under the heading numbered 5 by the Receivables LLC Board as currently constituted;

**WHEREAS**, pursuant to Section 6.6(b) of the Fourth Amended and Restated Limited Liability Company Agreement of GP LLC (the "GP LLC Operating Agreement"), the commencement of any action relating to bankruptcy by GP LLC, FELP or a material Subsidiary (as defined in the GP LLC Operating Agreement) thereof, among other things, constitutes an "extraordinary matter" that requires the approval of the members of GP LLC, and any such extraordinary matter will be deemed approved by the members of GP LLC if a majority of the Directors (as defined in the GP LLC Operating Agreement) that do not qualify as Independent

Directors (as defined in the GP LLC Operating Agreement) because of their affiliation with the members of GP LLC (the "GP LLC Non-Independent Directors") approve such matter;

WHEREAS, the GP LLC Non-Independent Directors wish to approve for all purposes of Section 6.6(b) of the GP LLC Operating Agreement all of the actions approved by the Governing Bodies on behalf of their respective Foresight Group Companies in these resolutions (the "Extraordinary Actions") and, accordingly, are adopting the resolutions set forth below under the heading numbered 1;

WHEREAS, the GP LLC Board (acting in its Official Capacity with respect to all Foresight Group Companies other than FEES Corp., FEF Corp. and Receivables LLC), the FEES Corp. Board (acting with respect to FEES Corp.), the FEF Corp. Board (acting with respect to FEF Corp.) and the Receivables LLC Board (acting with respect to Receivables LLC) are referred to collectively herein as the "Governing Bodies" with respect to such Foresight Group Companies;

WHEREAS, the Governing Bodies have reviewed and considered the financial and operational condition of the their respective Foresight Group Companies and of the Foresight Group Companies as a whole, including (which word, for all purposes of these resolutions, shall be interpreted to be followed by the words, "without limitation") the historical performance of the Foresight Group Companies, the assets of the Foresight Group Companies, the current and long-term liabilities of the Foresight Group Companies, and the coal industry and credit market conditions, and have considered various alternatives in respect of such matters;

WHEREAS, the Governing Bodies have received, reviewed, and considered the recommendations of, and the materials presented by, the senior management of their respective Foresight Group Company and such Foresight Group Company's legal, financial, and other outside professional advisors as to the financial condition of such Foresight Group Company and the relative risks and benefits of pursuing a case under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Governing Bodies have reviewed and considered their respective Foresight Group Company's need for financing in connection with a chapter 11 case under the Bankruptcy Code, and has determined that it is in the best interests of such Foresight Group Company, its creditors, employees, equity holders, and other interested parties, for such Foresight Group Company and certain of its subsidiaries and affiliates to enter into the DIP Credit Agreement (as defined below) and one or more related agreements and amendments thereto with the financial institutions from time to time party thereto, pursuant to which the Company will obtain post-petition debtor-in-possession financing to fund their chapter 11 cases and grant the first priority priming liens required thereby;

WHEREAS, (i) pursuant to resolutions previously adopted by the GP LLC Board at a meeting held on October 27, 2019 (the "Prior Resolutions"), the GP LLC Board delegated to the Conflicts Committee (as defined in the First Amended and Restated Agreement of Limited Partnership of FELP, dated as of June 23, 2014 and as subsequently amended) the full authority of the GP LLC Board with respect to the approval of any matter relating to the restructuring of the Foresight Group Companies affecting or relating to Murray Energy Corporation ("Murray

