## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Hearing Date:  March 11, 2020 |
| | ) | Hearing Time:  10:00 a.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN, CONTINUE, AND RENEW THEIR EXISTING INSURANCE PROGRAM AND (II) HONOR CERTAIN PREPETITION OBLIGATIONS IN RESPECT THEREOF AND (B) GRANTING RELATED RELIEF

Foresight Energy LP and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      By this Motion, the Debtors seek entry of interim and final orders (the "Proposed Orders"),[2] pursuant to sections 105(a) and 363 of title 11 of the United States

---

[1]     The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are: Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251).  The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2]     Copies of the Proposed Orders will be made available on the Debtors' case information website at: http://cases.primeclerk.com/foresightenergy.

Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-3(B) of the Local Rules of Bankruptcy Procedure of the Eastern District of Missouri (the "Local Bankruptcy Rules"), (a) authorizing, but not directing, the Debtors to (i) continue their insurance coverage on an uninterrupted basis during the pendency of these chapter 11 cases, including the authority to revise, renew, replace, extend, supplement, or otherwise change their customary insurance policies and (ii) pay all premiums and other related amounts thereunder in the ordinary course of business, and (b) granting related relief.

## Jurisdiction and Venue

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The statutory and legal predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Bankruptcy Rule 2015-3(B).

## Background

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are a leading producer of thermal coal, with four mining complexes and nearly 2.1 billion tons of proven and probable coal reserves strategically located near multiple rail and river transportation access points in the Illinois Basin.  The Debtors also own a barge-loading river terminal on the Ohio River.  From this strategic position, the Debtors sell their coal primarily to electric utility and

Doc#: US1:13615177v5

industrial companies located in the eastern half of the United States and across the international market.

5.    The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.    Contemporaneously herewith, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).    No trustee, examiner or official committee has been appointed in these chapter 11 cases.

6.    Information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* (the "Moore Declaration"), the *Declaration of Alan Boyko, Senior Managing Director of FTI Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* (the "Boyko Declaration"), and the declaration of Seth Herman in support of the Debtors' motion for approval of debtor-in-possession financing and use of cash collateral (the "Herman Declaration," and together with the Moore Declaration and Boyko Declaration, the "First Day Declarations"),[3] each filed contemporaneously herewith.

## The Debtors' Insurance Program[4]

7.    In the ordinary course of business, the Debtors maintain comprehensive insurance coverage through policies, as set forth in **Exhibit A** hereto (the "Insurance Policies,"

---

[3]    The First Day Declarations are being filed in support of this Motion and are incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

[4]    The description of the Insurance Program set forth herein is intended as a summary only, and the actual terms of the program's Insurance Policies and related agreements shall govern in the event of any inconsistency.

Doc#: US1:13615177v5

and all premiums, deductibles, fees, and obligations related thereto, the "Insurance Obligations"),

that are administered by various third-party insurance carriers (the "Insurance Carriers") to

protect against adverse occurrences (altogether, the "Insurance Program").   Each Insurance

Policy falls into one of two categories: Reschini Policies or Aon Policies (each as defined

below).

**A.      The Reschini Policies**

8.      The Debtors maintain general liability, umbrella, property, excess liability,

excess automobile, pollution liability, and other forms of coverage through Insurance Policies

procured and negotiated with the help of Reschini Agency, Inc. ("Reschini"), an insurance

broker (collectively, the "Reschini Policies").   The Insurance Obligations under the Reschini

Policies are financed through insurance premium financing and security agreements (each,

a "Financing Agreement") with BankDirect Capital Finance, Inc.   Commissions owed to

Reschini for its services as broker ("Broker's Fees") are paid to directly to Reschini by

BankDirect out of the amounts the Debtors pay to BankDirect under the Financing Agreements.

9.      Pursuant to the Financing Agreements, the Debtors remitted to BankDirect

cash down payments totaling approximately $1.3 million.   Under the terms of the Financing

Agreements, the Debtors are required to remit aggregate monthly payments of approximately

$475,000.   Additionally, as security for payment of all amounts owing under the Financing

Agreements, the Debtors assigned to BankDirect a security interest in all proceeds of the

Reschini Policies.   As of the Petition Date, the Debtors do not believe there are any material

prepetition Insurance Obligations owed in connection with the Reschini Policies, but, out of an

abundance of caution, the Debtors seek authority to satisfy any such prepetition obligations.

