**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Hearing Date:  March 11, 2020 |
| | ) | Hearing Time:  10:00 a.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (A) AUTHORIZING PAYMENT OF
PREPETITION TAXES AND FEES AND (B) GRANTING RELATED RELIEF**

Foresight Energy LP and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1. By this Motion, the Debtors seek entry of interim and final orders (the "Proposed Orders"),[2] pursuant to sections 105(a), 363, 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of

---

[1] The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are: Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251). The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2] Copies of the Proposed Orders will be made available on the Debtors' case information website at: http://cases.primeclerk.com/foresightenergy.

Doc#: US1:13615181v5

Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Debtors to remit and pay taxes and fees accrued prepetition that are or will become payable during these chapter 11 cases, including those obligations subsequently determined upon audit or otherwise to be owed for periods before the Petition Date, and (b) granting related relief.

### Jurisdiction and Venue

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3. The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 507(a)(8) and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

### Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are a leading producer of thermal coal, with four mining complexes and nearly 2.1 billion tons of proven and probable coal reserves strategically located near multiple rail and river transportation access points in the Illinois Basin. The Debtors also own a barge-loading river terminal on the Ohio River. From this strategic position, the Debtors sell their coal primarily to electric utility and industrial companies located in the eastern half of the United States and across the international market.

5. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. Contemporaneously

2

herewith, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No trustee, examiner or official committee has been appointed in these chapter 11 cases.

6. Information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* (the "Moore Declaration"), the *Declaration of Alan Boyko, Senior Managing Director of FTI Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* (the "Boyko Declaration"), and the declaration of Seth Herman in support of the Debtors' motion for approval of debtor-in-possession financing and use of cash collateral (the "Herman Declaration," and together with the Moore Declaration and Boyko Declaration, the "First Day Declarations"),[3] each filed contemporaneously herewith.

### The Debtors' Taxes and Fees

7. In the ordinary course of business, the Debtors collect and incur sales, use, excise, property, and other business, environmental, and regulatory taxes, fees, and assessments (collectively, the "Taxes and Fees"). The Debtors remit Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities (collectively, the "Authorities")[4] in accordance with applicable laws, regulations, and permits. A schedule

---

[3] The First Day Declarations are being filed in support of this Motion and are incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

[4] With respect to certain of the Reclamation Taxes and Fees paid on account of land mitigation subsidence claims and certain of the Property Taxes, the Debtors remit some payments to the applicable landowner instead of to an Authority, as described below.

3

identifying the Authorities is attached hereto as **Exhibit A**.[5]  Taxes and Fees are remitted and paid by the Debtors through checks and electronic transfers that are processed by their banks and other financial institutions.  The Debtors estimate that approximately $13,085,000 in prepetition Taxes and Fees has accrued and are unpaid as of the Petition Date, of which approximately $4,935,000 is currently payable or will become payable after the Petition Date and before a final hearing on this Motion (the "Interim Period").

8.      The Debtors pay the Taxes and Fees on a periodic basis, remitting them to the respective Authorities, landowner, or lessor semimonthly, monthly, quarterly, or annually, depending on the nature and incurrence of a particular Tax or Fee.  The Debtors seek the authority to pay Taxes and Fees that: (a) were incurred and became due prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (b) had prepetition payments that were lost or otherwise not received in full; or (c) were incurred for prepetition periods and become due after the Petition Date.  The Taxes and Fees are summarized as follows:

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due During Interim Period |
|---|---|---|---|
| **Sales and Use Taxes** | Taxes imposed on the sale and use of certain goods and services. | $90,000 | $10,000 |
| **Black Lung Excise Taxes** | Taxes related to compensating coal miners who develop black lung disease. | $700,000 | $700,000 |
| **Reclamation Taxes and Fees** | Taxes related to restoring, reclaiming, and mitigating subsidence damage to the land upon which the Debtors previously or currently conduct mining operations. | $5,720,000 | $4,000,000 |
| **Property Taxes** | Taxes and obligations related to real and personal property. | $6,500,000 | $150,000 |

---

[5] Although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities. By this Motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit A**.

| Business Regulations and Fines | Taxes and Fees for business, permitting, licensing, regulatory assessments (including Mine Safety and Health obligations), compliance with environmental laws and regulations, and other fees paid to the Authorities. | $75,000 | $75,000 |
|---|---|---|---|
| **Total** | | **$13,085,000** | **$4,935,000** |

