## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Hearing Date:  March 11, 2020 |
| | ) | Hearing Time:  10:00 a.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

### DEBTORS' APPLICATION FOR APPOINTMENT
### OF PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT AND
### ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

Foresight Energy LP and its affiliated debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of this

application (this "Application"):

### Relief Requested

1.      By this Application, the Debtors seek entry of an order (the "Proposed

Order"),[2] pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) and 327

of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of

---

[1]     The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are: Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251).  The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2]     A copy of the Proposed Order will be made available on the Debtors' case information website at: https://cases.primeclerk.com/foresightenergy.

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014(A) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Bankruptcy Rules"), appointing Prime Clerk LLC ("Prime Clerk") as (i) claims and noticing agent (the "Claims and Noting Agent"); and (ii) administrative advisor (the "Administrative Advisor") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the Petition Date (as defined below).  In support of this Application, the Debtors submit the Declaration of Benjamin J. Steele, Vice President of Prime Clerk (the "Steele Declaration"), attached hereto as **Exhibit A**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a) and 327 of title 11 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Bankruptcy Rule 2014(A).

## Background

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are a leading producer of thermal coal, with four mining complexes and nearly 2.1 billion tons of proven and probable coal reserves strategically located near multiple rail and river transportation access points in the Illinois Basin.  The Debtors also own a barge-loading river terminal on the Ohio River.  From this strategic position, the Debtors sell their coal primarily to electric utility and

industrial companies located in the eastern half of the United States and across the international market.

5.      The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  Contemporaneously herewith, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner or official committee has been appointed in these chapter 11 cases.

6.      Information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* (the "Moore Declaration"), the *Declaration of Alan Boyko, Senior Managing Director of FTI Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* (the "Boyko Declaration"), and the declaration of Seth Herman in support of the Debtors' motion for approval of debtor in possession financing and use of cash collateral (the "Herman Declaration," and together with the Moore Declaration and Boyko Declaration, the "First Day Declarations"),[3] each filed contemporaneously herewith.

### Basis for Relief Requested

7.      Section 156(c) of title 28 of the United States Code provides the following:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such

---

[3]  The First Day Declarations are being filed in support of this Application and are incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

3

facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28. U.S.C. § 156(c).

8.     Moreover, section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

9.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

10.    The Debtors' selection of Prime Clerk to act as the Claims and Noticing Agent and Administrative Advisor is appropriate under the circumstances and in the best interest of the Debtors' estates.  The Debtors submit, based on all engagement proposals obtained and reviewed from other Claims and Noticing Agents, that Prime Clerk's rates are competitive and reasonable given Prime Clerk's quality of services and expertise.  The terms of Prime Clerk's retention are set forth in the Engagement Agreement attached hereto as **Exhibit B** (the "Engagement Agreement").

11.    Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of persons and entities to be noticed and

4

that many of these parties will file claims.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent and administrative advisor will provide the most effective and efficient means of, and relieve the Debtors and/or the Clerk of the Court (the "Clerk") of the administrative burden of, noticing, administering claims, and soliciting and tabulating votes, and is in the best interests of both the Debtors' estates and their creditors.

### Prime Clerk's Qualifications

12.     Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official Claims and Noticing Agent and/or Administrative Advisor in many large bankruptcy cases in various districts nationwide.  Prime Clerk's active cases include: *Murray Metallurgical Coal Holdings, LLC*, No. 20-10390 (JEH) (Bankr. S.D. Ohio); *Murray Energy Holdings Co*., No. 19-56885 (JEH) (Bankr. S.D. Ohio); *FirstEnergy Solutions Corp*., No. 18-50757 (AMK) (Bankr. N.D. Ohio); *PHI, Inc.,* No. 19-30923 (HDH) (Bankr. N.D. Tex.); *Taco Bueno Restaurants, Inc.,* No. 18-33678 (SGJ) (Bankr. N.D. Tex.); *McDermott International, Inc.,* No. 20-30336 (DRJ) (Bankr. S.D. Tex.); *Kingfisher Midstream, LLC,* No. 19-35133 (MI) (Bankr. S.D. Tex.); *EP Energy Corporation,* No. 19-35654 (MI) (Bankr. S.D. Tex.); *Deluxe Entertainment Services Group Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y.); *Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y.); *Paddock Enterprises, LLC,* No. 20-10028 (LSS) (Bankr. De. Del); *High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. De. Del); and *PG&E Corporation,* No. 19-30088 (DM) (Bankr. N.D. Cal.).

