# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Hearing Date:  March 11, 2020 |
| | ) | Hearing Time:  10:00 a.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

## DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN FTI CONSULTING, INC. AS RESTRUCTURING FINANCIAL ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Foresight Energy LP and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of this application (this "Application"):

### Relief Requested

1.     By this Application, the Debtors seek entry of an order (the "Proposed Order"),[2] pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the

---

[1]     The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are: Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251).  The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2]     A copy of the Proposed Order will be made available on the Debtors' case information website at: https://cases.primeclerk.com/foresightenergy.

"Bankruptcy Rules") and Rules 2014(A) and 2016-2 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Bankruptcy Rules"), authorizing (i) the Debtors to employ and retain FTI Consulting, Inc. ("FTI" or the "Advisor") as restructuring financial advisor to the Debtors *nunc pro tunc* to the Petition Date (the "Engagement") under the terms and conditions set forth in that certain engagement letter (the "Engagement Letter"), dated October 19, 2019, a copy of which is attached as **Exhibit 1** to the Boyko Declaration (as defined below) and incorporated by reference herein, (ii) approving the terms of FTI's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code, effective *nunc pro tunc* to the Petition Date, *provided* that the proposed fee structure and indemnification provisions set forth in the Engagement Letter shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by solely the Office of the U.S. Trustee for the Eastern District of Missouri (the "U.S. Trustee"), who, for the avoidance of doubt, shall be entitled to review applications for payment of compensation and reimbursement of expenses of the Advisor under section 330 of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems appropriate.  In support of this Application, the Debtors submit the *Declaration of Alan Boyko in Support of the Debtors' Application for Authority to Employ and Retain FTI Consulting, Inc. as Restructuring Financial Advisor to the Debtors Nunc Pro Tunc to the Petition Date* (the "Boyko Declaration"), attached hereto as **Exhibit A**.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of

Missouri.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3.      The statutory and legal predicates for the relief requested herein are sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014(A) and 2016-2.

### Background

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are a leading producer of thermal coal, with four mining complexes and nearly 2.1 billion tons of proven and probable coal reserves strategically located near multiple rail and river transportation access points in the Illinois Basin.  The Debtors also own a barge-loading river terminal on the Ohio River.  From this strategic position, the Debtors sell their coal primarily to electric utility and industrial companies located in the eastern half of the United States and across the international market.

5.      The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  Contemporaneously herewith, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner or official committee has been appointed in these chapter 11 cases.

6.      Information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* (the "Moore Declaration"), the *Declaration of Alan Boyko, Senior Managing Director of FTI*

*Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* (the "Boyko Declaration"), and the declaration of Seth Herman in support of the Debtors' motion for approval of debtor in possession financing and use of cash collateral (the "Herman Declaration," and together with the Moore Declaration and Boyko Declaration, the "First Day Declarations"),[3] each filed contemporaneously herewith.

### The Advisor's Qualifications

7.    FTI is well qualified to serve as the Debtors' restructuring financial advisor.  As detailed in the Boyko Declaration, FTI consists of a worldwide network of 4,400 employees in 26 countries on six continents and has a wealth of experience providing financial advisory services in restructurings and reorganizations.  FTI enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States and is particularly well qualified to advise the Debtors during these chapter 11 cases.

8.    The members and senior executives of FTI's restructuring and reorganization practice have assisted and advised numerous chapter 11 debtors and are experienced in analyzing restructuring and related chapter 11 issues.  The members and senior executives of FTI's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having served as financial and strategic advisors to Sears Holdings Corp., Cloud Peak Energy, Inc., Armstrong Energy, Inc., RadioShack Corporation, SFX Entertainment, Arch Coal, Inc., Chassix, Inc., Peabody Energy Corp., CIT Group, MF Global, and Vertellus Specialties, Inc., among others.

---

[3]    The First Day Declarations are being filed in support of this Application and are incorporated herein by reference.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

9.      Since October 24, 2019, the Debtors have retained FTI on a prepetition basis to advise on the Debtors' restructuring efforts.  During this time, FTI has become intimately familiar with the Debtors' financial affairs, business operations, assets, contractual arrangements, capital structure, key stakeholders and other related material information. Likewise, in providing prepetition services to the Debtors, FTI's professionals have worked closely with the Debtors' management, board of directors and other advisors.  In particular, FTI has worked closely with the Debtors to analyze the Debtors' financial positions and to assist the Debtors in preparing for a smooth entry into chapter 11.  Accordingly, as a result of the prepetition work performed on behalf of the Debtors and the significant knowledge gained thereby, FTI has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' chapter 11 cases.

10.     If this Application is approved, several of FTI's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors.  Such personnel, including Alan Boyko, Ranjit Mankekar & Paul Hansen (collectively the "Engagement Leaders"), will lead the team of FTI's professionals and will work closely with the Debtors' management and other professionals throughout the chapter 11 process.

11.     With its experienced professionals, and its understanding of the Debtors' financial history and business operations, FTI fulfills a critical need that complements the services to be provided by the Debtors' other professionals.  The Debtors' retention of FTI, with its resources and capabilities, together with its prepetition experience advising the Debtors, is crucial to the success of these chapter 11 cases.

**FTI's Disinterestedness**

12.     To the best of the Debtors' knowledge, except as set forth in the Boyko Declaration: (i) FTI and its professionals have no relevant connection to any of the Debtors, the

5

Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, (ii) FTI and its professionals are not creditors, equity security holders or insiders of any of the Debtors, (iii) neither FTI nor any of its professionals are or were, within two years of the Petition Date, a director, officer, or employee of any of the Debtors, and (iv) neither FTI nor its professionals hold or represent an interest materially adverse to any of the Debtors, their estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason.   Accordingly, the Debtors submit that FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and FTI's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

13.     The Debtors' knowledge, information and belief regarding the matters set forth herein are based upon, and made in reliance on, the Boyko Declaration.  FTI will continue to monitor for any matters that might affect its disinterested status.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of FTI's retention are discovered or arise, FTI will use reasonable efforts to promptly file a supplemental declaration.

14.     As of the Petition Date, the Debtors do not owe FTI any fees for services performed or expenses incurred under the Engagement Letter.  According to FTI's books and records, in the 90 days before the Petition Date, the Debtors paid FTI $2,097,718.88 in fees and expenses.  The aforementioned amount includes reimbursement of out-of-pocket prepetition expenses incurred by FTI. As further described in the Boyko Declaration, in addition to the

foregoing amount, as of the Petition Date, FTI held approximately $250,000[4] as Cash on Account (of which approximately $0 was received in the 90 days before the Petition Date) and was not a creditor of the Debtors.

**Services to Be Rendered**

15.    Subject to further order of this Court, and in accordance with the terms of the Engagement Letter, the Debtors request the employment and retention of FTI to render the following financial advisory, consulting and restructuring services to the Debtors as necessary, appropriate and feasible and as may be requested by the Debtors (collectively, the "Services"):[5]

**Development of 13 Week Cash Flow Forecast**
- Develop and implement an interactive 13-week cash forecasting process.
- Assist the company with identifying, assessing and potentially implementing procedures to control and conserve working capital.

**Prepare the Company to Meet the Requirements of Filing for Bankruptcy Court Protection**
- The Company has determined a contingency plan is appropriate to prepare for the potential that it will seek protection under the United States Bankruptcy Code.  As part of this contingency preparation FTI has been asked to:
  - Develop a detailed approach to preparing the Company (including subsidiaries and/or affiliates that may be included in the potential filing) for such proceedings in the most cost effective and efficient manner possible; and
  - Assist the Company in implementing such plan if and when appropriate.
- Prepare the necessary financial and operating information for the:
  - Preparation of bankruptcy petitions and related documents;
  - Preparation of the statements of financial affairs, schedules, monthly operating reports, and other regular reports required in such proceedings;
  - Compilation and analysis of the information necessary for First Day and Second Day Orders; and

---

[4]    As of the date of this Application, FTI's final prepetition expenses are in the process of being reconciled with the Cash on Account amount and therefore the amount disclosed herein is approximate.

[5]    This summary of the services to be rendered under the Engagement Letter is qualified in its entirety by reference to the applicable provisions of the Engagement Letter.  To the extent that there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Unless otherwise defined herein, capitalized terms used in this summary shall have the meanings ascribed to such terms in the Engagement Letter.

    o   Establish the necessary procedures and processes to allow for the timely satisfaction of court mandated reporting requirements.
- Coordinate with the party(ies) responsible for developing the comprehensive strategic communications plans for all key stakeholders.

