## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | Hearing Date:  March 11, 2020 |
|  | ) | Hearing Time:  10:00 a.m. (Central Time) |
|  | ) | Hearing Location: Courtroom 7 North |

### DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN JEFFERIES LLC AS INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Foresight Energy LP and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of this application (this "Application"):

### Relief Requested

1.      By this Application, the Debtors seek entry of an Order (the "Proposed Order"),[2] pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the

---

[1]    The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are: Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251).  The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2]    A copy of the Proposed Order will be made available on the Debtors' case information website at: https://cases.primeclerk.com/foresightenergy.

"Bankruptcy Rules") and Rules 2014(A) and 2016-2 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Bankruptcy Rules"), authorizing the Debtors to retain and employ Jefferies LLC ("Jefferies") as their investment banker, *nunc pro tunc* to the Petition Date, pursuant to the terms and subject to the conditions of that certain engagement letter between Jefferies and the Debtors dated as of September 8, 2019, a copy of which is annexed as **Exhibit A** attached hereto (the "Engagement Letter").[3]   The Engagement Letter describes:  (a) the various services that the Debtors seek Jefferies to perform on their behalf during these chapter 11 cases; and (b) the terms and conditions of Jefferies' proposed engagement by the Debtors.  In support of this Application, the Debtors respectfully submit the declaration of Jeffrey Finger, Managing Director at Jefferies (the "Finger Declaration"), attached hereto as **Exhibit B**.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3.      The statutory and legal predicates for the relief requested herein are sections 327 (a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014(A) and 2016-2.

---

[3]     Capitalized terms not defined herein shall have the meanings set forth in the Engagement Letter.

**Background**

4.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are a leading producer of thermal coal, with four mining complexes and nearly 2.1 billion tons of proven and probable coal reserves strategically located near multiple rail and river transportation access points in the Illinois Basin.  The Debtors also own a barge-loading river terminal on the Ohio River.  From this strategic position, the Debtors sell their coal primarily to electric utility and industrial companies located in the eastern half of the United States and across the international market.

5.     The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.   Contemporaneously herewith, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).   No trustee, examiner or official committee has been appointed in these chapter 11 cases.

6.     Information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* (the "Moore Declaration"), the *Declaration of Alan Boyko, Senior Managing Director of FTI Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* (the "Boyko Declaration"), and the declaration of Seth Herman in support of the Debtors' motion for approval of debtor in possession financing and use of cash collateral (the "Herman Declaration," and

together with the Moore Declaration and Boyko Declaration, the "Underline First Day Declarations"),[4]
each filed contemporaneously herewith.

**Jefferies' Qualifications and the Debtors' Need for Jefferies' Services**

7.     The Debtors submit this Application because of their need to retain a
qualified investment banker to assist them in the critical tasks associated with guiding the
Debtors through these chapter 11 cases.  The Debtors believe that their retention of an
investment banker is necessary and appropriate to enable them to evaluate the financial and
economic issues raised by the Debtors' chapter 11 proceedings, consummate a restructuring, and
fulfill their statutory and fiduciary duties.

8.     The Debtors selected Jefferies as their investment banker in these cases
based upon Jefferies' extensive experience in matters involving complex financial restructurings
and Jefferies' excellent reputation for the services that it has rendered in chapter 11 cases on
behalf of debtors and creditor constituencies throughout the United States.  Jefferies, moreover,
has been engaged by the Debtors since September 2019, and, as a result, is intimately familiar
with the Debtors' corporate and capital structure, management, and business operations.  The
Debtors retained Jefferies in September 2019 as the Debtors' investment banker to assist them in
their efforts to explore a variety of strategic alternatives to address Debtors' capital structure.
Working closely with the Debtors, members of the Jefferies team have, among other advisory
services: (a) analyzed the Debtors' current liquidity and projected cash flow; (b) assisted the
Debtors in evaluating restructuring and other strategic alternatives; (c) helped the Debtors
prepare for a potential chapter 11 filing; and (d) as part of such preparation, conducted a diligent
search to obtain both prepetition and postpetition financing for the Debtors on the most

---

[4]   The First Day Declarations are being filed in support of this Application and are incorporated herein by
reference.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in
the First Day Declarations.

competitive terms and conditions available to them.  Members of the Jefferies team have also

have participated in (i) negotiations between the Debtors and their creditors and other interested

parties and (ii) meetings with the Debtors' Board of Directors to keep the Board apprised of the

restructuring process and provide advice regarding strategic alternatives, including a chapter 11

process.  Jefferies, moreover, has worked closely with the Debtors' senior management team and

have become knowledgeable about the Debtors' business, finances, and operations.  The Debtors

thus believe that Jefferies is both well qualified and uniquely able to advise the Debtors in these

chapter 11 cases.

9.      As set forth in the Finger Declaration, Jefferies is a full-service investment

banking firm, with approximately 3,900 employees in more than 30 offices around the world.

Jefferies and its senior professionals have extensive expertise providing investment banking

services to financially distressed companies, creditors, committees, equity holders, asset

purchasers, and other constituencies in reorganization proceedings and complex financial

restructurings, both in and out of court.  Jefferies and its professionals are providing or have

provided investment banking, financial advisory, and other services in connection with the

following recent cases:  *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan.

8, 2020); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec.

3, 2019); *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Mar.

7, 2019); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec.

6, 2018); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala.

Nov. 30, 2018); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3,

2018); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018); *In re*

*iHeartMedia*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. May 30, 2018); *In re Armstrong*

*Energy, Inc.*, Case No. 17-47541-659 (Bankr. E.D. Mo. Jan. 16, 2018); *In re Real Industry, Inc.*,

Case No. 17-12464 (KJC) (Bankr. D. Del. Dec. 19, 2017); *In re Goodman Networks, Inc.*, Case

No. 17-31575 (MI) (Bankr. S.D. Tex. Apr. 20, 2017); *In re BCBG Max Azria Global Holdings,*

*LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Peabody Energy Corp.*,

Case No. 16-42529 (BSS) (Bankr. E.D. Mo. June 17, 2016); *In re Aspect Software Parent, Inc.*,

No. 16-10597 (MFW) (Bankr. D. Del. Apr. 21, 2016); *In re Sundevil Power Holdings, LLC*, No.

16-10369 (KJC) (Bankr. D. Del. Apr. 7, 2016); *In re Arch Coal, Inc.*, Case No. 16-40120 (TFE)

(Bankr. E.D. Mo. Mar. 21, 2016); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr.

E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9,

2015).

## **Scope of Services**

10.     Subject to the Court's approval, the Debtors anticipate that Jefferies will

perform the following investment banking services, among others, pursuant to the Engagement

Letter, as mutually agreed upon by Jefferies and the Debtors and as appropriate:[5]

> (a)   become familiar with and analyze the business, operations, assets,
> financial condition, and prospects of the Debtors;
>
> (b)   advise the Debtors on the current state of the "restructuring market";
>
> (c)   assisting and advising the Debtors in examining and analyzing any
> potential  or proposed Restructuring;
>
> (d)   as mutually agreed upon by Jefferies and the Debtors, assisting and
> advising the Debtors in connection with any potential Corporate
> Transactions; and
>
> (e)   advising the Debtors in connection with any Financing including, in
> connection with the sale and/or placement, whether in one of more
> public or private transactions, of (a) Equity Securities or (b) Debt.

---

[5]   To the extent there is any inconsistency between this summary of the services set forth in the Engagement
Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

11.     The Debtors do not believe that the services to be rendered by Jefferies will be duplicative of the services performed by any other professional, and Jefferies will work together with the other professionals retained by the Debtors to minimize and avoid duplication of services.

**Professional Compensation**

12.     As set forth more fully in the Engagement Letter, Jefferies and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):[6]

(a)     **Monthly Fee**.   A monthly fee (the "Monthly Fee") equal to $200,000 payable in advance on the 8th day of each month.  Fifty percent (50%) of any Monthly Fees actually paid to and retained by Jefferies in excess of $1,200,000 in the aggregate under the Engagement Letter will be credited once, without duplication, against any Restructuring Fee or Corporate Transaction Fee subsequently payable to Jefferies.

(b)     **Restructuring Fee**.  Upon the consummation of a Restructuring, a fee (a "Restructuring Fee") in an amount equal to $8,500,000.

(c)     **Corporate Transaction Fee**.   Upon the consummation of a Corporate Transaction, a fee (a "Corporate Transaction Fee") equal to 1.0% of the first $1,200,000,000 of Aggregate Sales Consideration of such Corporate Transaction plus 3.0% of the Aggregate Sales Consideration of such Corporate Transaction in excess of $1,200,000,000.

(d)     **Debt Financing Fee**.  Promptly upon the closing of each Financing involving Debt, a fee (a "Debt Financing Fee") in an amount equal to: (i) 1.0% of the aggregate principal amount of any debtor-in-possession financing; plus (ii) 1.5% of the aggregate principal amount of senior secured Debt placed; plus (iii) 2.0% of any junior secured or unsecured Debt placed.  For the avoidance of doubt, 50% of any Debt Financing Fee (other than any Debt Financing Fee

---

[6]     To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  The Fee and Expense Structure as set forth in the Engagement Letter also provides for a Liability Management Fee, an Amendment Fee, and a Break-Up Fee, however, Jefferies does not expect to earn such fees in connection with these chapter 11 cases.

payable on account of any debtor-in-possession financing) actually paid to and retained by Jefferies shall be creditable against 50% of any Restructuring Fee subsequently payable to Jefferies.

(e) **Equity Financing Fee**.   Promptly upon the closing of each Financing involving Equity Securities, a cash fee (and "Equity Financing Fee") in an amount equal to 4.0% of the aggregate gross proceeds from the issuance of such Equity Securities.   For the avoidance of doubt, 50% of any Equity Financing Fee actually paid to and retained by Jefferies shall be creditable against 50% of any Restructuring Fee subsequently payable to Jefferies.

(f) **Expenses**.   In addition to any fees that may be paid to Jefferies under the Engagement Letter, the Debtors shall reimburse Jefferies for out-of-pocket expenses incurred in connection with its engagement by the Debtors (including reasonable and documented fees and expenses of counsel, and the reasonable and documented fees and expenses of any other independent experts retained by Jefferies).

For the avoidance of doubt, more than one type of fee and multiple fees of each type may be paid to Jefferies pursuant to the Engagement Letter.  Notwithstanding the foregoing, to the extent a Transaction qualifies as both a Restructuring and an Corporate Transaction, Jefferies shall only be paid the higher of the Restructuring Fee and the Corporate Transaction Fee payable on account of such Transaction.

13.      During the pendency of these chapter 11 cases, Jefferies shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

14.      The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Jefferies and the fee structures typically utilized by

leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court.  The Fee and Expense structure is consistent with Jefferies' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these cases.  In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.  Similar fixed and contingency fee arrangements have been approved and implemented in other recent large chapter 11 cases.  *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (authorizing Jefferies' retention as investment banker with a similar fixed and contingency fee arrangement); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018) (same); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same); *In re iHeartMedia*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. May 30, 2018) (same).[7]

15.    Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Given the foregoing and that Jefferies' compensation is based on fixed fees,

---

[7] Because of the voluminous nature of the orders cited herein, they are not attached to this Application.  Copies of these orders, however, are available on request.

