UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related Docket No.: 5 |

**INTERIM ORDER (A) AUTHORIZING
DEBTORS TO PAY PREPETITION CLAIMS OF TRADE AND
LIEN CLAIMANTS AND AUTHORIZING PAYMENT PROCEDURES
RELATED THERETO, (B) AUTHORIZING DEBTORS TO PAY ROYALTY AND
LEASEHOLD CLAIMS, (C) GRANTING ADMINISTRATIVE EXPENSE PRIORITY
STATUS TO OUTSTANDING ORDERS, AND (D) GRANTING RELATED RELIEF**

Upon the Motion[1] of Foresight Energy LP and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") requesting entry of an interim order (this "Interim Order"), pursuant to sections 105(a), 363(b), and 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Debtors to pay Vendor Claims and authorizing procedures to pay such Vendor Claims; (b) authorizing the Debtors to pay Royalty and Leasehold Claims; (c) granting administrative expense priority status to Outstanding Orders; and (d) granting related relief, all as more fully described in the Motion; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri; and it appearing that venue of the Debtors' chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a

---

[1] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion; and upon consideration of the First Day Declarations; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on an interim basis to the extent set forth herein.

2. Subject to paragraph 5, the Debtors are authorized in their discretion, to pay the Critical Vendor Claims, 503(b)(9) Claims, and Lien Claims, in the ordinary course of business and in a collective amount not to exceed $23.2 million on an interim basis.

3. Subject to paragraph 5, the Debtors are authorized in their discretion, to pay the Royalty and Leasehold Claims, in the ordinary course of business and in a collective prepetition amount not to exceed $9.7 million. For the avoidance of doubt, payment of Royalty and Leasehold Claims held by any Debtor or non-Debtor affiliate are not authorized pursuant to this Interim Order.

4. Subject to paragraph 5, all undisputed obligations related to the Outstanding Orders arising from the postpetition delivery of goods or provision of services are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code, and the Debtors are authorized in their discretion, to pay such undisputed obligations related to the Outstanding Orders in the ordinary course of business; *provided* that such actions are in

compliance with, and are not prohibited by, the terms of the DIP Orders (as defined below) and other documentation governing the Debtors' use of cash collateral and postpetition financing facilities, including, without limitation, the DIP Credit Agreement (as defined in the DIP Orders).

5. The Debtors shall provide the professionals retained by each of the Ad Hoc First Lien Group and the Ad Hoc Crossover Group (each, as defined in the Restructuring Support Agreement, and together, the "Consultation Parties") with reasonable advance notice of any payment that (a) exceeds $1,000,000 individually that the Debtors propose to make on account of any (i) Critical Vendor Claim, (ii) 503(b)(9) Claim, (iii) Lien Claim, (iv) Royalty and Leasehold Claim, or (v) obligations related to the Outstanding Orders, or (b) that would be made on a prepetition claim to a member of the Creditors' Committee (as defined in the DIP Orders), and the Debtors may not pay any such claim without the prior consent, not to be unreasonable withheld, of the Required First Lien Lenders (as defined in the Restructuring Support Agreement). Any such notice shall include, as applicable, (i) the identity of the Vendor Claimant or other claimant to be paid, (ii) the total prepetition claim owed to such Vendor Claimant or other claimant, (iii) the amount of the proposed payment, (iv) the Customary Trade Terms, (v) a copy of the Trade Agreement, if any, and (vi) such other information the Consultation Parties may reasonably request.

6. Nothing herein or in the Motion shall be construed to limit, or in any way affect, the Debtors' or any other party-in-interest's ability to dispute or contest the amount of, or basis for, any claims (or the priority thereof) against the Debtors' arising in connection with the Outstanding Orders.

7. Any Vendor Claimant that accepts payment pursuant to the authority granted in this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim

Order, (b) agree to be paid only such portion of their Vendor Claims that is agreed to be paid as between the Debtors and such Vendor Claimant, and (c) have waived any and all (i) prepetition claims against the Debtors in excess of the amounts agreed to be paid under subsection (b) of this paragraph and (ii) Liens (as defined herein) against the Debtors, their assets, and their properties.

8. The Debtors are authorized in their discretion, to use commercially reasonable efforts to condition the payment of Vendor Claims on the agreement of the applicable Vendor Claimant to continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those in place (including, among other terms and programs, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix, and availability) during the twelve (12) months in place before the Petition Date (collectively, the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtors in their reasonable business judgment and the applicable Vendor Claimant.

