UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | In Proceedings |
| | ) | Under Chapter 11 |
| FORESIGHT ENERGY, L.P., et al. | ) | |
| | ) | |
| Debtors. | ) | Bk. No. 20-41308-659 |
| | ) | Jointly Administered |
| | ) | |
| | ) | Related Docket Nos. 29 and 74 |

**LIMITED OBJECTION TO ENTRY OF FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

MITCHELL/ROBERTS PARTNERSHIP, an Illinois Partnership; REBA L. MITCHELL, individually and as Trustee and Beneficiary of the Robert H. Mitchell Residual Trust; CARL INMAN, Independent Executor of the Estate of Russell J. Inman, Deceased; CAROL DEAN CRABTREE; ROBIN LYNNE KEE WILLIAMS; JOHN MILO KEE; J. EARL BALDWIN, Personal Representative of the Estate of Beverly B. Adams, Deceased; J. EARL BALDWIN, Personal Representative of the Estate of Katherine Baldwin, Deceased; and DAVID SENSENEY, Executor of the Estate of Marguerite Boos, Deceased (collectively, the "Subsidence Rights Claimants"), by and through their undersigned attorneys, state as follows:

1. On March 10, 2020, the Debtors filed their voluntary cases under Chapter 11 of the United States Bankruptcy Code.

2. Debtor Williamson Energy, LLC ("WE") and other Debtors mine coal as their principal business. Mining of coal is dependent on ownership of the right to do so. However, the right to mine coal is not a *carte blanche* right to impact the rights of the owners of the strata above the removed coal seam including the surface. In that respect, owners of the above strata (including the surface) also own the right of subjacent and sublateral support unless the right to subside was specifically granted and conveyed o the party mining the coal. If the owner of the coal in that context mines it, it must do so in a fashion so as not to subside the above strata. In other words, mining can be accomplished only by way of so-called room and pillar mining in which sufficient coal must remain in-place so as to support the strata above. By comparison, if the owner of the coal also holds the right to subside the above strata including the surface, it can use longwall mining, which has the planned effect of virtually subsiding the above strata.

3. The difference between room-and-pillar and longwall mining is significant in that the latter permits the owner of the coal to remove and recover substantially more coal per acre. In sum, the economic effect of longwall mining provides an unquestioned substantial benefit to the coal miner at the expense of the owners of the above strata including the surface.

4. On November 26, 2014, the Subsidence Rights Claimants filed an action against Debtor Williamson Energy, LLC ("WE"), as well as others not involved in these proceedings, seeking, *inter alia,* declaratory relief with respect to the construction of four (4) deeds under which George Roberts and his wife conveyed to Charles I Pierce the coal in and underlying 127 parcels of real property located in Southern Illinois (the "Pierce

2

Deeds"). That action was filed in the Circuit Court, Williamson County, Illinois under case number 14-MR-285 (the "State Court Case").[1]

5. The Pierce Deeds contained the following provision (the "Subsidence Provision") immediately following the legal description of 12 distinct parcels:

> TOGETHER with the right to mine, dig, and remove the coal therefrom and the right to dig the entire quantity or a less quantity of said real estate at the grantee's option, without leaving any support for the overlying strata, and without liability for any injury or damage which may result from the mining and removal of said coal, whether caused by the breaking of the said strata or otherwise, and to ventilate and drain the mines and said coal by such openings, shafts, drill holes, pipes, trenches, structures and appliances as are reasonably necessary and best adapted for such purposes, and the right to mine, ventilate and drain other lands and transport such other coal through and by means of the mines, openings, shafts, structures and appliances upon such lands, and the right to mine and remove so much of other minerals as may be desirable or necessary in order to properly mine and remove said coal.

6. No such provision appears in the Pierce deeds with respect to the remaining 115 parcels.

7. The Subsidence Provision applicable to 12 parcels has the effect of permitting the owner of the coal to subside the above strata and thereby impact the owners of such strata including the surface rights. As to the remaining 115 parcels, the owner of the coal has no such right.

8. Based on the foregoing, the Subsidence Rights Claimants contend that WE and other corporate defendants in the State Court Case have no right to subside the above strata and may not interfere with the Subsidence Rights Claimants' right to subjacent and

---

[1] Certain of the Plaintiffs are also parties to actions against WE for subsidence and other damages.

3

sublateral support with respect to 115 parcels conveyed in the Pierce Deeds. Consequently, WE and the other corporate defendants in the State Court Case are required to mine and remove the coal in and under such 115 parcels in such a fashion so as to provide subjacent and sublateral support. Having failed to support the above strata, WE and the other corporate defendants must compensate for damages sustained by the Subsidence Rights Claimants planned subsidence mining of the 115 parcels.

9. The matters at issue in the State Court Case touch on and concern only questions of Illinois law relative to property rights and construction of the Pierce Deeds.

10. On July 15, 2019, the Circuit Court entered judgment against the Subsidence Rights Claimants and in favor of the defendants. The Circuit Court construed the Pierce Deeds so as to render the Subsidence Provision applicable to all 127 parcels.

