## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related Docket No.:  4 |

**FINAL ORDER (A) AUTHORIZING CONTINUED USE OF THE
DEBTORS' EXISTING CASH MANAGEMENT SYSTEM; (B) AUTHORIZING
USE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS;
(C) GRANTING A LIMITED WAIVER OF THE REQUIREMENTS OF SECTION
345(b) OF THE BANKRUPTCY CODE; (D) AUTHORIZING CONTINUATION OF
ORDINARY COURSE INTERCOMPANY TRANSACTIONS; (E) GRANTING
ADMINISTRATIVE EXPENSE PRIORITY STATUS TO POSTPETITION
INTERCOMPANY CLAIMS; AND (F) GRANTING RELATED RELIEF**

Upon the Motion[1] of Foresight Energy LP and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") requesting entry of a final order (this "Final Order"), pursuant to sections 105(a), 363, 345(b), and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing and approving the Debtors to continue using their Cash Management System; (b) authorizing the Debtors to continue using their Bank Accounts listed on **Exhibit 1** attached hereto at the Banks and existing checks; (c) partially waiving the requirements of section 345(b) of the Bankruptcy Code; (d) authorizing the continuation of ordinary course Intercompany Transactions and the payment of Intercompany Claims; (e) granting administrative expense priority status to postpetition Intercompany Claims pursuant to section 503(b)(1) of the Bankruptcy Code; and (f) granting related relief, all as more

---

[1]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

fully described in the Motion; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri; and it appearing that venue of the Debtors' chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion; and upon consideration of the First Day Declarations; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is **granted** to the extent set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a), 345(b), 363, and 503(b)(1), to continue using the Cash Management System and to continue all Intercompany Transactions and pay all Intercompany Claims in a manner consistent with the Debtors' prepetition practices, as described in the Motion.  The Debtors may transfer funds into, out of, and through the Cash Management System, using ordinary transfer methods in accordance with the Debtors' prepetition practices.  Without limiting the generality of the foregoing, each Debtor is authorized to (a) designate, maintain, and continue to use, with the same account numbers, all of its Bank Accounts in existence on the Petition Date, including those accounts identified on **Exhibit 1** to

this Final Order, (b) treat each Bank Account for all purposes as an account of a Debtor in its capacity as debtor in possession, and (c) use, in their present form, all Business Forms, without reference to their status as debtors in possession.

3.     Each Bank is authorized to continue to service and administer its respective Bank Accounts as a depository account of a Debtor as debtor-in-possession, without interruption and in the usual and ordinary course of business, and to receive, process, honor, and pay, in accordance with this Final Order, any or all checks, drafts, wires or electronic funds transfers drawn on such Bank Accounts, including such items issued before the Petition Date to the extent authorized by this Final Order or a further order of this Court.

4.     Except for those checks, drafts, wires, or electronic funds transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account before the Petition Date but presented to such Bank for payment after the Petition Date.

5.     Each Bank is authorized to accept and rely upon, without further inquiry, all representations from a Debtor as to which checks, drafts, wires, or electronic funds transfers are dated before, on, or after the Petition Date and which checks are to be honored or dishonored, regardless of whether or not such payment or honoring is or is not authorized by an order of the Court.  No Bank shall incur, and each is hereby released from, any liability for relying upon a Debtor's instruction as to which checks, drafts, wires, or electronic funds transfers should be honored or dishonored or for such Bank's inadvertence in honoring any check, draft, wire, or electronic funds transfer at variance from a Debtor's instructions unless such inadvertence constituted gross negligence or willful misconduct on the part of such Bank.  Each Debtor shall promptly provide a list of checks to each Bank for each Bank Account maintained at such Bank,

specifying by check sequencing number, dollar amount, and payee information those checks that are to be dishonored by such Bank, which checks may include those issued after the Petition Date as well as those issued before the Petition Date that are not to be honored or paid according to any order of the Court, and each Bank may honor all other checks or other items.

6.       Notwithstanding anything to the contrary herein, no Bank shall be obligated to honor any check or other payment item drawn on a Bank Account at such Bank unless there are sufficient and collected funds in such Bank Account.

7.       The Debtors and each Bank are hereby authorized to continue to perform pursuant to the terms of any prepetition agreement that exists between them relating to any Bank Account, or other cash management service relating to the Cash Management System, except to the extent expressly prohibited by this Final Order, and the parties to such agreements shall continue to enjoy the rights, benefits, liens, offset rights, privileges, and remedies afforded them under such agreements except to the extent expressly modified by the terms of this Final Order.

