**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Objection Deadline: April 8, 2020, |
| | ) | Hearing Date: April 8, 2020 |
| | ) | Hearing Time: 11:00 a.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION FOR AN ORDER**
**(A) APPROVING AGREEMENT BETWEEN DEBTORS AND JAVELIN**
**GLOBAL COMMODITIES (UK) LTD AND (B) GRANTING RELATED RELIEF**

Foresight Energy LP ("FELP") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1. By this Motion, the Debtors seek entry of an order[1], pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9019 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) approving the *Settlement Agreement* (the "Settlement Agreement")[2] by and among certain of the Debtors and Javelin Global Commodities (UK) Ltd ("Javelin") and (b) granting related relief.

**Jurisdiction and Venue**

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B) of the Local Rules of the United States District Court for the

---

[1] A copy of the proposed order will be made available on the Debtors' case information website at: http://cases.primeclerk.com/foresightenergy.

[2] A copy of the Settlement Agreement is attached hereto as Exhibit A.

Eastern District of Missouri. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 9019 and 6004.

## Background

4. On March 10, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and their cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. On March 17, 2020, the Office of the United States Trustee for Region 13 (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

5. Additional information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the (a) *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* [Docket No. 17], (b) *Declaration of Alan Boyko, Senior Managing Director of FTI Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18], and (c) *Declaration of Seth Herman in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying*

*the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 29, Ex. B] ((a)–(c) together, the "First Day Declarations"), each filed on the Petition Date.

**The Agreements with Javelin**

6. As discussed in the First Day Declarations, and specifically explained in the Debtors' Coal Sale Contracts Motion,[3] the Debtors export substantial quantities of coal to their international end-users through their existing coal marketing and sales arrangements with Javelin. As a part of the Debtors' overall restructuring efforts, the Debtors have been engaged in good faith, arm's-length negotiations with Javelin regarding the terms under which Javelin would commit to continue serving as the Debtors' offtaker and purchaser of coal for purposes of selling to international end-users. The Debtors and Javelin are in the process of finalizing a comprehensive agreement encompassing the terms of such a relationship with the Debtors (and, ultimately, the reorganized Debtors), as well as the settlement of certain claims asserted by the Debtors against Javelin and vice versa.

7. The agreements among Javelin and the Debtors are expected to encompass the following five agreements (collectively, the "Javelin Arrangement"):

(i) Master Agreement. The *Second Amended and Restated Master Coal Purchase and Sale Agreement* between Javelin, Foresight Coal Sales LLC ("FCS"), Uniper Global Commodities UK Limited ("Uniper"), and FELP.

(ii) Parent Guarantee. The *Amended and Restated Parent Company Guarantee*, pursuant to which FELP would guarantee FCS's liabilities under the Master Agreement to Uniper in the event Javelin novates its obligations thereunder to Uniper.

(iii) Marketing Agreement. The *Coal Marketing Agreement*, by and among Javelin, FCS and FELP.

---

[3] The "Coal Sales Contracts Motion" is the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Perform under Existing Coal Sale Contracts In the Ordinary Course of Business and (II) Enter Into and Perform under New Coal Sale Contracts in the Ordinary Course of Business and (B) Granting Related Relief*, dated March 10, 2020 [Docket No. 8], with an interim order approving such motion entered on March 13, 2020 [Docket No. 117] (the "Interim Coal Sales Contracts Order").

3

    (iv)    <u>Settlement Agreement</u>.  The Settlement Agreement by and among Javelin, FCS and FELP.

    (v)    <u>DIP Facility</u>.  The *Senior Secured Superpriority Debtor-in-Possession Credit and Guaranty Agreement*, among Foresight Energy LLC, the guarantors party thereto, Cortland Capital Market Services LLC, as Administrative Agent and Collateral Agent, the other lenders party thereto, and the Designated Coal Contract Counterparties (as defined therein) a party thereto.

8.    The Javelin Arrangement is an integral and crucial component of the Debtors' reorganization efforts, and moreover, is necessary for the Debtors to ensure continued profitable mining operations at their Williamson mining complex, which sells almost all of its coal to international end-users through the Debtors' existing relationship with Javelin.  The Debtors believe that, under the Interim Coal Sales Contracts Order, the Debtors have the authority to enter into the Master Agreement, Parent Guarantee and the Marketing Agreement as "Coal Sales Contracts", as such term is defined in the Coal Sales Contracts Motion, as they are each agreements directly relating to the purchase and sale of the Debtors' coal.[4]  Moreover, the Debtors intend to propose certain amendments to the DIP Facility in connection with submission of the proposed final order approving the DIP Facility (the "<u>Proposed Final DIP Order</u>"), which will provide for, among other things, treatment of Javelin and Uniper as "Designated Coal Contract Counterparties," as defined in the Proposed Final DIP Order and DIP Facility, and the obligations owing to Javelin and Uniper under the Master Agreement, Parent Guarantee, and Marketing Agreement as "DIP Secured Designated Coal Contract Obligations," which will provide that such obligations are entitled to *pari passu* treatment with the DIP Obligations (as defined in the Proposed Final DIP Order).