Energy") or Foresight Reserves LP ("Foresight Reserves"); (ii) pursuant to resolutions previously adopted by the Conflicts at a meeting held on March 8, 2020 (the "Conflicts Committee Resolutions"), the Conflicts Committee approved the filings of the Petitions (as defined below) and any other action approved by the full GP LLC Board in connection therewith or related or ancillary thereto, in each case to the extent required by or otherwise within the Conflicts Committee's authority pursuant to the Prior Resolutions; (iii) certain Ancillary Documents (as defined below) approved herein contemplate releasing claims that the Foresight Group Companies may have against Murray Energy, Foresight Reserves and their respective affiliates (other than affiliates that are Foresight Group Companies) (collectively, "Affiliated Parties"), are agreements between Foresight Group Companies, on the one hand, and Affiliated Parties, on the other hand or otherwise may contain terms or conditions affecting or relating to Affiliated Parties the approval of which is within the Conflicts Committee's authority pursuant to the Prior Resolutions (any such Ancillary Documents, "Conflicts Committee Matters Documents"); (iv) pursuant to the Conflicts Committee Resolutions, the Conflicts Committee approved the entry into definitive transaction agreements in respect of any Conflicts Committee Matters Documents that are on final terms and conditions within or otherwise consistent with the Prospective Agreements Parameters (as defined in the Conflicts Committee Resolutions), subject to and conditioned upon the additional approval thereof by the GP LLC Board; (v) all of the Conflicts Committee Matters Documents approved herein as Ancillary Documents are on final terms and conditions within or otherwise consistent with the Prospective Agreements Parameters, and the Governing Bodies wish to approve all of the Ancillary Documents in connection with the filing of the Petitions; and (vi) pursuant to the Conflicts Committee Resolutions, the Conflicts Committee authorized and directed senior management of the Foresight Group Companies and their legal, financial and other outside professional advisors to continue negotiating the MSA Agreements, Javelin Agreements and Colt Agreements (each as defined in the Conflicts Committee Resolutions) (the "Affiliated Party Agreements") and, for avoidance of doubt, the Governing Bodies desire to confirm that such authorization and direction shall remain in full force and effect after the filing of the Petitions with respect to any Affiliated Party Agreements not approved herein as Ancillary Documents because definitive agreements have not yet been reached with the respective counterparties thereto on final terms and conditions that are within or otherwise consistent with the Prospective Agreements Parameters;

WHEREAS, prior to filing the Petitions, the Governing Bodies have determined that it is advisable and in the best interests of the Foresight Group Companies and their respective equity holders to amend the limited liability company agreements of each of FELLC, Services LLC and each of the Services LLC Managed Entities (collectively, the "Amending Companies"), in each case (i) as set forth on Exhibit C attached hereto (collectively, the "LLC Agreement Amendments"), the terms of which hereby are incorporated by reference herein, and (ii) effective as of immediately prior to filing the Petitions (as defined below); and

WHEREAS, (i) none of the limited liability company agreements of any of the Amending Companies expressly provides for the manner in which it may be amended, (ii) pursuant to Section 18-302(f) of the Delaware Limited Liability Company Act, if the limited liability company agreement of a Delaware limited liability company formed on or after January 1, 2012, does not provide for the manner in which it may be amended, then it may be amended with the approval of all of the members, (iii) pursuant to Delaware common law, in the absence of a contract term governing amendments, any contract may be amended with the

consent of all of its parties, and such common law is generally interpreted in respect of Delaware limited liability companies formed prior to January 1, 2012 to require consent of all members and managers of such limited liability company, and (iv) accordingly, (x) the GP LLC Board is approving the LLC Agreement Amendments in its Official Capacity with respect to each Foresight Group Company that is a member of any Amending Company and each Foresight Group Company that is a manager of any Amending Company formed before January 1, 2012, and (y) the FEES Corp. Board is approving the LLC Agreement Amendments in respect of each of Services LLC and Labor LLC on behalf of FEES Corp. in its capacity as a member of each of Services LLC and Labor LLC.