B.      **The Aon Policies**

10.     The Debtors also maintain primary, excess, and tail director and officer liability coverage, crime coverage, and other related coverage (the "Aon Policies"). The Debtors employ Aon Insurance Services West, Inc. ("Aon") to assist with the procurement and negotiation of the Aon Policies. The Debtors pay the Aon Policy premiums, which include any Broker's Fees earned by Aon, directly to Aon. With respect to the Aon Policies, the Debtors paid $2,881,944 in Insurance Obligations. The Debtors intend to maintain the Aon Policies, use the brokerage services provided by Aon, and pay all Insurance Obligations related thereto during these chapter 11 cases and believe that continuing this arrangement is in the best interests of their creditors and estates. As of the Petition Date, the Debtors do not believe there are material prepetition Insurance Obligations owed to Aon, but, out of an abundance of caution, the Debtors seek authority to satisfy any such prepetition obligations.

11.     Pursuant to the Insurance Program, the Debtors may be required to pay various deductibles or retention amounts (the "Insurance Deductibles") depending upon the type of claim and the Insurance Policy involved. Under certain policies, the Insurance Carriers and third-party administrators may pay claimants and then invoice the Debtors for reimbursement for claims paid within any Insurance Deductible. In such situations, the Insurance Carriers may have prepetition claims against the Debtors. As of the Petition Date, the Debtors do not believe there are any material prepetition obligations owed to Insurance Carriers relating to Insurance Deductibles, but, out of an abundance of caution, the Debtors seek authority to satisfy any such prepetition obligations.

Doc#: US1:13615177v5

## Basis for Relief Requested

**A.  The Court Should Authorize the Debtors to Maintain the Insurance Program and Satisfy the Insurance Obligations Related Thereto**

12.  Maintaining the Debtors' Insurance Program is an ordinary course of business transaction and is authorized by sections 105(a), 363(b), 363(c), 503, 1107, and 1108 of the Bankruptcy Code.  Authority to continue the Insurance Program, and, where necessary, pay prepetition Insurance Obligations that may be due and owing—to the extent the Debtors determine that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any other form of impairment of the coverage, benefits, or proceeds provided thereunder, if any—is critical to the Debtors' operations and their chapter 11 efforts.

13.  The coverage provided under their Insurance Program is essential for preserving the value of the Debtors' assets and reducing potential liability of the estates, which will inure to the benefit of all stakeholders in these chapter 11 cases.  For example, should the Debtors not pay BankDirect, the counterparty that has financed the majority of the Debtors' Insurance Policies under the terms of the Financing Agreements, BankDirect may assert its security interest in the Debtors' insurance proceeds, impairing critical insurance coverage when the Debtors may need it most.

14.  Maintenance of insurance coverage under certain of the Insurance Policies is required under the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees* (the "Operating Guidelines") published by the United States Trustee (the "U.S. Trustee"), the Bankruptcy Code, *see* 11 U.S.C. § 1112(b)(4)(C), Local Bankruptcy Rule 2015-3, and the laws of the various states in which the debtors operate. *See* 28 U.S.C. § 959(b) (chapter 11 debtor obligated under federal law to operate chapter 11 business according to laws of states where business and properties are located).

Doc#: US1:13615177v5

15.     Consistent with the Debtors' historical practices, the Debtors may need to revise, extend, renew, or supplement Insurance Policies or otherwise change their Insurance Program during the pendency of these chapter 11 cases.  The nonpayment of any Insurance Obligations under the Insurance Program could result in one or more of the Insurance Carriers increasing future insurance premiums, declining to renew the Insurance Policies or refusing to enter into new Insurance Policies.  Moreover, if the Insurance Policies lapse without renewal, the Debtors risk being exposed to substantial liability at a later date to the detriment of all parties in interest.

16.     Section 363(c) of the Bankruptcy Code permits a debtor to continue to engage in ordinary course of business transactions without the need for this Court's approval. 11 U.S.C. § 363(c).  Maintaining the Insurance Program, including paying the Insurance Obligations, is an ordinary course of business practice of the Debtors, as it is for substantially all companies in the Debtors' and other industries.