### A. Sales and Use Taxes

9. The Debtors incur, collect, and remit an assortment of state and local sales, use, and other similar taxes (collectively, the "Sales and Use Taxes") in connection with the operation of their businesses. The Debtors' sales tax obligations primarily arise from the sale of certain goods and services to their customers. The Debtors incur use taxes for the purchase of equipment, materials, supplies, and services when vendors do not, or are not registered to, collect sales taxes. The Debtors generally remit Sales and Use Taxes to the appropriate Authorities annually. On an annual basis, the Debtors incur and remit approximately $1 million in Sales and Use Taxes. The Debtors estimate that approximately $90,000 in Sales and Use Taxes have accrued and are unpaid as of the Petition Date, and approximately $10,000 are or will become due and owing during the Interim Period.

### B. Black Lung Excise Taxes

10. The Debtors incur taxes on coal pursuant to Section 4121 of the Internal Revenue Code (the "Black Lung Excise Taxes"). The Black Lung Excise Taxes are held in trust by the federal government and used to compensate coal miners who develop pneumoconiosis, also known as "black lung disease." The Debtors are required to remit Black Lung Excise Taxes on a semi-monthly basis. In the year before the Petition Date, the Debtors incurred and remitted approximately $6.5 million in Black Lung Excise Taxes. The Debtors estimate that approximately $700,000 in Black Lung Excise Taxes have accrued and are unpaid as of the

5

Petition Date, and that approximately $700,000 are or will become due and owing during the Interim Period.

### C. Reclamation Taxes and Fees

11. The Debtors' mines are heavily regulated, and the Debtors are required to make certain payments to restore, reclaim, and mitigate damage to the land on which the Debtors previously conducted or currently conduct mining activities (the "Reclamation Taxes and Fees"). The vast majority of Reclamation Taxes and Fees are paid on account of land mitigation subsidence claims to landowners[6] of properties on which the Debtors conduct mining operations. These payments to landowners whose property may be affected by land subsidence are generally required under the government-issued permits that allow the Debtors to conduct their mining activities, and a failure to pay such amounts may result in the revocation of the applicable mining permit. The remaining Reclamation Taxes and Fees are remitted to the relevant Authorities on a quarterly basis in accordance with the Surface Mining Control and Reclamation Act of 1977.

12. In 2019, the Debtors incurred and remitted to Authorities or to landowners approximately $12 million in Reclamation Taxes and Fees. The Debtors estimate that approximately $5.7 million in Reclamation Taxes and Fees have accrued and are unpaid as of the Petition Date, and that approximately $4 million are or will become due and owing during the Interim Period.

### D. Property Taxes

13. The Debtors incur real and personal property taxes (the "Property Taxes") (a) directly in many of the jurisdictions in which they operate or (b) indirectly through property tax reimbursement obligations owed to landowners under their respective land or lease

---

[6] For the avoidance of doubt, the Debtors have included such landowners owed Reclamation Taxes and Fees as Authorities under **Exhibit A** attached hereto.

agreements for property that the Debtors use in the ordinary course of business. Property Taxes directly owed by the Debtors are paid to the appropriate Authority, whereas those Property Taxes owed as reimbursement obligations are instead paid to the applicable landowner,[7] who has the ultimate obligation to remit such amounts to the applicable Authority. The Debtors typically pay Property Taxes in the ordinary course on a periodic basis depending on the jurisdiction and the reimbursement timing under the land or lease agreement. On an overall annual basis, the Debtors incur and remit approximately $6.5 million in Property Taxes. The Debtors estimate that approximately $150,000 in Property Taxes have accrued and are unpaid as of the Petition Date.

E.  **Business Regulations and Fines**

14.  Federal, state, and local Authorities require the Debtors to pay a wide range of licensing, permit, registration, and reporting fees to the applicable Authorities to remain in good standing to conduct business and operate their facilities (collectively, the "Business Regulations and Fines"). The majority of Business Regulations and Fines arise from ordinary course citations issued by the Mine Safety and Health Administration ("MSHA") inspectors, which, if not successfully appealed, the Debtors must timely pay to maintain ordinary course operations of their mines. The Debtors estimate that they pay approximately $1 million annually on account of such Business Regulations and Fines. The Debtors estimate that approximately $75,000 in Business Regulations and Fines have accrued as of the Petition Date, and approximately $75,000 are or will become due and owing during the Interim Period.