13.     Prime Clerk has also served as Claims and Noticing Agent and/or Administrative Advisor on multiple occasions in this district.  *See, e.g., In re Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); *In re Payless Holdings LLC*, No. 17-42267 (Bankr. E.D. Mo.); *In re Abengoa Bioenergy US Holding, LLC,* No. 16-41161-659 (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc*., No. 16-10083-399 (Bankr. E.D. Mo.); *In re Arch Coal, Inc*., No. 16-40120 (Bankr. E.D. Mo.).  Accordingly, the Debtors submit that appointing Prime Clerk as the Claims and Noticing Agent and Administrative Advisor is appropriate here.

## Services to be Provided

14.     This Application pertains to the work to be performed by Prime Clerk under 11 U.S.C. § 327(a) and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c).  Under the Engagement Agreement, Prime Clerk will perform the following services, as the Claims and Noticing Agent pursuant to 28 U.S.C. § 156(c):

(a)     assist the Debtors with the preparation and distribution of all required notices and documents in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including: (i) notice of the § 341 meeting of creditors; (ii) notice of any claims bar date, (iii) notice of any proposed sale of the Debtor's assets, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of any plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors, the Court, or the Clerk may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     serve the notice of the commencement of these cases and the initial § 341 meeting of the creditors using the current Official Form 309F notice as modified by the Court. Prime Clerk shall obtain this form notice from the Clerk and shall not modify the form notice it receives from the Clerk without the Clerk's consent. Any claims bar date notice must be approved by the Court and the Clerk prior to being issued by Prime Clerk;

6

(c)     maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(d)     maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(e)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Clerk and the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(f)     maintain a post office box or address for receiving claims and returned mail, and process all mail received;

(g)     for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk a certificate of service within one (1) business day of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h)     process all proofs of claim received, including those received by the Clerk, within 5 business days of receipt; within 5 business days of receipt, electronically file with the Clerk all proofs of claim that Prime Clerk has received or will receive, noting the claim number assigned by the Court; reconcile its records with the Court for all claims received to date for each case; and if the time deadline cannot be met due to volume or unforeseen circumstances, Prime Clerk shall promptly notify the Clerk;

(i)     maintain a duplicate claims register on behalf of each Debtor (collectively, the "Claims Register"); and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the

claim, (iv) the address for payment, if different from the notice address, (v) the amount asserted, (vi) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vii) any disposition of the claim;

(j)     upon receipt of proofs of claim not otherwise filed with the Clerk, file claims in the Court's Claim Register by the end of the week following the week of receipt (or by the end of the second week following the week of receipt during the two (2) weeks preceding and following any bar set by the Court),  noting the claim number assigned by the Court; upon completion of the docketing of claims processed with the Court, reconcile its records with the Court for all claims received to date for each case; if the time deadline cannot be met due to volume or unforeseen circumstances, Prime Clerk shall promptly notify the Clerk;

(k)     implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(l)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly;

(n)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)     identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(p)     assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website at https://cases.primeclerk.com/felp and/or call center;

(q)     if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office immediately upon notice to Prime Clerk of entry of the order converting the cases;

(r)     thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a

proposed order dismissing Prime Clerk as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(s)    within seven (7) days of notice to Prime Clerk of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of the cases;

(t)    with prior approval of the Clerk, at the close of these chapter 11 cases, address the destruction of proofs of claim as instructed by the Clerk; and

(u)    comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements.