**<u>Prepare the Company to Meet the Requirements of Operating Under Bankruptcy Court Protection</u>**
- Develop framework necessary to administer a comprehensive Chapter 11 claims process.
- Assist the Company to prepare for the most efficient and effective resolution of any potential court based restructuring, whether implemented through a chapter 11 plan or a section 363 sale.
- Attend meetings and assist in discussions (either before or after filing) with potential lenders, investors, creditors, committee(s), other parties in interest and/or professionals hired by the same, as requested.
- Assist the Company in negotiations with creditors, suppliers, lessors and other interested parties as appropriate.
- Assist with the preparation and confirmation of a value optimizing chapter 11 plan, and/or a sale of certain or substantially all the Company's assets pursuant to section 363 of the Bankruptcy Code.
- Assist the Company, as appropriate, to prepare for the implementation of Fresh Start Accounting.

**<u>Assist the Company with any other customary services typical for an engagement of this type as may be mutually agreed to by the Company and FTI from time to time</u>**

        The Services may be performed by FTI or by any subsidiary of FTI, as FTI in its sole discretion determines is appropriate.

        16.    The Services are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the Services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, the Advisor will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

**Professional Compensation**

17.    In consideration of the Services, and as more fully described in the Engagement Letter, subject to this Court's approval, the Debtors and FTI have agreed that FTI shall be paid according to the following fee structure (collectively, the "Fee Structure"):

(a)    Hourly Rates.  FTI shall be compensated for the Services based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.  The Debtors have agreed to compensate FTI for professional services rendered at its normal and customary hourly rates.  The hourly rates for Services to be rendered by FTI and applicable herein are as follows:

| Title | Hourly Rate |
|---|---|
| Senior Managing Directors | $895 – $1,195 |
| Directors / Managing Directors | $670 – 880 |
| Consultants / Senior Consultants | $355 – 640 |
| Administrative / Paraprofessionals | $145 – 275 |

(b)    Reasonable Direct Expenses.

i.    FTI will bill for reasonable direct expenses that are likely to be incurred on the Debtors' behalf during their engagement (the "Reasonable Expenses").  The Reasonable Expenses include reasonable, customary and documented out-of-pocket expenses which are billed directly to the Engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the Engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable and direct expenses (including reasonable and documented counsel fees) with respect thereto.

ii.    Further, in connection with the reimbursement and contribution provisions set forth in the Engagement Letter

and as set forth in the Standard Terms and Conditions attached to the Engagement Letter (the "Indemnification Provisions"), the Debtors agree to reimburse each Indemnified Person (as defined in the Standard Terms and Conditions) from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable and documented attorneys' fees and expenses and cost of investigation) arising out of or in connection with the Engagement, except to the extent that any claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of the Indemnified Person or Persons.

(c)    Cash on Account.  As set forth in the Boyko Declaration, as of the filing of these cases, FTI received, and continues to hold, unapplied advance payments from the Debtors in the amount of approximately $250,000[6] (the "Cash on Account").  The Debtors and FTI have agreed that FTI may, but is not directed to, apply the Cash on Account if and to the extent necessary to pay any allowed fees, costs and expenses relating to services rendered by FTI to the Debtors after the Petition Date in accordance with this Application.

(d)    Employment Protections.  The Debtors have agreed to promptly notify FTI if the Debtors or any of their subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Debtors or any of their subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

18.    The Debtors understand that the terms and conditions of FTI's employment are reasonable and comparable to compensation generally charged by restructuring financial advisors of a similar stature for comparable engagements, both in and out of court.

---

[6]    As of the date of this Application, FTI's final prepetition expenses are in the process of being reconciled with the Cash on Account amount and therefore the amount disclosed herein is approximate.

Given the numerous issues that FTI may be required to address in these chapter 11 cases, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for FTI's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors agree that the Fee Structure, which was the product of arm's length negotiations, is reasonable under the standards set forth below.

19.     The Debtors understand that the terms of FTI's employment and compensation, as described in the Engagement Letter, are consistent with employment and the type of compensation arrangements typically entered into by FTI when providing restructuring financial advisory services.  FTI's employment and compensation arrangements are competitive with those entered into by other restructuring financial advisory firms when rendering comparable services.  Accordingly, FTI and the Debtors believe that the foregoing compensation requirements are both reasonable and market-based.

20.     In accordance with Local Rule 2016-2(B), the Debtors propose that (a) FTI be allowed to submit regular monthly invoices to the parties included in the Rule 9013-3(D) Master Service List and (b) pursuant to Local Rule 2016-2(B), the Debtors be authorized to pay up to 80% of fees and 100% of expenses on a monthly basis, subject to later court approval.[7]

21.     To the best of the Debtors' knowledge, information and belief, and except and to the extent disclosed in the Boyko Declaration, no promises have been received by FTI as to compensation in connection with these chapter 11 cases other than as outlined in the Engagement Letter, and FTI has no agreement with any other entity to share any compensation received with any person other than the principals and employees of FTI.

---

[7]     The Debtors intend to request by motion an Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, by which FTI and certain other professionals would be compensated on an interim basis.

## The Indemnification Provisions Are Appropriate

22.     As more fully described in the indemnification, reimbursement and contribution provisions set forth in the Standard Terms and Conditions attached to the Engagement Letter, the Debtors have agreed, among other things, to indemnify and hold harmless FTI and other Indemnified Persons (as defined in the Indemnification Provisions) from and against any losses, claims, liabilities, damages, obligations, costs and expenses (collectively, the "Liabilities") related to, arising out of or in connection with the Engagement, except for any Liabilities that are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of an Indemnified Person or Persons.  However, the following conditions will apply with respect to any such indemnification, reimbursement or contribution pursuant to the Indemnification Provisions:

(a)     All requests of Indemnified Parties for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, reimbursement or contribution conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, reimbursement or contribution is sought; *provided, however*, that in no event shall Indemnified Party be indemnified in the case of its own bad faith, fraud, gross negligence or willful misconduct.

(b)     In the event that Indemnified Party seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Indemnified Party for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Indemnified Party's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

23.     The Debtors submit that such indemnification is standard in the financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering FTI's qualifications and the expectations of other financial advisors in connection with engagements of this scope and size.

**Approval of Engagement Pursuant to Section 328(a) of the Bankruptcy Code**

24.     Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Thus, section 328(a) permits the Court to approve the terms of the Advisor's engagement as set forth in the Engagement Letter, including the Fee Structure and the Indemnification Provisions.

25.     As recognized by numerous courts, Congress intended in section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a).  *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment."); *see also In re Merry-Go-Round Enter., Inc.*, 244 B.R. 327, 337 (Bankr. D. Md. 2000) (quoting *In re Nat'l Gypsum*, 123 F.3d at 862–63); *Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008) (same).

26.     The Debtors believe that the terms and provisions of the Engagement Letter, including the Fee Structure and the Indemnification Provisions, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. Such terms and provisions appropriately reflect (i) the nature of the services to be provided by FTI and (ii) the fee structures and indemnification provisions typically utilized by FTI and other leading financial advisory firms.

27.     The Debtors submit that the terms and provisions of the Engagement Letter, including the Fee Structure and the Indemnification Provisions, are reasonable terms and conditions of employment in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the chapter 11 context and (iii) FTI's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities.

## Notice

28.     Notice of this Application will be provided to: (a) the Office of the United States Trustee for Region 13; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) counsel to Murray Energy Corporation; (k) counsel to Reserves; (l) counsel to Javelin; (m) counsel to Uniper Global Commodities UK Limited; (n) the Internal Revenue Service; (o) the Securities and Exchange Commission; (p) the United States Attorney's Office for the Eastern District of Missouri; (q) the state attorneys general for all states in which the Debtors conduct business; (r) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated

basis; (s) counsel to the Committee; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Application and any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-3(A)(1). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, granting the relief requested herein and such other relief as is just and proper.