9

the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, any order of this Court, or any other guidelines

regarding the submission and approval of fee applications, Jefferies' professionals be excused

from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the Trustee

Guidelines in connection with the services to be rendered pursuant to the Engagement Letter.

Jefferies will nonetheless maintain reasonably detailed summary time records in one-half hour

increments, which records shall indicate the total hours incurred by each professional for each

day and provide a brief description of the nature of the work performed. Courts in other large

chapter 11 cases have excused flat-fee professionals from time-keeping requirements under

similar circumstances. *See, e.g.*, *In re Dura Automotive Systems, LLC*, Case No. 19-12378

(KBO) (Bankr. D. Del. Dec. 3, 2019) (requiring Jefferies only to keep reasonably detailed

summary time records in one-half hour increments while indicating the total hours incurred by

each professional for each day and briefly describing the nature of the work performed); *In re

Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018)

(same); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov.

30, 2018) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3,

2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6,

2018) (same); *In re iHeartMedia*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. May 30, 2018)

(same).[8]

## **Indemnification of Jefferies**

16.     As part of the overall compensation payable to Jefferies under the terms of

the Engagement Letter, the Engagement Letter provides for certain indemnification obligations

---

[8]   Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of
these orders, however, are available on request.

to Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[9] Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases. *In re EP Energy Corp*., Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan. 8, 2020) (approving similar indemnification provisions); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018) (same); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same); *In re iHeartMedia*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. May 30, 2018) (same).[10]

### Jefferies' Disinterestedness

17.    Jefferies has informed the Debtors that as of the date hereof, except as set forth in the Finger Declaration: (a) Jefferies has no connection with the Debtors, their creditors, equity security holders or other parties in interest in these chapter 11 cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity

---

[9]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

[10]    Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available on request.

security holder or an insider of the Debtors and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Jefferies professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the Eastern District of Missouri, the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee.

18.     During the 90-day period prior to the commencement of these cases, Jefferies was paid in the ordinary course certain Monthly Fees and expense reimbursements under the Engagement Letter.   Specifically, (a) on December 20, 2019, Jefferies was paid $200,000.00 on account of its September 2019 Monthly Fee, (b) on December 30, 2019, Jefferies was paid $200,000.00 on account of its October 2019 Monthly Fee, (c) on January 3, 2020, Jefferies was paid $400,000.00 on account of its November and December 2019 Monthly Fees, (d) on January 9, 2020, Jefferies was paid $17,313.57 on account of expense reimbursements, (e) on January 16, 2020, Jefferies was paid $211,871.32 on account of its January 2020 Monthly Fee and related expense reimbursement, (f) on February 20, 2020, Jefferies was paid $254,214.87 on account of its February Monthly Fee and related expense reimbursement,[11] and (g) on March 3, 2020, Jefferies was paid $201,504.66 on account of its March 2020 Monthly Fee and related expense reimbursement.  As of the Petition Date, no other amounts were due and payable to Jefferies under the Engagement Letter.

19.     The Debtors have been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in

---

[11]   Included in the payment of $254,214.87 on February 20, 2020, was an expense advance in the amount of $50,000.00.  Jefferies will apply such expense advance first to any expenses incurred but not yet reimbursed prior to the Petition Date, and second to any expenses incurred after the Petition Date.

connection with these chapter 11 cases in accordance with section 504(a) of the Bankruptcy Code.

20.     Based on the foregoing, the Debtors believe that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

### Approval of Engagement Pursuant to Section 328(a) of the Bankruptcy Code

21.     The Debtors seek entry of an order authorizing them to retain and employ Jefferies pursuant to sections 327 and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ one or more attorneys, accountants … or other professional person."  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ or authorize the employment of a professional person under section . . . 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

22.     Given the numerous issues that Jefferies may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtors also believe that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services, (b) Jefferies' substantial experience with respect to investment banking services and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

13

23.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein.  Notwithstanding the foregoing, Jefferies agrees that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code.

24.     In light of the foregoing, the Debtors submit that the retention of Jefferies is in the best interest of the estates, their creditors, and all parties in interest in these chapter 11 cases.  Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  The Debtors therefore submit that they have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Jefferies in these chapter 11 cases on the terms described herein and in the Engagement Letter.

**<u>Notice</u>**

25.     Notice of this Application will be provided to: (a) the Office of the United States Trustee for Region 13; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) counsel to Murray Energy Corporation; (k) counsel to Reserves; (*l*) counsel to Javelin; (m) counsel to Uniper Global Commodities UK Limited; (n) the Internal Revenue Service; (o) the Securities

14

and Exchange Commission; (p) the United States Attorney's Office for the Eastern District of Missouri; (q) the state attorneys general for all states in which the Debtors conduct business; (r) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; (s) counsel to the Committee; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this Application and any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-3(A)(1).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, granting the relief requested herein and such other relief as is just and proper.

March 10, 2020
St. Louis, Missouri

Respectfully submitted,

Foresight Energy LP, *et al.*,
Debtors and Debtors in Possession

/s/  *Robert D. Moore*
Name:  Robert D. Moore
Title:   President and Chief Executive Officer

Filed by:

ARMSTRONG TEASDALE LLP

*/s/  Richard W. Engel, Jr.*
Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn Redmond (MO 72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:     (314) 621-5070
Fax:     (314) 621-5065
Email:  rengel@atllp.com
          jwillard@atllp.com
          kredmond@atllp.com

       - and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
Alexander Woolverton (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York  10019
Tel:     (212) 373-3000
Fax:     (212) 757-3990
Email:  pbasta@paulweiss.com
          aeaton@paulweiss.com
          awoolverton@paulweiss.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

## **Exhibit A**

**Engagement Letter**

**Strictly Confidential**

**Engagement Letter**

As of September 8, 2019

Paul M. Basta, Esq.
Alice Belisle Eaton, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York
NY 10019-6064

Re: <u>Advisory Services; Financing Transaction</u>

This agreement (the <u>"Agreement"</u>) confirms that Jefferies LLC (<u>"Jefferies"</u>) has been engaged by Paul, Weiss, Rifkind, Wharton & Garrison (<u>"Counsel"</u>), as counsel to and on behalf of Foresight Energy L.P. and its direct and indirect controlled subsidiaries (collectively, the <u>"Company"</u>), to act as exclusive investment banker to the Company pursuant to the terms of this Agreement.

1.    <u>Services.</u>

(a)    <u>Restructuring.</u>  During the term of this Agreement, and as mutually agreed upon by Jefferies and the Company and as appropriate, Jefferies will:

(i)    become familiar with and analyze the business, operations, assets, financial condition and prospects of the Company;

(ii)    advise the Company on the current state of the "restructuring market";

(iii)    assist and advise the Company in examining and analyzing any potential or proposed restructuring, reorganization, rescheduling, recapitalization, reduction, cancellation, elimination, retirement, refinancing, purchase, repurchase and/or material modification or amendment of all or substantially all of the Company's debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, unfunded pension and retiree medical liabilities, lease obligations, trade credit facilities, contract or tort obligations, joint venture interests and/or partnership interests), preferred stock, common stock and/or hybrid securities (collectively, the <u>"Obligations"</u>), however such result is achieved, including, without limitation, through a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a n y plan pursuant to chapter 11, Title 11 of the United States Code (the <u>"Bankruptcy Code"</u>)), an offer by any party to convert, exchange, or acquire any o f the Obligations, and/or any similar balance sheet restructuring involving the Company (any of the foregoing, a <u>"Restructuring"</u>);

(iv)    assist and advise the Company in examining and analyzing any potential or proposed out-of-court restructuring, reorganization, rescheduling,

recapitalization, reduction, cancellation, elimination, retirement, refinancing, purchase, repurchase and/or material modification or amendment of a significant portion (but not all or substantially all) of the Company's Obligations, however such result is achieved (a "Liability Management Transaction").

For the avoidance of doubt, the consummation of any chapter 11 plan shall be deemed a Restructuring and not a Liability Management Transaction. Moreover, the consummation of any exchange or tender offer shall be deemed a Liability Management Transaction (unless such exchange or tender offer is in respect of all or substantially all of the Company's debt, in which case it qualifies as a Restructuring). Additionally, any waiver or forbearance of, or amendment to, any Obligations that does not extend the maturity of such Obligations or effectuate a waiver or forbearance for one year or longer (an "Amendment Transaction") shall not be a Restructuring or Liability Management Transaction.

(b)     Corporate Transaction. Furthermore, during the term of this Agreement, and as mutually agreed upon by Jefferies and the Company, Jefferies will provide the Company with financial advice and assistance in connection with a transaction or series of related transactions whereby, directly or indirectly and whether acting alone or with other parties, the Company or any Transaction Counterparty acquires beneficial voting or economic control of the other party or all or a material portion of such acquired party's businesses, operations or asserts, including, without limitation, by way of (i) a merger or other form of business combination, (ii) a joint venture, partnership, collaboration or other form of joint undertaking, (iii) a sale, acquisition, purchase or exchange of obligations, securities or assets, or (iv) any other significant extraordinary corporate or asset transaction, including, without limitation, an exercise of creditors' rights, a recapitalization, a reorganization and a transaction under section 363 of the Bankruptcy Code (including, without limitation, where one or more of the Company's creditors or other parties-in-interest in a case under chapter 11 of the Bankruptcy Code acquires any such entity, businesses, operations or assets through a credit bid under section 363(k) of the Bankruptcy Code) (any of the foregoing, a "Corporate Transaction"). The term "Transaction Counterparty" means any principal counterparty to a Corporate Transaction other than the Company.

(c)     Financing.

(i)     In addition, the Company hereby retains Jefferies and Jefferies shall have the right to act as sole and exclusive investment banker to the Company in connection with any sale and/or placement, whether in one or more public or private transactions, of (A) common equity, preferred equity, and/or equity-linked securities of the Company (regardless of whether sold by the Company or its securityholders and whether sold in a rights offering or otherwise, but excluding private sale(s) thereof by any securityholder(s) not in connection with any transaction described in this Section 1(c) or contemplated under this Agreement), including, without limitation, convertible debt securities (individually and collectively, "Equity Securities"), and/or (B) notes, bonds,

debentures, bank debt, credit facility, any accounts receivable securitization or monetization facility and/or other debt securities of the Company, including, without limitation, mezzanine, asset-backed securities, or any debtor-in-possession or exit financing for any Company entity (individually and collectively, "Debt" and any or a combination of Equity Securities and/or Debt, "Instruments") (any of the foregoing "Financing," and each of a Financing, a Restructuring, a Liability Management Transaction, an Amendment Transaction and a Corporate Transaction, individually and collectively, a "Transaction"). For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each shall be deemed to be a Financing for the purposes of this Agreement.