9. The Debtors are further authorized in their discretion, to enter into Trade Agreements with Vendor Claimants, including on the following terms:

   a. The amount of the Vendor Claimant's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor Claimant and the Debtors (but such amount shall be used only for purposes of this Interim Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

   b. The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to this Interim Order;

   c. If agreed to be paid less than 100% of their estimated prepetition claims, the Vendor Claimant's agreement to waive any remaining and to be unpaid estimated prepetition claims against the Debtors, which such remaining prepetition claims shall not be paid in accordance with this Interim Order;

   d. The Vendor Claimant's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, among other terms and programs, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix, and availability), or such other trade terms as are

       agreed to by the Debtors and the Vendor Claimant, and the Debtors' agreement to pay the Vendor in accordance with such terms;

e. The Vendor Claimant's agreement to not seek to discontinue, terminate, or modify any contractual agreement with the Debtors;

f. The Vendor Claimant's agreement not to file or otherwise assert against any of the Debtors, their estates, or any of their respective assets or property any lien (a "Lien"), regardless of the statute or other legal authority upon which such Lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor Claimant by the Debtors arising from goods and services provided to the Debtors before the Petition Date, and that, to the extent that the Vendor Claimant has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

g. The Vendor Claimant's acknowledgment that it has reviewed the terms and provisions of this Interim Order and consents to be bound thereby;

h. The Vendor Claimant's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

i. If a Vendor Claimant that has received payment of a prepetition claim subsequently refuses to provide goods or services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor Claimant, or seeks to discontinue, terminate, or modify any contractual agreement with the Debtors, then, without the need for any further order of the Court, any payments received by the Vendor Claimant on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition obligations owed to such Vendor Claimant, and such Vendor Claimant shall immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding to such Vendor Claimant, without the right of setoff, recoupment, or reclamation, and the Vendor's prepetition claim shall be reinstated as a prepetition claim in these chapter 11 cases and subject to the terms of any bar date order entered in these chapter 11 cases.

       10.      The Debtors may, in their discretion, terminate a Trade Agreement with an individual Vendor Claimant, together with the other benefits to the Vendor Claimant as contained in this Interim Order, on the date the Debtors deliver notice to the Vendor Claimant that such Vendor Claimant has (a) not complied with the terms and provisions of the Trade Agreement or (b) failed to provide Customary Trade Terms (or such other agreed trade terms) to the Debtors.

11. The Debtors shall maintain a "Vendor Matrix" summarizing (a) the name of each Vendor Claimant or other claimant subject to the terms of this Interim Order, (b) the amount and timing of any payment under this Interim Order, (c) the amount of the Vendor Claimant's claim or other claims subject to the terms of this Interim Order satisfied by such payment, and (d) a summary of the material payment terms. The Debtors shall provide the Vendor Matrix on a weekly basis (or as otherwise agreed with the Consultation Parties) to the Consultation Parties; *provided* that the Consultation Parties shall keep the Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone without prior written consent of the Debtors; *provided further* that the Vendor Matrix shall be delivered to the Consultation Parties no later than the third business day following the conclusion of the weekly reporting period (or as otherwise agreed with the Consultation Parties).

12. All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests, automated clearing house transfers and other payment orders drawn or issued by the Debtors under this Interim Order, whether presented or issued before or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution. Such banks and financial institutions are authorized to rely on representations of the Debtors as to which checks, electronic funds transfer requests, and payment orders are authorized to be paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

13. The Debtors are authorized to issue postpetition checks, or to affect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed

in connection with any Vendor Claims, Royalty and Leasehold Claims, and claims related to Outstanding Orders.

14. Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (a) the orders approving the Debtors' use of cash collateral and/or postpetition debtor-in-possession financing facilities (collectively, the "DIP Orders"); (b) other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; (c) the Budget (as defined in the DIP Orders); and (d) the terms and conditions set forth in the Restructuring Support Agreement (as defined in the DIP Orders). To the extent there is any inconsistency between the terms of any of the DIP Orders and this Interim Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

15. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity or priority of any claim or lien (or the priority thereof) against the Debtors, (b) a waiver of the Debtors' or any party in interest's rights to subsequently dispute or contest such claim or lien on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion, (e) a request or authorization to assume or adopt any agreement, contract, or lease under section 365 of the Bankruptcy Code or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or applicable law.

16. Notwithstanding the entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

17. Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

18. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective upon its entry.

19. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief sought by the Motion is necessary to avoid immediate and irreparable harm.

20. No later than two (2) business days after the date of this Interim Order, the Debtors shall serve on the Notice Parties (a) a copy of the Interim Order and (b) a notice scheduling a final hearing on the Motion, on April 3, 2020, at 10:00 a.m. (prevailing Central Time) in Courtroom 7-North, and shall file a certificate of service no later than twenty-four (24) hours after service.

_/s/ Kathy A. Surratt-States_
KATHY A. SURRATT-STATES
Chief U.S. Bankruptcy Judge

DATED: March 13, 2020
St. Louis, Missouri
jjh

**Order Prepared By:**

Richard W. Engel, Jr., MO 34641
John G. Willard, MO 67049
Kathryn R. Redmond, MO 72087
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile:  (314) 621-2239
Email:  rengel@atllp.com
　　　　jwillard@atllp.com
　　　　kredmond@atllp.com

Paul M. Basta (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Alexander Woolverton (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019
Tel:　　(212) 373-3000
Fax:　　(212) 757-3990
Email:  pbasta@paulweiss.com
　　　　aeaton@paulweiss.com
　　　　awoolverton@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*