11. The Subsidence Rights Claimants appealed the Circuit Court's decision the State Court Case. The appeal has been fully briefed, and the Subsidence Rights Claimants intend to seek relief from the automatic stay so as to permit their appeal to be argued and fully concluded.

12. On March 11, 2020, this Court entered its *Interim Order (I)Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing* [Doc. 74] (the "Interim Order").

13. Among other things, the Interim Order purports to approve the Credit and Guaranty Agreement (the "DIP Credit Agreement") attached thereto as Exhibit 2.

14. The Subsidence Rights Claimants do not object to the Debtors' use of cash collateral, obtaining post-petition credit, grant of liens and security interests. However, neither the Interim Order nor any other Order or relief in these jointly administered cases should be a vehicle for enhancing or granting to the Debtors' property interests or licenses, including, without limitation, the property interests or rights of WE as derived from the Pierce Deeds. Nor should any such Order be deemed to grant any of the Debtors, including WE, any rights they did not hold as of the commencement of these Chapter 11 cases.

15. For example, in Article 5.06(b) of the DIP Credit Agreement, the Debtors represent that none of them is in violation of "any restriction of record or agreement affecting any Mortgaged Property . . . where such violation . . . could reasonably be expected to have, individually, or in the aggregate, a Material Adverse Effect." As stated above, absent a conveyance to them of the right of subjacent and sublateral support, the Debtors' ability to mine coal is significantly curtailed. Certainly, any representation of that nature by the Debtors should not be binding upon the Subsidence Rights Claimants, nor should it be deemed to confer on the Debtors rights that are non-existent.

16. In addition, Article 7.01 prohibits the Debtors from creating, incurring, assuming or permitting to exist any Lien upon any of their respective properties, other than, among other things Permitted Real Estate Encumbrances. That term is defined so as to include the right of subjacent and sublateral support, but is qualified such that it is among the "Permitted Real Estate Encumbrances" so long as it does not "materially detract from the value of any Mine subject thereto or interfere with the ordinary conduct

5

of the business or operations of [the Debtors] . . ." As stated above, absent a conveyance to a Debtor of the right to interfere with subjacent and sublateral support, the Debtors, including WE, cannot engage in longwall mining, and, instead, must limit their activities to room-and-pillar mining. Indeed, that limitation significantly curtails the amount of coal that can be mined and has attendant significant economic consequences to the Debtors.

17. It is beyond dispute that neither section 363 nor section 364 of the Bankruptcy Code contemplates relief that would somehow increase or enhance a bankruptcy estate's property interests. Insteads, property of the estate is both defined and circumscribed by section 541. In short, a case under the Bankruptcy Code is not a vehicle in which a debtor in possession can conjure up interests in property that did not exist as of the petition. So, too, in this case, the Debtors cannot under the auspices of use of cash collateral and post-petition financing attempt to enhance the extent of their respective interests in property.

18. In sum, the Subsidence Rights Claimants do not object to the Debtors' use of cash collateral or wish to impair the Debtors' ability to obtain post-petition financing. However, neither the use of cash collateral nor secured post-petition financing should be used to obtain or deemed to be an expansion of the Debtors' rights in property or to adversely affect or in any way diminish the rights and interests of the Subsidence Rights Claimants.

WHEREFORE, MITCHELL/ROBERTS PARTNERSHIP, an Illinois Partnership; REBA L. MITCHELL, individually and as Trustee and Beneficiary of the Robert H. Mitchell Residual Trust; CARL INMAN, Independent Executor of the Estate of

6

Russell J. Inman, Deceased; CAROL DEAN CRABTREE; ROBIN LYNNE KEE WILLIAMS; JOHN MILO KEE; J. EARL BALDWIN, Personal Representative of the Estate of Beverly B. Adams, Deceased; J. EARL BALDWIN, Personal Representative of the Estate of Katherine Baldwin, Deceased; and DAVID SENSENEY, Executor of the Estate of Marguerite Boos, Deceased, respectfully request and pray that any Order authorizing the Debtors' to use cash collateral, borrow funds, grant liens and adequate protection specifically provide that it does not increase or enhance the rights and interests of the Debtors in property or adversely affect or diminsh the rights and interests of the Subsidence Rights Claimants.

SILVER LAKE GROUP, LTD.

By: /s/ Steven M. Wallace
_____
Steven M. Wallace #35738
6 Ginger Creek Village Drive
Glen Carbon, IL 62034
Phone: (618) 692-5275
Fax: (888) 519-6101
Email: steve@silverlakelaw.com

Thomas DeVore
118 N. Second Street
Greenville, IL 62246
Phone: (618) 664-9439
Fax (618) 664-9486
Email: tom@silverlakelaw.com

Counsel to the Subsidence Rights Claimants

## Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing was served electronically this 30th day of March, 2020, via CM/ECF to all persons receiving notice through that system. The undersigned further certifies that a true and correct copy of the foregoing was served this 30th day of March, 2020, on all parties on the Debtors' most recent Master Notice list (a copy of which is attached hereto as Exhibit A) (a) by email, where email addresses are provided and (b) by the United States Postal Service, postage fully prepaid, in the event the most recent Master Notice List does not include an email address.

/s/ Steven M. Wallace
_____