8.       The Debtors are authorized to pay or reimburse the Banks for any Bank Fees associated with the maintenance and use of the Bank Accounts, whether arising or incurred before or after the Petition Date.

9.       Each Bank is authorized to continue to deduct from, and to exercise rights of offset against, the appropriate Bank Accounts the Bank Fees owed to such Bank pursuant to the terms of any prepetition agreement that exists between such Bank and any Debtor with respect to any indebtedness owed by a Debtor to such Bank that arises out of or relates to the Cash Management System, regardless of whether such indebtedness was incurred or arose before or after the Petition Date and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including, without limitation,

returned items that result from ACH transfers, wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers. To the extent that a Bank's exercise of any of the rights or remedies granted under this Final Order, including the right of setoff recognized in this paragraph, would constitute a violation of the automatic stay imposed by section 362 of the Bankruptcy Code, such stay is hereby modified to the extent necessary to permit the Banks to exercise such rights and remedies.

10.     This Final Order shall apply to any and all Bank Accounts in, or linked to, the Cash Management System, regardless of whether all such Bank Accounts are listed on **Exhibit 1** attached hereto. Any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account subject to this Final Order as if each such account had been opened before the Petition Date and listed on **Exhibit 1** hereto, and each Bank at which such an account is opened shall similarly be subject to this Final Order.

11.     For Banks that are not parties to a uniform depository agreement, the Debtors shall direct such Banks to internally code the Debtors' bank accounts as "debtor-in-possession" accounts.

12.     For Banks at which the Debtors hold accounts that are not party to a uniform depository agreement with the U.S. Trustee, the Debtors shall use their reasonable efforts to cause such Banks to execute a uniform depository agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Final Order. If the Debtors are unsuccessful in causing each such Bank to execute a uniform depository agreement, the Debtors shall make other arrangements with the U.S. Trustee that are reasonably satisfactory to the U.S. Trustee with respect

to such Bank and the Debtors' accounts at such Bank.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that any Bank is unwilling to execute a uniform depository agreement in a form prescribed by the U.S. Trustee are fully reserved.

13.     The Debtors are authorized, subject to the reasonable consent of the Required Lenders (as defined in the DIP Orders), to open any new bank accounts, close any existing Bank Accounts, make such other ordinary course changes, and enter into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided* that (a) the opening, closing, or use of any such Bank Account is not prohibited or restricted by the terms of any approved debtor-in-possession financing facility and (b) the Debtors give notice of the closing of any Bank Accounts or the opening of any new bank accounts within fifteen (15) days thereafter to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases.

14.     The Debtors are authorized to use their existing Business Forms; *provided* that once the Debtors' existing check stock has been exhausted, the Debtors shall include, or direct others to include, the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all checks as soon as it is reasonably practicable to do so.

15.     The Debtors are authorized to deposit and invest their cash and cash equivalents in the Bank Accounts consistent with their prepetition practices and the Cash Management System.  The Debtors are relieved from the obligations under section 345(b) of the Bankruptcy Code and the requirements of the U.S. Trustee Guidelines to obtain a bond from any entity with which money is deposited or maintained in the Bank Accounts.

16.     The Debtors are authorized to maintain the Credit Card Program issued by AMEX in connection with the Cash Management System, in their discretion and in the ordinary

course of business, and to the extent necessary for the Credit Card Program, AMEX shall be considered a Bank in this Final Order.

17.     The Debtors are authorized to continue utilizing the Cash Management System to engage in Intercompany Transactions, subject to the terms set forth in this Final Order, in the ordinary course of business and to honor any prepetition and postpetition Intercompany Claims arising from the same; *provided that* the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during these chapter 11 cases such that all Intercompany Transactions may be readily ascertained, traced, and recorded properly on applicable intercompany accounts and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions; *provided*, *further* that, without the prior consent of the Required Lenders, the Debtors shall not pay any prepetition or postpetition obligations owed to Murray on account of the Management Services Agreement prior to entry of a final order authorizing the Debtors' entry into or assumption of an amended Management Services Agreement acceptable to the Required Lenders.

18.     The Debtors shall not be authorized by this Final Order to undertake any Intercompany Transactions or set off mutual postpetition obligations relating to intercompany receivables and payables that are (a) not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course of business during the prepetition period or (b) prohibited or restricted by the terms of the DIP Orders (as defined below).   Any Intercompany Claims against the Debtors arising from the Intercompany Transactions are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, subject and junior to the claims, including adequate protection claims, granted pursuant to the DIP Orders.