9.    The Debtors have determined, in the reasonable exercise of their sound business judgment, to also enter into and implement the Settlement Agreement.  The Settlement

---

[4] To the extent necessary, the proposed final order approving the Coal Sales Contracts Motion will include express, clarifying language with respect to the Debtors' ability to enter into the Javelin Arrangement.

4

Agreement seeks to settle key issues between the Debtors and Javelin relating to their pre-existing relationship.  In summary, Javelin asserted that certain demurrage costs incurred in connection with Javelin's pre-existing relationship with the Debtors were actually the Debtors' obligation to pay under the appropriate prepetition arrangements.  The Debtors disputed this assertion on both contractual and legal grounds, with the result of this dispute being Javelin withholding the disputed amounts until an appropriate agreement was reached between the parties.  Given this dispute, the Settlement Agreement proposes to clarify through agreement and compromise the respective obligations between the Debtors and Javelin, which will ultimately unlock Javelin's payment of amounts outstanding and owing to the Debtors.  Accordingly, the key terms of the Settlement Agreement include, among other things:

- A reconciliation of the amounts, as of the Petition Date, owing from Javelin to the Debtors and from the Debtors to Javelin under the Debtors' existing arrangement with Javelin, which provides that Javelin's payable to the Debtors will be offset and reduced by $3,187,976.69, primarily arising from demurrage fees owed by the Debtors to Javelin arising from Javelin's shipment of the Debtors' coal.

- With the above offset, Javelin's owed and payable amounts to the Debtors, as of the Petition Date, shall be fixed at $3,991,488.64 (the "Settlement Amount").

- On the first business day after approval of the Settlement Agreement, Javelin will pay to the Debtors the Settlement Amount, which will be deemed (subject to performance of the covenant below) a full and final satisfaction of the obligations due and owing between the Debtors and Javelin as of the Petition Date.

- A covenant by the Debtors to (a) assume the agreements under the Javelin Arrangement in connection with a proposed chapter 11 plan of reorganization, and (b) ensure that the treatment Javelin receives under the DIP Facility is preserved under the Debtors' proposed exit financing facility.

- If the covenant above is performed, then Javelin's agreement to waive any additional prepetition amounts purportedly owed by the Debtors to Javelin.

10. The Settlement Agreement—and the Javelin Arrangement as a whole—represents an integral component of the Debtors' overall restructuring, as it is necessary to secure their ability to sell their coal to international end-users, which comprises a material portion of the

5

Debtors' overall coal sales revenue. Without the Settlement Agreement, the Debtors may not be able to obtain the expected benefits of the Master Agreement and Marketing Agreement, which would present unnecessary and avoidable risks to their restructuring objectives.

### The Settlement Agreement Satisfies Bankruptcy Rule 9019 and Is a Reasonable Exercise of the Debtors' Business Judgment

11. Bankruptcy Rule 9019(a) provides that "on motion by the [debtor] and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "Compromises are a 'normal part of the process of reorganization.'" *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) (*quoting Case* v. *Los Angeles Lumber Prods. Co.*), 308 U.S. 106, 130 (1939)). Compromises such as the Settlement Agreement allow "the [debtors] and the creditor[s] to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re Walsh Constr. Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *accord In re A&C Props.*, 784 F.2d 1377, 1381 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986) ("[t]he law favors compromise and not litigation for its own sake").

12. A decision to approve a proposed settlement under Bankruptcy Rule 9019 is committed to the discretion of the bankruptcy judge. *In re Ritchie Cap. Mgmt., L.L.C.*, 785 F.3d 273, 278 (8th Cir. 2015); *In re Flight Transp. Sec. Litig.*, 730 F.2d 1128, 1135-36 (8th Cir. 1984), *cert denied sub nom. Reavis & McGrath* v. *Antinore*, 469 U.S. 1207 (1985). In evaluating a settlement, a bankruptcy court must consider "all of the factors bearing on the fairness of the settlement including: '(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.'" *In re Petters Co., Inc.*, 455 B.R. 166, 175 (8th Cir. B.A.P. 2011) (quoting *Flight Transp. Corp.*, 730 F.2d at 1135);