**NOW, THEREFORE, BE IT:**

1.   **Resolutions Adopted by GP LLC Non-Independent Directors**

**RESOLVED**, that the GP LLC Non-Independent Directors hereby approve all of the Extraordinary Actions set forth below for all purposes of Section 6.6(b) of the GP LLC Operating Agreement; and be it further

2.   **Resolutions Adopted by Board of Directors of GP LLC**

*a.  Chapter 11 Filings*

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby determines that it is desirable and in the best interests of such Foresight Group Company, its equity holders, its creditors as a whole, and other parties in interest, that such Foresight Group Company file a voluntary petition for relief (the "Petition" and, together with the similar petitions by all other Foresight Group Companies, the "Petitions") and commence a case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"); and be it further

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes, directs and empowers any member of the GP LLC Board or any officer or other authorized person of any of the Foresight Group Companies (each, an "Authorized Person"), acting in the name and on behalf of such Foresight Group Company, to (i) execute and verify the Petition as well as all other ancillary documents, and to cause the Petition to be filed with the Bankruptcy Court, and to make or cause to be made prior to the execution thereof any modifications to the Petition or ancillary documents, and (ii) execute, verify, and file or cause to be filed all of the petitions, schedules, lists, motions, applications, and other papers or documents advisable, appropriate, convenient, desirable or necessary in connection with the foregoing; and be it further

**RESOLVED**, that, in connection with the filing of the Petitions, the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby (i) authorizes, adopts and approves the form, terms, and provisions of the restructuring support agreement, plan term sheet and governance term sheet (collectively, the "Ancillary Documents"), each substantially in the form presented to the Governing Bodies, (ii) authorizes and directs the Authorized Persons, in the name and on behalf of such Foresight Group Company, to execute and deliver (with such changes, additions, and modifications thereto that are not outside of or

Doc#: US1:13598346v9

inconsistent with the Prospective Agreements Parameters as the Authorized Persons executing the same shall approve, such approval to be conclusively evidenced by such Authorized Persons' execution and delivery thereof) each of the Ancillary Documents to which such Foresight Group Company is a party and, upon the execution and delivery thereof by each of the other parties thereto, cause such Foresight Group Company to perform its obligations thereunder; and be it further

    **RESOLVED**, that, for avoidance of doubt, the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby confirms that the Conflicts Committee's authorization of and direction to the senior management of the Foresight Group Companies and their legal, financial and other outside professional advisors to continue negotiating the Affiliated Party Agreements shall remain in full force and effect after the filing of the Petitions with respect to any Affiliated Party Agreements not approved herein as Ancillary Documents because definitive agreements have not yet been reached with the respective counterparties thereto on final terms and conditions that are within or otherwise consistent with the Prospective Agreements Parameters; and be it further

### b. *Retention of Professionals*

    **RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes and directs each Authorized Person, in the name and on behalf of such Foresight Group Company, to employ any individual and/or firm as counsel, professionals, consultants or financial advisors to such Foresight Group Company as such Authorized Person, or any one of them, may deem advisable, appropriate, convenient, desirable or necessary to represent and assist such Foresight Group Company in carrying out its duties under the Bankruptcy Code, and in connection therewith, the Authorized Persons be, and each of them hereby is, authorized and directed, in the name and on behalf of such Foresight Group Company, to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and to cause to be filed appropriate applications for authority to retain the services of such individuals and firms; and be it further

    **RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes and empowers the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") to represent such Foresight Group Company as chapter 11 co-counsel and to represent and assist such Foresight Group Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance such Foresight Group Company's rights, including the preparation of pleadings and filings in the chapter 11 case; and in connection therewith, the Authorized Persons be, and each of them hereby is, authorized and directed, in the name and on behalf of such Foresight Group Company, to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Petition and to cause to be filed an appropriate application for authority to retain the services of Paul, Weiss; and be it further

    **RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes FTI Consulting, Inc. ("FTI") to represent such Foresight Group Company and provide financial advisory and consulting services to such Foresight Group Company with regard to the chapter 11 case; and in connection therewith, the

Doc#: US1:13598346v9

Authorized Persons be, and of them hereby is, authorized and directed, in the name and on behalf of such Foresight Group Company, to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Petition and to cause to be filed an appropriate application for authority to retain the services of FTI; and be it further

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes and empowers Jefferies LLC ("<u>Jefferies</u>") to represent such Foresight Group Company and provide certain banking advisory and investment banking services to such Foresight Group Company with regard to the chapter 11 case; and in connection therewith, the Authorized Persons be, and each of them hereby is, authorized and directed, in the name and on behalf of such Foresight Group Company, to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Petition, and to cause to be filed an appropriate application for authority to retain the services of Jefferies; and be it further