17.     Furthermore, to the extent maintenance of the Insurance Program and payment of the Insurance Obligations were considered outside of the ordinary course of business, sections 105(a) and 363(b) of the Bankruptcy Code authorize the requested relief.  Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]"  11 U.S.C. § 105(a).  It permits a bankruptcy court to take whatever action "is appropriate or necessary in aid of the exercise of its jurisdiction."  2 COLLIER ON BANKRUPTCY ¶ 105.01.  Similarly, section 363(b)(1) of the Bankruptcy Code authorizes a debtor to use property of the estate other than in the ordinary course of business after notice and a hearing.  11 U.S.C. § 363(b)(1); *see also In re Apex Oil Co.*, 92 B.R. 847 (Bankr. E.D. Mo. 1988).

7

18.     The well-settled "doctrine of necessity" also supports the requested relief. This rule authorizes postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  The Supreme Court of the United States first articulated the doctrine of necessity more than a century ago in affirming the authorization of using receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See, e.g.*, *Miltenberger* v. *Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 309–11 (1882).  The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *See, e.g.*, 11 U.S.C. § 105(a); *In re Carlson*, 126 F.3d 915, 920 (7th Cir. 1997) ("Section 105(a) gives the bankruptcy court the authority to issue any order necessary to carry out the provisions of the Bankruptcy Code."); *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re NWFX, Inc.*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern . . . .").

19.     This doctrine of necessity functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Wehrenberg, Inc.*, 260 B.R. 468 (Bankr. E.D. Mo. 2001) ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor"); *see also In re Bos. & Me. Corp.*, 634 F.2d 1359, 1382 (1st

8

Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("While the doctrine [of necessity] was not codified in the Bankruptcy Code, courts have used their equitable power under Section 105(a) of the Code to authorize the payment of prepetition claims . . . ."). The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

20. The Debtors' ability to pay the prepetition Insurance Obligations is necessary to their continued and uninterrupted operations during these chapter 11 cases. Maintaining the Insurance Policies is necessary to preserve the value of the Debtors' assets, thereby ensuring the adequate protection of the Debtors' property for all parties in interest, and to minimize exposure to risk. Honoring the Financing Agreements is also necessary to maintaining the Insurance Policies, as failure to make the payments required under the Financing Agreements can trigger cancellation of many of those Insurance Policies. In addition, paying Broker's Fees will ensure that those brokers will be available to assist the Debtors in maintaining existing Insurance Policies and procuring additional necessary insurance during these chapter 11 cases.

21. Maintaining the Insurance Policies enables the Debtors to avoid the incurrence of possibly significant liabilities, and therefore represents a sound exercise of their business judgment. The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events. In fact, in some instances, maintenance of insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly,

9

it is necessary for the Debtors to pay their prepetition Insurance Obligations, including their insurance premiums, obligations owed under the Financing Agreements, and amounts owed to Aon, to ensure that the Debtors are able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.

22.    Courts in this and other districts have routinely granted relief similar to the relief requested herein in other chapter 11 cases. *See, e.g.*, *In re Payless Holdings LLC*, No. 19-40883 (KAS) (Bankr. E.D. Mo. Mar. 15, 2019) [Docket No.: 583]; *In re Armstrong Energy, Inc.*, No. 17-47541 (KAS) (Bankr. E.D. Mo. Dec. 1, 2017) [Docket No.: 205]; *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. June 9, 2016) [Docket No.: 868]; *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 14, 2016) [Docket No.: 85].  The Debtors submit that the circumstances of these chapter 11 cases warrant granting similar relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and their stakeholders, and therefore should be granted.