---

[7] For the avoidance of doubt, the Debtors have included such landowners owed Property Tax reimbursements as Authorities under **Exhibit A** attached hereto.

7

**Basis for Relief Requested**

**A.     The Court Should Authorize the Debtors to Pay Outstanding Taxes and Fees**

15.     Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

16.     Some of the Taxes and Fees may also entitle the applicable Authorities to assert liens on the Debtors' property, thus rendering such Taxes and Fees secured claims. As secured claims, these Taxes and Fees would be entitled to priority treatment when the Debtors sell the property that these Taxes and Fees are recorded against or when the Debtors confirm a plan of reorganization. *See* 11 U.S.C. §§ 506(a), 1129(a)(9)(C), 1129(b)(2)(A) (requiring that any plan of reorganization "crammed down" over a class of secured creditors pay those creditors in full or allow those creditors to retain their liens). As with the priority claims, paying these Taxes and Fees only affects the timing of the payments and does not prejudice the rights of other creditors of the Debtors.

17.     Additionally, certain of the Taxes and Fees may not be property of the Debtors' estates. Many of the Taxes and Fees are collected or withheld by the Debtors on behalf

8

of the applicable Authorities, and many may be held in trust by the Debtors. *See, e.g.*, I.R.C. § 7501 (stating that certain Taxes and Fees are held in trust). As such, to the extent these "trust fund" taxes are collected, these Taxes and Fees are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 541(d); *Begier* v. *IRS*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference since such funds are not debtor's property); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (finding that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro* v. *N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same); *In re Russman's Inc.*, 125 B.R. 520, 525 (Bank. E.D. Tenn. 1991) (same); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987) (same). Because the Debtors may not have any interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[8]

        18.       Furthermore, sections 105(a) and 363(b) of the Bankruptcy Code authorize the requested relief. Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]" 11 U.S.C. § 105(a). It permits a bankruptcy court to take whatever action "is appropriate or necessary in aid of the exercise of its jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01. Similarly, section 363(b)(1) of the Bankruptcy Code authorizes a debtor to use property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1); *see also In re Apex Oil Co.*, 92 B.R. 847 (Bankr. E.D. Mo. 1988).

---

[8] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

9

19. The well-settled "doctrine of necessity" also supports the requested relief. This rule authorizes postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. The Supreme Court of the United States first articulated the doctrine of necessity more than a century ago in affirming the authorization of using receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See, e.g., Miltenberger* v. *Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 309–11 (1882). The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See, e.g.*, 11 U.S.C. § 105(a); *In re Carlson*, 126 F.3d 915, 920 (7th Cir. 1997) ("Section 105(a) gives the bankruptcy court the authority to issue any order necessary to carry out the provisions of the Bankruptcy Code."); *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re NWFX, Inc.*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern . . . .").

20. This doctrine of necessity functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Wehrenberg, Inc.*, 260 B.R. 468 (Bankr. E.D. Mo. 2001) ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor"); *see also In re Bos. & Me. Corp.*, 634 F.2d 1359, 1382 (1st

Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("While the doctrine [of necessity] was not codified in the Bankruptcy Code, courts have used their equitable power under Section 105(a) of the Code to authorize the payment of prepetition claims . . . ."). The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

21. The Debtors' ability to pay the Taxes and Fees is necessary to their continued and uninterrupted operations during these chapter 11 cases. If certain Taxes and Fees remain unpaid: (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the reorganization process; (b) the Authorities may attempt to suspend the Debtors' mine permits or operations, file liens, seek to lift the automatic stay, or pursue other remedies that will harm the estates; and (c) certain of the Debtors' directors and officers could be subject to claims of personal liability, which would distract those key employees from their duties related to the Debtors' restructuring. Moreover, if the portions owing to landowners for Property Taxes and land subsidence Reclamation Taxes and Fees are not paid, the Debtors may, as applicable, have their leased property revoked under their lease arrangements with the landowners, or have their mining permits revoked by the applicable Authority, which in either case would materially harm the value of the Debtors and their estates. Additionally, as noted above, some Taxes and Fees may not constitute property of the Debtors' estates if collected and held in trust for the benefit of the applicable Authorities. Unpaid Taxes and Fees may also result in penalties, fees, or the accrual of interest.