15.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

16.    Moreover, the Debtors seek to retain Prime Clerk, pursuant to 11 U.S.C. § 327(a), to perform the following as Administrative Advisor:

(a)    assist the Debtors with plan-solicitation services including: (i) balloting, (ii) distribution of applicable solicitation materials, (iii) tabulation and calculation of votes, (iv) determining with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, Bankruptcy Rules, and procedures ordered by this Court; (v) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results; and (vi) in connection with the foregoing services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(b)    assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

(c)    provide a confidential data room, if requested;

(d)    manage and coordinate any distributions pursuant to a chapter 11 plan; and

(e)    provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included pursuant to § 156(c), that may be requested from time to time by the Debtors, the Court, or the Clerk's Office

**Professional Compensation**

17.     The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above-referenced services provided pursuant to 28 U.S.C. § 156(c) be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court.  Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

18.     For the above-referenced services provided pursuant to section 327(a) of the Bankruptcy Code, Prime Clerk will seek compensation in accordance with and will file interim and final fee applications for allowance of its compensation and expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the applicable Guidelines.

19.     Prior to the Petition Date, the Debtors provided Prime Clerk an advance in the amount of $40,000.00.  Prime Clerk seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

20.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent and administrative advisor in these chapter 11 cases.

## Disinterestedness

21.     Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Prime Clerk has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

22.     To the best of the Debtors' knowledge, Prime Clerk is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as Prime Clerk represents in the Steele Declaration, among other things, that:

(a)     Prime Clerk is not a creditor of the Debtors;

(b)     Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(c)     By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     In its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)     Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(f)     Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)     Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Prime Clerk as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases shall be at the expense of the Clerk's office.

Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

23.     As set forth in the Steele Declaration, Prime Clerk currently serves as the claims and noticing agent in the chapter 11 cases of Murray Energy Holdings Co. ("Murray Energy") and certain of its affiliates, Lead Case No. 19-56885 (JEH) (Bankr. S.D. Ohio), which are affiliates of the Debtors, and Murray Energy is one of the Debtors' significant interest holders.  Prime Clerk also currently serves as the claims and noticing agent in the chapter 11 cases of Murray Metallurgical Coal Holdings, LLC ("Murray MET") and certain of its affiliates,

12

Lead Case No. 20-10390 (JEH) (Bankr. S.D. Ohio), which are also affiliates of the Debtors. The Debtors were not part of the Murray Energy or Murray MET chapter 11 cases. This should not prohibit the retention of Prime Clerk here. This situation is substantially similar to cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor, and accordingly, the Debtors submit Prime Clerk's service as claims and noticing agent for the Murray Energy and Murray MET debtors should not be an impediment to the retention of Prime Clerk to serve in such capacities in the Debtors' chapter 11 cases.

24.    To the extent that there is any inconsistency between this Application, the Proposed Order, and the Engagement Agreement, the Proposed Order shall govern.

### Notice

25.    Notice of this Application will be provided to: (a) the Office of the United States Trustee for Region 13; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) counsel to Murray Energy Corporation; (k) counsel to Reserves; (*l*) counsel to Javelin; (m) counsel to Uniper Global Commodities UK Limited; (n) the Internal Revenue Service; (o) the Securities and Exchange Commission; (p) the United States Attorney's Office for the Eastern District of Missouri; (q) the state attorneys general for all states in which the Debtors conduct business; (r) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (s) counsel to the Committee; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Application and any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-3(A)(1). In

light of the nature of the relief requested herein, the Debtors submit that no other or further notice

is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, authorizing Prime Clerk to act as Claims and Noticing Agent and Administrative Advisor for the Debtors and granting such other relief as may be appropriate.