March 10, 2020
St. Louis, Missouri

Respectfully submitted,

Foresight Energy LP, *et al.*,
Debtors and Debtors in Possession

/s/  *Robert D. Moore*
Name:  Robert D. Moore
Title:   President and Chief Executive Officer

Filed by:

ARMSTRONG TEASDALE LLP

*/s/  Richard W. Engel, Jr.*
Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn Redmond (MO 72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:    (314) 621-5070
Fax:    (314) 621-5065
Email: rengel@atllp.com
        jwillard@atllp.com
        kredmond@atllp.com

       - and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
Alexander Woolverton (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
        aeaton@paulweiss.com
        awoolverton@paulweiss.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

## **Exhibit A**

Declaration of Alan Boyko

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF ALAN BOYKO IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN FTI**
**CONSULTING, INC. AS RESTRUCTURING FINANCIAL ADVISOR TO THE**
**DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

I, Alan Boyko, do hereby declare, under penalty of perjury, that:

1.      I am over the age of 18 and competent to testify.  I am a Senior Managing Director of FTI Consulting, Inc. ("FTI" or the "Advisor").  I am authorized to execute this declaration (the "Declaration") on behalf of the Advisor.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.[1]

2.      This Declaration is being submitted in connection with the proposed retention of the Advisor as restructuring financial advisor to Foreight Energy LP and its affiliated debtors and debtors in possession (collectively, the "Debtors") to perform services (the "Engagement") as set forth in that certain engagement letter (the "Engagement Letter"), dated October 19, 2019, a copy of which is annexed as Exhibit 1 hereto, as modified by the *Debtors' Application for Authority to Employ and Retain FTI Consulting, Inc. as Restructuring Financial Advisor* Nunc Pro Tunc *to the Petition Date* (the "Application").[2]

---

[1]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at FTI.

[2]    Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Application.

3. The Advisor believes that its services will not duplicate the services that other professionals will be providing to the Debtors in their chapter 11 cases. Specifically, the Advisor will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

### The Advisor's Qualifications

4. FTI is a global business advisory firm that specializes in business reorganization consulting and financial restructuring. FTI possesses extensive knowledge and expertise in the areas of bankruptcy and financial matters relevant to these chapter 11 cases, and is well qualified to serve as the Debtors' restructuring financial advisor. FTI employs seasoned professionals with industry experience, such as the FTI professionals in this case, who assist distressed companies with financial and operational challenges. The members and senior executives of FTI's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having served as financial and strategic advisors in numerous cases, including *In re Cloud Peak Energy Inc.*, *In re Armstrong Energy, Inc.*, *In re Arch Coal Inc.*, *In re Northwest Airlines Corp.*, *In re American Home Mortgage Holdings, Inc.*, *In re Bombay Company, Inc.*, *In re Calpine Corp.*, *In re Global Power Equipment Group Inc.*, *In re Tower Automotive, Inc.*; *In re Winn Dixie Stores, Inc.*, *In re Refco Inc.*, *In re Dana Corporation*, *In re Bally Total Fitness of Greater New York, Inc.*, *In re Circuit City Stores, Inc.*, *In re Delphi Corp.*, *In re Flying J, Inc. (Big West Oil)*, *In re Gottschalks Inc.*, *In re Hawaiian Telecom Communications, Inc.*, *In re Intermet Corp.*, *In re Lehman Brothers Holdings Inc.*, *In re Lyondell Chemical Company*, *In re Townsends, Inc.*, *In re Tribune Company*, *In re Nortel Networks Inc.*, *In re Washington Mutual, Inc.*, and *In re WCI Communities, Inc.*, among others.

2

5.      As a result of the Advisor's prepetition engagement by the Debtors, the Advisor has developed a reserve of institutional knowledge related to, and an intimate understanding of the Debtors and their business operations, capital structure, key stakeholders, financing documents and other material information and, therefore, will be able to facilitate the Debtors' efforts to maximize the value of their estates in these chapter 11 cases.  I believe that the Advisor and the professionals it employs are uniquely qualified to advise the Debtors in the matters for which the Advisor is proposed to be employed.

6.      If this Application is approved, several of FTI's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors.  Such personnel, including Paul Hansen and myself, will lead the team of FTI's professionals and will work closely with the Debtors' management and other professionals throughout the chapter 11 process.

### The Advisor's Disinterestedness

7.      Based upon information supplied by the Debtors' lead restructuring counsel and in order to identify potential conflicts of interest, I caused FTI to search its records for any connection or relationship with the parties listed on <u>Schedule 1</u> attached hereto, which lists certain categories of potential parties in interest.  In addition, this information was sent to all FTI professional staff in the various cities in which FTI maintains offices in order to further identify any potential conflicts of interest.

8.      FTI's review consisted of queries of an internal computer database containing names of individuals and entities that are present or recent and former clients of FTI in order to identify potential relationships.  FTI currently has working relationships with the individuals and entities listed on **<u>Schedule 2</u>** attached hereto.  FTI provides a variety of tax, audit

3

and financial advisory services in matters unrelated to the Debtors' chapter 11 cases to those individuals and entities listed on **Schedule 2** attached hereto.  FTI's services to these clients will not impair its independence or disinterestedness in providing the Services to the Debtors.

9.      On an ongoing basis, FTI will conduct further reviews of its professional contacts as it becomes aware of new parties of interest, as stated below.  To the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI neither holds nor represents an interest adverse to the Debtors' estates that would impair FTI's ability to objectively perform professional services for the Debtors, in accordance with section 327 of the Bankruptcy Code.

10.     To the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, FTI:

(a)     is not a creditor, an equity security holder or an insider of the Debtors;

(b)     is not and was not, within two years before the date of filing of these chapter 11 cases, a director, officer or employee of the Debtors; and

(c)     does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtors or for any other reason.

11.     As of the date the Debtors filed for bankruptcy protection, FTI was not a "creditor" of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

12.     To the best of my knowledge, except as set forth herein and in **Schedule 2** attached hereto and incorporated herein by reference, (a) FTI has no connections with the

4

creditors, any other party in interest, or their respective attorneys and accountants; and (b) the FTI partners and professionals working on these matters are not relatives of and have no known connection with the United States Trustee for Region 13 or of any known employee in the office thereof, or any United States Bankruptcy Judge for the Eastern District of Missouri.

13.     FTI has in the past been retained by, and at present provides and likely in the future will provide services for, certain creditors of the Debtors, other parties in interest and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these chapter 11 cases.  FTI currently performs, has previously performed or may have performed such services for the entities listed in **Schedule 2**; however, except as disclosed herein, such services, to the extent performed by FTI, are unrelated to the Debtors or their chapter 11 cases.

14.     FTI has not provided, and will not provide, any professional services to any of the creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these chapter 11 cases.

15.     In addition, from time to time, FTI may use independent contractors, such as software providers.  However, FTI will not profit from the use of such persons.

16.     As part of its practice, FTI appears in many cases, proceedings, and transactions involving many different law firms, financial consultants and investment bankers in matters unrelated to these bankruptcy cases.  FTI has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in these chapter 11 cases that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor or any other party in interest.  If and when additional information becomes available with respect to any other relationships that may exist between FTI or their partners and

5

professionals and the Debtors, creditors or any other parties in interest that may affect these cases, supplemental declarations describing such information shall be filed with this Court.

## **Professional Compensation**

17.     The Fee Structure described in the Engagement Letter and summarized in the Application is consistent with the Advisor's normal and customary billing practices for comparably sized and comparably complex cases and transactions, both in and out of court. Further, the Fee Structure was established to reflect the difficulty of the extensive assignment the Advisor has undertaken.  Accordingly, the Advisor believes that the proposed compensation arrangements are both reasonable and market-based.

18.     Accordingly, if the Application is granted, the Advisor requests to file fee applications for the allowance of compensation for services rendered at 120-day intervals and to receive monthly payment from Debtors for reimbursement of fees and expenses incurred in accordance with Local Rule 2016-2(B) and any other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any applicable orders of this Court.

19.     Additionally,   as   more   fully   described   in   the   indemnification, reimbursement and contribution provisions set forth in Standard Terms and Conditions attached to the Engagement Letter (the "Indemnification Provisions"), the Debtors have agreed to reimburse each Indemnified Person (as defined in the Standard Terms and Conditions) from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable and documented attorneys' fees and expenses and cost of investigation) arising out of or in connection with the Engagement, except to the extent that any claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of

6

competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of the Indemnified Person or Persons.  However, the following conditions will apply with respect to any such indemnification, reimbursement or contribution pursuant to the Indemnification Provisions:

(a)  All requests of Indemnified Parties for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, reimbursement or contribution conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, reimbursement or contribution is sought; *provided, however*, that in no event shall Indemnified Party be indemnified in the case of its own bad faith, fraud, gross negligence or willful misconduct.

(b)  In the event that Indemnified Party seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Indemnified Party for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Indemnified Party's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

20.    Such expense reimbursement and indemnification provisions are standard in the financial advisory industry, and the Advisor believes that such provisions are fair and reasonable.