(ii)     Notwithstanding the foregoing, it is understood and agreed that Jefferies has no obligation, but shall have the right, to participate in any proposed Financing, and the foregoing is not an agreement by Jefferies to underwrite, place or purchase any Instruments. In connection with any Financing in which Jefferies elects to participate, the Company may elect to enter into an underwriting agreement, placement agency agreement, credit agreement or purchase agreement, as applicable, with Jefferies ("Definitive Agreement").     Jefferies shall have no obligation hereunder to act as underwriter, placement agent, arranger or initial purchaser with respect to any Instruments unless and until Jefferies has agreed to do so and executed a Definitive Agreement.

2.     Cooperation.

(a)     The Company shall furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company, which the Company believes are relevant to the Transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder (all such information so furnished being the "Information"), and if necessary, all solicitation materials prepared by the Company (and provided to Jefferies for comments) with respect to the Company (such solicitation materials, including all exhibits, amendments or supplements thereto, the "Solicitation Materials"). In addition, the Company shall provide Jefferies full access, as reasonably requested, to the Company's officers, directors, employees and professional advisors. Except for such developments or matters with respect which the Company's legal counsel advises the Company are privileged and/or confidential, the Company agrees to promptly advise Jefferies of all developments materially affecting the Company, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Company, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof. If the Company or, to the Company's knowledge, any of its stockholders, affiliates or other advisors or representatives are contacted by any person concerning a potential Transaction, the Company will inform Jefferies of such inquiry, and all relevant details thereof.

(b)     The Company further acknowledges that Jefferies (i) will be relying on information and data provided by the Company and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data and (iii) has not made, and will not make, any physical inspection or appraisal of the properties or assets of the Company and with respect to any financial forecasts that may be furnished to or discussed with Jefferies by the Company, Jefferies will assume that such forecasts have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company's management as to the expected future financial performance of the Company.

(c)     In connection with the Financing, as and if appropriate, the Company shall prepare with Jefferies' assistance, a registration statement or confidential offering or placement memorandum to use in connection with the Financing (the "Offering Document") and such other documents as are necessary for the Financing, in such form as Jefferies and the Company determine is appropriate to market the Instruments. The Company agrees that the Offering Document shall not knowingly contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

(d)     In connection with a Corporate Transaction, as and if appropriate, Jefferies will assist the Company in preparing a customary confidential information memorandum with regard to the Company to use in connection with the Corporate Transaction, which the Company agrees shall not knowingly contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

3.     Use of Name, Advice, etc.

(a)     No advice provided by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent (not to be unreasonably withheld) except for such disclosures to the Company's management, the Board and their advisors. In addition, the Company agrees that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which shall not be unreasonably withheld, for each such reference.

(b)     Jefferies' advice is solely for the use and information of the Company's management, the Board and their advisors, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4.    Compensation. The Company agrees to pay Jefferies each of the following:

(a)    A monthly fee (the "Monthly Fee") equal to $200,000 per month until the expiration or termination of this Agreement. The first Monthly Fee shall be payable in advance upon the execution of this Agreement, and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary thereafter. Fifty percent of any Monthly Fees actually paid to and retained by Jefferies in excess of $1,200,000 in the aggregate will be credited once, without duplication, against any Restructuring Fee, Liability Management Fee and/or Corporate Transaction Fee (each as defined below) subsequently payable to Jefferies.

(b)    Upon the consummation of a Restructuring, a fee in an amount equal to $8,500,000 (the "Restructuring Fee").

(c)    Upon the consummation of a Liability Management Transaction, a fee equal to (i) 0.75% of the total amount of any debt restructured in connection with such Liability Management Transaction plus (ii) 1.0% of the total amount of any debt eliminated or reduced in connection with such Liability Management Transaction (the "Liability Management Fee").[1] The "total amount" of debt shall be calculated by adding the face amount of any such debt plus any outstanding interest or penalty or default amounts owed at the time of closing of such Liability Management Transaction.

(d)    Upon the consummation of an Amendment Transaction pursuant to which the Company obtains relief for a period of 6 months or more (but less than one year), a fee equal to $1,000,000 (an "Amendment Fee").

(e)    Upon the consummation of a Corporate Transaction, a fee equal to 1.0% of the first $1.2 billion of Aggregate Sales Consideration (as defined below) of such Corporate Transaction plus 3.0% of the Aggregate Sales Consideration of such Corporate Transaction in excess of $1.2 billion (the "Corporate Transaction Fee").

(f)    If, following or in connection with the termination, abandonment or failure to occur of any proposed Corporate Transaction, the Company or any affiliate is entitled to receive a break-up, termination, "topping," expense reimbursement, earnest money payment or similar fee or payment (including, without limitation, any judgment for

---

[1]    Solely for purposes of illustrating the operation of the Liability Management Fee (and not for any other purpose), the following are non-exclusive examples of potential Liability Management Fees that may be earned by Jefferies. First, if the Company were to obtain an eighteen (18) month extension of the maturity date for $500 million of total debt, such extension would result in a Liability Management Fee payable to Jefferies in the amount of $3.75 million (0.75% of the $500 million of total debt subject to the amendment). Second, if the Company were to consummate the exchange of $500 million of total debt for $100 million of new debt, such exchange would result in a Liability Management Fee payable to Jefferies in the amount of $4,750,000 (0.75% of the $100 million of total debt restructured ($750,000) plus 1.0% of the $400 million of total debt eliminated or reduced ($4,000,000)).

damages or amount in settlement of any dispute as a result of such termination, abandonment or failure to occur), Jefferies shall be entitled to a cash fee (the "Break-Up Fee"), payable promptly following the Company's or such affiliate's receipt of such amount, equal to twenty-five percent (25%) of the aggregate amount of all fees, payments, judgments or amounts paid to the Company or such affiliate; provided, however, that, the Break-Up Fee shall not exceed the amount of the Corporate Transaction Fee that would have been payable had the proposed Corporate Transaction been consummated.

(g) Promptly upon the closing of each Financing involving Debt, a fee (the "Debt Financing Fee") in an amount equal to: (i) 1.0% of the aggregate principal amount of any debtor-in-possession financing; plus (ii) 1.5% of the aggregate principal amount of senior secured Debt placed; plus (iii) 2.0% of any junior secured or unsecured Debt placed. No Debt Financing Fee shall be due on any Debt that is "rolled" into any debtor-in-possession or exit financing. Promptly upon the closing of each Financing involving Equity Securities, a cash fee (the "Equity Financing Fee") in an amount equal to 4.0% of the aggregate gross proceeds from the issuance of such Equity Securities. Fifty percent (50%) of any Debt Financing Fee (other than any Debt Financing Fee payable on account of any debtor-in-possession financing) and Equity Financing Fee actually paid to and retained by Jefferies will be credited once, without duplication, against fifty percent (50%) of any Restructuring Fee subsequently payable to Jefferies.

(h) For purposes of this Agreement, "Aggregate Sale Consideration" shall mean (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid or payable in connection with a Corporate Transaction, including, without limitation, (1) any dividends or distributions or any stock redemptions or repurchases outside the normal course of business, (2) all amounts payable in relation to, or other value ascribed in the Corporate Transaction (including the form of "rollover" options or warrants) in respect of, warrants, options or other convertible securities, (3) the full amount of any consideration placed in escrow or otherwise withheld to support the acquisition target's (or its stockholders') indemnification or similar obligations under the definitive documents with respect to the Corporate Transaction, (4) the full amount of any contingent consideration to be paid in the future to the acquisition target or its constituents and (5) the full amount of any payments in installments; plus (B) all indebtedness for borrowed money, pension liabilities, retiree medical, mechanics liens, environmental, asset retirement obligations, guarantees, capitalized leases and other liabilities (whether consolidated, off-balance sheet or otherwise) and preferred stock assumed or directly or indirectly refinanced, retired or extinguished (and all payments made and expenses incurred in connection therewith, including, without limitation, prepayment premiums and defeasance costs) in connection with the Corporate Transaction (including, in the case of the sale, exchange or purchase of equity securities, any such liabilities outstanding at the closing of the Corporate Transaction) and the fair value of operating leases; plus (C) in the case of a joint venture

or similar transaction (a "Joint Venture"), the aggregate value of the proceeds, assets and other consideration contributed or to be contributed to such Joint Venture by all parties to such Joint Venture, other than the acquisition target and its affiliates, in connection with the Corporate Transaction (which shall be deemed to include up-front payments, milestone payments, research and development payments, licensing fees and royalties, installment amounts, future and contingent payments and other payments), including, without limitation, cash, notes, securities, intellectual property, licenses, marketing or distribution rights and other property and the amount of any liabilities assumed by such Joint Venture. For purposes of computing the Aggregate Sale Consideration, (x) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date which is two business days prior to the date of announcement of the Corporate Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and Jefferies.

(i) For the avoidance of doubt, more than one type of fee and multiple fees of each type may be paid to Jefferies pursuant to this Agreement. Notwithstanding the foregoing, however, to the extent a Transaction qualifies as both a Restructuring and a Corporate Transaction, Jefferies shall only be paid the higher of the Restructuring Fee and Corporate Transaction Fee payable on account of such Transaction. Furthermore, to the extent a Transaction qualifies as both a Restructuring and a Liability Management Transaction, Jefferies shall only be paid the higher of the Restructuring Fee and Liability Management Fee payable on account of such Transaction. Additionally, the aggregate amount of Liability Management Fees and Amendment Fees payable to Jefferies under this Agreement shall be capped at $7,000,000.

(j) For the avoidance of doubt, the fees and expenses of Jefferies pursuant to this Agreement shall be the sole responsibility of the Company, and Counsel shall have no obligation with respect to any such fees and expenses.

(k) The Company shall commercially reasonable efforts to provide for the payment in full, in cash, of any fees and expenses described in this Section 4 in any plan of reorganization submitted to the Bankruptcy Court (as defined below) for confirmation.

(l) The Company acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Company further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Company in connection with any Transaction and that the value to the Company of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of

the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.     Expenses.  In addition to any fees or other compensation that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor (and if unpaid after 30 days from the delivery date of the invoice, shall thereafter carry interest from such delivery date, both before and after any judgment, at a rate equivalent to LIBOR plus 1% compounded quarterly until payment), for all reasonable and documented out-of-pocket expenses (including (i) fees and expenses of its counsel, and (ii) the fees and expenses of any other independent experts retained by Jefferies with the prior consent of the Company) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder.

6.     Indemnification, etc.     As further consideration under this Agreement, the Company shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement. Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

7.     Termination.  Jefferies' engagement hereunder will commence as of the date set forth above upon the execution of this Agreement by both the Company and Jefferies, and the Agreement will remain in full force and effect until terminated by either party on five days' written notice to the other.  Upon termination of this Agreement, the Company shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  Also, in the event of any termination of this Agreement, Jefferies shall be entitled to the applicable Transaction fees set forth in Sections 4(b) through 4(g) above if the Company enters into an agreement for a Transaction on or prior to that date that is twelve months from the effective date of termination of this Agreement and such agreement subsequently results in the consummation of a Transaction or a Break-Up Fee being due.  Any such fee shall be paid as set forth in Section 4.  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 9-16, and Schedule A, which shall survive such termination.