19.     The Debtors shall maintain a matrix summarizing any Intercompany Transactions with (a) Debtor entities that are not obligors under the Prepetition First Lien Credit Agreement (as defined in the DIP Orders), other than Foresight Receivables LLC (such entities, the "Non-Obligor Entities") and (b) non-Debtor affiliates, the amount paid on account of such Intercompany Transactions, and the parties to such Intercompany Transactions, and shall provide such matrix on a monthly basis to counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Crossover Group (each, as defined in the Restructuring Support Agreement), and counsel to the Official Committee of Unsecured Creditors (the "Committee").  Such matrix shall distinguish between prepetition and postpetition Intercompany Transactions with Non-Obligor Entities and non-Debtor affiliates.

20.     Notwithstanding anything in the Motion or this Final Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (a) the orders approving the Debtors' use of cash collateral and/or postpetition debtor-in-possession financing facilities (collectively, the "DIP Orders"); (b) other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; (c) the Budget (as defined in the DIP Orders); and (d) the terms and conditions set forth in the Restructuring Support Agreement (as defined in the DIP Orders).  To the extent there is any inconsistency between the terms of any of the DIP Orders and this Final Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

21.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, continuation, priority, enforceability,

or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

22.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing contained in the Motion or this Final Order or any payment made pursuant to this Final Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity or priority of any claim (including Intercompany Claims) or lien (or the priority thereof) against the Debtors, (b) a waiver of the Debtors' or any party in interest's rights, to subsequently dispute or contest such claim or lien on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion, (e) a request or authorization to assume or adopt any agreement, contract, or lease under section 365 of the Bankruptcy Code or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or applicable law.

23.     Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective upon its entry.

25.     No later than two (2) business days after the date of this Final Order, the Debtors shall serve on the Notice Parties a copy of the Final Order and shall file a certificate of service no later than twenty-four (24) hours after service.

KATHY A. SURRATT-STATES
Chief U.S. Bankruptcy Judge

DATED:  April 7, 2020
St. Louis, Missouri
jjh

**Order Prepared By:**

Richard W. Engel, Jr., MO 34641
John G. Willard, MO 67049
Kathryn R. Redmond, MO 72087
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile:  (314) 621-2239
Email: rengel@atllp.com
        jwillard@atllp.com
        kredmond@atllp.com


Paul M. Basta (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Alexander Woolverton (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019
Tel:     (212) 373-3000
Fax:     (212) 757-3990
Email:  pbasta@paulweiss.com
        aeaton@paulweiss.com
        awoolverton@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit 1

### Schedule of Bank Accounts[1]

| No. | Entity | Bank Name | Account Type | Account No. (Ending) |
|---|---|---|---|---|
| 1. | Foresight Energy LLC | The Huntington National Bank | Concentration | 9601 |
| 2. | Foresight Receivables LLC | The Huntington National Bank | Receipts | 6973 |
| 3. | Foresight Energy LLC | The Huntington National Bank | Receipts | 6694 |
| 4. | Foresight Energy LLC | The Huntington National Bank | Disbursements – Accounts Payable | 6681 |
| 5. | Foresight Energy LLC | The Huntington National Bank | Disbursements – Payroll | 8214 |
| 6. | Foresight Energy Services LLC | The Huntington National Bank | Disbursements – Payroll | 6539 |
| 7. | MaRyan Mining LLC | CNB Bank & Trust, N.A. | Petty Cash | 4605 |
| 8. | Mach Mining LLC | First Southern Bank | Petty Cash | 4129 |
| 9. | Hillsboro Energy LLC | The Huntington National Bank | Operating | 5031 |
| 10. | Patton Mining LLC | CNB Bank & Trust, N.A. | Petty Cash | 6394 |
| 11. | Foresight Energy LP | F.N.B. Wealth Management | Collateral | 7011 |

---

[1]    Any relief or waivers authorized in this Final Order with respect to the Bank Accounts and the Banks shall also apply, solely to the extent necessary and for the avoidance of doubt, to (a) the Bank Account (x020) in the name of Foresight Energy LLC and maintained with Morgan Stanley Smith Barney LLC and (b) the Bank Account (x5635) in the name of Mach Mining, LLC and maintained with First Southern Bank.