6

*see also Tri-State Fin., LLC* v. *Lovald*, 525 F.3d 649, 654 (8th Cir. 2008); *Drexel* v. *Loomis*, 35 F.2d 800, 806 (8th Cir. 1929). To be approved, a settlement need not be perfect. *Petters Co.*, 455 B.R. at 175. Rather, it must merely "not fall below the lowest point in the range of reasonableness." *Id.*; *see also Ritchie Cap. Mgmt.*, 785 F.3d at 278 (*quoting Tri-State Fin.*, 525 F.3d at 654); *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

    13. The Debtors also seek authority under section 363 of the Bankruptcy Code to execute and perform their obligations under the Settlement Agreement. *See* 11 U.S.C. § 363(b)(1). The Settlement Agreement has a sound business purpose and represents a valid exercise of the Debtors' business judgment. Accordingly, the Debtors should be authorized to perform under the Settlement Agreement under section 363(b) of the Bankruptcy Code. *See, e.g.*, *Meyers* v. *Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a debtor's business judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (same); *In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3 to *4 (Bankr. W.D. Mo. Aug. 31, 2010) ("The decision to enter into an agreement out of the ordinary course of a debtor's business is to be based on the reasonable business judgment of the debtor.") (internal citation omitted).

    14. The Debtors may also be authorized to perform the Settlement Agreement under section 105(a) of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."); *see also Chinichian* v. *Campolongo*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531,

7

537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

15. The Settlement Agreement is the product of good faith, arm's-length negotiations between the parties and represents a sound exercise of the Debtors' business judgment. The Settlement Agreement will facilitate the Debtors' goals in these chapter 11 cases by providing for an immediate infusion of cash into the Debtors' estates and facilitate entry into a long-term coal sales agreement with Javelin, thereby increasing the likelihood that the Debtors' restructuring is ultimately successful. This new Javelin Arrangement provides terms that the Debtors consider favorable under the circumstances and necessary to maintain profitable mining operations at the Williamson mining complex, and ensures that the Debtors will be able to continue selling coal internationally. Accordingly, in the absence of the settlement embodied in the Settlement Agreement, the Debtors would not be able to obtain the benefits of the Javelin Arrangement, and moreover, would not be able to ensure a productive and beneficial go-forward relationship with Javelin.

16. Given, therefore, the benefits of the Settlement Agreement, and the overall benefits to the Debtors' estates of the Javelin Arrangement, the Debtors submit that the Settlement Agreement is fair and reasonable under the circumstances, and the Debtors' entry into the Settlement Agreement is a valid and reasonable exercise of their business judgment. Accordingly, the Settlement Agreement satisfies the standards for approving settlements under Bankruptcy Rule 9019 and the requirements sections 105(a) and 363(b) of the Bankruptcy Code, and should be approved.

**Waiver of Bankruptcy Rule 6004(h)**

17. The Debtors respectfully request the waiver of the fourteen (14) day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). For the reasons described above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

**Notice**

18. Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) the Creditors' Committee; (k) counsel to Murray Energy Corporation; (*l*) counsel to Reserves; (m) counsel to Javelin; (n) counsel to Uniper; (o) the Internal Revenue Service; (p) the Securities and Exchange Commission; (q) the United States Attorney's Office for the Eastern District of Missouri; (r) the state attorneys general for all states in which the Debtors conduct business; (s) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request entry of the Settlement Agreement granting the relief requested herein and such other relief as is just and proper.

Dated: April 7, 2020
       St. Louis, Missouri

Respectfully submitted,

ARMSTRONG TEASDALE LLP

 /s/  Richard W. Engel, Jr.
Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn Redmond (MO 72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:   (314) 621-5070
Fax:  (314) 621-5065
Email: rengel@atllp.com
       jwillard@atllp.com
       kredmond@atllp.com

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Alexander Woolverton (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Tel:   (212) 373-3000
Fax:  (212) 757-3990
Email: pbasta@paulweiss.com
       aeaton@paulweiss.com
       awoolverton@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

**Settlement Agreement**

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT (this "Agreement"), dated as of April [●], 2020, is made by and among Javelin Global Commodities (UK) LTD, a United Kingdom limited company ("Javelin"), Foresight Coal Sales LLC, a Delaware limited liability ("FCS") and Foresight Energy LP, a Delaware limited partnership ("FELP"; together with FCS, the "Foresight Entities"). Javelin and the Foresight Entities are herein referred to as the "Parties" or each a "Party".

W I T N E S S E T H

A.  The Foresight Entities and their affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court" and such cases, the "Chapter 11 Cases"), on March 10, 2020 (the "Petition Date").