### c. Post-Petition Financing

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes, adopts and approves the form, terms, and provisions of a proposed interim order (the "<u>Interim DIP Order</u>") to which such Foresight Group Company is or will be subject, and the actions and transactions contemplated thereby, including the execution, delivery and performance of that certain Senior Secured Superpriority Debtor-in-Possession Credit and Guaranty Agreement dated on or about the date that the Petition is filed with the Bankruptcy Court (the "<u>DIP Credit Agreement</u>"), by and between FELLC, as a debtor and debtor-in-possession (the "<u>Borrower</u>"), FELP and certain subsidiaries of FELLC, each as a debtor and debtor-in-possession, as guarantors, the lenders from time to time party thereto, and the administrative agent thereunder (the "<u>DIP Agent</u>"); and in connection therewith, the borrowing of funds thereunder by such Foresight Group Company be, and hereby is, authorized, adopted and approved; and in connection with the foregoing, the Authorized Persons be, and each of them hereby is, authorized and empowered, in the name of and on behalf of such Foresight Group Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Interim DIP Order, the DIP Credit Agreement, and such other agreements, certificates, instruments, guaranties, receipts, petitions, motions, or other papers or documents to which such Foresight Group Company is or will be a party, including any security and pledge agreement or guaranty agreement (collectively with the Interim DIP Order and the DIP Credit Agreement, the "<u>DIP Documents</u>"), and incur and pay or cause to be paid all fees and expenses payable in connection with the DIP Documents, in each case, in the form or substantially in the form thereof submitted to GP LLC, with such changes, additions, and modifications thereto as the Authorized Persons executing the same shall approve, such approval to be conclusively evidenced by such Authorized Persons' execution and delivery thereof; and be it further

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby determines that such Foresight Group Company will obtain benefits from the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>"), which is security for certain prepetition secured lenders (collectively, the "<u>Secured Lenders</u>") party to that certain Credit and

Guaranty Agreement, dated as of March 28, 2017, as amended, restated, amended and restated, or otherwise modified or supplemented from time to time, and in effect immediately prior to the date that the Petition is filed with the Bankruptcy Court, by and among (i) FELLC, as the borrower, (ii) FELP and certain subsidiaries of FELLC, as guarantors, (iii) the other lenders party thereto, (iv) The Huntington National Bank, as facilities administrative agent, (v) Lord Securities Corporation, as term administrative agent, (vi) Goldman Sachs Lending Partners LLC, The Huntington National Bank, Deutsche Bank Securities Inc., and Citigroup Global Markets Inc., as joint lead arrangers and joint bookrunners, and (vii) Goldman Sachs Lending Partners LLC, as syndication agent; and be it further

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes such Foresight Group Company, as debtor and debtor-in-possession under the Bankruptcy Code, to provide certain adequate protection for the Secured Lenders in connection with the DIP Documents and use of cash collateral and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents; and be it further

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes, directs and empowers each Authorized Person, in the name and on behalf of such Foresight Group Company, to (i) grant to the DIP Agent a security interest in and liens upon substantially all of such Foresight Group Company's assets, whether now owned or hereafter acquired, (ii) take any action required under any laws to perfect the security interests of the DIP Agent under the Interim DIP Order and the other DIP Documents, including filing or authorizing the DIP Agent to file any Uniform Commercial Code (the "UCC") financing statements, foreign security agreements, and pledge agreements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of such Foresight Group Company that the DIP Agent deems advisable, appropriate, convenient, desirable or necessary, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, (iii) execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of such Foresight Group Company and such other filings in respect of intellectual and other property of such Foresight Group Company, in each case as the DIP Agent may reasonably request to perfect the security interests of the DIP Agent under the Interim DIP Order and the other DIP Documents, and (iv) execute and deliver such guaranties in favor of the DIP Agent as may be required by the terms of the DIP Credit Agreement; and be it further