### Processing of Checks and Electronic Funds Transfers Should Be Authorized

23.    The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  Also, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment made relating to the Insurance Obligations. Accordingly, the Debtors believe that only checks or wire transfer requests relating to authorized payments will be honored and that this Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

Doc#: US1:13615177v5

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

24.     The Debtors seek immediate authorization for the relief requested in this Motion.  Pursuant to Bankruptcy Rule 6003(b), a bankruptcy court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within the first twenty-one (21) days after the petition date unless the relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b).  For the reasons set forth herein and in the First Day Declarations, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied Bankruptcy Rule 6003(b) and therefore respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25.     By this Motion, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause for a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 6004(h).  For the reasons set forth herein and in the First Day Declarations, the Debtors submit that notice of the relief requested herein is appropriate under the circumstances and that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

Doc#: US1:13615177v5

**Reservation of Rights**

26.     Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien (or the priority thereof) against the Debtors, (b) a waiver of the Debtors' or any party in interest's rights to subsequently dispute or contest such claim or lien on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion, (e) a request or authorization to assume or adopt any agreement, contract, or lease under section 365 of the Bankruptcy Code or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or applicable law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute or contest such claim.

**Notice**

27.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 13; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) counsel to Murray Energy Corporation; (k) counsel to Reserves; (l) counsel to Javelin; (m) counsel to Uniper Global Commodities UK Limited; (n) the Internal Revenue Service; (o) the Securities and Exchange Commission; (p) the United States Attorney's Office for the Eastern District of Missouri; (q) the state attorneys general for all states in which the Debtors conduct business; (r) the Insurance Carriers; (s) BankDirect; (t) Reschini; (u) Aon; and (v) the holders of the

thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (w) counsel to

the Committee; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002

(collectively, the "Notice Parties"). Notice of this Motion and any order entered hereon will be

served in accordance with Local Bankruptcy Rule 9013-3(A)(1). In light of the nature of the

relief requested herein, the Debtors submit that no other or further notice is necessary.


*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Doc#: US1:13615177v5

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other relief as is just and proper.

Dated:    March 10, 2020          Respectfully submitted,
          St. Louis, Missouri
                                  ARMSTRONG TEASDALE LLP


                                   _/s/  Richard W. Engel, Jr._
                                  Richard W. Engel, Jr. (MO 34641)
                                  John G. Willard (MO 67049)
                                  Kathryn Redmond (MO 72087)
                                  7700 Forsyth Boulevard, Suite 1800
                                  St. Louis, Missouri  63105
                                  Tel:    (314) 621-5070
                                  Fax:    (314) 621-5065
                                  Email:  rengel@atllp.com
                                          jwillard@atllp.com
                                          kredmond@atllp.com

                                          - and -

                                  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                  Paul M. Basta (*pro hac vice* admission pending)
                                  Alice Belisle Eaton (*pro hac vice* admission pending)
                                  Alexander Woolverton (*pro hac vice* admission pending)
                                  1285 Avenue of the Americas
                                  New York, New York  10019
                                  Tel:    (212) 373-3000
                                  Fax:    (212) 757-3990
                                  Email:  pbasta@paulweiss.com
                                          aeaton@paulweiss.com
                                          awoolverton@paulweiss.com

                                  *Proposed Counsel to the Debtors and*
                                  *Debtors in Possession*

14

## Exhibit A

**Schedule of Insurance Policies**

| Carrier | Insurance Broker | Policy Type | Policy No. | Term | Annual Premium |
|---|---|---|---|---|---|
| **Aon Policies** | | | | | |
| National Union Fire Insurance Company | Aon | Directors & Officers | 01-585-02-57 | 6/1/2019-6/1/2020 | $165,000 |
| XL Specialty Insurance Company | Aon | Excess D&O | ELU162615-19 | 6/1/2019-6/1/2020 | $88,000 |
| Continental Casualty Insurance Company | Aon | Excess D&O | 652125455 | 6/1/2019-6/1/2020 | $86,000 |
| StarStone Specialty Insurance Company | Aon | Excess D&O | Q81449190ASP | 6/1/2019-6/1/2020 | $80,000 |
| Endurance American Insurance Company | Aon | Excess D&O | DOX10005085705 | 6/1/2019-6/1/2020 | $68,000 |
| Twin City Fire Insurance Company | Aon | Excess D&O | 72 DA 0285185 19 | 6/1/2019-6/1/2020 | $62,000 |
| Argonaut Insurance Company | Aon | Excess D&O | MLX7600958-5 | 6/1/2019-6/1/2020 | $53,300 |
| XL Specialty Insurance Company | Aon | Excess D&O | ELU162617-19 | 6/1/2019-6/1/2020 | $45,305 |
| ACE American Insurance Company | Aon | Excess D&O | DOX G23684573 006 | 6/1/2019-6/1/2020 | $40,000 |
| National Union Fire Insurance Company | Aon | Excess D&O | 01-585-02-59 | 6/1/2019-6/1/2020 | $39,900 |
| National Union Fire Insurance Company | Aon | D&O Run-off | 01- 585- 02- 57 | 72 Months | $470,250 |
| AXA XL | Aon | D&O Run-off | ELU162615-19 | 72 Months | $250,800 |
| CNA Financial | Aon | D&O Run-off | G-22075-B | 72 Months | $245,100 |
| StarStone Insurance Holdings | Aon | D&O Run-off | Q81449190ASP | 72 Months | $228,000 |
| Sompo International | Aon | D&O Run-off | DOX10005085705 | 72 Months | $193,000 |
| The Hartford Financial Services Group | Aon | D&O Run-off | 72 DA 0285185 19 | 72 Months | $176,700 |