11

22. Courts in this and other districts have routinely granted relief similar to the relief requested herein in other chapter 11 cases. *See, e.g.*, *In re Payless Holdings LLC*, No. 19-40883 (KAS) (Bankr. E.D. Mo. Mar. 15, 2019) [Docket No.: 584]; *In re Armstrong Energy, Inc.*, No. 17-47541 (KAS) (Bankr. E.D. Mo. Dec. 1, 2017) [Docket No.: 204]; *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. Feb. 10, 2016) [Docket No.: 83]; *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 14, 2016) [Docket No.: 94]. The Debtors submit that the circumstances of these chapter 11 cases warrant granting similar relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and their stakeholders, and therefore should be granted.

### **Processing of Checks and Electronic Funds Transfers Should Be Authorized**

23. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral. Also, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment made relating to the Taxes and Fees. Accordingly, the Debtors believe that only checks or wire transfer requests relating to authorized payments will be honored and that this Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### **The Requirements of Bankruptcy Rule 6003 Are Satisfied**

24. The Debtors seek immediate authorization for the relief requested in this Motion. Pursuant to Bankruptcy Rule 6003(b), a bankruptcy court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to

12

pay all or part of a claim that arose before the filing of the petition" within the first twenty-one (21) days after the petition date unless the relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b).  For the reasons set forth herein and in the First Day Declarations, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied Bankruptcy Rule 6003(b) and therefore respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25.    By this Motion, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause for a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 6004(h).  For the reasons set forth herein and in the First Day Declarations, the Debtors submit that notice of the relief requested herein is appropriate under the circumstances and that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

### Reservation of Rights

26.    Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien (or the priority thereof) against the Debtors, (b) a waiver of the Debtors' or any party in interest's rights to subsequently dispute or contest such claim or lien on any grounds, (c) a promise or requirement to pay any claim, (d) an

13

implication or admission that any particular claim is of a type specified or defined in this Motion, (e) a request or authorization to assume or adopt any agreement, contract, or lease under section 365 of the Bankruptcy Code or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or applicable law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute or contest such claim.

## Notice

27.   Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 13; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) counsel to Murray Energy Corporation; (k) counsel to Reserves; (*l*) counsel to Javelin; (m) counsel to Uniper Global Commodities UK Limited; (n) the Internal Revenue Service; (o) the Securities and Exchange Commission; (p) the United States Attorney's Office for the Eastern District of Missouri; (q) the state attorneys general for all states in which the Debtors conduct business; (r) the Authorities; (s) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (t) counsel to the Committee; and (u) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Motion and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules of Bankruptcy Procedure of the Eastern District of Missouri (the "Local Bankruptcy Rules"). In

light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other relief as is just and proper.

Dated: March 10, 2020
St. Louis, Missouri

Respectfully submitted,

ARMSTRONG TEASDALE LLP

 /s/  Richard W. Engel, Jr.
Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn R. Redmond (MO 72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:    (314) 621-5070
Fax:    (314) 621-5065
Email: rengel@atllp.com
         jwillard@atllp.com
         kredmond@atllp.com

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
Alexander Woolverton (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
         aeaton@paulweiss.com
         awoolverton@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# Exhibit A