Dated:   March 10, 2020          /s/  Robert D. Moore
          St. Louis, Missouri          Name: Robert D. Moore
                                                 Title:   President and Chief Executive Officer
                                                              Foresight Energy LP

Filed by:

ARMSTRONG TEASDALE LLP

 */s/  Richard W. Engel, Jr.*

Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn R. Redmond (72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:     (314) 621-5070
Fax:     (314) 621-5065
Email:  rengel@atllp.com
           jwillard@atllp.com
           kredmond@atllp.com

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
Alexander Woolverton (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York  10019
Tel:     (212) 373-3000
Fax:     (212) 757-3990
Email:  pbasta@paulweiss.com
           aeaton@paulweiss.com
           awoolverton@paulweiss.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

## <u>Exhibit A</u>

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-20-41308-659 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF**
**DEBTORS' APPLICATION FOR APPOINTMENT OF PRIME**
**CLERK LLC AS CLAIMS AND NOTICING AGENT AND**
**ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

I, Benjamin J. Steele, do hereby declare, under penalty of perjury, that:

1.      I am a Vice President of Prime Clerk LLC ("Prime Clerk"), a chapter 11 administrative services firm whose headquarters are located at 830 3rd Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively, the "Debtors") *Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent and Administrative Advisor Nunc Pro Tunc to the Petition Date*, which was filed contemporaneously herewith (the "Application").[2]

---

[1]  The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are:  Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251).  The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

3.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in various districts nationwide.  Prime Clerk's active cases include: *Murray Energy Holdings Co*., No. 19-56885 (JEH) (Bankr. S.D. Ohio); *FirstEnergy Solutions Corp*., No. 18-50757 (AMK) (Bankr. N.D. Ohio); *PHI, Inc.,* No. 19-30923 (HDH) (Bankr. N.D. Tex.); *Taco Bueno Restaurants, Inc.,* No. 18-33678 (SGJ) (Bankr. N.D. Tex.); *McDermott International, Inc.,* No. 20-30336 (DRJ) (Bankr. S.D. Tex.); *Kingfisher Midstream, LLC,* No. 19-35133 (MI) (Bankr. S.D. Tex.); *EP Energy Corporation,* No. 19-35654 (MI) (Bankr. S.D. Tex.); *Deluxe Entertainment Services Group Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y.); *Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y.); *Paddock Enterprises, LLC*, No. 20-10028 (LSS) (Bankr. De. Del); *High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. De. Del); and *PG&E Corporation,* No. 19-30088 (DM) (Bankr. N.D. Cal.).

4.      Prime Clerk has also served as Claims and Noticing Agent and/or Administrative Advisor on multiple occasions in this district.  *See, e.g., In re Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); *In re Payless Holdings LLC*, No. 17-42267 (Bankr. E.D. Mo.); *In re Abengoa Bioenergy US Holding, LLC,* No. 16-41161-659 (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc*., No. 16-10083-399 (Bankr. E.D. Mo.); *In re Arch Coal, Inc*., No. 16-40120 (Bankr. E.D. Mo.).

5.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c),

Prime Clerk will perform, at the request of the Clerk the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  Moreover, Prime Clerk will perform such services pursuant to 11 U.S.C. § 327(a) as specified in the Application and Engagement Agreement. In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit B** to the Application.

6. Prime Clerk represents, among other things, the following:

(a) Prime Clerk is not a creditor of the Debtors;

(b) Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(c) By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d) In its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e) Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(f) Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h) Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)       Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)       None of the services provided by Prime Clerk as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases shall be at the expense of the Clerk's office.

7.      In accordance with 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "Potential Parties in Interest") in these chapter 11 cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 50 largest unsecured creditors on a consolidated basis, contract counterparties, landlords, vendors, insurers, utilities, governmental authorities, the United States Trustee and persons employed in the office of the United States Trustee, and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any connection that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to promptly file a supplemental declaration.

8.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

9.     Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Hughes Hubbard & Reed LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Centerview Partners LLC; KPMG LLP; PricewaterhouseCoopers LLP ("PWC"); Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

10.     Prime Clerk hereby discloses the following connections, each of which Prime Clerk believes does not present an interest adverse to the Debtors and is disclosed solely out of an abundance of caution:

- Stephanie Basta is Chief People Officer at Prime Clerk. Ms. Basta's husband, Paul Basta, is a Partner at Paul, Weiss, Rifkind, Wharton & Garrison LLP, proposed counsel to the Debtors.  Ms. Basta's role at Prime Clerk is administrative and, as such, she does not work on any of the firm's cases.