21.    According to FTI's books and records, during the one-year period prior to the Debtors' petition date, FTI received $2,920,736.69 from the Debtors for professional services performed and expenses incurred.  Further, FTI received prepetition advance payments from the

Debtors in the amount of approximately $250,000[3] (the "Cash on Account").  The Debtors and FTI have agreed that FTI may, but is not directed to, apply the Cash on Account if and to the extent necessary to pay any allowed fees, costs and expenses relating to services rendered by FTI to the Debtors after the Petition Date in accordance with this Application.

22.    To the best of my knowledge: (i) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and (ii) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these chapter 11 cases.

23.    Other than as set forth herein or in the Engagement Letter, there is no proposed arrangement between the Debtors and FTI for compensation to be paid in these chapter 11 cases.

[*Remainder of Page Intentionally Left Blank*]

---

[3]    As of the date of the Application, FTI's final prepetition expenses are in the process of being reconciled with the Cash on Account amount and therefore the amount disclosed herein is approximate.

Pursuant to 28, U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:   March 10, 2020           */s/ Alan Boyko*_____
         St. Louis, Missouri      Name:  Alan Boyko
                                  Title:  Senior Managing Director
                                         FTI Consulting, Inc.

**<u>Exhibit 1 to the Boyko Declaration</u>**

**(Engagement Letter)**



PRIVATE & CONFIDENTIAL

October 19, 2019

Robert D. Moore
President and Chief Executive Officer
One Metropolitan Square
211 North Broadway
Suite 2600
St. Louis, MO 63102

Re: Foresight Energy LP

Dear Mr. Moore:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Foresight Energy LP (the "Company"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

**Development of 13 Week Cash Flow Forecast**
- Develop and implement an interactive 13-week cash forecasting process.
- Assist the company with identifying, assessing and potentially implementing procedures to control and conserve working capital.

**Prepare the Company to Meet the Requirements of Filing for Bankruptcy Court Protection**
- The Company has determined a contingency plan is appropriate to prepare for the potential that it will seek protection under the United States Bankruptcy Code. As part of this contingency preparation FTI has been asked to:
  - o   Develop a detailed approach to preparing the Company (including subsidiaries and/or affiliates that may be included in the potential filing) for such proceedings in the most cost effective and efficient manner possible; and
  - o   Assist the Company in implementing such plan if and when appropriate.
- Prepare the necessary financial and operating information for the:
  - o   Preparation of bankruptcy petitions and related documents;

Foresight Energy LP
October 19, 2019

- o  Preparation of the statements of financial affairs, schedules, monthly operating reports, and other regular reports required in such proceedings;
- o  Compilation and analysis of the information necessary for First Day and Second Day Orders; and
- o  Establish the necessary procedures and processes to allow for the timely satisfaction of court mandated reporting requirements.
- • Coordinate with the party(ies) responsible for developing the comprehensive strategic communications plans for all key stakeholders.

**Prepare the Company to Meet the Requirements of Operating Under Bankruptcy Court Protection**
- • Develop framework necessary to administer a comprehensive Chapter 11 claims process.
- • Assist the Company to prepare for the most efficient and effective resolution of any potential court-based restructuring, whether implemented through a chapter 11 plan or a section 363 sale.
- • Attend meetings and assist in discussions (either before or after filing) with potential lenders, investors, creditors, committee(s), other parties in interest and/or professionals hired by the same, as requested.
- • Assist the Company in negotiations with creditors, suppliers, lessors and other interested parties as appropriate.
- • Assist with the preparation and confirmation of a value optimizing chapter 11 plan, and/or a sale of certain or substantially all the Company's assets pursuant to section 363 of the Bankruptcy Code.
- • Assist the Company, as appropriate, to prepare for the implementation of Fresh Start Accounting.

**Assist the Company with any other customary services typical for an engagement of this type as may be mutually agreed to by the Company and FTI from time to time**

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall reasonably determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors, as FTI shall reasonably determine; provided that FTI shall remain obligated for the provision of the Services and for any acts or omissions of any Third-Party Contractors or their employees notwithstanding its engagement of any Third-Party Contractors in connection therewith. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

Foresight Energy LP
October 19, 2019

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees and Cash on Account**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $895 - 1195 |
| Directors / Senior Directors / Managing Directors | 670 - 880 |
| Consultants/Senior Consultants | 355 - 640 |
| Administrative / Paraprofessionals | 145 - 275 |

Hourly rates are generally revised periodically. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable allocated and direct expenses which are likely to be incurred on your behalf during this Engagement. Allocated expenses include the cost of items which are not billed directly to the engagement, including administrative support and other overhead expenses that are not billed through as direct reimbursable expenses, and are calculated at 2.0% of FTI's standard professional rates. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with

Foresight Energy LP
October 19, 2019

any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

Initially, the Company will forward to us the amount of $250,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than weekly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

Foresight Energy LP
October 19, 2019

In preparation for the filing of any cases under the Bankruptcy Code, we also may request an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(I). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4.      **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5.      **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company. As you may be aware, FTI is regularly retained by the administrative agent and/or other members of your lending group (or law firms retained by the administrative agent or lending group members). However, such representations are in matters unrelated to this engagement.

-5-

Foresight Energy LP
October 19, 2019

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.      **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Alan Boyko at 574-309-1795.

Yours faithfully,

FTI CONSULTING, INC.

By:

Alan Boyko
Senior Managing Director

Attachment – As stated

Foresight Energy LP
October 19, 2019

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Foresight Energy LP

By: _____
Robert D. Moore
President and Chief Executive Officer

Date: _____10/24/19_____

# FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Foresight Energy LP dated October 19, 2019. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1    **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1    **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information** – In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

3.   **Additional Services**

3.1   **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

4.   **Confidentiality**

4.1   **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

    4.1.1   is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2   is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

    4.1.3   is or has been independently developed by the recipient.

4.2   **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3   **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4   **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5   **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

4.6   If this Engagement involves the processing of personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, the terms of the Data Protection Schedule attached hereto as Schedule B shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of Schedule B, the terms of Schedule B shall prevail in relation to the processing of such personal data. If such personal data is processed in connection with this Engagement, the Company shall notify FTI in writing before any personal data is disclosed to FTI.

**5.  Termination**

5.1    **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.  Indemnification, Liability Limitation, and Other Matters**

6.1    **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2    **Limitation of liability** - You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

**7.    Governing Law, Jurisdiction and WAIVER OF JURY TRIAL**

7.1    **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof.

7.2    **Jurisdiction** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3    **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY

AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Foresight Energy LP

By: _____

Robert D. Moore
President and Chief Executive Officer

Date: _____ 10/24/19 _____

**SCHEDULE A**

**STANDARD RELEASE LETTER**


**[Nonclient Recipient Letterhead]**

**[Date]**

FTI Consulting, Inc.

Dear Mr./Ms. _____:

_____ ("Client") has informed **[name of recipient]** that FTI Consulting, Inc. ("FTI") has performed certain procedures to assist Client in connection with the _____. We understand that the work performed by FTI was performed in accordance with instructions provided by Client and was performed exclusively for Client's sole benefit and use.

Client has requested that FTI provide **[name of recipient]** access to the report of its findings dated **[date]**. **[name of recipient]** acknowledges that this report was prepared at the direction of Client and may not include all procedures deemed necessary for the purposes of **[name of recipient]** and that certain findings and information may have been communicated to Client that are not reflected in the report. **[name of recipient]** further acknowledges that (a) the report is being provided for informational purposes only; (b) the report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) **[name of recipient]** will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the report or any other opinions or conclusions of FTI.

In consideration of FTI allowing **[name of recipient]** access to the report and, if requested by **[name of recipient]**, discussing the report, **[name of recipient]** agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to **[name of recipient]** in connection with such access.

**[name of recipient]** agrees to release FTI and its personnel from any claim by **[name of recipient]** that arises as a result of FTI permitting **[name of recipient]** access to the report. Further, **[name of recipient]** agrees not to disclose or distribute the report, or information received, orally or in writing from FTI to any other parties without FTI's prior written consent.

Acknowledged by **[name of recipient]** representative:

By: _____
       (Name of Company official

Title: _____

Date: _____

<u>**SCHEDULE B**</u>

**FTI CONSULTING DATA PROTECTION SCHEDULE**

This Data Protection Schedule ("**Schedule**") forms part of the contract for services to which it is an attachment (the "**Contract**") between the client party identified in the Contract (the "**Client**") and the relevant FTI Consulting group entity identified in the Contract ("**FTI**").

1.    <u>Definitions</u>

1.1    In this Schedule, unless otherwise defined herein, all defined terms shall have the meaning set out in the Contract.