8.     Exclusivity.  During the term of the Agreement, the Company agrees that it will not, directly or indirectly, offer or borrow any Instruments, as applicable, solicit an offer to purchase or lend any Instruments, or otherwise contact or enter into a discussion with any person in connection with the structuring, issuance, sale, arrangement, placement, lending or purchase of Instruments, other than through Jefferies. In addition, and without

limiting the foregoing, during the term of the Agreement, the Company will not, and will not permit any stockholder, affiliate, or advisor or representative of the Company to engage any other person to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies. The Company will promptly inform Jefferies of any inquiry it may receive regarding a Transaction. Notwithstanding the Company's obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Company, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.     Bankruptcy Approval.  The Company shall use commercially reasonable efforts to obtain prompt approval of this Agreement, pursuant to section 327 of the Bankruptcy Code, from the bankruptcy court presiding over the Company's bankruptcy cases (the "Bankruptcy Court"). Such approval shall provide for the retention of Jefferies *nunc pro tunc* to the commencement date of the cases, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the Company's acknowledgements and obligations set forth in Schedule A), shall bind the Company to such terms and conditions, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agree that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

10.    Disclaimer.

(a)     The Company acknowledges that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including, but not limited to, investment management, corporate finance, securities underwriting, trading and research and brokerage activities). The Company also acknowledges that Jefferies Group LLC's ultimate parent, Jefferies Financial Group Inc. (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), "Jefferies Financial Group"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, including, buying and selling companies and business lines and making strategic investments in other companies and businesses, in each case from which conflicting interests, or duties, may arise, and that Jefferies Financial Group maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies. Information that is held elsewhere within Jefferies Financial Group, but of which none of the individuals in

Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement. Neither Jefferies nor any other part of Jefferies Financial Group has or will have any duty to disclose to the Company or Counsel or use for the Company's or Counsel's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Jefferies Financial Group may trade the securities of the Company and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities. Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. Jefferies Financial Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b) The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (v) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

(c) In connection with any Transaction involving the offer and sale by the Company of any securities, (i) such sale, including the determination of the price of such securities, shall be an arm's-length commercial transaction between the Company and the other parties to a Transaction (including Jefferies in the event that it acts as an

underwriter or initial purchaser), (ii) Jefferies will not be the agent or fiduciary of the Company or its securityholders, affiliates, creditors, employees or any other party, (iii) Jefferies shall not assume fiduciary responsibility in favor of the Company (irrespective of whether Jefferies has advised or is currently advising the Company on other matters) and Jefferies shall have no obligation to the Company with respect to any Transaction except as may be set forth herein or in a Definitive Agreement (as applicable), and (iv) the Company agrees that it will not hold Jefferies liable or responsible in the event that a Transaction is not successfully consummated, including but not limited to, as a result of an adverse change in the financial or securities markets, insufficient demand for instruments similar to the Instruments or lack of interest by investors in the Transaction.

11.     Governing Law.   THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK.

12.     Exclusive Jurisdiction.   EXCEPT AS SET FORTH BELOW, THE PARTIES AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY RELATING TO OR ARISING OUT OF THIS AGREEMENT, THE TERMINATION OR VALIDITY OF THIS AGREEMENT, ANY ALLEGED BREACH OF THIS AGREEMENT, THE ENGAGEMENT CONTEMPLATED BY THIS AGREEMENT OR THE DETERMINATION OF THE SCOPE OF APPLICABILITY OF THIS AGREEMENT TO THIS SECTION 11 (ANY OF THE FOREGOING, A "CLAIM") SHALL BE COMMENCED IN THE COMMERCIAL DIVISION OF THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE CITY AND COUNTY OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS AND SHALL DECIDE THE MERITS OF EACH CLAIM ON THE BASIS OF THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE COMPANY AND JEFFERIES AGREE AND CONSENT TO PERSONAL JURISDICTION, SERVICE OF PROCESS AND VENUE OF SUCH COURTS, WAIVE ALL RIGHT TO TRIAL BY JURY FOR ANY CLAIM AND AGREE NOT TO ASSERT THE DEFENSE OF FORUM NON-CONVENIENS. THE COMPANY AND JEFFERIES ALSO AGREE THAT SERVICE OF PROCESS MAY BE EFFECTED THROUGH OVERNIGHT MAIL TO THE ADDRESSES SET FORTH OR REFERRED TO IN SECTION 14 HEREOF. THE COMPANY SHALL PAY ALL OF JEFFERIES' COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, FEES AND EXPENSES OF COUNSEL) IN AN ENFORCEMENT PROCEEDING IF THE COURT IN SUCH PROCEEDING DETERMINES THAT JEFFERIES IS ENTITLED TO RECOVER AMOUNTS DUE HEREUNDER. THE COMPANY AND JEFFERIES FURTHER AGREE THAT A FINAL, NON-APPEALABLE JUDGMENT IN RESPECT OF ANY CLAIM BROUGHT IN ANY SUCH COURT SHALL BE BINDING AND MAY BE

ENFORCED IN ANY OTHER COURT HAVING JURISDICTION OVER THE
PARTY AGAINST WHOM THE JUDGMENT IS SOUGHT TO BE ENFORCED.
THE COMPANY ALSO HEREBY CONSENTS TO PERSONAL JURISDICTION,
SERVICE AND VENUE IN ANY COURT IN WHICH ANY ACTION (AS DEFINED
IN SCHEDULE A) IS BROUGHT BY ANY THIRD PARTY AGAINST JEFFERIES
OR ANY INDEMNIFIED PARTY.

13.     Payments.     All payments to be made to Jefferies hereunder shall be non-
refundable and made in cash by wire transfer of immediately available U.S. funds. Such
fee may be paid by the Company in the form of a "gross spread" or a similar
underwriting discount, if Jefferies' role hereunder is that of an underwriter or an initial
purchaser. Except as expressly set forth herein, no fee payable to Jefferies hereunder
shall be credited against any other fee due to Jefferies. The Company's obligation to pay
any fee or expense set forth herein shall be absolute and unconditional and shall not be
subject to reduction by way of setoff, recoupment or counterclaim.

14.     Announcements, etc.     The Company agrees that Jefferies may, following the
public announcement of a Transaction or potential Transaction, or Jefferies' role in
representing the Company, describe the Transaction or such role in any form of media or
in Jefferies' marketing materials, stating Jefferies' role and other material terms of the
Transaction and using the Company's name and logo in connection therewith. In
addition, as of the date of the approval of Jefferies' retention by the Bankruptcy Court,
Jefferies may describe its retention in any form of media or in Jefferies' marketing
materials, stating Jefferies' role and other publicly available material terms of the
retention and using the Company's name and logo in connection therewith.     The
Company agrees that any press release it may issue announcing a Transaction will, at
Jefferies' request, contain a reference to Jefferies' role in the Transaction.

15.     Notices.     Notice given pursuant to any of the provisions of this Agreement shall
be in writing and shall be mailed or delivered (a) if to the Company, at the address of
Counsel set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New
York 10022, Attention: General Counsel.

16.     Miscellaneous.     This Agreement constitutes the entire agreement between the
parties with respect to the subject matter hereof, and may not be amended or modified
except in writing signed by each party hereto. This Agreement may not be assigned by
either party hereto without the prior written consent of the other, to be given in the sole
discretion of the party from whom such consent is being requested. Any attempted
assignment of this Agreement made without such consent shall be void and of no effect,
at the option of the non-assigning party. This Agreement is solely for the benefit of the
Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons
and no other party shall be a third party beneficiary to, or otherwise acquire or have any
rights under or by virtue of, this Agreement; provided that Jefferies may, in the
performance of its services hereunder, procure the services of other members of the
Jefferies Group (as defined above), which members shall be entitled to the benefits and

subject to the terms of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. The Company and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

17.     Patriot Act.     Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot Act"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

**Foresight Energy L.P.**
As of September 8, 2019
Page 14

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth
herein, and once executed by each of Jefferies and the Company, this Agreement shall
constitute a binding agreement between the Company and Jefferies as of the date first
written above.

Sincerely,

**JEFFERIES & COMPANY, INC.**

By
Name: Jerrad M. Freund
Title: Managing Director

Accepted and Agreed:

Paul, Weiss, Rifkind, Wharton & Garrison

By
Paul M. Basta, Esq.
Partner

Accepted and Agreed:

Foresight Energy, L.P., on behalf of itself and its affiliates

By

# SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies, Counsel and the Company. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates and their successors and permitted assigns (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any and all claims, liabilities, losses, actions, suits, proceedings, third party subpoenas, damages, costs and expenses (an "Action") (including, without limitation, full reimbursement of all reasonable and documented fees and expenses of counsel incurred in investigating, preparing or defending against any such Action and in enforcing the terms of this Schedule A), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, or the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Company shall not be responsible for any Excluded Losses. "Excluded Losses" shall mean Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company or Counsel), it being understood and agreed that each Indemnified Person shall be obligated to refund or return any and all amounts paid by the Company to such Indemnified Person for any such Loss or the extent any Indemnified Person is found in a final non-appealable judgment by a court not to be entitled to payment of such amounts in accordance with the terms hereof.

The Company and Counsel agree that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors or Counsel for any Losses, except for Excluded Losses.

The Company agrees that it will not settle, facilitate any settlement of, or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and its securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Company and its securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, (ii) shall survive the termination of the Agreement, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and successors or assigns to the Company's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person. For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Schedule A, the Company will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of providing for obligations of the Company set forth in this Schedule A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory

## SCHEDULE A

to Jefferies; provided, however, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this Schedule A has been made, the Company's obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.

## Exhibit B

**Finger Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF JEFFREY FINGER IN SUPPORT OF DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT BANKER FOR THE**
**DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

I, Jeffrey Finger, do hereby declare, under penalty of perjury, that:

1.      I am a Managing Director at Jefferies LLC ("Jefferies"), an investment

banking and financial advisory firm with principal offices located at 520 Madison Avenue, New

York, New York 10022, as well as at other locations worldwide.

2.      I submit this Declaration (this "Declaration") in support of the application

(the "Application")[2] of the above-captioned debtors and debtors in possession in these

proceedings (collectively, the "Debtors") for an order authorizing the Debtors to retain and

---

[1]    The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number (or SEC filing number if unavailable), are: Foresight Energy LP (8894); Foresight Energy GP LLC (8332); Foresight Energy LLC (7685); Foresight Energy Employee Services Corporation (7023); Foresight Energy Services LLC (6204); Foresight Receivables LLC (2250); Sugar Camp Energy, LLC (8049); Macoupin Energy LLC (9005); Williamson Energy, LLC (9143); Foresight Coal Sales LLC (8620); Tanner Energy LLC (0409); Sitran LLC (9962); Seneca Rebuild LLC (0958); Oeneus LLC (6007); Adena Resources, LLC (4649); Hillsboro Transport LLC (6881); American Century Transport LLC (SEC No. 5786); Akin Energy LLC (1648); American Century Mineral LLC (SEC No. 5788); Foresight Energy Finance Corporation (5321); Foresight Energy Labor LLC (4176); Viking Mining LLC (4981); M-Class Mining, LLC (5272); MaRyan Mining, LLC (7085); Mach Mining, LLC (4826); Logan Mining LLC (2361); LD Labor Company LLC (8454); Coal Field Repair Services LLC (9179); Coal Field Construction Company LLC (5694); Hillsboro Energy LLC (1639); and Patton Mining LLC (7251).  The address of the Debtors' corporate headquarters is One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102.