B.  FCS is obligated to Javelin under the Coal Marketing Agreement among Javelin, Murray Energy Corporation ("MEC"), and The American Coal Sales Company ("ACSC"), dated June 13, 2015 (the "Original Javelin-MEC Coal Marketing Agreement") (as amended, restated, or otherwise modified form time to time, the "Prepetition Marketing Agreement").  Pursuant to the Prepetition Marketing Agreement, certain of the Foresight Entities utilized Javelin's services for international marketing and exporting of the Foresight Entities' coal.

C.  As of the Petition Date, Javelin asserts that FCS owes Javelin $487,976.69 under the Prepetition Marketing Agreement (the "Foresight Prepetition Marketing Agreement Obligations").

D.  FELP, FCS, Javelin and Uniper Global Commodities UK Limited ("Uniper") are party to the Amended and Restated Master Coal Purchase and Sale Agreement, dated January 1, 2019 (as amended, restated, or otherwise modified form time to time, including pursuant to any confirmation entered into thereunder, the "Prepetition Master Agreement").

E.  As of the Petition Date, (i) Javelin asserts that FCS owes Javelin $6,210,463.67 under the Prepetition Master Agreement (the "Foresight Prepetition Master Agreement Obligations"; collectively with the Foresight Prepetition Marketing Agreement Obligations, the "Prepetition Foresight Obligations") and (ii) FCS asserts that Javelin owes FCS $7,179,465.33 under the Prepetition Master Agreement (the "Prepetition Javelin Obligations").

F.  In settlement of the asserted Prepetition Foresight Obligations and the asserted Prepetition Javelin Obligations, the Parties have mutually agreed to reduce the Prepetition Foresight Obligations by $3,187,976.69 (the "Agreed Reduction"), the difference between the Prepetition Javelin Obligations and the Agreed Reduction being $3,991,488.64 (such difference, the "Settlement Amount"), and the difference between the Prepetition Foresight Obligations and the Agreed Reduction being $3,510,463.67 (the "Additional Amount").

G. In connection with the Chapter 11 Cases, the Foresight Entities wish to resolve the Prepetition Javelin Obligations and the Prepetition Foresight Obligations on the terms set forth in this agreement.

H. After the Petition Date, the Foresight Entities and Javelin have entered into (i) that certain Amended and Restated Master Coal Purchase and Sale Agreement, dated as of April [●], 2020, by and among Javelin, Uniper and the Foresight Entities (together with all confirmations thereunder (including, for the avoidance of doubt, confirmations that were entered into under the Prepetition Master Agreement) and as amended, restated, supplemented, or otherwise modified from time to time and including any attachments thereto, the "Postpetition Master Agreement"), (ii) that certain Coal Marketing Agreement, dated as of April [●], 2020, by and among Javelin and the Foresight Entities (as amended, restated, supplemented, or otherwise modified from time to time and including any attachments thereto, the "Postpetition Marketing Agreement") and (iii) that certain Amended and Restated Parent Company Guarantee, dated as of April [●], 2020 (as amended, restated, supplemented, or otherwise modified from time to time and including any attachments thereto, and together with the Postpetition Master Agreement and the Postpetition Marketing Agreement, the "Postpetition Agreements").

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party hereby agrees as follows:

1. **Court Approval/Effective Date.** This Agreement is subject to the approval of the Bankruptcy Court and shall be effective on the date that the Bankruptcy Court enters an order, in form and substance agreeable to the Parties, approving the Agreement (the "Effective Date").

2. **Set-Off of Claims; Net Javelin Payable**. The Parties hereto agree that, on the Effective Date, Javelin shall be authorized reduce the Prepetition Javelin Obligations by the Agreed Reduction. On the first business day after the Effective Date, Javelin shall pay to FCS the Settlement Amount, which payment shall, subject to Section 5, be deemed to satisfy and extinguish in full all Prepetition Foresight Obligations and Prepetition Javelin Obligations.

3. **Ownership of Claims**. Each Party expressly warrants, represents, and covenants, for the benefit of the other Party, that such Party is the legal and equitable owner and holder of its Claims enumerated in this Agreement, and it has never assigned or transferred to any person or entity any such Claims.