### d.  LLC Agreement Amendments

**RESOLVED**, that the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company that is a member of any Amending Company and each Foresight Group Company that is a manager of any Amending Company formed before January 1, 2012, hereby approves the LLC Agreement Amendments, each such LLC Agreement Amendment to be effective immediately prior to the filing of the first Petition to be filed by any Foresight Group Company; and be it further

Doc#: US1:13598346v9

**RESOLVED**, the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company, hereby authorizes and directs the Authorized Persons, and any one of them, to prepare, execute and deliver, in the name and on behalf of such Foresight Group Company, such agreements, documents or other instruments as any Authorized Person may deem advisable, appropriate, convenient, desirable or necessary to evidence the LLC Agreement Amendments approved by the immediately preceding resolution; provided, that nothing in this resolution is intended to imply that any such agreement, document or instrument is so needed, the intent of this resolution being that the immediately preceding resolution and Exhibit C attached hereto are, in and of themselves, sufficient to effect the LLC Agreement Amendments approved thereby and the authority granted to the Authorized Persons in this resolution is merely supplemental thereto should any such Authorized Person deem it advisable, appropriate, convenient, desirable or necessary to otherwise or additionally document such LLC Agreement Amendments; and be it further

### 3.   Resolutions Adopted by Board of Directors of FEES Corp.

**RESOLVED**, that the FEES Corp. Board, acting only on behalf of FEES Corp., hereby adopts verbatim each of the resolutions set forth above under the headings 2.a, 2.b and 2.c (the "Bankruptcy-Related Resolutions") as if fully set forth and repeated under this heading 3, except that each reference in the Bankruptcy-Related Resolutions to (i) "the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company" shall be deemed instead to refer to "the FEES Corp. Board, acting only on behalf of FEES Corp" and (ii) "such Foresight Group Company" shall be deemed instead to refer to "FEES Corp."; and be it further

**RESOLVED**, that the FEES Corp. Board, acting on behalf of FEES Corp., in its capacity as a member of each of Services LLC and Labor LLC, hereby approves the LLC Agreement Amendments in respect of Services LLC and Labor LLC, each such LLC Agreement Amendment to be effective immediately prior to the filing of the Petition to be filed by any Foresight Group Company; and in connection therewith the Authorized Persons be, and each of them hereby is, authorized and directed to prepare, execute and deliver, in the name and on behalf of FEES Corp., such agreements, documents or other instruments as any Authorized Person may deem advisable, appropriate, convenient, desirable or necessary to evidence the LLC Agreement Amendments approved hereby; provided, that nothing in this resolution is intended to imply that any such agreement, document or instrument is so needed, the intent of this resolution being that it and Exhibit C attached hereto are, in and of themselves, sufficient to effect the LLC Agreement Amendments approved hereby and the authority granted to the Authorized Persons in this resolution is merely supplemental thereto should any such Authorized Person deem it advisable, appropriate, convenient, desirable or necessary to otherwise or additionally document such LLC Agreement Amendments; and be it further

### 4.   Resolutions Adopted by Board of Directors of FEF Corp.

**RESOLVED**, that the FEF Corp. Board, acting only on behalf of FEF Corp., hereby adopts verbatim each of the Bankruptcy-Related Resolutions as if fully set forth and repeated under this heading 4, except that each reference in the Bankruptcy-Related Resolutions to (i) "the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company" shall be deemed instead to refer to "the FEF Corp. Board, acting only on behalf of

Doc#: US1:13598346v9

FEF Corp" and (ii) "such Foresight Group Company" shall be deemed instead to refer to "FEF Corp."; and be it further

### 5. Resolutions Adopted by the Receivables LLC Board

**RESOLVED**, that the Receivables LLC Board, acting only on behalf of Receivables LLC, hereby adopts verbatim each of the Bankruptcy-Related Resolutions as if fully set forth and repeated under this heading 5, except that each reference in the Bankruptcy-Related Resolutions to (i) "the GP LLC Board, acting in its Official Capacity with respect to each Foresight Group Company" shall be deemed instead to refer to "the Receivables LLC Board, acting only on behalf of Receivables LLC" and (ii) "such Foresight Group Company" shall be deemed instead to refer to "Receivables LLC"; and be it further