| Carrier | Insurance Broker | Policy Type | Policy No. | Term | Annual Premium |
|---|---|---|---|---|---|
| Argonaut Insurance Company | Aon | D&O Run-off | MLX7600958-5 | 72 Months | $151,905 |
| AXA XL | Aon | D&O Run-off | ELU162617-19 | 72 Months | $129,119 |
| ACE American Insurance Company | Aon | D&O Run-off | DOX G23684573 006 | 72 Months | $114,000 |
| National Union Fire Insurance Company | Aon | D&O Run-off | 01- 585- 02- 59 | 72 Months | $113,715 |
| National Union Fire Insurance Company | Aon | Crime | 01-771-84-71 | 8/31/19 to 8/31/20 | $11,132 |
| Continental Casualty Insurance Company | Aon | Fiduciary | 596498795 | 8/31/19 to 8/31/20 | $7,500 |
| Continental Casualty Insurance Company | Aon | Employment Practice Liability | 596721126 | 8/31/19 to 8/31/20 | $42,000 |
| National Union Fire Insurance Company | Aon | KRE | 82867315 | 8/31/19 to 8/31/22 | $9,018 |
| National Union Fire Insurance Company | Aon | Directors & Officers | 01-308-78-78 | 8/1/16 to 3/31/23 | $15,403 |
| National Union Fire Insurance Company | Aon | Fiduciary | 01-308-78-78 | 8/1/16 to 3/31/23 | $68,604 |
| National Union Fire Insurance Company | Aon | Employment Practice Liability | 01-308-78-78 | 8/1/16 to 3/31/20 | $13,559 |
| National Union Fire Insurance Company | Aon | Crime | 01-308-78-78 | 8/1/16 to 3/31/23 | $1,932 |
| National Union Fire Insurance Company | Aon | KRE | 01-308-78-78 | 8/1/16 to 3/31/23 | $890 |
| **Reschini Policies** | | | | | |
| IRONSHORE SPECIALTY INSURANCE CO | The Reschini Group | Package | 002043405 | 6/1/2019- 6/1/2020 | $347,477 |
| APOLLO CONSORTIUM | The Reschini Group | General Liability | PC304000n | 6/1/2019- 6/1/2020 | $89,493 |
| UNDERWRITERS | The Reschini | General | PC304004n | 6/1/2019- | $18,367 |