## List of Authorities

| Category | Taxing authority | Street | City | State | Postal code |
|---|---|---|---|---|---|
| Property Taxes | BELMONT COUNTY TREASURER | 101 WEST MAIN STREET | ST CLAIRSVILLE | OH | 43950-1260 |
| Property Taxes | BENTON HIGH SCHOOL | 511 EAST MAIN STREET | BENTON | IL | 62812 |
| Property Taxes | BENTON LIBRARY DISTRICT | P.O. BOX 548 | BENTON | IL | 62812 |
| Property Taxes | BOND COUNTY | 203 W COLLEGE | GREENVILLE | IL | 62246 |
| Property Taxes – Third-Party Reimbursement | COLT | 3801 PGA BOULEVARD, SUITE 903 | PALM BEACH GARDENS | FL | 33410 |
| Black Lung Excise Tax | DEPARTMENT OF THE TREASURY | INTERNAL REVENUE SERVICE | OGDN | UT | 84201-0009 |
| Property Taxes | FRANKLIN COUNTY TREASURER | P.O. BOX 967 | BENTON | IL | 62812 |
| Property Taxes | GALLATIN COUNTY TREASURER | P.O. BOX 310 | SHAWNEETOWN | IL | 62984 |
| Property Taxes | GREGORY FX DALY COLLECTOR (ST LOUIS CITY) | P.O. BOX 66877 | ST. LOUIS | MO | 63166 |
| Property Taxes | HAMILTON COUNTY TAX ASSESSOR | 100 S JACKSON ST, ROOM 4 | MC LEANSBORO | IL | 62859 |
| Property Taxes | HENDERSON COUNTY SHERIFF | 20 NORTH MAIN STREET, SUITE 112 | HENDERSON | KY | 42420 |
| Sales Tax | ILLINOIS DEPARTMENT OF REVENUE | P.O. BOX 19030 | SPRINGFIELD | IL | 62794-9447 |
| Income Taxes | ILLINOIS DEPARTMENT OF REVENUE | P.O. BOX 19447 | SPRINGFIELD | IL | 62794-9447 |
| Permitting | ILLINOIS DEPT OF NATURAL RESOURCES | ONE NATURAL RESOURCES WAY | SPRINGFIELD | IL | 62702-1271 |
| Property Taxes – Third Party Reimbursement | INDEPENDENCE LAND | LOCKBOX 2495 | COLUMBUS | OH | 43260 |
| Sales Tax | INDIANA DEPARTMENT OF REVENUE | P.O. BOX 7218 | INDIANAPOLIS | IN | 46206-1028 |
| Income Taxes | INDIANA DEPARTMENT OF REVENUE | P.O. BOX 1028 | INDIANAPOLIS | IN | 46206-1028 |
| Income Taxes | KENTUCKY DEPARTMENT OF REVENUE | 501 HIGH STREET | FRANKFORT | KY | 40601 |
| Payroll Tax | KENTUCKY STATE TREASURER | 501 HIGH STREET | FRANKFORT | KY | 40602-0491 |
| Income Taxes | LOUISIANA DEPT OF REVENUE | P.O. BOX 61030 | NEW ORLEANS | LA | 70161 |

Doc#: US1:13615181v5

| Property Taxes | MACOUPIN COUNTY SHERIFF | 215 S E STREET | CARLINVILLE | IL | 62626 |
|---|---|---|---|---|---|
| Income Taxes | MISSOURI DEPARTMENT OF REVENUE | P.O. BOX 999 | JEFFERSON CITY | MO | 65105 |
| Property Taxes | MONTGOMERY COUNTY TREASURER | 1 COURTHOUSE SQUARE, ROOM 101 | HILLSBORO | IL | 62049 |
| Property Taxes - Third Party Reimbursement | NEW RIVER ROYALTY | 3801 PGA BOULEVARD, SUITE 903 | PALM BEACH GARDENS | FL | 33410 |
| OSM Reclamation | OFFICE OF SURFACE MINING | P.O. BOX 979068 | ST. LOUIS | MO | 63197-9000 |
| Property Taxes | POSEY COUNTY TREASURER | 126 E THIRD ST | MOUNT VERNON | IN | 47620 |
| Property Taxes | REND LAKE COLLEGE | 468 KEN GRAY PARKWAY | INA | IL | 62846 |
| Property Taxes | REND LAKE CONSERVANCY DISTRICT | P.O. Box 907 | BENTON | IL | 62812 |
| Property Taxes - Third Party Reimbursement | RGGS | 100 WAUGH DR STE 400 | HOUSTON | TX | 77007 |
| Property Taxes - Third Party Reimbursement | RUGER | 3801 PGA BOULEVARD, SUITE 903 | PALM BEACH GARDENS | FL | 33410 |
| Property Taxes | SALINE COUNTY TREASURER | 10 E POPLAR STREET | HARRISBURG | IL | 62946 |
| Property Taxes | WILLIAMSON COUNTY TREASURER | 407 N MONROE STE 104 | MARION | IL | 62959 |
| Property Taxes - Third Party Reimbursement | WPP | LOCKBOX 2495 | COLUMBUS | OH | 43260 |

19

Doc#: US1:13615181v5