- Heidi Stern, Chief Financial Officer at Prime Clerk, and Diana Shih, Controller at Prime Clerk, were formerly associates at PWC, one of the Debtors' ordinary course professionals.  Ms. Stern and Ms. Shih left PWC in 2011.  Neither Ms. Stern nor Ms. Shih worked on any matters involving the Debtors during their time at PWC.

11.     Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, Prime Clerk and its personnel have and will continue to

have relationships personally or in the ordinary course of its business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

12.     Prime Clerk currently serves as the claims and noticing agent in the chapter 11 cases of Murray Energy Holdings Co. ("Murray Energy") and certain of its affiliates, Lead Case No. 19-56885 (JEH) (Bankr. S.D. Ohio), which are affiliates of the Debtors, and Murray Energy is one of the Debtors' significant interest holders. Prime Clerk also currently serves as the claims and noticing agent in the chapter 11 cases of Murray Metallurgical Coal Holdings, LLC ("Murray MET") and certain of its affiliates, Lead Case No. 20-10390 (JEH) (Bankr. S.D. Ohio), which are also affiliates of the Debtors. The Debtors were not part of the Murray Energy or Murray MET chapter 11 cases. I believe that this should not prohibit the retention of Prime Clerk here. This situation is substantially similar to cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor, and accordingly, the Debtors submit Prime Clerk's service as claims and noticing agent for the Murray Energy and Murray MET debtors should not be an impediment to the retention of Prime Clerk to serve in such capacities in the Debtors' chapter 11 cases.

13.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest. All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

14.     Prime Clerk is an indirect subsidiary of Duff & Phelps LLP ("D&P").  D&P is the global advisor that protects, restores and maximizes value for clients.  Within the D&P corporate structure, Prime Clerk operates independently from D&P. As such, any relationships that D&P and its affiliates maintain do not create an interest of Prime Clerk that is materially adverse to the Debtors' estates or any class of creditors or security holders.  D&P is not currently identified on the Potential Parties in Interest list, but Prime Clerk makes this disclosure out of an abundance of caution.

15.     As part of its conflicts check process, Prime Clerk submitted for review by each of its partners and employees the list of Potential Parties in Interest provided by the Debtors to determine whether any partner or employee holds an adverse interest to any of the Debtors and/or is a "disinterested person," as such term is defined in the Bankruptcy Code.  In addition, the partners and employees of Prime Clerk were asked to review their investment holdings, to the extent possible, to determine whether they have any direct or indirect ownership of the Debtors' securities.  Upon information and belief, and upon such reasonable inquiry by Prime Clerk and the results thereof, Prime Clerk is not aware that any of its partners or employees directly or indirectly own any debt or equity securities of a company that is a Debtor or of any of its affiliates. Moreover, Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to non-discretionary Investment Funds (as defined below), all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained.

16.     As a general matter, in the infrequent case when a Prime Clerk partner or employee may, directly or indirectly, own a debt or equity security of a company which may become or becomes a debtor or a debtor affiliate, such ownership would be substantially less than

one percent of any such debtor or debtor affiliate.  Additionally, from time to time, Prime Clerk partners or employees may personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals may indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates. Any partner or employee who has made any such investment does not manage or otherwise control such Investment Fund. The Investment Funds are managed by third parties, and Prime Clerk partners or employees that may invest in the particular Investment Fund have no influence, discretion, or control over the Investment Fund's decision to buy, sell or vote any particular debt or equity securities comprising the particular Investment Fund and in certain instances, partners or employees may not be aware of the particular debt or equity securities comprising the particular Investment Fund.

17.    Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.

Pursuant to 28, U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:   March 10, 2020                  /s/  Benjamin J. Steele
            St. Louis, Missouri              Name:  Benjamin J. Steele
                                             Title:   Vice President
                                                      Prime Clerk LLC

## **Exhibit B**

**Engagement Agreement**



## Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of February 26, 2020 between Prime Clerk LLC (**"*Prime Clerk*"**) and Foresight Energy LP (together with its affiliates and subsidiaries, the **"*Company*"**).[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the **"*Services*"**).