1.2    In this Schedule, the following terms shall have the meanings set out below:

1.2.1    "Data Protection Laws" means applicable legislation protecting the personal data of natural persons and governing the processing of that data, including in particular the GDPR and any national legislation which supplements the GDPR, together with binding guidance and codes of practice issued from time to time by relevant supervisory authorities;

1.2.2    "GDPR" means the General Data Protection Regulation (EU) 2016/679;

1.2.3    "Personal Data", "Process", "Controller", "Processor", "Data Subject", "Supervisory Authority" and "Personal Data Breach" shall have the meanings given to them in the Data Protection Laws; and

1.2.4    "Standard Contractual Clauses" means the standard contractual clauses for the transfer of personal data to controllers established in third countries which do not ensure an adequate level of protection as set out in Commission Decision C(2004)5721, as updated, amended, replaced or superseded from time to time by the European Commission

2.    <u>Controller Terms</u>

2.1    <u>FTI and the Client will each act as separate and individual Controllers in relation to any Personal Data (including, without limitation, Personal Data relating to any of the Client's workers, FTI's workers, any litigation or arbitration opponent or customer or vendor or transaction partner) Processed by the Client or FTI to deliver the services set out under the Contract.</u>

2.2    <u>FTI and the Client will each comply with its own respective obligations under the Data Protection Laws in relation to their Processing of Personal Data under the Contract. In particular, the Client will ensure that any disclosures of Personal Data to FTI are lawful, and, in each case where necessary under the Data Protection Laws, the Client has notified and secured the consent of the relevant Data Subjects.</u>

2.3    <u>FTI may appoint Processors as required to deliver the services, who will process the Personal Data on FTI's behalf and at FTI's direction. Further, FTI may disclose Personal Data to other Controllers where necessary to deliver the services (including, but without limitation, law firms, accountants, other third party experts and any member of the FTI Group), or pursuant to a legally binding written request, an</u>

-3-

order or request of a court of competent jurisdiction or any governmental or regulatory authority or where disclosure is required by applicable law or regulation.

2.4    The Client acknowledges and agrees that FTI is located outside of the European Economic Area, and that certain Processors or Controllers engaged by FTI under paragraph 2.3 may also be located outside of the European Economic Area. In respect of onward transfers by FTI to other Controllers or Processors, FTI will take steps in accordance with the Data Protection Laws to ensure an adequate level of protection for the Personal Data Processed by such Processors or Controllers. In particular, the Client acknowledges that FTI may transfer Personal Data to FTI Consulting, Inc. in reliance upon its certification under the EU - US Privacy Shield scheme.

2.5    The Client acknowledges that FTI's email records are replicated onto a Microsoft 365 Cloud system in the United States of America and the Client hereby consents that any Personal Data that is provided to FTI by email will be replicated accordingly. To the extent that the Client wishes to transmit certain information or data to FTI and the Client objects to that data being replicated in accordance with this paragraph, the Client will use a communication or transmission method other than e-mail or will use an alternative e-mail system.

## **Schedule 1 to the Boyko Declaration**

## **Potential Parties in Interest**

**Foresight Energy LP.: POTENTIAL PARTIES IN INTEREST**

**Current Officers and Directors**
Robert Moore
Nicholas Casey
Jeremy Harrison
Daniel Hermann
Robert Murray
Cody Nett
Lesslie Ray
Brian Sullivan

**Former Officers and Directors**
Rashda M. Buttar
James T. Murphy
Kevin T. Burns
Paul Vining
Anthony Webb

**Debtors**
Foresight Energy GP LLC
Foresight Energy LP
Foresight Energy LLC
Foresight Coal Sales LLC
Foresight Energy Employee Services
Corporation
Foresight Energy Finance Corporation
Foresight Energy Labor LLC
Foresight Energy Services LLC
Foresight Receivables LLC
Adena Resources, LLC
Akin Energy LLC
American Century Mineral LLC
American Century Transport LLC
Coal Field Construction Company LLC
Coal Field Repair Services LLC
Hillsboro Transport LLC
LD Labor Company LLC
Mach Mining, LLC
Macoupin Energy LLC
Maryan Mining LLC
M-Class Mining, LLC
Oeneus LLC
Seneca Rebuild LLC
Sitran LLC
Sugar Camp Energy, LLC
Williamson Energy, LLC

Tanner Energy LLC
Logan Mining LLC
Viking Mining LLC
Hillsboro Energy LLC
Patton Mining LLC

**Non-Debtor Affiliates**
Adena Minerals, L.L.C.
AMCA Coal Leasing, Inc.
AmCoal Holdings, Inc.
American Compliance Coal, Inc.
American Energy Corporation
American Equipment & Machine, Inc.
American Mine Services, Inc.
American Natural Gas, Inc.
AmericanHocking Energy, Inc.
AmericanMountaineer Energy, Inc.
AmericanMountaineer Properties, Inc.
Anchor Longwall And Rebuild, Inc.
Andalex Resources Management, Inc.
Andalex Resources, Inc.
Avonmore Rail Loading, Inc.
Belmont Coal, Inc.
Belmont County Broadcast Studio, Inc.
Canterbury Coal Company
CCC Land Resources LLC
CCC RCPC LLC
Central Ohio Coal Company
Coal Resources Holdings Co.
Coal Resources, Inc.
Colt LLC
Consolidated Land Company
Consolidation Coal Company
Corporate Aviation Services, Inc.
Eighty-Four Mining Company
Empire Dock, Inc.
Energy Resources, Inc.
Energy Transportation, Inc.
Foresight Reserves LP
Genwal Resources, Inc.
Javelin Global Commodities (UK) LTD
Javelin Global Commodities Holdings LLP
Javelin Global Commodities Ltd.
Javelin Investment Holdings LLC
Javelin Management Services LLP

Kanawha Transportation Center, Inc.
KenAmerican Resources, Inc.
Keystone Coal Mining Corporation
LIQVIS
Maple Creek Mining, Inc.
Maple Creek Processing, Inc.
McElroy Coal Company
Mill Creek Mining Company
Mon River Towing, Inc.
MonValley Transportation Center, Inc.
Murray American Coal, Inc.
Murray American Coal, INC.
Murray American Energy, Inc.
Murray American Kentucky Towing, Inc.
Murray American Minerals, Inc.
Murray American Resources, Inc.
Murray American River Towing, Inc.
Murray American Transportation, Inc.
Murray Colombian Resources, LLC
Murray Energy Holdings Co.
Murray Equipment & Machine, Inc.
Murray Global Commodities, Inc.
Murray Kentucky Energy Services, Inc.
Murray Kentucky Energy, Inc.
Murray Keystone Processing, Inc.
Murray South America, Inc.
Murray Utah Energy Services, Inc.
Ohio Energy Transportation, Inc.
Ohio Valley Resources, Inc.
OhioAmerican Energy, Incorporated
Oneida Coal Company, Inc.
PennAmerican Coal L.P.
PennAmerican Coal, Inc.
Pennsylvania Transloading, Inc.
Pinski Corp.
Pleasant Farms, Inc.
Premium Coal, Inc.
Ruger Coal Company, LLC
Ruger, LLC
Southern Ohio Coal Company
Spring Church Coal Company
Sunburst Resources, Inc.
T D K Coal Sales, Incorporated
The American Coal Sales Company
The Franklin County Coal Company
The Harrison County Coal Company

The Marion County Coal Company
The Marshall County Coal Company
The Mclean County Coal Company
The Meigs County Coal Company
The Monongalia County Coal Company
The Muhlenberg County Coal Company, LLC
The Muskingum County Coal Company
The Ohio County Coal Company
The Ohio Valley Coal Company
The Ohio Valley Transloading Company
The Oklahoma Coal Company
The Washington County Coal Company
The Western Kentucky Coal Company, LLC
Twin Rivers Towing Company
UMCO Energy, Inc.
Uniper Commodities UK Limited
Uniper SE
UtahAmerican Energy, Inc.
West Ridge Resources, Inc.
West Virginia Resources, Inc.
Western Kentucky Coal Resources, LLC
Western Kentucky Consolidated Resources, LLC
Western Kentucky Land Holding, LLC
Western Kentucky Rail Loadout, LLC
Western Kentucky Resources Financing, LLC
Western Kentucky Resources, LLC
Western Kentucky River Loadout, LLC

**Joint Ventures, Partnerships and Consortiums**
Foresight Reserves LP

**Five Percent and Greater Shareholders and Beneficial Owners**
Murray Energy Corporation
Cline Trust Company, LLC
Accipiter Capital Management, LLC
Christopher Cline