[2]    Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Application.

employ Jefferies as their investment banker, *nunc pro tunc* to the Petition Date, pursuant to the terms and subject to the conditions of the Engagement Letter.

3.      Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify thereto.  Certain of the disclosures herein, however, relate to matters within the personal knowledge of other professionals at and representatives of Jefferies and are based on information provided by such professionals.

### Jefferies' Qualifications

4.      I believe that Jefferies and the professionals it employs are uniquely qualified to advise the Debtors on the matters for which Jefferies is proposed to be employed in a cost-effective, efficient, and timely manner.

5.      Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission and a member of the Boston Stock Exchange, the International Stock Exchange, the Financial Industry Regulatory Authority, the Pacific Stock Exchange, the Philadelphia Stock Exchange and the Securities Investor Protection Corporation.  Jefferies was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group LLC, which, together with its affiliates, has gross assets of approximately $45 billion and approximately 3,900 employees in more than 30 offices around the world.

6.      Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to the following: (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) special committee assignments; (d) capital raising; and (e) corporate restructurings.  Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out of court and in chapter 11 proceedings.  Jefferies has advised debtors, creditor and equity constituencies, and

purchasers in numerous reorganizations in the United States and worldwide.  Since 2007, Jefferies has been involved in more than 125 restructurings representing more than $300 billion in restructured liabilities.

7.    The Debtors selected Jefferies as their investment banker in these cases based upon Jefferies' extensive experience in matters involving complex financial restructurings and Jefferies' excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Jefferies, moreover, has been engaged by the Debtors since September, 2019, and, as a result, is intimately familiar with the Debtors' corporate and capital structure, management, and business operations.  The Debtors retained Jefferies in September 2019 as the Debtors' investment banker to assist them in their efforts to explore a variety of strategic alternatives to address Debtors' capital structure. Working closely with the Debtors, members of my team and I have, among other advisory services: (a) analyzed the Debtors' current liquidity and projected cash flow; (b) assisted the Debtors in evaluating restructuring and other strategic alternatives; (c) helped the Debtors prepare for a potential chapter 11 filing; and (d) as part of such preparation, conducted a diligent search to obtain postpetition financing for the Debtors on the most competitive terms and conditions available to them.  I also have participated in (i) negotiations between the Debtors and their creditors and other interested parties and (ii) meetings with the Debtors' Board of Directors to keep the Board apprised of the restructuring process and provide advice regarding strategic alternatives, including a chapter 11 process.  Jefferies, moreover, has worked closely with the Debtors' senior management team and has become knowledgeable about the Debtors' business, finances, and operations.

8.       Jefferies has extensive experience in reorganization cases and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors, creditors, and creditors' committees throughout the United States.  Jefferies has advised on the following chapter 11 cases, among others: *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan. 8, 2020); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019); *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Mar. 7, 2019); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018); *In re iHeartMedia*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. May 30, 2018); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (Bankr. E.D. Mo. Jan. 16, 2018); *In re Real Industry, Inc.*, Case No. 17-12464 (KJC) (Bankr. D. Del. Dec. 19, 2017); *In re Goodman Networks, Inc.*, Case No. 17-31575 (MI) (Bankr. S.D. Tex. Apr. 20, 2017); *In re BCBG Max Azria Global Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Peabody Energy Corp.*, Case No. 16-42529 (BSS) (Bankr. E.D. Mo. June 17, 2016); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del. Apr. 21, 2016); *In re Sundevil Power Holdings, LLC*, No. 16-10369 (KJC) (Bankr. D. Del. Apr. 7, 2016); *In re Arch Coal, Inc.*, Case No. 16-40120 (TFE) (Bankr. E.D. Mo. Mar. 21, 2016); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015).

4

**Jefferies' Disinterestedness**

9.    In connection with its retention by the Debtors, Jefferies undertook to determine whether Jefferies, its principals and professionals: (a) have any connection with the Debtors, their affiliates, their creditors or any other parties in interest in these chapter 11 cases; or (b) have an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders.

10.    To check potential connections with the Debtors and other parties in interest in these chapter 11 cases, Jefferies has searched to determine whether it had any relationships with the entities identified by the Debtors and its representatives as potential parties in interest listed on **Schedule 1** hereto (the "Potential Parties in Interest").  Specifically, Jefferies entered the names of the Potential Parties in Interest into a database containing the names of Jefferies' current and former investment banking clients.  To the extent that this inquiry has revealed that certain Potential Parties in Interest were current or former investment banking clients of Jefferies within the past three years, these parties have been identified on a list (the "Client Match List") annexed hereto as **Schedule 2**.  Through the information generated from the aforementioned inquiry and through follow-up inquiries to Jefferies professionals responsible for certain clients listed on the Client Match List, Jefferies has determined that its representation of the clients on the Client Match List, if any, concerned matters unrelated to the Debtors.  As to the Potential Parties in Interest not identified on the Client Match List, Jefferies has not been employed by or rendered advisory services to any such parties within the past three years.

11.    As part of its diverse global activities, Jefferies is involved in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest

5

in these chapter 11 cases. Further, Jefferies has in the past, and may in the future, advise and/or be represented by several attorneys, law firms and other professionals, some of whom may be involved in these chapter 11 cases. Finally, Jefferies has in the past, and will likely in the future, be working with or against other professionals involved in these chapter 11 cases in matters wholly unrelated to these chapter 11 cases. Based upon our current knowledge of the professionals involved in these chapter 11 cases, and, to the best of my knowledge, none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders in matters upon which Jefferies is to be employed, and none are in connection with these chapter 11 cases.

12.     Jefferies is a global investment banking firm with broad activities covering, in addition to its investment banking and financial advisory practice, trading in equities, convertible securities, and corporate bonds. With more than 80,000 customer accounts and thousands of relationships and transactions around the world, it is possible that one or more of Jefferies' clients or a counterparty to a securities transaction may hold a claim or interest or otherwise be Potential Parties in Interest in these chapter 11 cases and that Jefferies and/or its affiliates may have other business relationships and/or connections with such Potential Parties in Interest. Further, as a major market maker in equity securities as well as a major trader of corporate bonds and convertible securities, including those of creditors or parties in interest in these chapter 11 cases, Jefferies regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities. Some of these counterparties may be creditors, equity holders or other parties in interest in these cases. Jefferies believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any

6

class of creditors or equity security holders in matters upon which Jefferies is to be employed, and none are in connection with these chapter 11 cases.

13.     In addition, as of the date hereof, Jefferies and its affiliates have thousands of employees worldwide.  It is possible that certain of Jefferies' and its affiliates' respective directors, officers and employees may have had in the past, may currently have, or may in the future have connections to (i) the Debtors, (ii) the Potential Parties in Interest and/or (iii) funds or other investment vehicles that may own debt or securities of the Debtors or other Potential Parties in Interest.  Furthermore, in addition to the parties listed on **Schedule 2**, Jefferies may also represent, or may have represented, affiliates, equity holders and/or sponsors of the Potential Parties in Interest.  Certain of the Potential Parities in Interest may also be vendors or insurers of Jefferies and/or have other non-investment banking relationships with Jefferies.  Jefferies may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that appear on the Potential Parties in Interest list.  Jefferies believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders in matters upon which Jefferies is to be employed, and none are in connection with these chapter 11 cases.

14.     Certain affiliates of Jefferies serve as managers for a number of investment vehicles (collectively, the "Managed Funds").  The Managed Funds are principally intended for investments by third parties unrelated to Jefferies.  However, such investors may also include financial institutions (some of which may be parties in interest in these chapter 11 cases), affiliates of Jefferies, or their respective officers and employees (some of whom may be Jefferies' employees providing services in connection with these chapter 11 cases).  Jefferies' employees

7

working in connection with these chapter 11 cases have no control over or involvement in investment decisions made for the Managed Funds. With respect to the Managed Funds, Jefferies makes the following additional disclosures:

(a) Among other things, the Managed Funds are (i) active direct investors in a number of portfolio companies (the "Equity Investments") and (ii) investors in a variety of debt instruments and mezzanine loans or similar securities (the "Income Investments" and, together with the Equity Investments, the "Portfolio Holdings"); and

(b) The fund managers of the Managed Funds maintain control over investment decisions with respect to the Portfolio Holdings. Many financial institutions and parties in interest who may be involved in these chapter 11 cases may also be investors in the Managed Funds. Moreover, the Managed Funds may invest from time to time in Portfolio Holdings relating to the Debtors or parties in interest in these chapter 11 cases. In order to comply with securities laws and to avoid any appearance of impropriety, the employees of the Managed Funds are strictly separated from the employees of Jefferies. Jefferies maintains a strict separation between its employees assigned to these chapter 11 cases and employees involved in the management of Jefferies' investment banking division, on the one hand, and other employees of Jefferies (e.g., sales and trading employees) and its affiliates (including the employees of the Managed Funds), on the other hand. This separation is maintained through the use of information walls. These information walls include physical and technological barriers, compliance, and surveillance mechanisms and policies and procedures designed to prevent confidential information from being shared improperly. Consequently, as no confidential information concerning the Debtors is permitted to be communicated to any persons working for the Managed Funds, Jefferies does not believe that the relationships outlined above constitute interests adverse to the estates or render Jefferies not disinterested in these chapter 11 cases.

15. In addition, as part of its regular business operations, Jefferies may trade securities and other instruments of the Debtors on behalf of third parties (some of whom may be parties in interest in these chapter 11 cases). Jefferies may also trade securities and other instruments of the Potential Parties in Interest on behalf of itself and/or its affiliates or third parties. Any and all such trading operations and market making activities are separated from

8

Jefferies' investment banking department, and its managing directors and employees (including the investment banking professionals working on these chapter 11 cases), by an information barrier, and no Jefferies professionals providing services to the Debtors will be involved with such trading operations and market making activities in any capacity.[3]

16.     The Debtors have numerous creditors and relationships with a large number of individuals and entities that may be parties in interest in these chapter 11 cases. Consequently, although every reasonable effort has been made to discover Jefferies' connections with the Potential Parties in Interest, Jefferies is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party in interest in these chapter 11 cases.   If Jefferies discovers any information that is contrary or pertinent to the statements made herein, Jefferies will promptly disclose such information to the Court. Additionally, as noted above, Jefferies is part of a global investment banking firm and thus has several legally separate and distinct foreign and domestic affiliates.   Although employees of certain affiliates may sometimes assist Jefferies in connection with a restructuring engagement, as Jefferies is the only entity being retained in these cases, we have researched only the electronic client files and records of Jefferies, not of all of its affiliates, to determine connections with any Potential Parties in Interest.

17.     Jefferies does not advise, has not advised, and will not advise any entity other than the Debtors in matters related to these chapter 11 cases.    Jefferies will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

---

[3]    These information barriers include physical and technological barriers, compliance and surveillance mechanisms and policies and procedures designed to prevent confidential information from being shared improperly.