4. **Foresight Entity Covenants**. The Foresight Entities hereby agree and covenant to use commercially reasonable efforts to obtain the following relief in the Chapter 11 Cases:

   a) Confirmation of a Chapter 11 plan, filed by or on behalf of the Debtors, that provides that, upon the effective date of such plan, the Foresight Entities shall assume the Postpetition Agreements and shall assign the Postpetition Agreements to a new holding company formed by the Foresight Entities for the purposes of emerging from the Chapter 11 Cases (the "New Agreements"); and

   b) Confirmation of a Chapter 11 plan, filed by or on behalf of the Debtors, that provides that, upon the effective date of such plan, each "DIP Secured Designated

2

Coal Contract Counterparty" (as defined in that certain [*Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* approved by the Bankruptcy Court on April [●], 2020] (the "Final DIP Order")) shall be designated as a "Secured Designated Coal Contract Counterparty" on terms and conditions consistent with that certain *Senior Secured Superpriority Debtor-In-Possession Credit and Guaranty Agreement among Foresight Energy LLC ("FELLC"), FELP and certain subsidiaries of FELLC, Cortland Capital Market Services LLC, the Other Lenders party thereto and the Designated Coal Contract Counterparties party thereto*, dated as of March 11, 2020 (as amended by that certain Amendment No. 1 thereto, and as further amended, restated, supplemented or otherwise modified, the "DIP Credit Agreement") and the other DIP Documents (as defined in the Final DIP Order and as amended by agreements contemplated by clause (a)), under the Exit Facility Credit Agreement (as defined in such plan) and granted a first priority lien *pari passu* with the Exit Facility Loans made by the Exit Facility Lenders (each as defined in such plan) in connection with the obligations arising under the New Agreements.

5. **Treatment of the Settlement Amount & Agreed Reduction.** In the event the relief described in Section 4 is granted or agreed to, as the case may be, Javelin agrees to waive all rights to receive the Additional Amount. In the event that the relief described in Section 4 is not granted or agreed to, as the case may be, then Javelin shall be entitled to pursue the Additional Amount, it being understood that nothing in this Agreement relieves Javelin of any obligation to file a proof of claim in the Chapter 11 Cases in compliance with any order entered by the Bankruptcy Court establishing a deadline by which parties in interest must file proofs of claim.

6. **No Admission.** This Agreement is not intended to be and shall not be construed as an admission by any Party of any liability by such Party.

7. **Governing Law; Submission to Jurisdiction; Selection of Forum.** This Agreement (and any claims or cause of action arising under, out of or in connection with this Agreement, whether in contract, tort or statute) shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed in such state, without giving effect to the conflict of laws principles thereof. Each of the Parties irrevocably and unconditionally agrees that, subject to the immediately following sentence of this Section 7, any legal action, suit or proceeding against it with respect to any matter arising under, out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought before any state or federal court of competent jurisdiction in New York County, State of New York, and by execution and delivery of this Agreement, each of the Parties: (a) irrevocably submits itself to the nonexclusive jurisdiction of such court, (b) waives any objection to laying venue in any such action, suit or proceeding and (c) waives any objection that such court is an inconvenient forum or does not have jurisdiction over such Party. Notwithstanding the foregoing consent to jurisdiction in either a state or federal court of competent jurisdiction in the State and County of New York each of the Parties hereby agrees that, for as long as the Chapter 11 Cases are

3

pending, the Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of or in connection with this Agreement.  Each Party agrees that it shall bring any action or proceeding in respect of any claim arising under, out of or in connection with this Agreement, to the extent possible, in the Bankruptcy Court, and solely in connection with claims arising under this Agreement:  (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party.

8. **WAIVER OF JURY TRIAL**.  EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY OF THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH SUCH PARTY CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (B) EACH SUCH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) EACH SUCH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (D) EACH SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 8.

9. **Further Assurances**.  Each of the Parties shall use its commercially reasonable efforts to take, or cause to be taken, at its expense, all actions necessary or appropriate and proceed diligently and in good faith to evidence, confirm and give full effect to this Agreement.

10. **Severability.**  If any provision of this Agreement is determined to be illegal, invalid or unenforceable, such provision shall be fully severable and the remaining provisions shall remain in full force and effect and shall be construed without giving effect to the illegal, invalid or unenforceable provisions.

11. **Entirety.**  This Agreement represents the entire agreement of the parties hereto and thereto, and supersedes all prior agreements and understandings, oral or written relating to the transactions contemplated herein.

[*The remainder of this page is intentionally left blank*.]

IN WITNESS WHEREOF, the Parties have executed and delivered, or caused the execution and delivery of, this Agreement as of the date first written above.

JAVELIN GLOBAL COMMODITIES (UK) LTD

By:

Name:

Title:

[*Signature Page to Settlement Agreement*]

FORESIGHT COAL SALES LLC


By:

Name:

Title:


FORESIGHT ENERGY LP


By:

Name:

[*Signature Page to Settlement Agreement*]