### 6. General

**RESOLVED**, that each of the Authorized Persons be, and each of them individually hereby is, authorized, directed and empowered from time to time in the name and on behalf of each Foresight Group Company, to (i) take such further actions and execute and deliver such certificates, instruments, guaranties, notices, and documents as may be required or as such Authorized Person or any one of them may deem advisable, appropriate, convenient, desirable or necessary to carry out the intent and purpose of the foregoing resolutions, including the execution and delivery of any security agreements, pledges, financing statements, and the like, (ii) perform the obligations of each Foresight Group Company under the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices, and documents to be executed and delivered in such form, as the Authorized Person performing or executing the same shall approve, and the performance or execution thereof by such Authorized Person shall be conclusive evidence of the approval thereof by such Authorized Person and by such Foresight Group Company, and (iii) pay fees and expenses in connection with the transactions contemplated by the foregoing resolutions; and be it further

**RESOLVED**, that all actions previously taken by any director, officer, employee, manager, member, stockholder, general partner or agent of any Foresight Group Company in connection with or related to the matters set forth in or reasonably contemplated or implied by the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects as the acts and deeds of such Foresight Group Company.

*[Remainder of Page Intentionally Blank]*

Doc#: US1:13598346v9

**Exhibit A**
**FELLC Other Subsidiaries**

- Hillsboro Energy LLC

- Sugar Camp Energy, LLC

- Macoupin Energy LLC

- Williamson Energy, LLC

- Foresight Coal Sales LLC

- Tanner Energy LLC

- Sitran LLC

- Seneca Rebuild LLC

- Oeneus LLC d/b/a Savatran LLC

- Adena Resources, LLC

- Hillsboro Transport LLC

- American Century Transport LLC

- Akin Energy LLC

- American Century Mineral LLC

A-1

**<u>Exhibit B</u>**
**Labor LLC Subsidiaries**

- Viking Mining LLC

- Patton Mining LLC

- M-Class Mining, LLC

- MaRyan Mining LLC

- Mach Mining, LLC

- Logan Mining LLC

- LD Labor Company LLC

- Coal Field Repair Services LLC

- Coal Field Construction Company LLC

B-1

## Exhibit C
## LLC Agreement Amendments

### Foresight Energy LLC:

The Fifth Amended and Restated Operating Agreement of Foresight Energy LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1.  Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

    "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

    "**11.5    Amendments**. This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### Foresight Energy Services LLC:

The Second Amended and Restated Operating Agreement of Foresight Energy Services LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1.  Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

    "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of all of the Members or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

    "**11.5    Amendments**. This Agreement may be amended at any time and in any manner upon the approval thereof by all of the Members or by the Manager."

Doc#: US1:13598346v9

### Foresight Energy Labor LLC:

The First Amended and Restated Operating Agreement of Foresight Energy Labor LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of all of the Members or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by all of the Members or by the Manager."

### Hillsboro Energy LLC:

The Amended and Restated Operating Agreement of Hillsboro Energy LLC, dated as of November 14, 2011 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### Sugar Camp Energy LLC:

The Amended and Restated Operating Agreement of Sugar Camp Energy LLC, dated as of November 14, 2011 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the

Doc#: US1:13598346v9

Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.    A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    <u>Amendments</u>**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## **<u>Macoupin Energy LLC</u>:**

The Third Amended and Restated Operating Agreement of Macoupin Energy LLC, effective as of January 31, 2014 and as thereafter amended, be, and it hereby is, amended as follows:

1.    Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.    A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    <u>Amendments</u>**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## **<u>Williamson Energy LLC</u>:**

The Third Amended and Restated Operating Agreement of Williamson Energy LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1.    Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

Doc#: US1:13598346v9

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**    **Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## Foresight Coal Sales LLC:

The Amended and Restated Operating Agreement of Foresight Coal Sales LLC, dated as of November 14, 2011 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**    **Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## Tanner Energy LLC:

The First Amended and Restated Operating Agreement of Tanner Energy LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**    **Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