2

| Carrier | Insurance Broker | Policy Type | Policy No. | Term | Annual Premium |
|---|---|---|---|---|---|
| LLOYDS LONDON (IL) | Group | Liability | | 6/1/2020 | |
| APOLLO CONSORTIUM | The Reschini Group | Umbrella | PC304001n | 6/1/2019-6/1/2020 | $363,715 |
| LEXINGTON INSURANCE COMPANY | The Reschini Group | Excess Liability | 023627440 | 6/1/2019-6/1/2020 | $117,153 |
| APOLLO CONSORTIUM | The Reschini Group | Excess Liability | PC304002n | 6/1/2019-6/1/2020 | $80,158 |
| STARR SURPLUS LINES INSURANCE COMPANY | The Reschini Group | Excess Liability | 10000030750191 | 6/1/2019-6/1/2020 | $51,010 |
| TRAVELERS INDEMNITY COMPANY | The Reschini Group | BAP | P8108K952696-IND-19 | 6/1/2019-6/1/2020 | $42,005 |
| Lloyd's (Beazley Led) | The Reschini Group | Property Insurance | PN301440M | 12/15/2019-12/15/2020 | $4,499,453 |
| Markel Bermuda | The Reschini Group | Property Insurance | PN306400M | 12/15/2019-12/15/2020 | Premium included above |
| RSUI Indemnity | The Reschini Group | Property Insurance | NHT906390 | 12/15/2019-12/15/2020 | Premium included above |
| Aspen | The Reschini Group | Property Insurance | HIAHP5U18 | 12/15/2019-12/15/2020 | Premium included above |
| Liberty Bermuda | The Reschini Group | Property Insurance | PN301470M | 12/15/2019-12/15/2020 | Premium included above |
| OCIL Bermuda | The Reschini Group | Property Insurance | PN306310M | 12/15/2019-12/15/2020 | Premium included above |
| AWAC Bermuda | The Reschini Group | Property Insurance | PN301480M | 12/15/2019-12/15/2020 | Premium included above |
| Brit US | The Reschini Group | Property Insurance | PD-10563-04 | 12/15/2019-12/15/2020 | Premium included above |
| Argo Bermuda | The Reschini Group | Property Insurance | PN302780M | 12/15/2019-12/15/2020 | Premium included above |
| Sompo (London) | The Reschini Group | Property Insurance | PN301490M | 12/15/2019-12/15/2020 | Premium included above |

3

| Carrier | Insurance Broker | Policy Type | Policy No. | Term | Annual Premium |
|---|---|---|---|---|---|
| Lloyd's (Amtrust) | The Reschini Group | Property Insurance | PN301500M | 12/15/2019-12/15/2020 | Premium included above |
| Evanston Insurance Co | The Reschini Group | Property Insurance | MKLV7IM0048102 | 12/15/2019-12/15/2020 | Premium included above |
| Axis USA | The Reschini Group | Property Insurance | ECF727237-18 | 12/15/2019-12/15/2020 | Premium included above |
| HIIG | The Reschini Group | Property Insurance | PRO440293 | 12/15/2019-12/15/2020 | Premium included above |
| ACE American | The Reschini Group | Property Insurance | EPR N14328105 | 12/15/2019-12/15/2020 | Premium included above |
| Liberty Bermuda | The Reschini Group | Property Insurance | PN301530M | 12/15/2019-12/15/2020 | Premium included above |
| MS Amlin | The Reschini Group | Property Insurance | PN306460M | 12/15/2019-12/15/2020 | Premium included above |
| Navigators | The Reschini Group | Property Insurance | NY18ILM019861-01 | 12/15/2019-12/15/2020 | Premium included above |
| RSUI Indemnity | The Reschini Group | Property Insurance | NHT906386 | 12/15/2019-12/15/2020 | Premium included above |
| Lloyd's (Markel Led) | The Reschini Group | Property Insurance | KA304650M | 12/15/2019-12/15/2020 | Premium included above |
| Ironshore Specialty Insurance Company | The Reschini Group | Excess Liability $25mil xs $25mil | 001682306 | 6/1/2019-6/1/2020 | $92,909 |
| US AIG | The Reschini Group | Aircraft | S1HL1-D103 | 5/23/2019-5/23/2020 | Covered |
| Illinois National Insurance Co | The Reschini Group | Fiduciary Liability | 01-478-00-09 | 7/01/2019-7/01/2020 | Covered |
| Rockwood Casualty Insurance Company | The Reschini Group | Coal Field Construction, LLC WC | WC455866 | 7/01/2019-7/01/2020 | $2,772,523 |
| The Ins Co of the State of PA | The Reschini Group | International Exporters | WS11013333 | 6/01/2019-6/01/2020 | Covered |
| Continental Insurance Co | The Reschini Group | Crime | 596684319 | 5/05/2019-5/05/2020 | Covered |