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the **"*Company Parties*"**) with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the **"*Rate Structure*"**); provided, however that Prime Clerk will provide a discount of 10% off the attached hourly rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

   (c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $40,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

## 3. Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "*Bankruptcy Code*"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. Confidentiality

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



## 5. Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

## 6. Bank Accounts

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

## 7. Term and Termination

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

    (b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

    (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

    (d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8. No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



## 9. Indemnification

   (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "*Indemnified Parties*") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "*Losses*") resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

   (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

   (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

   (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

   (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

   (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

   (c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or

4



acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,


understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC |
| | One Grand Central Place |
| | 60 East 42nd Street, Suite 1440 |
| | New York, NY 10165 |
| | Attn: Shai Waisman |
| | Tel: (212) 257-5450 |
| | Email: swaisman@primeclerk.com |
| | |
| If to the Company: | Foresight Energy LP |
| | 211 North Broadway, Suite 2600 |
| | St. Louis, MO 63102 |
| | Attn: Cody Neff |
| | Tel: 740-838-3295 |
| | Email: Cody.Neff@foresight.com |
| | |
| With a copy to: | Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| | 1285 Avenue of the Americas |
| | New York, NY 10019 |
| | Attn: Alexander Woolverton |
| | Tel: (212) 373-3256 |
| | Email: awoolverton@paulweiss.com |

*[Signature page follows]*

**Prime Clerk** | A Division of
DUFF&PHELPS

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Shira Weiner
Title: General Counsel

**Foresight Energy LP**

By: Cody E. Nett
Title: General Counsel & Corporate Secretary

7

# RATES

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

## Claim and Noticing Rates

| TITLE | HOURLY RATE |
|---|---|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | **$35 - $55** |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | **$35 - $95** |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience. | **$70 - $170** |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | **$175 - $195** |
| **Chief Operating Officer and Executive Vice President**<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | **No charge** |


# RATES

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant** <br> The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications.  Solicitation Consultants average over five years of experience. | **$195** |
| **Director of Solicitation** <br> The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | **$215** |

## Printing and Noticing Services

| | |
|---|---|
| **Printing** | **$0.10 per page** |
| **Customization/Envelope Printing** | **$0.05 each** |
| **Document folding and inserting** | **No charge** |
| **Postage/Overnight Delivery** | **Preferred Rates** |
| **Public Securities Events** | **Varies by Event** |
| **E-mail Noticing** | **No charge** |
| **Fax Noticing** | **$0.10 per page** |
| **Proof of Claim Acknowledgment Card** | **$0.10 per card** |
| **Envelopes** | **Varies by Size** |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| **Coordinate and publish legal notices** | **Available on request** |


# RATES

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

## Case Website

| | |
|---|---|
| **Case Website setup** | No charge |
| **Case Website hosting** | No charge |
| **Update case docket and claims register** | No charge |

## Client Access

| | |
|---|---|
| **Access to secure client login (unlimited users)** | No charge |
| **Client customizable reports on demand or via scheduled email delivery (unlimited quantity)** | No charge |
| **Real time dashboard analytics measuring claim and ballot information and document processing status** | No charge |

## Data Administration and Management

| | |
|---|---|
| **Inputting proofs of claim and ballots** | Standard hourly rates (no per claim or ballot charge) |
| **Electronic Imaging** | $0.12 per image |
| **Data Storage, maintenance and security** | $0.10 per record per month |
| **Virtual Data Rooms** | Available on request |

## On-line Claim Filing Services

| | |
|---|---|
| **On-line claim filing** | No charge |

## Call Center Services

| | |
|---|---|
| **Case-specific voice-mail box** | No charge |
| **Interactive Voice Response ("IVR")** | No charge |
| **Monthly maintenance** | No charge |
| **Call center personnel** | Standard hourly rates |
| **Live chat** | Standard hourly rates |

## Disbursement Services

| | |
|---|---|
| **Check issuance and/or Form 1099** | Available on request |
| **W-9 mailing and maintenance of TIN database** | Standard hourly rates |