**Creditor Advisors**
Lazard Asset Management
Akin Gump Strauss Hauer & Feld LLP
Milbank LLP
Perella Weinberg Partners

**Attorneys, Professionals and Financial Advisors (Including Accountants and Investment Banks)**
Armstrong Teasdale LLP
Jefferies Group LLC
Paul, Weiss, Rifkind, Wharton & Garrison LLP

**Significant Financial Institutions (Including Administrative Agents, Lenders and Equipment Financing)**
Bank of New York Mellon
BB&T Equipment Finance Corporation
Caterpillar Financial Services Corp
CNB Bank & Trust
De Lage Landen Financial Services
FB Wealth Management
First Southern Bank
GE Capital
Great America Financial Services
HNB Equipment Finance
Lord Securities Corporation
Neopost USA Inc
Pitney Bowes Global Financial
PNC Bank, National Association
PNC Equipment Finance LLC
Ricoh USA Inc
The Huntington National Bank
US Bank Equipment Finance
Wells Fargo Financial Leasing Inc
Wells Fargo Vendor Financial
Wilmington Trust, National Association
Xerox Corporation

**Unions**
N/A

**Surety Issuers**
Argonaut Insurance Company

**Surety Obligees**
City of Hillsboro, Illinois
East Fork Township, Illinois
Illinois Department of Natural Resources
Dept of the Army, St. Louis District Corps of Engineers

Illinois Department of Natural Resources, Division of Oil and Gas
Illinois Department of Transportation
People of the State of Illinois
County of Williamson, State of Illinois
Eastern Township
Hamilton County Highway Department
Illinois Department of Natural Resources, Office of Mines and Minerals
Illinois Environmental Protection Agency
Jeffrey Watkins and Katelynn Watkins

**Letter of Credit Beneficiaries**
Canadian National Railway
Rockwood Casualty Insurance Co

**Significant Taxing Authorities**
Illinois Department of Revenue
Indiana Department of Revenue
Department of the Treasury
Franklin County Treasurer
Gallatin County Treasurer
Gregory Fx Daly Collector (St Louis City)
Hamilton County Tax Assessor
Henderson County Sheriff
Kentucky Dept of Revenue
Kentucky State Treasurer
Louisiana Dept of Revenue
Macoupin County Sheriff
Missouri Dept. of Revenue
Montgomery County Treasurer
Office of Surface Mining
Posey County Treasurer
Saline County Treasurer
United States Treasury
Williamson County Treasurer

**Royalty Contract Counterparties**
David C. Linn
David L. Scott
Donald E. Grant
Donald J. Busch
Donna S. Greener
Dora C. Munter
New River Royalty, LLC
Rob Boyd

Robert S. Barrett
Tennessee Valley Authority
Mildred Coats
Kristin Musgrave
William C. Stutz
Wendy L. Mcgill
Ricky L. Ellis
Rggs Land & Minerals, Ldt., L.P.
Michael C. Barrett
Michael L. & Debra E. Borecky
Montgomery County
Amanda & Andrew Wilson
Amy Engstrom
Andrew Miller
Ann E. Moody
Betty Rueger
Beverly Jones
Billie L. Killam
Bonnie Frost
Bret D. & Michelle E. Webb
Brian S. & Connie J. Magsig
Carol Ann Roberts, Trustee of Roberts Trust
Carolyn F. Moore
City of Johnston City
Danny R. & Colleen F. Harrelson
David M. & Karen Y. Mandrell
David R. Schlosser
David Wayne Hayes
Delbert & Carol L. Kern
Dennis W. Miller Trustee Of Miller Trust
Dorothy L. Slater
Edward D. Kocher
Eric Johnson
First Baptist Church Of McLeansboro
Gary F. Re
Gary Lee & Brenda K. Hutchcraft
Gerald E. Ellis
Gloria M. Ellis
Hawley H. Maclean
Hod, LLC
Jay Perry
Hurricane Creek Farms, INC.
Mt Olive and Staunton Coal Company
James & Lu Ann Anderson
James T. Flannigan
David Flannigan Poa

Jane W. Kuba
Janet E. Leslie
Janet Roberson
Jason A. Barrett
Joan Niehaus
John B. Maclean
John D. Mann
John R. Mcgill
John S. Leslie
Judy Grebe
June K. Behrends
Karen S. Cardey-Harris
Kenneth D. & Sheila K. Summers
Kenneth R. & Jan Wheat
Kevin Barrett
Larry E. Taylor
Liberty Land, LLC
Linda L. Jeter
Linda Webster
Lindner Living Trust
Loren C. & Mildred Anderson
Louise Biehl Aka Martha Biehl
M. Lynne Maclean
Marshall G. Hayes, Jr.
Mary S. Zimmerman
Matther E. Kocher
Maurice Ellis
Micah & Marietta Miller
Michael G. Maclean
Mike Buntin
Morris & Karan Clark
Paul & Judy Maurer
Phillip E. Ellis
Phyllis Bretsch
Randy L. & Rebecca A. Wright
Randy W. Ellis
Reginal W. Barrett
Rhanda R. Ellis
Robert Buntin
Robert M. & Patricia A. Miller
Rory M. Maclean
Rosenburg Farms INC
Harry Rosenburg
Ruby Grebe
Sally J. Johnson
Sheila Breslich

Shelley Hayes-Hueber
Stephan P. & Stefani R. Miller
Stephen R. Maclean
Tonya Bledsoe Vanfossen
Vicki D. Mcgill
Virginia T. Hills
Walter J. & Phyllis A. Jagiello
William B. Johnson
US Steel

**Regulatory Agencies (e.g., Department of Interior, Mine Safety Administration, OSHA, and State and Local Regulators)**
Illinois Department of Transportation
Illinois Environmental Protection Agency
Indiana Department of Environmental Management
Montgomery County Water Authority
U.S. Department of Labor Mine Safety and Health Administration
United States Army Corps of Engineers
United States Department of The Interior
United States Environmental Protection Agency
Williamson County

**Parties to Significant Litigation**
Fletcher Brimer
AndreaBruington
Danielle Clark
Carrie Cox
Kirby Crabtree
Federal Insurance Company
Tina Franklin
James Gass
Marjorie Harris
Dwight Jackson
Karenn Jones
David Lee Bishop II
Cory Leitschuh
Justin Lindsay
Jonathan Lintner
Tye Malone
Ricky L. McDaniel
Arleen Meracle
Reba Mitchell

Mitchell/Roberts Partnership
Jamie L. Moles
Terra Payne
Shawn Rorer
Steven D. Sniderwin
The Estate of Russel J. Inman
Justin Walker
Jeffrey Watkins
Robert Yeske

**Significant Suppliers, Shippers, Warehousemen, and Vendors**
BNSF Railway Company
Jabo Supply Corporation
K & E Technical INC
Maka Excavating INC
Norfolk Southern Railway Company
Raben Tire Company

**Insurers**
Ace American Insurance Company
Allianz Global Corporate & Specialty
Allied World Assurance Company Holdings, Ltd
American International Group
Amtrust Financial
Apollo Insurance
Aspen Insurance Holdings Limited
Axis Capital
Beazley PLC
Brit Insurance US
CNA Financial
Continental Casualty Insurance Company
Continental Insurance Co
Endurance American Insurance Co.
Evanston Insurance Co
Houston International Insurance Group
Illinois National Insurance Co
Lexington Insurance Company
Liberty Mutual
Liberty Specialty
Markets Bermuda Limited.
Lloyd's of London
Markel International Ltd
MS Amlin

National Union Fire Insurance Co of
Pittsburgh PA
Navigators Insurance Co.
Oil Casualty Insurance, Ltd.
RSUI Indemnity
Sompo International Insurance
Starr Surplus Lines Insurance Company
Starstone Specialty Insurance Co.
The Insurance Company of the State of
Pennsylvania
The Travelers Indemnity Company
Twin City Fire Insurance Company
United States Fire Insurance Co.
US Aircraft Insurance Group
Water Quality Insurance Syndicate
Xl Specialty Insurance Company
Zurich Insurance Group

**Insurance Brokers**
AON Risk Services Central Inc
The Reschini Group

**1L Lender**
AIG Senior Float Rate
American Honda Master Retire
Assurant Clo I Ltd
Assurant Clo II Ltd
Assurant Clo III Ltd
Assurant Clo IV Ltd
B&M Clo 2014-1 Ltd
Bank of America N.A
Barclays Bank PLC NY
BDCA-CB Funding
Ben St Ptr Snr Sec Mst Non US
Ben St Ptr Snr Sec U Mf Non US
Ben St Ptrs Cap Opp Fd LP
Ben St Ptrs Sen Sec Opp Fd LP
Benefit Street Ptrs Clo V-B
Benefit St Partners Clo VII
Benefit Street Partners Sma LM
Benefit Street Partners Sma-K
Benefit Street Ptnrs Clo I
Benefit Street Ptnrs Clo II
Benefit Street Ptnrs Clo III
Benefit Street Ptnrs Clo IV
Benefit Street Ptnrs Clo IX