18.     Except as otherwise set forth herein, to the best of my knowledge, information, and belief, neither Jefferies nor any employee of Jefferies:  (a) is a creditor, equity security holder or an insider of the Debtors; or (b) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Jefferies' professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the Eastern District of Missouri, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

## **Professional Compensation**

19.     During the 90-day period prior to the commencement of these cases, Jefferies was paid in the ordinary course certain Monthly Fees and expense reimbursements under the Engagement Letter.   Specifically, (a) on December 20, 2019, Jefferies was paid $200,000.00 on account of its September 2019 Monthly Fee, (b) on December 30, 2019, Jefferies was paid $200,000.00 on account of its October 2019 Monthly Fee, (c) on January 3, 2020, Jefferies was paid $400,000.00 on account of its November and December 2019 Monthly Fees, (d) on January 9, 2020, Jefferies was paid $17,313.57 on account of expense reimbursements, (e) on January 16, 2020, Jefferies was paid $211,871.32 on account of its January 2020 Monthly Fee and related expense reimbursement, (f) on February 20, 2020, Jefferies was paid $254,214.87 on account of its February Monthly Fee and related expense reimbursement,[4] and (g) on March 3, 2020, Jefferies was paid $201,504.66 on account of its March 2020 Monthly Fee and related expense reimbursement.  As of the Petition Date, no other amounts were due and payable to Jefferies under the Engagement Letter.

---

[4]   Included in the payment of $254,214.87 on February 20, 2020, was an expense advance in the amount of $50,000.00.  Jefferies will apply such expense advance first to any expenses incurred but not yet reimbursed prior to the Petition Date, and second to any expenses incurred after the Petition Date.

20.     The Fee and Expense Structure set forth in the Application is consistent with Jefferies' typical fee for work of this nature.  The fees are set at a level designed to compensate Jefferies fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses.  It is Jefferies' policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

21.     It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.   Jefferies' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these cases will, keep time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks.   Jefferies will also supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep records in the same manner.

22.     The Fee and Expense Structure is comparable to those generally charged by investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of a transaction as contemplated in the Engagement Letter.

23.     The Engagement Letter was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of Jefferies' employment by the Debtors.  With respect to the Engagement Letter's indemnification provisions, unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers.   The indemnity,

11

moreover, is comparable to those generally obtained by investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

24.      Other than as set forth above and in the Engagement Letter, there is no proposed arrangement between the Debtors and Jefferies for compensation to be paid in these cases.  Jefferies has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

25.      The foregoing constitutes the statement of Jefferies pursuant to section 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 5002.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  March 10, 2020                        */s/  Jeffrey Finger*
        St. Louis, Missouri                     Name: Jeffrey Finger
                                        Title:   Managing Director
                                               Jefferies LLC

# Schedule 1

## Potential Parties in Interest

*Current Officers and Directors*
Robert Moore
Nicholas Casey
Jeremy Harrison
Daniel Hermann
Robert Murray
Cody Nett
Lesslie Ray
Brian Sullivan

*Former Officers and Directors*
Rashda M. Buttar
James T. Murphy
Kevin T. Burns
Paul Vining
Anthony Webb

*Debtors*
Foresight Energy GP LLC
Foresight Energy LP
Foresight Energy LLC
Foresight Coal Sales LLC
Foresight Energy Employee Services Corporation
Foresight Energy Finance Corporation
Foresight Energy Labor LLC
Foresight Energy Services LLC
Foresight Receivables LLC
Adena Resources, LLC
Akin Energy LLC
American Century Mineral LLC
American Century Transport LLC
Coal Field Construction Company LLC
Coal Field Repair Services LLC
Hillsboro Transport LLC
LD Labor Company LLC
Mach Mining, LLC
Macoupin Energy LLC
Maryan Mining LLC

M-Class Mining, LLC
Oeneus LLC
Seneca Rebuild LLC
Sitran LLC
Sugar Camp Energy, LLC
Williamson Energy, LLC
Tanner Energy LLC
Logan Mining LLC
Viking Mining LLC
Hillsboro Energy LLC
Patton Mining LLC

*Non-Debtor Affiliates*
Adena Minerals, L.L.C.
AMCA Coal Leasing, Inc.
AmCoal Holdings, Inc.
American Compliance Coal, Inc.
American Energy Corporation
American Equipment & Machine, Inc.
American Mine Services, Inc.
American Natural Gas, Inc.
AmericanHocking Energy, Inc.
AmericanMountaineer Energy, Inc.
AmericanMountaineer Properties, Inc.
Anchor Longwall And Rebuild, Inc.
Andalex Resources Management, Inc.
Andalex Resources, Inc.
Avonmore Rail Loading, Inc.
Belmont Coal, Inc.
Belmont County Broadcast Studio, Inc.
Canterbury Coal Company
CCC Land Resources LLC
CCC RCPC LLC
Central Ohio Coal Company
Coal Resources Holdings Co.
Coal Resources, Inc.
Colt LLC
Consolidated Land Company

Consolidation Coal Company
Corporate Aviation Services, Inc.
Eighty-Four Mining Company
Empire Dock, Inc.
Energy Resources, Inc.
Energy Transportation, Inc.
Foresight Reserves LP
Genwal Resources, Inc.
Javelin Global Commodities (UK) LTD
Javelin Global Commodities Holdings LLP
Javelin Global Commodities Ltd.
Javelin Investment Holdings LLC
Javelin Management Services LLP
Kanawha Transportation Center, Inc.
KenAmerican Resources, Inc.
Keystone Coal Mining Corporation
LIQVIS
Maple Creek Mining, Inc.
Maple Creek Processing, Inc.
McElroy Coal Company
Mill Creek Mining Company
Mon River Towing, Inc.
MonValley Transportation Center, Inc.
Murray American Coal, Inc.
Murray American Coal, INC.
Murray American Energy, Inc.
Murray American Kentucky Towing, Inc.
Murray American Minerals, Inc.
Murray American Resources, Inc.
Murray American River Towing, Inc.
Murray American Transportation, Inc.
Murray Colombian Resources, LLC
Murray Energy Holdings Co.
Murray Equipment & Machine, Inc.
Murray Global Commodities, Inc.
Murray Kentucky Energy Services, Inc.
Murray Kentucky Energy, Inc.
Murray Keystone Processing, Inc.
Murray South America, Inc.
Murray Utah Energy Services, Inc.
Ohio Energy Transportation, Inc.
Ohio Valley Resources, Inc.
OhioAmerican Energy, Incorporated

Oneida Coal Company, Inc.
PennAmerican Coal L.P.
PennAmerican Coal, Inc.
Pennsylvania Transloading, Inc.
Pinski Corp.
Pleasant Farms, Inc.
Premium Coal, Inc.
Ruger Coal Company, LLC
Ruger, LLC
Southern Ohio Coal Company
Spring Church Coal Company
Sunburst Resources, Inc.
T D K Coal Sales, Incorporated
The American Coal Sales Company
The Franklin County Coal Company
The Harrison County Coal Company
The Marion County Coal Company
The Marshall County Coal Company
The Mclean County Coal Company
The Meigs County Coal Company
The Monongalia County Coal Company
The Muhlenberg County Coal Company, LLC
The Muskingum County Coal Company
The Ohio County Coal Company
The Ohio Valley Coal Company
The Ohio Valley Transloading Company
The Oklahoma Coal Company
The Washington County Coal Company
The Western Kentucky Coal Company, LLC
Twin Rivers Towing Company
UMCO Energy, Inc.
Uniper Commodities UK Limited
Uniper SE
UtahAmerican Energy, Inc.
West Ridge Resources, Inc.
West Virginia Resources, Inc.
Western Kentucky Coal Resources, LLC
Western Kentucky Consolidated Resources, LLC
Western Kentucky Land Holding, LLC
Western Kentucky Rail Loadout, LLC
Western Kentucky Resources Financing, LLC
Western Kentucky Resources, LLC
Western Kentucky River Loadout, LLC

*Joint Ventures, Partnerships and Consortiums*
Foresight Reserves LP

*Five Percent and Greater Shareholders and Beneficial Owners*
Murray Energy Corporation
Cline Trust Company, LLC
Accipiter Capital Management, LLC
Christopher Cline

*Creditor Advisors*
Lazard Asset Management
Akin Gump Strauss Hauer & Feld LLP
Milbank LLP
Perella Weinberg Partners

*Attorneys, Professionals and Financial Advisors (Including Accountants and Investment Banks)*
Armstrong Teasdale LLP
Jefferies Group LLC
Paul, Weiss, Rifkind, Wharton & Garrison LLP

*Significant Financial Institutions (Including Administrative Agents, Lenders and Equipment Financing)*
Bank Of New York Mellon
BB&T Equipment Finance Corporation
Caterpillar Financial Services Corp
CNB Bank & Trust
De Lage Landen Financial Services
FB Wealth Management
First Southern Bank
GE Capital
Great America Financial Services
HNB Equipment Finance
Lord Securities Corporation
Neopost USA Inc
Pitney Bowes Global Financial
PNC Bank, National Association
PNC Equipment Finance LLC
Ricoh USA Inc
The Huntington National Bank
US Bank Equipment Finance

Wells Fargo Financial Leasing Inc
Wells Fargo Vendor Financial
Wilmington Trust, National Association
Xerox Corporation

*Unions*
N/A

**Surety Issuers**
Argonaut Insurance Company

*Surety Obligees*
City of Hillsboro, Illinois
East Fork Township, Illinois
Illinois Department of Natural Resources
Dept of the Army, St. Louis District Corps of Engineers
Illinois Department of Natural Resources, Division of Oil and Gas
Illinois Department of Transportation
People of The State of Illinois
County of Williamson, State of Illinois
Eastern Township
Hamilton County Highway Department
Illinois Department of Natural Resources, Office of Mines and Minerals
Illinois Environmental Protection Agency
Jeffrey Watkins And Katelynn Watkins

*Letter of Credit Beneficiaries*
Canadian National Railway
Rockwood Casualty Insurance Co

*Significant Taxing Authorities*
Illinois Department of Revenue
Indiana Department of Revenue
Department of The Treasury
Franklin County Treasurer
Gallatin County Treasurer
Gregory Fx Daly Collector (St Louis City)
Hamilton County Tax Assessor
Henderson County Sheriff
Kentucky Dept of Revenue
Kentucky State Treasurer

Louisiana Dept of Revenue
Macoupin County Sheriff
Missouri Dept. of Revenue
Montgomery County Treasurer
Office of Surface Mining
Posey County Treasurer
Saline County Treasurer
United States Treasury
Williamson County Treasurer