**<u>Sitran LLC:</u>**

The Third Amended and Restated Operating Agreement of Sitran LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)     The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**   <u>**Amendments**</u>.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

**<u>Seneca Rebuild LLC:</u>**

The Second Amended and Restated Operating Agreement of Seneca Rebuild LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)     The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**   <u>**Amendments**</u>.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

Doc#: US1:13598346v9

**Oeneus LLC d/b/a Savatran LLC:**

The Fourth Amended and Restated Operating Agreement of Oeneus LLC d/b/a Savatran LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

**Adena Resources, LLC:**

The Amended and Restated Operating Agreement of Adena Resources, LLC, dated as of February 25, 2015 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

Doc#: US1:13598346v9

## Hillsboro Transport LLC:

The Second Amended and Restated Operating Agreement of Hillsboro Transport LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)     The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## American Century Transport LLC:

The Operating Agreement of American Century Transport LLC, dated as of April 15, 2015 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)     The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## Akin Energy LLC:

The Amended and Restated Operating Agreement of Akin Energy LLC, dated as of March 12, 2015 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)     The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the

Doc#: US1:13598346v9

Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5**  **Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## American Century Mineral LLC:

The Operating Agreement of American Century Mineral LLC, dated as of April 15, 2015 and as thereafter amended, be, and it hereby is, amended as follows:

1.  Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5**  **Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

## Viking Mining LLC:

The Second Amended and Restated Operating Agreement of Viking Mining LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1.  Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

Doc#: US1:13598346v9

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### Patton Mining LLC:

The Second Amended and Restated Operating Agreement of Viking Mining LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1.  Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### M-Class Mining LLC:

The Second Amended and Restated Operating Agreement of M-Class Mining LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1.  Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

> "(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2.  A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

> "**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

Doc#: US1:13598346v9

### **MaRyan Mining LLC:**

The Second Amended and Restated Operating Agreement of MaRyan Mining LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### **Mach Mining LLC:**

The Second Amended and Restated Operating Agreement of Mach Mining LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5    Amendments**.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### **Logan Mining LLC:**

The Second Amended and Restated Operating Agreement of Logan Mining LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the

Doc#: US1:13598346v9

Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**   **Amendments**. This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### LD Labor Company LLC:

The Second Amended and Restated Operating Agreement of LD Labor Company LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)   The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**   **Amendments**. This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

### Coal Field Repair Services LLC:

The Second Amended and Restated Operating Agreement of Coal Field Repair Services LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)   The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

Doc#: US1:13598346v9

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**    <u>**Amendments**</u>.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

**<u>Coal Field Construction Company LLC</u>:**

The Second Amended and Restated Operating Agreement of Coal Field Construction Company LLC, dated as of May 23, 2017 and as thereafter amended, be, and it hereby is, amended as follows:

1. Section 9.1(a) thereof shall be amended and restated to provide in its entirety as follows:

"(a)    The Company shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following: (i) the written consent of the Member or of the Manager or (ii) the occurrence of any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act. Notwithstanding anything to the contrary herein or in the Act, no Person shall cease to be a member or manager of the Company upon the happening to such Person of any of the events of bankruptcy described in Section 18-304(1)(a)-(f) of the Act."

2. A new Section 11.5 thereof shall be inserted to provide in its entirety as follows:

"**11.5**    <u>**Amendments**</u>.  This Agreement may be amended at any time and in any manner upon the approval thereof by the Member."

C-12

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | )   Case No. 20-_____-____ |
| | )   Chapter 11 |
| FORESIGHT ENERGY LP, | ) |
| | )   (Joint Administration Requested) |
| Debtor. | ) |
| | ) |

**VERIFICATION OF CREDITOR MATRIX**

The above named debtor hereby certifies under penalty of perjury that the attached list containing the names and addresses of my creditors (Matrix), consisting of **504** page(s) and is true, correct and complete.

*/s/ Robert D. Moore*_____
Name: Robert D. Moore
Title:   President
*On behalf of the Debtors and Debtors in Possession*

Dated:  03/09/2020