4

| Carrier | Insurance Broker | Policy Type | Policy No. | Term | Annual Premium |
|---|---|---|---|---|---|
| Navigators | The Reschini Group | Marine Package Primary | NY18MPK00706001 | 12/05/2019-12/05/2020 | $17,378 |
| Starr | The Reschini Group | Marine Package Primary | MASIHICH00019018/118 | 12/05/2019-12/05/2020 | premium included above |
| AGCS | The Reschini Group | Marine Package Primary | OHL92012593 | 12/05/2019-12/05/2020 | premium included above |
| Navigators | The Reschini Group | Marine Excess $4mil xs $1mil | NY18MPK00706001 | 12/05/2019-12/05/2020 | Included in primary |
| Starr | The Reschini Group | Marine Excess $4mil xs $1mil | MASILCH00022118 | 12/05/2019-12/05/2020 | premium included above |
| AGCS | The Reschini Group | Marine Excess $4mil xs $1mil | OHL92012593 | 12/05/2019-12/05/2020 | premium included above |
| Navigators | The Reschini Group | Marine Excess $5mil xs $5mil | NY18LIA95746701 | 12/05/2019-12/05/2020 | $1,905 |
| Starr | The Reschini Group | Marine Excess $5mil xs $5mil | MASILCH00025918 | 12/05/2019-12/05/2020 | premium included above |
| AGCS | The Reschini Group | Marine Excess $5mil xs $5mil | OXL92012594 | 12/05/2019-12/05/2020 | premium included above |
| Navigators | The Reschini Group | Marine Excess $90mil xs $10mil | NY18LIA95746702 | 12/05/2019-12/05/2020 | $4,953 |
| Starr | The Reschini Group | Marine Excess $90mil xs $10mil | MASILCH00022218 | 12/05/2019-12/05/2020 | premium included above |
| Liberty Mutual | The Reschini Group | Marine Excess $90mil xs $10mil | ATABKMQ4002 | 12/05/2019-12/05/2020 | premium included above |
| AGCS | The Reschini Group | Marine Excess $90mil xs $10mil | OXL92012595 | 12/05/2019-12/05/2020 | premium included above |
| AIG | The Reschini Group | Marine Excess $90mil xs $10mil | 25437053 | 12/05/2019-12/05/2020 | premium included above |
| National Union Fire Insurance Co | The Reschini Group | Marine Excess $50mil xs $100mil | 45775993 | 12/05/2019-12/05/2020 | $1,905 |
| Zurich | The Reschini Group | Marine Excess $50mil xs | MAR5844854-06 | 12/05/2019-12/05/2020 | premium included |

Doc#: US1:13615177v5

| Carrier | Insurance Broker | Policy Type | Policy No. | Term | Annual Premium |
|---|---|---|---|---|---|
| | | $100mil | | | above |
| United States Fire Ins Co | The Reschini Group | Marine Excess $50mil xs $100mil | 832-103966-7 | 12/05/2019-12/05/2020 | premium included above |
| IMU | The Reschini Group | Marine Excess $50mil xs $100mil | B5JH61350 | 12/05/2019-12/05/2020 | premium included above |
| CNA | The Reschini Group | Marine Excess $50mil xs $100mil | EX121994 | 12/05/2019-12/05/2020 | premium included above |
| National Union Fire Ins Co | The Reschini Group | Marine Cargo | 0 15912958 | 8/12/2019-8/12/2020 | $11,600 |
| Water Quality Insurance Syndicate | The Reschini Group | Water Pollution | 53-81095 | 12/05/2019-12/05/2020 | $2,016 |
| US AIG | The Reschini Group | Helicopter | SIHLI-C168 | 12/02/2019-12/02/2020 | Covered |
| AIG National Union Fire Ins | The Reschini Group | Kidnap and Ransom | 86-342-978 | 8/11/2019-8/11/2020 | Covered |
| Underwriters at Lloyds, London | The Reschini Group | Breach Response | W20307180301 | 9/21/2019-9/21/2020 | Covered |
| The Travelers Indemnity Co. | The Reschini Group | Hangar and Helipad Building | KTK6307330B258 | 3/17/2019-3/17/2020 | Covered |

Doc#: US1:13615177v5