Benefit Street Ptnrs Clo VI
Benefit Street Ptnrs Clo VIII
Benefit Street Ptnrs Clo X
Benefit Street Ptnrs Clo XI
Benefit Street Ptnrs Clo XII
Benefit Street Ptnrs Clo XIV
Benefit Street Ptnrs Clo XV
Benefit Street Ptrs Clo XVI
Black Diamond Clo 2013-1 Ltd
Black Diamond Clo 2014-1 Ltd
Bluemountain Clo 2013-1 Ltd
Bluemountain Clo 2014-2 Ltd
Bluemountain Clo 2015-1 Ltd
Bluemountain Clo 2015-2 Ltd
Bluemountain Clo 2015-3 Ltd
Bluemountain Clo 2015-4 Ltd
Bluemountain Clo 2016-1 Ltd
Bluemountain Clo 2016-3 Ltd
Bluemountain Clo 2018-1
Bluemountain Clo 2018-2 Ltd
Bluemountain Clo 2018-3 Ltd
Bluemountain Fuji US Clo II
British Coal Staff Superannuation Scheme
BSP Special Situations Mst A
Cent Clo 19 Limited
Cent Clo 21 Limited
Cent Clo 24 Limited
Chubb Bermuda Insurance Ltd
Chubb Tempest Reinsurance Ltd
Citi Loan Funding Chelt
City Of Phoenix Emp Ret Plan
Cline Resource and Dev Company
Columbia Cent Clo 27 Ltd
Columbia Cent Clo 28 Limited
Columbia Floating Rate Fund
Corbin Erisa Opportunity Fund
Corbin Opportunity Fund LP
Corporate Capital Trust II
Credit Suisse Loan Funding
CVP Cascade Clo-2 Ltd.
CVP Cascade Clo-I Ltd.
CVP Clo 2017-1 Ltd
CVP Clo 2017-2 Ltd
DDJ Cap Man Gp Trust-Hyf 2017
Destinations Core Fixed Inc Fd
Deutsche Bank Ag Cayman Island

| | |
|---|---|
| Doubleline Core Fixed Income | KKR Clo 10 Ltd |
| Doubleline Flexible Inc Fd | KKR Clo 11 Ltd |
| Doubleline Floating Rate Fund | KKR Clo 12 Ltd |
| Doubleline Income Solutions Fd | KKR Clo 13 Ltd |
| Doubleline Opp Inc Master Fund | KKR Clo 14 Ltd |
| Doubleline Opportunistic Cr Fd | KKR Clo 15 Ltd |
| Doubleline Shiller Enhanced | KKR Clo 16 Ltd |
| Ellington Clo I | KKR Clo 17 Ltd |
| Ellington Clo II Ltd | KKR Clo 18 Ltd |
| Ellington Clo III Ltd | KKR Clo 19 Ltd |
| Ellington Clo IV Ltd | KKR Clo 20 Ltd |
| Franklin Ltd Duration Inc Tst | KKR Clo 21 Ltd |
| FS Investment Corporation II | KKR Clo 22 Ltd |
| FS Investment Corporation III | KKR Clo 23 Ltd |
| FS Multi Alternative Income Fd | KKR Clo 24 Ltd |
| General Org For Social Ins | KKR Clo 25 Ltd |
| Gn3 Sip Limited | KKR Clo 9 Ltd |
| Goldentree 2004 Trust | KKR Daf Gl Opp Cr Fd Dac |
| Goldentree Credit Opps 2012-1 | KKR Financial Clo 2013-1 Ltd |
| Goldentree Loan Mgmt Us Clo 2 | KKR Global Cr Opps Master Fund |
| Goldentree Loan Mgmt Us Clo 4 | KKR Income Opps Fund |
| Goldentree Loan Mgmt Us Clo I | KKR Jp Loan Fd B 2018 |
| Goldentree Loan Mgt Us Clo 3 | KKR Senior Flt Rate Inc Fund |
| Goldentree Loan Opps IX Ltd | Landmark Wall Sma Spv LP |
| Goldentree Loan Opps X Ltd | Louisiana State Emp Gldn Tree |
| Goldentree Loan Opps XI Ltd | Marathon Clo IX Ltd |
| Goldentree Loan Opps XII Ltd | Marathon Clo V Ltd |
| Goldman Sachs Lending Ptnrs | Marathon Clo VI, Ltd |
| Gt Loan Financing I Ltd | Marathon Clo VII, Ltd |
| Gt Nm LP | Marathon Clo VIII, Ltd |
| Gtam 110 Dac | Marathon Clo X Ltd |
| Hartford Total Return Bond ETF | Marathon Clo XI Ltd |
| Hartford Total Return Bond HLS | Meadowvest Funding |
| Health Net of California Inc | Metropolitan Series Fund - Met |
| High Yield and Bank Loan Serie | Midtown Acquisitions L.P. |
| Hyfi Aquamarine Loan Fund | Mineworkers Pension Scheme |
| Ivy Apollo Multi-Asset Income | Newstar Exeter Fund Clo |
| Ivy Apollo Strategic Income Fd | Newstar Fairfield Fund Clo Ltd |
| Ivy High Income Fund | NTCC High Yield Bond Fund |
| Ivy High Income Opportunities | Oaktree Clo 2014-1 Ltd. |
| Ivy Vip High Income | Oaktree Clo 2015-1 Ltd |
| JNL/Doubleline Core Fixed Inc | Oaktree Clo 2018-1 Ltd |
| JNL/Doublelineshiller Enhanced | Oaktree Clo 2019-1 Ltd |
| JNL/Fpa+Doubleline Flex All Fd | Oaktree Clo 2019-2 Ltd |
| John Hancock Variable Ins Tst | Oaktree Eif III Series I, Ltd |
| KKR Bespoke Glo Cr Opp Ireland | Oaktree Eif III Series II |

Oaktree Senior Loan Fund
Oregon Public Empl Retirement
Parallel 2015-1 Ltd
Parallel 2017-1 Ltd
Parallel 2018-1 Ltd
Parallel 2018-2 Ltd
Parallel 2019-1 Ltd
Quamvis Sca Sicav-Fis: Cmab
Saev Masterfonds Wellington GL
Safety Insurance Company
San Bernardino County Employee
Seasons Series Trust-Sa Multi
SEI Energy Debt Fund, Lp
SEI Global Mst Fd-High Yield
SEI Ins Man Tst - High Yield
SEI Inst Invs Tst - High Yield
Shriners Hospitals For Children
Tactical Value Spn-Global Cr
The Cline Trust Company
The Hartford Float Rate Fund
The Hartford Float Rate High
The Hartford Strategic Inc Fd
The Hartford Total Return Bond
The Mangrove Partners Mst Fd
Ticp Clo VI 2016-2 Funding Ltd
Treasury Of The State Of North Carolina
US High Yield Bond Fund
Venture 28A Clo Limited
Venture 35 Clo Limited
Venture 36 Clo
Venture XII Clo Limited
Venture XIII Clo Limited
Venture XIV Clo Limited
Venture XIX Clo Limited
Venture XV Clo Limited
Venture XVI Clo Limited
Venture XVII Clo Limited
Venture XVIII Clo Limited
Venture XX Clo Limited
Venture XXI Clo Limited
Venture XXII Clo Limited
Venture XXIII Clo Limited
Venture XXIV Clo Limited
Venture XXIX Clo Limited
Venture XXV Clo Limited
Venture XXVI Clo Limited

Venture XXVII Clo Limited
Venture XXVIII Clo
Waddell & Reed Financial
WCF Mutual Insurance Company
Wellington Multi-Sector Cr Fd
Wellington Ts Co Mulsec Crd II
Wellington Tst Co Namcif TSTII
Wellington Tst Co Namctft CBP
Wellington Tst Co Namctft OFIA
Wellington Tst Co Namctft OISB
Wellington Tst Co Namctft UNFI
Wellington World Bond Fund
WMV Loan Fund 2018
Zais Clo 1 Ltd
Zais Clo 11 Ltd
Zais Clo 13 Ltd
Zais Clo 2 Ltd
Zais Clo 3 Ltd
Zais Clo 5 Ltd
Zais Clo 6 Ltd
Zais Clo 7 Ltd
Zais Clo 8 Limited
Zais Clo 9 Ltd