***Royalty Contract Counterparties***

David C. Linn
David L. Scott
Donald E. Grant
Donald J. Busch
Donna S. Greener
Dora C. Munter
New River Royalty, LLC % Rob Boyd
Robert S. Barrett
Tennessee Valley Authority
Mildred Coats
Kristin Musgrave
William C. Stutz
Wendy L. Mcgill
Ricky L. Ellis
Rggs Land & Minerals, Ldt., L.P.
Michael C. Barrett
Michael L. & Debra E. Borecky
Montgomery County
Amanda & Andrew Wilson
Amy Engstrom
Andrew Miller
Ann E. Moody
Betty Rueger
Beverly Jones
Billie L. Killam
Bonnie Frost
Bret D. & Michelle E. Webb
Brian S. & Connie J. Magsig
Carol Ann Roberts, Trustee of Roberts Trust
Carolyn F. Moore
City of Johnston City
Danny R. & Colleen F. Harrelson

David M. & Karen Y. Mandrell
David R. Schlosser
David Wayne Hayes
Delbert & Carol L. Kern
Dennis W. Miller Trustee Of Miller Trust
Dorothy L. Slater
Edward D. Kocher
Eric Johnson
First Baptist Church Of McLeansboro
Gary F. Re
Gary Lee & Brenda K. Hutchcraft
Gerald E. Ellis
Gloria M. Ellis
Hawley H. Maclean
Hod, LLC % Jay Perry
Hurricane Creek Farms, INC.
Mt Olive and Staunton Coal Company
James & Lu Ann Anderson
James T. Flannigan % David Flannigan Poa
Jane W. Kuba
Janet E. Leslie
Janet Roberson
Jason A. Barrett
Joan Niehaus
John B. Maclean
John D. Mann
John R. Mcgill
John S. Leslie
Judy Grebe
June K. Behrends
Karen S. Cardey-Harris
Kenneth D. & Sheila K. Summers
Kenneth R. & Jan Wheat
Kevin Barrett
Larry E. Taylor
Liberty Land, LLC
Linda L. Jeter
Linda Webster
Lindner Living Trust
Loren C. & Mildred Anderson
Louise Biehl Aka Martha Biehl
M. Lynne Maclean
Marshall G. Hayes, Jr.

Mary S. Zimmerman
Matther E. Kocher
Maurice Ellis
Micah & Marietta Miller
Michael G. Maclean
Mike Buntin
Morris & Karan Clark
Paul & Judy Maurer
Phillip E. Ellis
Phyllis Bretsch
Randy L. & Rebecca A. Wright
Randy W. Ellis
Reginal W. Barrett
Rhanda R. Ellis
Robert Buntin
Robert M. & Patricia A. Miller
Rory M. Maclean
Rosenburg Farms INC % Harry Rosenburg
Ruby Grebe
Sally J. Johnson
Sheila Breslich
Shelley Hayes-Hueber
Stephan P. & Stefani R. Miller
Stephen R. Maclean
Tonya Bledsoe Vanfossen
Vicki D. Mcgill
Virginia T. Hills
Walter J. & Phyllis A. Jagiello
William B. Johnson
US Steel

***Regulatory Agencies (e.g., Department of
Interior, Mine Safety Administration, OSHA, and
State and Local Regulators)***
Illinois Department of Transportation
Illinois Environmental Protection Agency
Indiana Department of Environmental
Management
Montgomery County Water Authority
U.S. Department of Labor Mine Safety and Health
Administration
United States Army Corps of Engineers
United States Department of The Interior
United States Environmental Protection Agency

Williamson County

***Parties to Significant Litigation***
Fletcher Brimer
Andrea
Danielle Clark
Carrie Cox
Kirby Crabtree
Federal Insurance Company
Tina Franklin
James Gass
Marjorie Harris
Dwight
Karenn Jones
David Lee Bishop II
Cory Leitschuh
Justin Lindsay
Jonathan Lintner
Tye Malone
Ricky L. Mcdaniel
Arleen Meracle
Reba Mitchell
Mitchell/Roberts Partnership
Jamie L. Moles
Terra Payne
Shawn Rorer
Steven D. Sniderwin
The Estate of Russel J. Inman
Justin Walker
Jeffrey Watkins
Robert Yeske

***Significant Suppliers, Shippers, Warehousemen,
and Vendors***
BNSF Railway Company
Jabo Supply Corporation
K & E Technical INC
Maka Excavating INC
Norfolk Southern Railway Company
Raben Tire Company

***Insurers***
Ace American Insurance Company

Allianz Global Corporate & Specialty
Allied World Assurance Company Holdings, Ltd
American International Group
Amtrust Financial
Apollo Insurance
Aspen Insurance Holdings Limited
Axis Capital
Beazley PLC
Brit Insurance US
CNA Financial
Continental Casualty Insurance Company
Continental Insurance Co
Endurance American Insurance Co.
Evanston Insurance Co
Houston International Insurance Group
Illinois National Insurance Co
Lexington Insurance Company
Liberty Mutual
Liberty Specialty Markets Bermuda Limited.
Lloyd's of London
Markel International Ltd
MS Amlin
National Union Fire Insurance Co of Pittsburgh PA
Navigators Insurance Co.
Oil Casualty Insurance, Ltd.
RSUI Indemnity
Sompo International Insurance
Starr Surplus Lines Insurance Company
Starstone Specialty Insurance Co.
The Insurance Company of the State of
Pennsylvania
The Travelers Indemnity Company
Twin City Fire Insurance Company
United States Fire Insurance Co.
US Aircraft Insurance Group
Water Quality Insurance Syndicate
Xl Specialty Insurance Company
Zurich Insurance Group


***Insurance Brokers***
AON Risk Services Central Inc
The Reschini Group

United States Trustee's Office

***Bankruptcy Judges and Members of U.S.
Trustee's Office***
Chief Judge Kathy A. Surratt-States
Judge Barry S. Schermer
Judge Charles E. Rendlen, III
Paul Randolph
Barbara J. Dorsey
Sandra Herling
Kathy Lickenbrock
Cynthia E. Moore
Carole Ryczek
Joseph Schlotzhauer
Margaret E. Slaughter
Karen R. Wilson-Smith

***1L Lender***
AIG SENIOR FLOAT RATE
AMERICAN HONDA MASTER RETIRE
ASSURANT CLO I LTD
ASSURANT CLO II LTD
ASSURANT CLO III LTD
ASSURANT CLO IV LTD
B&M CLO 2014-1 LTD
BANK OF AMERICA N.A
BARCLAYS BANK PLC NY
BDCA-CB FUNDING
BEN ST PTR SNR SEC MST NON US
BEN ST PTR SNR SEC U MF NON US
BEN ST PTRS CAP OPP FD LP
BEN ST PTRS SEN SEC OPP FD LP
BENEFIT SRTEET PTRS CLO V-B
BENEFIT ST PARTNERS CLO VII
BENEFIT STREET PARTNERS SMA LM
BENEFIT STREET PARTNERS SMA-K
BENEFIT STREET PTNRS CLO I
BENEFIT STREET PTNRS CLO II
BENEFIT STREET PTNRS CLO III
BENEFIT STREET PTNRS CLO IV
BENEFIT STREET PTNRS CLO IX
BENEFIT STREET PTNRS CLO VI
BENEFIT STREET PTNRS CLO VIII

BENEFIT STREET PTNRS CLO X
BENEFIT STREET PTNRS CLO XI
BENEFIT STREET PTNRS CLO XII
BENEFIT STREET PTNRS CLO XIV
BENEFIT STREET PTNRS CLO XV
BENEFIT STREET PTRS CLO XVI
BLACK DIAMOND CLO 2013-1 LTD
BLACK DIAMOND CLO 2014-1 LTD
BLUEMOUNTAIN CLO 2013-1 LTD
BLUEMOUNTAIN CLO 2014-2 LTD
BLUEMOUNTAIN CLO 2015-1 LTD
BLUEMOUNTAIN CLO 2015-2 LTD
BLUEMOUNTAIN CLO 2015-3 LTD
BLUEMOUNTAIN CLO 2015-4 LTD
BLUEMOUNTAIN CLO 2016-1 LTD
BLUEMOUNTAIN CLO 2016-3 LTD
BLUEMOUNTAIN CLO 2018-1
BLUEMOUNTAIN CLO 2018-2 LTD
BLUEMOUNTAIN CLO 2018-3 LTD
BLUEMOUNTAIN FUJI US CLO II
British Coal Staff Superannuation Scheme
BSP SPECIAL SITUATIONS MST A
CENT CLO 19 LIMITED
CENT CLO 21 LIMITED
CENT CLO 24 LIMITED
CHUBB BERMUDA INSURANCE LTD
CHUBB TEMPEST REINSURANCE LTD
CITI LOAN FUNDING CHELT
CITY OF PHOENIX EMP RET PLAN
CLINE RESOURCE AND DEV COMPANY
COLUMBIA CENT CLO 27 LTD
COLUMBIA CENT CLO 28 LIMITED
COLUMBIA FLOATING RATE FUND
CORBIN ERISA OPPORTUNITY FUND
CORBIN OPPORTUNITY FUND LP
CORPORATE CAPITAL TRUST II
CREDIT SUISSE LOAN FUNDING
CVP CASCADE CLO-2 LTD.
CVP CASCADE CLO-I LTD.
CVP CLO 2017-1 LTD
CVP CLO 2017-2 LTD
DDJ CAP MAN GP TRUST-HYF 2017
DESTINATIONS CORE FIXED INC FD

DEUTSCHE BANK AG CAYMAN ISLAND
DOUBLELINE CORE FIXED INCOME
DOUBLELINE FLEXIBLE INC FD
DOUBLELINE FLOATING RATE FUND
DOUBLELINE INCOME SOLUTIONS FD
DOUBLELINE OPP INC MASTER FUND
DOUBLELINE OPPORTUNISTIC CR FD
DOUBLELINE SHILLER ENHANCED
ELLINGTON CLO I
ELLINGTON CLO II LTD
ELLINGTON CLO III LTD
ELLINGTON CLO IV LTD
FRANKLIN LTD DURATION INC TST
FS INVESTMENT CORPORATION II
FS INVESTMENT CORPORATION III
FS MULTI ALTERNATIVE INCOME FD
GENERAL ORG FOR SOCIAL INS
GN3 SIP LIMITED
GOLDENTREE 2004 TRUST
GOLDENTREE CREDIT OPPS 2012-1
GOLDENTREE LOAN MGMT US CLO 2
GOLDENTREE LOAN MGMT US CLO 4
GOLDENTREE LOAN MGMT US CLO I
GOLDENTREE LOAN MGT US CLO 3
GOLDENTREE LOAN OPPS IX LTD
GOLDENTREE LOAN OPPS X LTD
GOLDENTREE LOAN OPPS XI LTD
GOLDENTREE LOAN OPPS XII LTD
GOLDMAN SACHS LENDING PTNRS
GT LOAN FINANCING I LTD
GT NM LP
GTAM 110 DAC
HARTFORD TOTAL RETURN BOND ETF
HARTFORD TOTAL RETURN BOND HLS
HEALTH NET OF CALIFORNIA INC
HIGH YIELD AND BANK LOAN SERIE
HYFI AQUAMARINE LOAN FUND
IVY APOLLO MULTI-ASSET INCOME
IVY APOLLO STRATEGIC INCOME FD
IVY HIGH INCOME FUND
IVY HIGH INCOME OPPORTUNITIES
IVY VIP HIGH INCOME
JNL/DOUBLELINE CORE FIXED INC