**2L Lenders**
Bank Of America Merrill Lynch
Bank Vontobel AG (Asset Management)
Blackrock Advisors, LLC
Davidson Kempner Capital Management,
L.P.
DDJ Capital Management, LLC
Doubleline Capital, L.P.
Dynagest S.A.
Euroclear Bank
Flow Traders U.S., LLC
Foxhill Capital Partners, LLC
Garland Business Corp
Goldentree Asset Management, L.P. (U.S.)
HSBC Bank USA, N.A. (Private Banking)
Hutch Capital Management LLC
KKR Credit Advisors (US), LLC
Mellon Investments Corporation
Northern Trust Investments, INC.
Robeco Institutional Asset Management Bv
Seix Investment Advisors, LLC

State Street Global Advisors (SSGA)
The Cline Group
Thunderwood Capital, LLC
Wellington Management Company, LLP
Wells Fargo Securities, LLC

**Top 50 Unsecured Creditors**
Bankdirect Capital Finance
Buchanan Pump Service
C & C Pumps & Supply INC
Conn-Weld Industries INC
Date Mining Supply LLC
Evansville Western Railway INC
Fabick Mining INC
Flanders Electric Motor Service
Fuchs Lubricants Co
H. Drexel Short
Heritage Cooperative INC
Ingram Barge Company
International Belt Sales LLC
Jennchem Mid-West
Jennmar Of West Kentucky INC
Jennmar Sanshell Products INC
Jennmar Services
JM Conveyors, LLC
John Fabick Tractor Company
Joy Global Conveyors INC
Joy Global Underground Mining LLC
Mayo Manufacturing Co INC
MCA Administrators INC
Miller Contracting Services
Mine Supply Company
Motion Industries
Oak Hill Contractors
Polydeck Screen Corporation
R M Wilson Co INC
Raven Energy LLC
RGGS Land & Minerals
Seetech LLC
SNF Mining INC
State Electric Supply Co
Swanson Industries
United Central Industrial Supply
US United Bulk Terminal
Wallace Electrical Systems LLC
Wallace Industrial LLC

WPP LLC
Xylem Dewatering Solutions INC

**Utilities**
Akin Water District
Ameren Illinois
AT&T
AT&T Teleconference Services
Bulldog Systems INC
Centurylink
Charter Communications
CMC Rural Water District
ConferTel
Consolidated Communications
Corinth Water District
CWI Of Illinois #732
DC Waste & Recycling INC
Flowers Sanitation Service
Frontier Communications
Futiva LLC
Hamilton County Water
Hostway Billing Center
Level 3 Financing INC
MJM Electric Cooperative INC
Rend Lake Conservancy District
Sit-Co LLC
Southeastern Illinois Electric
Vectren Energy Delivery
Verizon Wireless
Wayne-White Counties Electric
Windstream Communications

**Significant Customers**
Archer Daniels Midland Company
Big Rivers Electric Corporation
Cemex Southeast, LLC
City of Lakeland
Duke Energy Indiana, INC.
Duke Energy Kentucky, INC.
Duke Energy Progress
Dynegy Commercial Asset Management,
LLC
East Kentucky Power Cooperative, INC.
Georgia Power Company
Gulf Power Company
Louisville Gas & Electric Company

Orlando Utilities Commission
South Carolina Public Service Authority
Southern Illinois Power Cooperative
Tampa Electric Company
The American Coal Company

**Significant Competitors**

Alliance Resource Partners, L.P.
Arch Coal
Cloud Peak Energy Inc.
Consol Energy Inc.
Contura Energy
Hallador Energy Company
Knight Hawk Coal LLC
Peabody Energy
Sunrise Coal LLC

**Unsecured Creditors' Committee**
TBD

**Ordinary Course Professionals**

Benesch, Friedlander, Coplan And Aronoff
LLP
Bingham Greenebaum Doll LLP
Black Ballard Mcdonald PC
Ciuni & Panichi
Corporate Service Company
Dinsmore and Shohl LLP
Ernst & Young LLP
Greensfelder, Hemker & Gale, P.C.
Hardy Pence PLLC
Heyl, Royster
Kupiec & Martine, LLC
Ogletree Deakins Nash
Pillsbury Winthrop Shaw Pittman LLP
Polsinelli PC
Pricewaterhousecoopers LLP
Protiviti INC
Sandberg Phoenix & Von Gontard PC
Shands, Elbert, Gianoulakis & Giljum, LLP
Swanson Martin & Bell LLP
The Brennan Group, LLC
Wilson Elser Moskowitz Edelman & Dicker
LLP

## Schedule 2 to the Boyko Declaration

Client Match List

**Current Officers and Directors**
N/A

**Former Officers and Directors**
N/A

**Debtors**
N/A

**Non-Debtor Affiliates**
Uniper SE

**Joint Ventures, Partnerships and Consortiums**
N/A

**Five Percent and Greater Shareholders and Beneficial Owners**
N/A

**Creditor Advisors**
Lazard Asset Management
Akin Gump Strauss Hauer & Feld LLP
Milbank LLP

**Attorneys, Professionals and Financial Advisors (Including Accountants and Investment Banks)**
Armstrong Teasdale LLP
Paul, Weiss, Rifkind, Wharton & Garrison LLP

**Significant Financial Institutions (Including Administrative Agents, Lenders and Equipment Financing)**
Bank of New York Mellon
Caterpillar Financial Services Corp
GE Capital
Neopost USA Inc
Pitney Bowes Global Financial
PNC Bank, National Association
US Bank Equipment Finance
Wells Fargo Financial Leasing Inc
Wells Fargo Vendor Financial
Wilmington Trust, National Association
Xerox Corporation

**Letter of Credit Beneficiaries**
Canadian National Railway

**Significant Taxing Authorities**
Indiana Department of Revenue
Department of the Treasury
Kentucky State Treasurer
Louisiana Dept of Revenue
Missouri Dept. of Revenue

**Royalty Contract Counterparties**
US Steel

**Regulatory Agencies (e.g., Department of Interior, Mine Safety Administration, OSHA, and State and Local Regulators)**
United States Environmental Protection Agency

**Parties to Significant Litigation**
Federal Insurance Company

**Significant Suppliers, Shippers, Warehousemen, and Vendors**
BNSF Railway Company
Norfolk Southern Railway Company

**Insurers**
Ace American Insurance Company
Allied World Assurance Company
Holdings, Ltd
American International Group
Amtrust Financial
Axis Capital
Beazley PLC
Continental Insurance Co
Houston International Insurance Group
Illinois National Insurance Co
Lexington Insurance Company
Liberty Mutual
Lloyd's of London
MS Amlin
National Union Fire Insurance Co of
Pittsburgh PA
Navigators Insurance Co.
Oil Casualty Insurance, Ltd.
Sompo International Insurance
The Travelers Indemnity Company
Twin City Fire Insurance Company
Zurich Insurance Group

**1L Lender**
Bank Of America N.A
Barclays Bank PLC NY
Chubb Tempest Reinsurance Ltd
Credit Suisse Loan Funding
Midtown Acquisitions L.P.
Safety Insurance Company
Waddell & Reed Financial

**2L Lenders**
Bank of America Merrill Lynch
Davidson Kempner Capital Management,
L.P.
Doubleline Capital, L.P.
Euroclear Bank
Goldentree Asset Management, L.P. (U.S.)
HSBC Bank USA, N.A. (Private Banking)
KKR Credit Advisors (US), LLC
Northern Trust Investments, INC.
Wellington Management Company, LLP
Wells Fargo Securities, LLC

**Top 50 Unsecured Creditors**
Motion Industries

**Utilities**
AT&T
Centurylink
Charter Communications
Frontier Communications
Verizon Wireless
Windstream Communications

**Significant Customers**
Archer Daniels Midland Company
Duke Energy Progress
Georgia Power Company
Tampa Electric Company

**Significant Competitors**
Cloud Peak Energy Inc.
Consol Energy Inc.
Peabody Energy

**Ordinary Course Professionals**
Benesch, Friedlander, Coplan And Aronoff
LLP
Bingham Greenebaum Doll LLP
Dinsmore and Shohl LLP
Ernst & Young LLP
Greensfelder, Hemker & Gale, P.C.
Ogletree Deakins Nash
Pillsbury Winthrop Shaw Pittman LLP
Polsinelli PC
Pricewaterhousecoopers LLP
Swanson Martin & Bell LLP
Wilson Elser Moskowitz Edelman & Dicker
LLP