JNL/DOUBLELINESHILLER ENHANCED
JNL/FPA+DOUBLELINE FLEX ALL FD
JOHN HANCOCK VARIABLE INS TST
KKR BESPOKE GLO CR OPP IRELAND
KKR CLO 10 LTD
KKR CLO 11 LTD
KKR CLO 12 LTD
KKR CLO 13 LTD
KKR CLO 14 LTD
KKR CLO 15 LTD
KKR CLO 16 LTD
KKR CLO 17 LTD
KKR CLO 18 LTD
KKR CLO 19 LTD
KKR CLO 20 LTD
KKR CLO 21 LTD
KKR CLO 22 LTD
KKR CLO 23 LTD
KKR CLO 24 LTD
KKR CLO 25 LTD
KKR CLO 9 LTD
KKR DAF GL OPP CR FD DAC
KKR FINANCIAL CLO 2013-1 LTD
KKR GLOBAL CR OPPS MASTER FUND
KKR INCOME OPPS FUND
KKR JP LOAN FD B 2018
KKR SENIOR FLT RATE INC FUND
LANDMARK WALL SMA SPV LP
LOUISIANA STATE EMP GLDN TREE
MARATHON CLO IX LTD
MARATHON CLO V LTD
MARATHON CLO VI, LTD
MARATHON CLO VII, LTD
MARATHON CLO VIII, LTD
MARATHON CLO X LTD
MARATHON CLO XI LTD
MEADOWVEST FUNDING
METROPOLITAN SERIES FUND - MET
MIDTOWN ACQUISITIONS L.P.
MINEWORKERS PENSION SCHEME
NEWSTAR EXETER FUND CLO
NEWSTAR FAIRFIELD FUND CLO LTD
NTCC HIGH YIELD BOND FUND

OAKTREE CLO 2014-1 LTD.
OAKTREE CLO 2015-1 LTD
OAKTREE CLO 2018-1 LTD
OAKTREE CLO 2019-1 LTD
OAKTREE CLO 2019-2 LTD
OAKTREE EIF III SERIES I, LTD
OAKTREE EIF III SERIES II
OAKTREE SENIOR LOAN FUND
OREGON PUBLIC EMPL RETIREMENT
PARALLEL 2015-1 LTD
PARALLEL 2017-1 LTD
PARALLEL 2018-1 LTD
PARALLEL 2018-2 LTD
PARALLEL 2019-1 LTD
QUAMVIS SCA SICAV-FIS: CMAB
SAEV MASTERFONDS WELLINGTON GL
SAFETY INSURANCE COMPANY
SAN BERNARDINO COUNTY EMPLOYEE
SEASONS SERIES TRUST-SA MULTI
SEI ENERGY DEBT FUND, LP
SEI GLOBAL MST FD-HIGH YIELD
SEI INS MAN TST - HIGH YIELD
SEI INST INVS TST - HIGH YIELD
SHRINERS HOSPITALS FOR CHILDRE
TACTICAL VALUE SPN-GLOBAL CR
THE CLINE TRUST COMPANY
THE HARTFORD FLOAT RATE FUND
THE HARTFORD FLOAT RATE HIGH
THE HARTFORD STRATEGIC INC FD
THE HARTFORD TOTAL RETURN BOND
THE MANGROVE PARTNERS MST FD
TICP CLO VI 2016-2 FUNDING LTD
TREASURY OF THE STATE OF NORTH
CAROLINA
US HIGH YIELD BOND FUND
VENTURE 28A CLO LIMITED
VENTURE 35 CLO LIMITED
VENTURE 36 CLO
VENTURE XII CLO LIMITED
VENTURE XIII CLO LIMITED
VENTURE XIV CLO LIMITED
VENTURE XIX CLO LIMITED
VENTURE XV CLO LIMITED

VENTURE XVI CLO LIMITED

VENTURE XVII CLO LIMITED

VENTURE XVIII CLO LIMITED

VENTURE XX CLO LIMITED

VENTURE XXI CLO LIMITED

VENTURE XXII CLO LIMITED

VENTURE XXIII CLO LIMITED

VENTURE XXIV CLO LIMITED

VENTURE XXIX CLO LIMITED

VENTURE XXV CLO LIMITED

VENTURE XXVI CLO LIMITED

VENTURE XXVII CLO LIMITED

VENTURE XXVIII CLO

WADDELL & REED FINANCIAL

WCF MUTUAL INSURANCE COMPANY

WELLINGTON MULTI-SECTOR CR FD

WELLINGTON TS CO MULSEC CRD II

WELLINGTON TST CO NAMCIF TSTII

WELLINGTON TST CO NAMCTFT CBP

WELLINGTON TST CO NAMCTFT OFIA

WELLINGTON TST CO NAMCTFT OISB

WELLINGTON TST CO NAMCTFT UNFI

WELLINGTON WORLD BOND FUND

WMC LOAN FUND 2018

ZAIS CLO 1 LTD

ZAIS CLO 11 LTD

ZAIS CLO 13 LTD

ZAIS CLO 2 LTD

ZAIS CLO 3 LTD

ZAIS CLO 5 LTD

ZAIS CLO 6 LTD

ZAIS CLO 7 LTD

ZAIS CLO 8 LIMITED

ZAIS CLO 9 LTD

*2L Lenders*

Bank Of America Merrill Lynch

Bank Vontobel AG (Asset Management)

Blackrock Advisors, LLC

Davidson Kempner Capital Management, L.P.

DDJ Capital Management, LLC

Doubleline Capital, L.P.

Dynagest S.A.

Euroclear Bank

Flow Traders U.S., LLC

Foxhill Capital Partners, LLC

Garland Business Corp

Goldentree Asset Management, L.P. (U.S.)

HSBC Bank USA, N.A. (Private Banking)

Hutch Capital Management LLC

KKR Credit Advisors (US), LLC

Mellon Investments Corporation

Northern Trust Investments, INC.

Robeco Institutional Asset Management Bv

Seix Investment Advisors, LLC

State Street Global Advisors (SSGA)

The Cline Group

Thunderwood, LLC

Wellington Management Company, LLP

Wells Fargo Securities, LLC

*Top 50 Unsecured Creditors*

Bankdirect Capital Finance

Buchanan Pump Service

C & C Pumps & Supply INC

Conn-Weld Industries INC

Date Mining Supply LLC

Evansville Western Railway INC

Fabick Mining INC

Flanders Electric Motor Service

Fuchs Lubricants Co

H. Drexel Short

Heritage Cooperative INC

Ingram Barge Company

International Belt Sales LLC

Jennchem Mid-West

Jennmar Of West Kentucky INC

Jennmar Sanshell Products INC

Jennmar Services

JM Conveyors, LLC

John Fabick Tractor Company

Joy Global Conveyors INC

Joy Global Underground Mining LLC

Mayo Manufacturing Co INC

MCA Administrators INC

Miller Contracting Services

Mine Supply Company
Motion Industries
Oak Hill Contractors
Polydeck Screen Corporation
R M Wilson Co INC
Raven Energy LLC
RGGS Land & Minerals
Seetech LLC
SNF Mining INC
State Electric Supply Co
Swanson Industries
United Central Industrial Supply
US United Bulk Terminal
Wallace Electrical Systems LLC
Wallace Industrial LLC
WPP LLC
Xylem Dewatering Solutions INC

*Utilities*
Akin Water District
Ameren Illinois
AT&T
AT&T Teleconference Services
Bulldog Systems INC
Centurylink
Charter Communications
CMC Rural Water District
ConferTel
Consolidated Communications
Corinth Water District
CWI Of Illinois #732
DC Waste & Recycling INC
Flowers Sanitation Service
Frontier Communications
Futiva LLC
Hamilton County Water
Hostway Billing Center
Level 3 Financing INC
MJM Electric Cooperative INC
Rend Lake Conservancy District
Sit-Co LLC
Southeastern Illinois Electric
Vectren Energy Delivery

Verizon Wireless
Wayne-White Counties Electric
Windstream Communications

*Significant Customers*
Archer Daniels Midland Company
Big Rivers Electric Corporation
Cemex Southeast, LLC
City of Lakeland
Duke Energy Indiana, INC.
Duke Energy Kentucky, INC.
Duke Energy Progress
Dynegy Commercial Asset Management, LLC
East Kentucky Power Cooperative, INC.
Georgia Power Company
Gulf Power Company
Louisville Gas & Electric Company
Orlando Utilities Commission
South Carolina Public Service Authority
Southern Illinois Power Cooperative
Tampa Electric Company
The American Coal Company

*Significant Competitors*
Alliance Resource Partners, L.P.
Arch Coal
Cloud Peak Energy Inc.
Consol Energy Inc.
Contura Energy
Hallador Energy Company
Knight Hawk Coal LLC
Peabody Energy
Sunrise Coal LLC

*Unsecured Creditors' Committee*
TBD

*Ordinary Course Professionals*
Benesch, Friedlander, Coplan And Aronoff LLP
Bingham Greenebaum Doll LLP
Black Ballard Mcdonald PC
Ciuni & Panichi
Corporate Service Company

Dinsmore and Shohl LLP

Ernst & Young LLP

Greensfelder, Hemker & Gale, P.C.

Hardy Pence PLLC

Heyl, Royster

Kupiec & Martine, LLC

Ogletree Deakins Nash

Pillsbury Winthrop Shaw Pittman LLP

Polsinelli PC

Pricewaterhousecoopers LLP

Protiviti INC

Sandberg Phoenix & Von Gontard PC

Shands, Elbert, Gianoulakis & Giljum, LLP

Swanson Martin & Bell LLP

The Brennan Group, LLC

Wilson Elser Moskowitz Edelman & Dicker LLP

**Schedule 2**

**Client Match List**[1]

Amtrust Financial

AT&T

Merrill Lunch BV

Bank Of New York Mellon

BNY Mellon

BlackRock

CenturyLink

Contura Energy, Inc.

Corporation Service Company, Inc.

Credit Suisse Group AG

Davidson Kempner Capital Management LLC

Duke Realty Corporation

Endurance International Group Holdings

Frontier Developments PLC

Goldman Sachs

Goldman Sachs Merchant Banking

Hallador

Hallador Energy Company

The Heritage Group

KKR

Kohlberg Knavis Roberts & Co.

Lexington Realty Trust

Mach Resources

Marathon Oil

Marathon Oil Company

Marathon

MRO Financials

Marathon Oil Corporation

Miller Homes

---

[1] In addition to the clients included herein, Jefferies was engaged by the official committee of unsecured creditors in the bankruptcy cases of Cloud Peak Energy Inc. and its affiliated debtors and debtors in possession proceeding in the District of Delaware.

Additionally, Jefferies has been engaged by the official committee of unsecured creditors in the bankruptcy cases of EP Energy Corporation and its affiliated debtors and debtors in possession proceeding in the Southern District of Texas (the "EP Energy UCC").  Wilmington Trust, a Potential Party in Interest in these cases, is a member of the EP Energy UCC.

Mitchell International Inc.
Oaktree Capital Management