## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Objection Deadline:  May 7, 2020, at |
| | ) | 11:59 p.m. (prevailing Central Time) |
| | ) | Hearing Date & Time:  May 14, 2020, at |
| | ) | 10:00 a.m. (prevailing Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE
ADEQUACY OF THE DISCLOSURE STATEMENT AND SOLICITATION
PROCEDURES, (B) SCHEDULING A HEARING ON CONFIRMATION
OF THE PLAN, (C) ESTABLISHING PROCEDURES FOR OBJECTING TO THE
PLAN, (D) APPROVING THE FORM, MANNER, AND SUFFICIENCY OF NOTICE
OF THE CONFIRMATION HEARING, AND (E) GRANTING RELATED RELIEF**

Foresight Energy LP and its affiliated debtors and debtors in possession in the
above-captioned cases (collectively, the "Debtors") respectfully state as follows in support of
this motion (this "Motion"):

### Relief Requested

1.      By this Motion, the Debtors seek entry of an order (the "Proposed
Order"),[1] pursuant to sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code
(the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3017, 3018, and 3020 of the Local
Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Bankruptcy
Rules"):

---

[1]    A copy of the Proposed Order will be made available on the Debtors' case information website at:
http://cases.primeclerk.com/foresightenergy.

a. approving the adequacy of the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors*, dated April 9, 2020 [Docket No. 269] (as amended, modified, or supplemented from time to time, the "Disclosure Statement")[2] and notice of the hearing and objection deadline to the same;

b. approving the solicitation procedures set forth herein (the "Solicitation Procedures") with respect to the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors*, April 9, 2020 [Docket No. 269, Exhibit A] (as amended, modified, or supplemented from time to time, the "Plan"),[3] including approving the Solicitation Packages and the form of Ballot (each, as defined herein), establishing a voting record date and voting deadline, and approving the vote tabulation procedures;

c. scheduling a hearing (the "Confirmation Hearing") to consider confirmation of the Plan;

d. establishing deadlines to (i) object to confirmation of the Plan (the "Objection Deadline) and (ii) file a brief in support of confirmation of the Plan and reply to any objections (the "Reply Deadline");

e. approving the form and manner of notice of the Confirmation Hearing; and

f. granting related relief.

2. The following table provides certain and proposed dates related to the confirmation schedule requested by this Motion (subject to the Court's calendar):[4]

| Event | Date |
|---|---|
| **Voting Record Date** | May 11, 2020 |
| **Disclosure Statement Hearing** | May 14, 2020, at 10:00 a.m. (prevailing Central Time) |
| **Commencement of Solicitation and Mail Notice of Confirmation Hearing** | May 18, 2020 |
| **Voting Resolution Event Deadline** | June 10, 2020 |

---

[2]    Certain figures in and exhibits to the Disclosure Statement are subject to finalization by the Debtors, and will be included in a revised version of the Disclosure Statement to be filed with this Court in advance of the hearing on this Motion.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the First Day Declarations (as defined herein), as applicable.

[4]    The proposed timeline, which shall be set forth in the Proposed Order, is consistent with the requirements of the milestones set forth in the RSA (as defined herein) and with requirements set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

| | |
|---|---|
| **Voting Deadline** | June 16, 2020, at 4:00 p.m. (prevailing Central Time) |
| **Objection Deadline** | June 16, 2020, at 4:00 p.m. (prevailing Central Time) |
| **Deadline to File Voting Report** | June 19, 2020 |
| **Reply Deadline** | June 22, 2020, at 12:00 p.m. (prevailing Central Time) |
| **Confirmation Hearing** | June 23, 2020, at 10:00 a.m. (prevailing Central Time) |

### Jurisdiction and Venue

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4.      The statutory and legal predicates for the relief requested herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, and 9006, and Local Bankruptcy Rules 3017, 3018, and 3020.

### Background

5.      On March 10, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and their cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  On March 17, 2020, the United States Trustee for Region 13 (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

6.      Following months of intense, arm's-length negotiations preceding the Petition Date, as of March 10, 2020, the Debtors have executed a restructuring support agreement (as may be amended, modified, or supplemented from time to time, the "RSA") with the holders of over (a) 69% of their First Lien Loans and (b) 82% of their Second Lien Notes,

which outlines the terms of a comprehensive financial restructuring.  Such restructuring is outlined in the Plan and the Disclosure Statement, each of which were filed contemporaneously with this Motion.  Consistent with these levels of support for the Plan, with respect to the classes of claims representing the Debtors' funded indebtedness, the Debtors believe that they already have committed creditor votes to accept the Plan in excess of the statutory thresholds set forth in section 1126(c) of the Bankruptcy Code.

7.     The ultimate goal of the restructuring contemplated by the Plan is to maximize the value of the Debtors' businesses, which will be done by (a) substantially deleveraging the Debtors' balance sheet through a reduction of over $1 billion of funded indebtedness, (b) significantly reducing the Debtors' ongoing royalty and other prepetition contractual obligations, and (c) competitively positioning the Debtors for further success upon emergence from these cases by providing the Debtors with sufficient post-restructuring liquidity, in the form of a $225 million exit financing facility.  To that end, consistent with their obligations under the RSA, the Debtors are seeking to emerge from chapter 11 as quickly as the Court's schedule and the requisite notice periods will permit.  The Debtors' expedited emergence from bankruptcy is a critical element of the consensual restructuring embodied in the RSA.

8.     Additional information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of these cases, and the terms and structure of the proposed restructuring transaction is set forth in the (a) *Declaration of Robert D. Moore, President and Chief Executive Officer of Foresight Energy LP, in Support of Chapter 11 Petitions* [Docket No. 17], (b) *Declaration of Alan Boyko, Senior Managing Director of FTI Consulting, Inc., in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 18], and (c) *Declaration of Seth Herman in Support of Debtors' Motion for Entry of Interim and Final*

*Orders (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 29, Ex. B] ((a)–(c) together, the "First Day Declarations"), each filed on the Petition Date.

### Summary of Plan Treatment

9.      The Plan classifies Claims against and Interests in the Debtors, and provides for the treatment of each class as follows:[5]

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Other Secured Claims | On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the applicable Debtor, with the consent of the Required First Lien Lenders: (i) Reinstatement of its Claims; (ii) payment in full in Cash of the unpaid portion of its Allowed Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, then such Allowed Other Secured Claim shall be paid in accordance with its terms); or (iii) the collateral securing its allowed Other Secured Claim on the later of the Effective Date and the date such Other Secured Claims becomes an Allowed Claim or as soon thereafter as reasonable practicable. | Unimpaired | No (Presumed to Accept) |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, such Allowed Other Priority Claim shall be paid in accordance with its terms) or pursuant to such other terms as may be agreed to by the Holder of an Allowed Other Priority Claim and the Debtors. | Unimpaired | No (Presumed to Accept) |

---

[5]     This summary is for ease of reference only and shall not limit, modify, or amend the proposed treatment set forth in the Plan, which, in the event of any inconsistency, shall govern.

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| 3 | First Lien Facility Claims | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the First Lien Facility Claims, each Holder of an Allowed First Lien Facility Claim shall receive its Pro Rata share of 92.75% of the New Common Equity, subject to the Full Equity Dilution. | Impaired | Yes |
| 4 | Second Lien Notes Claims | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Second Lien Notes Claims, each Holder of an Allowed Second Lien Notes Claim shall receive its Pro Rata share of 7.25% of the New Common Equity, subject to the Full Equity Dilution. | Impaired | Yes |
| 5 | General Unsecured Claims | *If Class 5 Accepts the Plan*: If Class 5 votes to accept the Plan as to all of the Debtors, then in full satisfaction, release and discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive at its option, either: (a) its Pro Rata share of $[__] in Cash or (b) other less favorable treatment agreed to by the Holder.<br><br>*If Class 5 Rejects the Plan*: If Class 5 votes to reject the Plan [with respect to any Debtor], then in full satisfaction, release and discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive at its option, either: (a) its Pro Rata share of $[__] in Cash or (b) other less favorable treatment agreed to by the Holder. | Impaired | Yes |
| 6 | Intercompany Claims | On the Effective Date, each Intercompany Claim shall be Reinstated, cancelled, or otherwise settled to the extent determined to be appropriate by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required First Lien Lenders. | Impaired or Unimpaired | No (Presumed to Accept or Deemed to Reject) |
| 7 | Intercompany Interests | On the Effective Date, each Intercompany Interest shall be Reinstated, cancelled, or otherwise settled to the extent determined to be appropriate by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required First Lien Lenders. | Impaired or Unimpaired | No (Presumed to Accept or Deemed to Reject) |
| 8 | Interests in FELP and Interests in GP LLC | On the Effective Date, all Interests in GP LLC and all Interests in FELP shall be cancelled and discharged and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and each Holder of such Interests shall not be entitled to receive any distribution under the Plan on account of such Interests. | Impaired | No (Deemed to Reject) |

## **Proposed Solicitation of Classes 3, 4, and 5**

10.     In connection with the Plan, the Debtors have prepared the Disclosure

Statement, describing, among other things, the Debtors' proposed restructuring and its effects on

holders of Claims against and Interests in the Debtors. By this Motion and following the Court's approval of the Disclosure Statement, the Debtors, through their voting agent, Prime Clerk LLC (the "Voting Agent"), propose in their Solicitation Procedures to distribute to the holders of Claims, as of the Record Date (as defined herein), in Class 3 (First Lien Facility Claims), Class 4 (Second Lien Notes Claims), and Class 5 (General Unsecured Claims) (such classes, the "Voting Classes"), copies of the following materials in connection with voting on the Plan (the "Solicitation Package"): (a) the Disclosure Statement; (b) the exhibits to the Disclosure Statement, which include the (i) Plan and exhibits thereto, (ii) RSA and the restructuring term sheet, (iii) Debtors' corporate structure chart, (iv) Valuation Analysis, (v) Liquidation Analysis, and (vi) Financial Projections; (c) a copy of the order entered by this Court approving, among other things, the Disclosure Statement and the Solicitation Procedures, (d) the appropriate ballot (the "Ballot") with voting instructions for each holder, and (e) a cover letter.

11.     The instructions on the Ballots advise the holders in Voting Classes that, to be counted, their Ballots must be properly executed, completed, and delivered to the Voting Agent so that the Ballots are actually received by the Voting Agent no later than 4:00 p.m. (prevailing Central Time) on June 16, 2020 (the "Voting Deadline"), unless such time is extended by the Debtors. The Debtors anticipate commencing solicitation of the Plan promptly after entry of the Proposed Order.

12.     Holders of Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 8 (Interests in FELP and Interests in GP LLC) (such classes, the "Non-Voting Classes") should not be provided the Solicitation Package because such holders are either (a) unimpaired under, and conclusively presumed to accept, the Plan pursuant to section 1126(f) of the Bankruptcy Code, or

(b) impaired under, and conclusively presumed to reject, the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding the foregoing, as discussed further herein, for purposes of effectuating the releases set forth in the Plan, the Debtors propose to send the Opt-Out Notice (as defined herein) to all holders of Class 8 Interests contemporaneously with distributing the Solicitation Packages.  Such notices will include a form and return envelope addressed to the Voting Agent allowing such holders, at their election, to opt-out of the releases set forth in the Plan.

### Basis for Relief Requested

**A.    The Court Should Approve the Disclosure Statement**

13.    Pursuant to section 1125(b) of the Bankruptcy Code, "[a]n acceptance or rejection of a plan may not be solicited . . . unless . . . a written disclosure statement [is] approved . . . by the court as containing adequate information."  11 U.S.C. § 1125(b).  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

14.    "The primary purpose of a disclosure statement is to give creditors information necessary to decide whether to accept the plan."  *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985); *see also In re Apex Oil Co.*, 101 B.R. 92, 98 (Bankr. E.D. Mo. 1989) ("The disclosure statement is primarily a source of information upon which creditors make an informed judgment about the merits of a plan of reorganization."); *In re U.S. Brass Corp.,* 194 B.R. 420, 427 (Bankr. E.D. Tex. 1996) ("The purpose of the disclosure statement is not to assure

acceptance or rejection of a plan, but to provide enough information to interested persons so they

may make an informed choice between two alternatives.").  A disclosure statement "must clearly

and succinctly inform the average unsecured creditor what it is going to get, when it is going to

get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19

(Bankr. D.N.H. 1991).  These disclosure requirements are also intended to be flexible:

> Precisely what constitutes adequate information in any particular instance will
> develop on a case by case basis.  Courts will take a practical approach as to what
> is necessary under the circumstances of each case, such as the costs of preparation
> of the statements, the need for relative speed in solicitation and confirmation, and,
> of course, the need for investor protection . . . .  In reorganization cases, there is
> frequently great uncertainty.  Therefore the need for flexibility is greatest.

*In re Monnier Bros*., 755 F.2d at 1342 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 409,

reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6365).

15.     Given this need for flexibility, courts within the Eighth Circuit and

elsewhere recognize that determining what constitutes "adequate information" for the purpose of

satisfying section 1125 of the Bankruptcy Code rests within the broad discretion of the court.

*See, e.g.*, *In re Puff*, No. 10-01877, 2011 WL 2604759, at *3–5 (Bankr. N.D. Iowa June 30,

2011) ("The determination of what is adequate information is subjective and made on a case by

case basis.  This determination is largely within the discretion of the bankruptcy court."); *In re

A.H. Robins Co., Inc.*, 880 F.2d 694, 697 (4th Cir. 1989) (same); *In re Tranel*, 940 F.2d 1168,

1175 (8th Cir. 1991) ("Implicit in section 1125 of the Bankruptcy Code is the recognition that

'[i]n reorganization cases, there is frequently great uncertainty, [and t]herefore the need for

flexibility is greatest.'") (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., 408-409 (1977), U.S.

Code Cong. & Admin. News 1978, pp. 5787, 6364, 6365) (alterations in original).

16.     Courts have considered the following factors when evaluating the adequacy of a disclosure statement:

a.     the events which lead to the filing of a bankruptcy petition;

b.     a description of the available assets and their value;

c.     the anticipated future of the company;

d.     the source of information stated in the disclosure statement;

e.     a disclaimer;

f.     the present condition of the debtor while in Chapter 11;

g.     the scheduled claims;

h.     the estimated return to creditors under a Chapter 7 liquidation;

i.     the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

j.     the future management of the debtor;

k.     the Chapter 11 plan or a summary thereof;

l.     the estimated administrative expenses, including attorneys' and accountants' fees;

m.     the collectability of accounts receivable;

n.     financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;

o.     information relevant to the risks posed to creditors under the plan;

p.     the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

q.     litigation likely to arise in a nonbankruptcy context;

r.     tax attributes of the debtor; and

s.     the relationship of the debtor with the affiliates.

*In re U.S. Brass Corp.*, 194 B.R. 420, 427 (Bankr. E.D. Tex. 1996) (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.A. Ga. 1984)).   Such lists are not meant to be

exhaustive, nor must a debtor include all of the information approved as sufficient in any prior

case.  Rather, courts are instructed to decide what information is appropriate in each case.  *See In*

*re Phoenix Petrol. Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (using a similar list, but

cautioning that "no one list of categories will apply in every case"); *In re Dakota Rail, Inc.*, 104

B.R. 138, 142 (Bankr. D. Minn. 1989) (using a similar list of information described as

"nonexclusive and nonexhaustive"); *In re Microwave Prod. of Am., Inc.*, 100 B.R. 376, 378

(Bankr. W.D. Tenn. 1989) ("Each one of these factors may not be necessary in every case, nor is

this list exhaustive of all criteria that may be necessary in a disclosure statement."); *In re U.S.*

*Brass Corp.,* 194 B.R. 420, 427 (Bankr. E.D. Tex. 1996) ("Disclosure of all factors is not

necessary in every case.").

17.    The Debtors submit that the Disclosure Statement contains adequate

information for the holders in Voting Classes to make informed decisions about whether to vote

to accept or reject the Plan.  The Disclosure Statement contains the following information:

a.    An overview of the Debtors' history, business operations, corporate and capital structures, and the events leading up to these chapter 11 cases (Articles II and III);

b.    An overview of the events taking place during these chapter 11 cases, including the first and second day relief, the DIP financing, the renegotiation of certain of the Debtors' contractual arrangements, and other material events (Articles IV and V);

c.    A summary of the Plan, including the proposed classes of Claims and Interests and their treatment, the proposed post-emergence capital structure for the Reorganized Debtors, including discussion of the Exit Facility, the means for implementing the Plan, the treatment of the Debtors' executory contracts and unexpired leases, the resolution of general unsecured claims, and the distributions on account of claims (Articles I and VI);

d.    The Valuation Analysis, Liquidation Analysis, and Financial Projections (Article VII and Exhibits D, E, and F to the Disclosure Statement);

e.    A summary of certain transfer restrictions and other considerations with respect to the Plan under federal securities laws (Article VIII);

f.      A summary of certain tax considerations with respect to the Plan (Article IX);

g.      A summary of Plan-related risk factors, including risks relating to the confirmation of the Plan, recoveries under the Plan, implementation of the Plan, and the Debtors' businesses (Article X);

h.      Voting procedures and related requirements (Article XI);

i.      An overview of the conditions and requirements for the confirmation and consummation of the Plan (Article XII);

j.      A discussion of potential alternatives to the Plan (Article XIII); and

k.      A recommendation by the Debtors that the holders of the Voting Classes vote in favor of the Plan (Article XV).

18.     Given the foregoing and the information included within the Debtors'
Disclosure Statement, the Debtors submit that the Disclosure Statement satisfies the
requirements of section 1125 of the Bankruptcy Code and respectfully request this Court's
approval of the Disclosure Statement.

**B.      The Court Should Approve the Form and Manner of the Disclosure Statement
Hearing Notice**

19.     Bankruptcy Rule 3017(a) provides that a hearing on the adequacy of a
disclosure statement, and the objection deadline for any such hearing, shall each be on twenty-
eight (28) days' notice to the "debtors, creditors, equity security holders, and other parties in
interest . . . ." Fed. R. Bankr. P. 3017(a), *see also* Fed. R. Bankr. P. 2002(b).  The Debtors will
satisfy the notice requirements contained in the Bankruptcy Rules.  The Debtors seek to hold a
hearing on the adequacy of the Disclosure Statement on May 14, 2020, more than twenty-eight
(28) days after filing the Disclosure Statement.  The Debtors further seek to set the objection
deadline for May 7, 2020, at 4:00 p.m. (prevailing Central Time), which is twenty-eight (28)
days from the filing of the Disclosure Statement.

20.     Pursuant to Bankruptcy Rules 3017 and 2002 and Local Bankruptcy Rule 3017(C), the Debtors, through the Voting Agent, will serve a notice identifying the date, time, and place of the Disclosure Statement hearing, how to obtain copies of the Disclosure Statement and the exhibits thereto, and the deadline and procedures for filing objections to approval of the Disclosure Statement, substantially in the form attached hereto as **Exhibit A** (the "Disclosure Statement Hearing Notice") upon (a) the Notice Parties (as defined herein), (b) any party with a filed proof of claim as of such date, and (c) all of the Debtors known creditors and equity holders.  As the Debtors' creditors and parties in interest are afforded the full notice period to determine the adequacy of information in the Disclosure Statement, and to object, if necessary, the Debtors submit that Disclosure Statement Hearing Notice will satisfy the notice requirements set forth in the Bankruptcy Rules and the Local Bankruptcy Rules.  Accordingly, the Debtors request that the Court approve the Disclosure Statement Hearing Notice.

**C.     The Court Should Approve the Solicitation Procedures**

i.     Establishing a Record Date

21.     Bankruptcy Rule 3017(d) provides that, for soliciting votes in connection with a plan, eligible voting holders of claims and interests are "of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d); *see also* Fed. R. Bankr. P. 3018(a) (containing a similar provision for determination of a voting record date).  The Debtors request that the Court establish May 11, 2020 as the record date (the "Record Date") for determining:  (a) the holders of Claims entitled to receive a Solicitation Package, (b) the holders of Claims entitled to vote to accept or reject the Plan, and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of such Claim.

ii.    Approval of the Solicitation Packages and Procedures

22.    To perform a solicitation, Bankruptcy Rule 3017(d) requires, unless the Court orders otherwise, that the Debtors transmit certain information to holders of claims and interests, as well as to the U.S. Trustee.  *See* Fed. R. Bankr. P. 3017(d).  Pursuant to Bankruptcy Rule 3017(d), the Debtors request that, within two (2) business days after entry of the Proposed Order or as soon as reasonably practicable thereafter (the "Solicitation Deadline"), the Debtors, through the Voting Agent, will commence distribution by first-class, postage prepaid mail, to the holders in the Voting Classes the Solicitation Packages as discussed herein.  The Debtors propose to also serve the Solicitation Package, minus a Ballot, on the Notice Parties.

23.    Where appropriate, and to save unnecessary costs, the Debtors further request that they be authorized, but not directed, to distribute the Solicitation Packages in an electronic format, such as a flash drive, instead of paper format.  If a party who receives a Solicitation Package electronically prefers a paper copy format, the party may request paper copies from the Voting Agent free of charge by (a) visiting the Debtors' case website at http://cases.primeclerk.com/foresightenergy, (b) writing to Foresight Energy Ballot c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, or (c) calling the Debtors' restructuring hotline at (646) 998-7132 (Local / International); (877) 720-6580 (Toll free).  The Plan and Disclosure Statement are also available free of charge on the Debtors' case website.

iii.    Approval of the Form of Ballots

24.    Bankruptcy Rule 3018(c) provides that a vote to accept or reject a plan shall be on a form that conforms substantially to the appropriate official form. Fed. R. Bankr. P. 3018(c).  In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared Ballots,

substantially in the forms attached hereto as **Exhibit B**, for holders of Claims in the Voting Classes, including separate Master Ballots and Beneficial Holder Ballots (each, as defined herein) for the holders of Class 4 (Second Lien Notes Claims). The Ballots comply with Bankruptcy Rule 3018(c) and conform substantially to Official Form No. 314, and have been modified to address the particular circumstances of these chapter 11 cases and include certain additional information that is relevant and appropriate for the holders of Claims in the Voting Classes.

25.     The Debtors, through the Voting Agent, will distribute the Ballots to the holders of Claims in the Voting Classes as of the Record Date, including to nominees with instructions to forward the materials to their beneficial holders. The Ballots for beneficial holders will instruct each beneficial holder voting on the Plan through a nominee to return the Beneficial Holder Ballot to the appropriate nominee in sufficient time for such nominee to timely cast votes to accept or reject the Plan on behalf of the beneficial holders by the Voting Deadline. The Voting Agent will then tabulate each such Ballot received. Nominees may use their customary procedures to distribute and solicit votes from their underlying beneficial holders (including through electronic methods and the use of a "voting instruction form" in lieu of a Ballot).

26.     The Ballots may be returned to the Voting Agent via the first-class, postage prepaid, return envelope included in the Solicitation Package, if applicable, or by hand or overnight delivery (at the holder's expense). The remaining Non-Voting Classes are not entitled to vote on the Plan and therefore will not receive Ballots because (a) they are deemed unimpaired and are therefore conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or (b) not entitled to receive or retain any property under the

Plan and are therefore deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

27.     In addition to accepting physical Ballots, the Debtors request authorization to accept Ballots via electronic transmissions, solely through a customized online balloting portal on the Debtors' case website maintained by the Voting Agent, provided that only nominees may return Master Ballots via electronic mail to foresightenergyballots@primeclerk.com.   Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots and in the Disclosure Statement.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the electronic signature of the party entitled to vote will be deemed to be immediately legally valid and effective.

28.     Each Ballot contains detailed instructions on how to complete it and how to make any applicable elections contained therein.  In particular, each Ballot indicates that, to be counted as a vote to accept or reject the Plan, the Ballot must be properly executed, completed, and delivered to the Voting Agent so that it is received no later than the Voting Deadline.

29.     The Ballots also clearly indicate that, by voting to accept the Plan, the holder will be deemed to consent to the release, injunction, and exculpation provisions set forth in Article VIII.D, E, and F of the Plan (which provisions are annexed as **Exhibit 1** to the Ballots).  The Ballots also provide that if a holder does not vote to either accept or reject the Plan or votes to reject the Plan and in each case, does not check the box in Item 3 of the Ballots indicating an intent to opt-out of granting the releases provided in Article VIII.D of the Plan,

such voting holder will be deemed to have consented to the release provisions set forth in Article VIII.D.

30.     Finally, the materials in the Solicitation Packages establish and communicate how the Voting Agent will tabulate the votes and elections contained in the Ballots.  Those tabulation rules provide, among other things, that:  (a) a timely and properly completed Ballot submitted by a holder of Claims in a Voting Class superseded and revoked any prior Ballot(s) submitted by that holder, provided that, if a holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot; (b) Ballots that attempt to partially accept and partially reject the Plan would not be counted; (c) illegible Ballots would not be counted; (d) Ballots containing insufficient information to identify the claimant would not be counted; and (e) Ballots received after the Voting Deadline (provided that the Voting Deadline has not been extended) would not be counted.  As specified on the Ballots, any Ballot that was otherwise properly completed, executed, and timely returned to the Voting Agent, but did not indicate an acceptance or rejection of the Plan, or that indicated both an acceptance and rejection of the Plan would not be counted as a vote to accept in determining acceptance or rejection of the Plan.

iv.     Approving the Procedures to Tabulate Votes on the Plan

31.     The Debtors request that the Court approve the voting and tabulation procedures described herein in accordance with section 1126(c) of the Bankruptcy Code. Specifically, section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

32. As described above and in the Ballots, in tabulating the votes of the Voting Classes, the Voting Agent will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots: (a) except in the Debtors' sole discretion, any Ballot received after the Voting Deadlines, (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (c) any Ballot cast by a person or entity that does not hold a Claim in the Voting Classes, (d) any unsigned or non-original Ballot, or (e) except in the Debtors' sole discretion, any Ballot transmitted to the Voting Agent by telecopy, facsimile, e-mail, or other electronic means not using the Voting Agent's online balloting portal, provided that only nominees may return Master Ballots via electronic mail to foresightenergyballots@primeclerk.com.  As specified on the Ballot, any Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan will not be counted as a vote to accept the Plan.  The Debtors submit that the foregoing tabulation procedures are appropriate and substantially conform to the tabulation procedures set forth in Local Bankruptcy Rule 3018(B).  The Debtors further request authority to accept provisional Ballots from holders of Claims in Voting Classes, to the extent necessary to ensure that the votes of holders' with pending trades can be counted.

33. The Debtors require that the holders of Claims in their respective Voting Classes vote all of their Claims, as applicable, either to accept or reject the Plan.  Except as otherwise discussed below, the Debtors propose that whenever two or more Ballots are cast voting the same Claim, the last timely Ballot received before the Voting Deadline should be deemed to reflect the voter's intent and to thus supersede any prior Ballot(s), without prejudice to the Debtors' right to object to the validity of the second ballot on any basis permitted by law,

provided further that, if a holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

34.     To establish claim amounts for the purposes of voting, the Debtors propose to utilize the following hierarchy:

a.     the amount of the Claim settled and/or agreed upon by the Debtors, as reflected in a court pleading, stipulation, agreement, or other document filed with the Court, in an order of the Court, or in a document executed by the Debtors pursuant to authority granted by the Court;

b.     the amount of the Claim determined through a Voting Resolution Event (as defined herein) in accordance with the resolution procedures set forth herein;

c.     the amount of the Claim listed in a timely-filed Proof of Claim as not contingent, not unliquidated, and not disputed (except for any amounts asserted on account of interest accrued after the Petition Date), if such Claim is not subject to an objection filed in the Court[6] on before June 2, 2020, *provided however*, that a timely filed Proof of Claim asserting a wholly contingent, wholly unliquidated, and/or wholly disputed amount (as determined by the Debtors) shall vote in the amount of $1.00;

d.     the amount of the Claim listed in the Schedules as not contingent, not unliquidated, and not disputed as of the Record Date, *provided however* that a Claim listed in the Schedules as contingent, unliquidated, or disputed for which the bar date has not yet passed, including the Governmental Bar Date, shall vote in the amount of $1.00 (solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code);

e.     in the absence of any of the foregoing, $0.00.

35.     A holder of a Claim not entitled to vote on the Plan pursuant to the procedures described immediately above shall be permitted to vote such Claim (or to vote such Claim in an amount other than the amount set forth in the Schedules) only if one of the following shall have occurred with respect to such claim (a "Voting Resolution Event") on or before June 10, 2020 (the "Voting Resolution Event Deadline"):

---

[6]   If the Debtors file an objection to reduce and allow a Claim, the Claim shall vote in the reduced amount. If the Debtors file an objection to reclassify a Claim, the Claim shall be treated for solicitation and tabulation purposes as that reclassified Claim, which may include being moved out of one of the Voting Classes.

a.    <u>Agreement Between the Parties</u>.  A stipulation or other agreement is executed between the holder of such Claim and the Debtors allowing the holder of such Claim to vote such Claim in an agreed upon amount.

b.    <u>Bankruptcy Rule 3018(a) Order</u>.  A creditor files with the Court a motion pursuant to Bankruptcy Rule 3018(a) (a "<u>Rule 3018(a) Motion</u>") on or before the Voting Resolution Event Deadline seeking temporary Allowance of its Claim for voting purposes in the amount other than set forth in the Schedules or in response to an objection filed by the Debtors that is sustained by the Court after notice and a hearing.

The Debtors request that the Court direct that any Rule 3018(a) Motion must: (i) be made in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, (iii) set forth the name of the party asserting the Rule 3018(a) Motion, (iv) state with particularity the legal and factual bases for the Rule 3018(a) Motion, (v) be set for hearing at the Confirmation Hearing, and (vi) be served by personal service, overnight delivery, first class mail, or facsimile so as to be received by the Notice Parties (as defined herein) no later than the Voting Resolution Event Deadline.

The Debtors further request that, in the event that the Debtors and such party are unable to resolve any issues raised by the Rule 3018(a) Motion before submitting their voting certification, (i) the Debtors may object to the Rule 3018(a) Motion before the Confirmation Hearing; and (ii) the Voting Agent shall tabulate the vote in the amount as directed by the Debtors and shall include in the voting certification representations that such vote was subject to a Rule 3018(a) Motion and whether including such Ballot in the amount sought by the party in the Rule 3018(a) Motion would change the particular Voting Class's acceptance or rejection of the Plan.  The Court then shall determine at the Confirmation Hearing whether the Ballot should be counted as a vote on the Plan and in what amount. Such a procedure will help to ensure an efficient tabulation of Ballots to be completed accurately by the Confirmation Hearing.

c.    <u>Other Order of the Court</u>. The Court otherwise orders the allowance of such Claim for purposes of voting to accept or reject the Plan.

36.    The Debtors propose to provide any party that is permitted to provisionally vote its Claim on account of the timely occurrence of a Voting Resolution Event with an appropriate Ballot and a pre-addressed, postage pre-paid envelope within one (1) business day from the Voting Resolution Event Deadline. Such parties must then return a completed, properly exercised Ballot to the Voting Agent on or before the Voting Deadline (unless the Debtors extend the deadline in their sole discretion to facilitate a reasonable

opportunity for such creditor to vote upon the Plan). This affords parties voting provisional claims five (5) days to vote on the Plan.

37.    Finally, with respect to Master Ballot and Beneficial Holder Ballot submissions for holders of Class 4 (Second Lien Notes Claims), the following voting process and tabulation rules will apply:

a.    the Voting Agent shall distribute or cause to be distributed the appropriate number of copies of Ballots to each beneficial holder (a "Beneficial Holder Ballot") of Second Lien Notes Claims as of the Record Date;

b.    nominees identified by the Voting Agent as Entities through which beneficial holders hold their Second Lien Notes Claims will be provided with (i) Solicitation Packages for each beneficial holder represented by the nominee as of the Record Date, which will contain, among other things, a Beneficial Holder Ballot for each beneficial holder, and (ii) a master ballot (the "Master Ballot");

c.    any nominee that is a holder of record with respect to Second Lien Notes Claims shall vote on behalf of, or facilitate voting by, beneficial holders of such Claims, as applicable, either by (1)(i) immediately, and in any event within five (5) business days after its receipt of the Solicitation Packages, distributing the Solicitation Packages, including Beneficial Holder Ballots, it receives from the Voting Agent to all such beneficial holders;[7] (ii) providing such beneficial holders with a return address to send the completed Beneficial Holder Ballots; (iii) compiling and validating the votes and other relevant information of all such beneficial holders on the Master Ballot; and (iv) transmitting the Master Ballot to the Voting Agent on or before the Voting Deadline, or (2) if the nominee elects to "pre-validate" the Beneficial Holder Ballots, immediately, and in any event, within five (5) business days after receipt of the Solicitation Packages, distributing the Solicitation Packages it receives from the Voting Agent to all such beneficial holders, including in each package a Beneficial Holder Ballot that it has "pre-validated",[8] and a return envelope provided by and addressed to the Voting Agent, so that the beneficial holder may complete and return the pre-validated

---

[7]    Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each nominee. Each nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices. If it is the nominee's customary and accepted practice to submit a "voting instruction form" to the beneficial holders for the purpose of recording the beneficial holder's vote, the nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

[8]    A nominee "pre-validates" a Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including its DTC participant number and a medallion guarantee stamp validating the beneficial holder's position as of the Record Date; indicating the account number of the beneficial holder and the principal amount of Second Lien Notes Claim held by the nominee for such beneficial holder.

Beneficial Holder Ballot directly to the Voting Agent on or before the Voting Deadline;

d.     any beneficial holder holding a Second Lien Notes Claim as a record holder in its own name shall vote on the Plan by completing and signing a Ballot or Master Ballot and returning it directly to the Voting Agent on or before the Voting Deadline;

e.     the Second Lien Indenture Trustee (unless otherwise empowered to do so under the Second Lien Notes Indenture) will not be entitled to vote on behalf of a beneficial holder; rather, each beneficial holder must vote his or her own Second Lien Notes Claim(s) either directly or through its nominee;

f.     any Beneficial Holder Ballot returned to a nominee by a beneficial holder shall not be counted for purposes of accepting or rejecting the Plan until such nominee properly completes and delivers to the Voting Agent a Master Ballot that reflects the vote of such beneficial holders on or before the Voting Deadline or otherwise validates the Beneficial Holder Ballot in a manner acceptable to the Voting Agent.  Nominees shall retain all Beneficial Holder Ballots returned by beneficial holders for a period of one (1) year after the Effective Date of the Plan;

g.     if a beneficial holder holds a Second Lien Notes Claim through more than one nominee or through multiple accounts, such beneficial holder may receive more than one Beneficial Holder Ballot and each such beneficial holder should execute a separate Beneficial Holder Ballot for each block of Second Lien Notes Claims that it holds through any nominee and must return each such Beneficial Holder Ballot to the appropriate nominee;

h.     votes cast by beneficial holders through nominees will be applied to the applicable positions held by such nominees in Second Lien Notes Claims as of the Record Date, as evidenced by the applicable securities position report(s) obtained from the Depository Trust Company ("DTC").  Votes submitted by a nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Claims held by such nominee as of the Record Date;

i.     if conflicting votes or "over-votes" are submitted by a nominee pursuant to a Master Ballot, the Debtors will use reasonable efforts to reconcile discrepancies with the nominees.  If over-votes on a Master Ballot are not reconciled before the preparation of the voting report tabulating votes on the Plan, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the nominee's position in Second Lien Notes Claims;

j.     for purposes of tabulating votes, each nominee or beneficial holder will be deemed to have voted the principal amount of its Claims in Second Lien Notes

Claims although any principal amounts may be adjusted by the Voting Agent to reflect the amount of the Claim actually voted, including prepetition interest;

k.  a single nominee may complete and deliver to the Voting Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot.  Likewise, if a beneficial holder submits more than one Beneficial Holder Ballot to its nominee, (i) the latest received Beneficial Holder Ballot received before the submission deadline imposed by the nominee shall be deemed to supersede any prior Beneficial Holder Ballot submitted by the beneficial holder, and (ii) the nominee shall complete the Master Ballot accordingly; and

l.  the Debtors will, upon written request, reimburse nominees for customary mailing and handling expenses incurred by them in forwarding the Beneficial Holder Ballot and other enclosed materials to the beneficial holders for which they are the nominee.  No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting Beneficial Holder Ballot with respect to the Plan.

38.    The Debtors respectfully submit that the proposed voting and tabulation procedures set forth above and the related relief comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and should therefore be approved.

v.    _Establishing a Voting Deadline_

39.    The Debtors propose to establish 4:00 p.m. (prevailing Central Time) on June 16, 2020 as the Voting Deadline for holders in the Voting Classes, thereby establishing a solicitation period of twenty-nine (29) calendar days (the "_Solicitation Period_").  The Debtors believe this is ample time for voting holders to come to an informed decision on whether to vote to accept or reject the Plan and to submit their respective Ballots to the Voting Agent so that such Ballots are actually received by the Voting Deadline.  The Debtors further believe that the Voting Deadline and proposed Solicitation Period are appropriate as they allow the Debtors to comply with the milestones set forth in the RSA.  These milestones, which were the result of

intense, good-faith, and arm's-length negotiations between the Debtors and their lenders (who hold Claims in Classes 3 and 4), require the Debtors to maintain a speedy and efficient timeline in which to achieve confirmation of the Plan.  The Solicitation Period furthers that goal. Accordingly, given the duration of the Solicitation Period and the circumstances giving rise to the Plan, the Debtors respectfully submit that the proposed Voting Deadline is reasonable under the circumstances and is sufficient and appropriate for the holders of Claims in the Voting Classes to make an informed decision with respect to the Plan.

> vi.   Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Plan

40.    Section 1126(f) of the Bankruptcy Code provides that a class that is unimpaired by a plan does not need to be solicited, as "each holder of a claim or interest of such class [is] conclusively presumed to have accepted the plan."  *See* 11 U.S.C. § 1126(f).  The Plan provides that holders of Claims in Classes 1 and 2 are unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, such holders in those classes are conclusively presumed to accept the Plan and will not be solicited.

41.    Section 1126(g) of the Bankruptcy Code provides that a class that is fully impaired by a plan and does not entitle its holders to receive or retain any property or recovery does not need to be solicited, as such class is deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g). Each holder of a Class 8 Interest in Foresight Energy LP or Foresight Energy GP LLC is not entitled to any distribution or to retain any property pursuant to the Plan.  Therefore, pursuant to section 1126(g) of the Bankruptcy Code, holders of Interests in Class 8 are conclusively deemed to reject the Plan and will not be solicited.

42.    For the reasons set forth herein, the Debtors request a waiver of the Bankruptcy Rule requirement that the Debtors mail copies of the Plan and Disclosure Statement

to holders of Claims or Interests in the Non-Voting Classes. *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders). With respect to Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims), such holders are Unimpaired under the Plan, and will have access to the Plan and Disclosure statement free of charge on the Debtors' case website. With respect to Class 8, such holders will receive ample notice of their treatment through the Opt-Out Notice, as discussed below. With respect to the Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) that are presumed to accept or deemed to reject the Plan, the holders of such Claims and Interests are the Debtors, and the Debtors submit it would be an unnecessary expense to provide Solicitation Packages to such holders, who are otherwise already deemed to reject or presumed to accept the Plan. Accordingly, the Solicitation Procedures described herein comply with the Bankruptcy Code and applicable law, and should be approved.

43.     Finally, with respect to holders of Interests in Class 8, the Debtors propose, through their Voting Agent, to send by the Solicitation Deadline a separate notice to such holders, a form of which is attached hereto as **Exhibit C** (the "Opt-Out Notice"). Holders whose Class 8 Interests are registered directly with American Stock Transfer & Trust Company, LLC will receive the Opt-Out Notice by first class mail (with a postage-prepaid return envelope). The Debtors will coordinate service of the Opt-Out Notice to holders whose Interests are held through DTC via overnight service on the banks, brokers, dealer agents, and other nominees holding the Class 8 Interests "in street name" on behalf of the underlying beneficial holders (collectively, with their agents, the "Equity Nominees") as identified in the securities position report provided to the Voting Agent by DTC. The Voting Agent will provide the Equity

Nominees with instructions to distribute the Opt-Out Notice to underlying beneficial holders of

Interests.  In addition, the Voting Agent will serve the Opt-Out Notice directly to DTC via e-mail

and overnight service with instructions for DTC to post the Opt-Out Notice on its Legal Notice

System (LENS) electronic platform (and to otherwise announce this event to the DTC-

participating nominees as appropriate).

    44. The Opt-Out Notice, among other things, indicates to such holders that

they are deemed to consent to the release, injunction, and exculpation provisions set forth in

Article VIII.D, E, and F of the Plan (which provisions will be included in the Opt-Out Notice),

and further provides that if a holder does not return executed opt-out form to the Voting Agent

by the Voting Deadline indicating an election to opt-out of granting the releases provided in

Article VIII.D of the Plan, such holder will be deemed to have consented to the release

provisions set forth in Article VIII.D.  The Opt-Out Notice will be sent along with first-class,

postage prepaid, return envelopes pre-addressed to the Voting Agent.  The Debtors submit that

the Opt-Out Notice and opt-out procedures included therein provide ample notice of the Plan's

release, injunction, and exculpation provisions, and sufficient time for the holders of Interests in

Class 8 to come to informed decisions with regards to whether they individually wish to opt-out

of the releases, or to otherwise object, if necessary, to the Plan.  Therefore, the Debtors believe

that the Opt-Out Notice should be approved.

**D.**  **The Court Should Establish the Confirmation Hearing Date and Approve Notice
thereof and Objection Procedures**

    45. Bankruptcy Rule 3017(c) provides that in the order approving a disclosure

statement, the court "may fix a date for the hearing on confirmation" of a plan.  In addition,

Bankruptcy Rules 2002(b) and (d) require twenty-eight (28) days' notice to holders of claims and

equity interests both for (a) the hearing to consider and (b) filing objections to confirmation of a

plan.  Moreover, Bankruptcy Rule 3020(b)(1) provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court."  *See* Fed. R. Bankr. P. 3017(c), 3020(b)(1), 2002(b), and 2002(d); *see also* 11 U.S.C. § 1128.

46.     The Debtors propose that the Confirmation Hearing be set, subject to the Court's schedule, on June 23, 2020, at 10:00 a.m. (prevailing Central Time), and that the Court establish June 16, 2020, at 4:00 p.m. (prevailing Central Time) as the Objection Deadline to file objections to confirmation of the Plan.  The Debtors further propose that the Court direct that any objections with respect to the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and (e) be filed with the Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be received by **no later than the Objection Deadline**:

a.   the Debtors, c/o Foresight Energy LP, One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102 (Attn: Cody E. Nett, Esq.);

b.   counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn:  Paul M. Basta, Esq., Alice Belisle Eaton, Esq., and Alexander Woolverton, Esq.), and (b) Armstrong Teasdale LLP, 7700 Forsyth Blvd., Suite 1800, St. Louis, Missouri 63105 (Attn: Richard W. Engel, Jr., Esq. and John G. Willard, Esq.);

c.   counsel to the Ad Hoc First Lien Group, Akin Gump Strauss Hauer & Feld LLP, 1 Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq. and Brad Kahn, Esq.);

d.   counsel to the Ad Hoc Crossover Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis Dunne, Esq. and Parker Milender, Esq.);

e.   counsel to the Creditors' Committee, Whiteford Taylor Preston LLP, 3190 Fairview Park Drive, Suite 800, Falls Church, Virginia 22042 (Attn: Christopher A. Jones, Esq.); and

f.    the U.S. Trustee, 111 South 10th Street, Suite 6353, St. Louis, Missouri 63102 (Attn: Carole Ryczek, Esq.).

47.    Setting the Objection Deadline as requested, and requiring that any objecting parties satisfy the above-mentioned conditions, is warranted.  First, the Debtors' proposed schedule would provide all parties with at least twenty (28) days' notice of the Objection Deadline, as required by Bankruptcy Rule 2002(b)(1).  In addition, the requested relief otherwise complies with the applicable rules and will provide the Court, the Debtors, and other parties in interest with sufficient time to consider any objections before the Confirmation Hearing.  Lastly, the Voting Classes will have received notice of the Plan and the restructuring transactions contemplated thereunder at least twenty-eight (28) days before the Objection Deadline, if not earlier, through the Solicitation Procedures.  Accordingly, all parties will receive sufficient notice of the Objection Deadline and the Plan.

48.    The Debtors also propose to set the Reply Deadline to file their brief and declaration(s) in support of confirmation and a reply to any objections no later than one (1) business day before the Confirmation Hearing.  The proposed schedule for the Confirmation Hearing, including the fixing of the Objection Deadline, is in the best of the Debtors, their estates, creditors, and all parties in interest.

49.    The Debtors further propose to mail (or cause to be mailed), by first-class mail within two (2) business days of the entry of the Proposed Order, or as soon as reasonably practicable thereafter, to all known holders of Claims against and Interests in the Debtors a notice (the "Confirmation Hearing Notice"), substantially in the form annexed as **Exhibit D** to this Motion, setting forth, among other things, (a) the date, time, and place of the Confirmation Hearing, (c) instructions for obtaining copies of the Disclosure Statement, the Plan, and the order approving the Disclosure Statement, (d) the Objection Deadline and procedures for filing

objections to confirmation of the Plan, and (e) a summary of the Plan, including a chart summarizing the distributions under the Plan.  The Confirmation Hearing Notice also clearly provides that holders of impaired Interests who do not timely object to the releases provided in Article VIII of the Plan (which provision is annexed to the Confirmation Hearing Notice) by the Voting Deadline will be deemed to have granted the releases therein.

50.    To provide additional notice to parties in interest in these cases, the Debtors propose to post to the Debtors case website various chapter 11 documents, including the following: (a) the Plan, (b) the Disclosure Statement, (c) this Motion and any orders entered in connection with this Motion, and (d) the Confirmation Hearing Notice.  The website address is http://cases.primeclerk.com/foresightenergy.

51.    Bankruptcy Rule 2002(*l*) permits the Court to order "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtors request that the Court authorize the Debtors, in their discretion, to give supplemental publication notice (the "Publication Notice") of the Confirmation Hearing on a date no less than twenty-eight (28) days before the Confirmation Hearing in a newspaper designated by the Debtors in their discretion, and any other trade or other publications that the Debtors deem prudent in their sole discretion.  The Debtors believe that the publication of certain of the contents of the Confirmation Hearing Notice in this manner would provide sufficient notice of the date, time, and place of the Confirmation Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Confirmation Hearing Notice by mail.

52.    As contemplated by the Plan, all executory contracts and unexpired leases will be deemed assumed under the Plan as of the Effective Date unless, among other things, such

contract or lease is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, with such identified agreements to be rejected under the Plan.  In advance of the Objection Deadline for the Confirmation Hearing, the Debtors propose to send a notice, a form of which is attached hereto as **Exhibit E** (the "Rejection Notice"), to the counterparties to such agreements identified on the Schedule of Rejected Executory Contracts and Unexpired Leases. The Rejection Notice will notify such counterparties of, among other things, their inclusion on the Schedule of Rejected Executory Contracts and Unexpired Leases, their proposed treatment under the Plan, the date, time, and place of the Confirmation Hearing, and the procedures to object to their respective agreement's rejection by the Objection Deadline.

53.    The proposed service of the Confirmation Hearing Notice will provide sufficient notice to all parties in interest of the date, time, and place of the Confirmation Hearing and the procedures for objecting to the confirmation of the Plan.  In addition, the Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Confirmation Hearing Notice.  Finally, the Rejection Notice will provide sufficient notice to all applicable counterparties of rejected agreements of their proposed treatment and the date, time, and place of the Confirmation Hearing and the procedures for objecting to the confirmation of the Plan.

**E.    Modification of Local Bankruptcy Rule 3018(C)**

54.    The Debtors request this Court's modification of Local Bankruptcy Rule 3018(C), which would require the Debtors to bring the original Ballots to the Confirmation Hearing.  Because of the voluminous number of Ballots that the Voting Agent expects to receive, the Debtors request this Court's permission to bring electronic images of the original Ballots returned to the Voting Agent to the Confirmation Hearing in flash drive or similar format and make such electronic copies available to any party at the Confirmation Hearing.

## <u>Notice</u>

55.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to the Ad Hoc First Lien Group; (c) counsel to the Ad Hoc Crossover Group; (d) counsel to the Facilities Agent; (e) counsel to the Term Agent; (f) counsel to the Indenture Trustee; (g) counsel to the collateral trustee under the Debtors' secured debt facilities; (h) counsel to the DIP Agent; (i) counsel to DIP Lenders; (j) the Creditors' Committee; (k) counsel to Murray Energy Corporation; (*l*) counsel to Reserves; (m) counsel to Javelin; (n) counsel to Uniper Global Commodities UK Limited; (o) the Internal Revenue Service; (p) the Securities and Exchange Commission; (q) the United States Attorney's Office for the Eastern District of Missouri; (r) the state attorneys general for all states in which the Debtors conduct business; (s) the holders of the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.


***[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]***

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other relief as is just and proper.

Dated:  April 9, 2020
       St. Louis, Missouri

Respectfully submitted,

ARMSTRONG TEASDALE LLP

_/s/  Richard W. Engel, Jr._
Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn Redmond (MO 72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:    (314) 621-5070
Fax:    (314) 621-5065
Email:  rengel@atllp.com
       jwillard@atllp.com
       kredmond@atllp.com

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Alexander Woolverton (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
       aeaton@paulweiss.com
       awoolverton@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Disclosure Statement Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING TO CONSIDER APPROVAL**
**OF DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE THAT:**

1.     On April 9 2020, Foresight Energy LP and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), filed the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Disclosure Statement") with the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"). The Debtors are submitting their Disclosure Statement pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for use in the solicitation of votes to accept their chapter 11 plan (as amended, modified, or supplemented from time to time, the "Plan"), a copy of which is attached to the Disclosure Statement as **Exhibit A**.

2.     A hearing to consider approval of the Disclosure Statement, and any objections thereto, will be held on **May 14, 2020, at 10:00 a.m. (prevailing Central Time)** before the Honorable Kathy A. Surratt-States, United States Bankruptcy Judge, at the Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, 7th Floor – North Courtroom, St. Louis, Missouri 63102, or as soon thereafter as counsel may be heard (the "Disclosure Statement Hearing").

3.     Any objections to the Disclosure Statement must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Federal Rules of Bankruptcy Procedure and the *Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Missouri* (the "Local Bankruptcy Rules"); and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the Debtors and any entities described in Local Bankruptcy Rule 3017(C) so as to be received by **no later than May 7, 2020 (prevailing Central Time)** (the "Objection Deadline").

4.     Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "Voting Agent"), at https://cases.primeclerk.com/foresightenergy. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at 646-998-7132 (international); 877-720-6580 (domestic, toll free), or sending an electronic mail message to the Voting Agent at ForesightEnergyInfo@PrimeClerk.com.

**THE DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. IT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT UNDER SECTION 1125 OF THE BANKRUPTCY CODE. THE DEBTORS ARE NOT SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN AT THIS TIME.**

Dated:   April 9, 2020                    Respectfully submitted,
         St. Louis, Missouri
                                          ARMSTRONG TEASDALE LLP


                                          /s/
                                          Richard W. Engel, Jr. (MO 34641)
                                          John G. Willard (MO 67049)
                                          Kathryn R. Redmond (MO 72087)
                                          7700 Forsyth Boulevard, Suite 1800
                                          St. Louis, Missouri  63105
                                          Tel:   (314) 621-5070
                                          Fax:   (314) 621-5065
                                          Email: rengel@atllp.com
                                                 jwillard@atllp.com
                                                 kredmond@atllp.com

                                                 - and -

                                          PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                          Paul M. Basta (admitted *pro hac vice*)
                                          Alice Belisle Eaton (admitted *pro hac vice*)
                                          Alexander Woolverton (admitted *pro hac vice*)
                                          1285 Avenue of the Americas
                                          New York, New York  10019
                                          Tel:   (212) 373-3000
                                          Fax:   (212) 757-3990
                                          Email: pbasta@paulweiss.com
                                                 aeaton@paulweiss.com
                                                 awoolverton@paulweiss.com

                                          *Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit B</u>**

**Ballots**

## Exhibit B-1

**Form of Ballot for Holders of Class 3 First Lien Facility Claims**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR HOLDERS OF FIRST LIEN FACILITY CLAIMS**
**TO ACCEPT OR REJECT THE DEBTORS' PLAN**

**CLASS 3:  FIRST LIEN FACILITY CLAIMS**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 PM, PREVAILING CENTRAL TIME, ON JUNE 16, 2020 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS**

---

This ballot (the "Ballot") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Plan") for Foresight Energy LP ("Foresight") and certain of its affiliates (such affiliates, together with Foresight, the "Debtors"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of May 11, 2020 (the "Voting Record Date"), (a) a holder of a Claim (a "Holder") against the Debtors arising under that certain credit and guaranty agreement, dated as of March 28, 2017, by and among (i) Foresight Energy LLC, as the borrower, (ii) Foresight and certain subsidiaries of Foresight Energy LLC, as guarantors, (iii) The Huntington National Bank, as facilities administrative agent, (iv) Lord Securities Corporation, as term administrative agent, (v) the other lenders party thereto, (vi) Goldman Sachs Lending Partners LLC, The Huntington National Bank, Deutsche Bank Securities Inc., and Citigroup Global Markets Inc., as joint lead arrangers and joint bookrunners, and (vii) Goldman Sachs Lending Partners LLC, as syndication agent, as such agreement may be amended, supplemented, or otherwise modified from time to time and (b) an "accredited investor" within the meaning of Rule 501 of the Securities Act of 1933, as amended (an "Eligible Holder"). Only Eligible Holders of First Lien Facility Claims may vote to accept or reject the Plan using this Ballot. If you hold one or more First Lien Facility Claims but you are not an Eligible Holder, you may not use this Ballot or any other ballot to vote to accept or reject the Plan.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Disclosure Statement"), which was included

in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Prime Clerk LLC (the "<u>Voting Agent</u>") at no charge by: (i) visiting the Voting Agent's website at <u>https://cases.primeclerk.com/foresightenergy</u>, (ii) calling 646-998-7132 (international) or 877-720-6580 (domestic, toll free), or (iii) sending an electronic message to ForesightEnergyBallots@PrimeClerk.com with "Foresight Energy" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://ecf.moed.uscourts.gov. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On March 10, 2020, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

**IMPORTANT NOTICE REGARDING
<u>TREATMENT FOR CLASS 3</u>**

Claims in Class 3 consist of First Lien Facility Claims.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, each Holder of an Allowed First Lien Facility Claim shall receive its Pro Rata share of 92.75% of the New Common Equity, subject to the Full Equity Dilution.

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF
THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT
BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of
the Voting Record Date, the undersigned was the Holder (or authorized signatory of such
Holder) of a First Lien Facility Claim in the aggregate unpaid **principal** amount inserted into the
box below, without regard to any accrued but unpaid interest.

|   |
|---|
| $ |

**Item 2. Votes on Plan**. Please vote either to accept or to reject the Plan with
respect to your Claims in Class 3 below. Any Ballot not marked either to accept or reject the
Plan, or marked both to accept and to reject the Plan, shall not be counted in determining
acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release,
injunction, and exculpation provisions set forth in Articles VIII.D, E and F of the Plan
and attached hereto as <u>Exhibit 1</u>.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and
do not check the box in Item 3 below, you shall be deemed to have consented to the
release provisions set forth in Article VIII.D of the Plan and attached hereto as
<u>Exhibit 1</u>.**

**The Disclosure Statement and the Plan must be referenced for a complete description of
the release, injunction, and exculpation provisions in Articles VIII.D, E, and F of the
Plan, respectively.**

**Vote of Holder of First Lien Facility Claim on the Plan**. The undersigned
Holder of a Class 3 First Lien Facility Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election.** If you voted to reject the Plan in Item 2
above or if you abstained from voting on the Plan, check this box if you elect <u>not</u> to grant the
release contained in Article VIII.D of the Plan. Election to withhold consent to the releases
contained in Article VIII.D of the Plan is at your option.  If you submit your Ballot without this

4

box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases contained in VIII.D of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐    The undersigned has (i) elected not to vote on the Plan or has voted to reject the Plan in Item 2 and (ii) elects **not** to grant the releases contained in Article VIII.D of the Plan.

**Item 4.** Acknowledgments. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the First Lien Facility Claim described in Item 1 as of the Voting Record Date, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) it has not submitted any other Ballots for other Class 3 First Lien Facility Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____

Name of Holder

_____

Signature

_____

Name of Signatory and Title

_____

Name of Institution (if different than Holder)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

6

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (OR THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT
COURIER, OR HAND DELIVERY TO:**

**Foresight Energy LP
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY  10165**

**<u>OR</u>**

**Submit your Ballot via the Voting Agent's online portal at
https://cases.primeclerk.com/foresightenergy.  Click on the "Submit E-Ballot" section of
the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit
your customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**The Voting Agent's online portal is the sole manner in which Ballots will be accepted via
electronic or online transmission.  Ballots submitted by facsimile, email or other means of
electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot
ID# you receive, as applicable.**

**Holders of First Lien Facility Claims who cast a Ballot using the Voting Agent's online
portal should NOT also submit a paper Ballot.**

---

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS BALLOT **ON
OR BEFORE <u>JUNE 16, 2020</u>, AT 4:00 PM,** PREVAILING CENTRAL TIME, (AND IF THE
VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
CLASS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY
IN THE DISCRETION OF THE DEBTORS.

---

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO FORESIGHTENERGYBALLOTS@PRIMECLERK.COM WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.  You may return the Ballot by either of the following two methods:

        **Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to the following address:

> **Foresight Energy LP**
> **c/o Prime Clerk LLC**
> **One Grand Central Place**
> **60 East 42nd Street, Suite 1440**
> **New York, NY  10165**
>
> **Attention: Foresight Energy Balloting**

        **Use of Online Ballot Portal**.  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.primeclerk.com/foresightenergy.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

        **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.      If neither the "Accept" nor "Reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted. If both the "Accept" and "Reject" box is checked in Item 2, the Ballot will not be counted.

3.      You must vote all your Class 3 First Lien Facility Claims under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Class 3 First Lien Facility Claims, the Ballots are not voted in the same manner, and you do not

correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.      If you abstained from voting on the Plan or voted to reject the Plan and, in each case, elect <u>not</u> to grant the releases contained in Article VIII.D of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at your option. If you submit your Ballot without the box in Item 3 checked or if you fail to submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

5.      If you vote to accept the Plan by checking the "Accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

6.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot, provided that, if a Holder timely submits a both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

9.      In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED.

13.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR

9

THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO  FORESIGHTENERGYBALLOTS@PRIMECLERK.COM WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Exhibit 1

*Plan Injunction, Releases, and Exculpation*

If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the exculpation and injunction provisions set forth in Articles VIII.E and F of the Plan, respectively.  If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan and do not check the box in Item 3 above, or (iii) vote to reject the Plan and do not check the box in Item 3 above, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Article VIII.D Releases by Holders of Claims and Interests*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the services of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, each of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all Released Claims; <u>provided</u>, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.D of the Plan do not release any post-Effective Date obligations of any party or Entity arising under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases contained in Article VIII of the Plan, which include, by reference, each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases contained in Article VIII of the Plan are:   (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the released claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases contained in Article VIII of the Plan against any of the Released Parties.

*Article VIII.E Exculpation*

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct.

*Article VIII.F Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and/or the Released Parties:

1. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

2. enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;

3. creating, perfecting or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests;

4. asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

5. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan.

**<u>Exhibit B-2</u>**

**Form of Master Ballot for Holders of Class 4 Second Lien Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MASTER BALLOT TO ACCEPT OR REJECT THE DEBTORS' PLAN**

**CLASS 4:  SECOND LIEN NOTES CLAIMS**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 PM, PREVAILING CENTRAL TIME, ON JUNE 16, 2020 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS**

---

This master ballot (the "Ballot") is provided to you in your capacity as a broker, dealer, commercial bank, trust company, or other agent nominee (each a "Nominee") of one or more Beneficial Holders[1] of Class 4 Second Lien Notes Claims as of May 11, 2020 (the "Voting Record Date"), to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Plan") for Foresight Energy LP ("Foresight") and certain of its affiliates (such affiliates, together with Foresight, the "Debtors"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Disclosure Statement"), which was included in the package (the "Solicitation Package") you are receiving with this Ballot. The Disclosure Statement provides information to assist Holders in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Prime Clerk LLC (the "Voting Agent") at no charge by: (i) visiting the Voting Agent's website at https://cases.primeclerk.com/foresightenergy, (ii) calling 646-998-7132 (international) or 877-720-6580 (domestic, toll free), or (iii) sending an electronic message to ForesightEnergyBallots@PrimeClerk.com with "Foresight Energy" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at

---

[1]    A "Beneficial Holder" is a beneficial owner of Class 4 Second Lien Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[CUSIPs indicated on Exhibit 2 attached hereto]

https://ecf.moed.uscourts.gov. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

Please use this Ballot to (i) transmit votes to accept or reject the Plan and (ii) make elections, each on behalf of and in accordance with the ballots cast by the Beneficial Holders holding Class 4 Second Lien Notes Claims through them. In lieu of submitting this Ballot, you may also send Beneficial Holders a pre-validated Class 4 Second Lien Notes Claims ballot (a "Pre-Validated Ballot"). Based on your decision whether or not to pre-validate the ballot, the below guidance with respect to pre-validation is mutually exclusive.

**Pre-Validated Ballot**. You may pre-validate a ballot by completing a ballot with the exception of Items 2, 3, and 4 and: (a) indicating on the ballot (i) the name and DTC participant number of the Nominee, (ii) the aggregate principal amount of Class 4 Second Lien Notes Claims held by such Nominee for the Beneficial Holder, and (iii) the account number(s) for the account(s) in which such Class 4 Second Lien Notes Claims are held by the Nominee, and (b) including a medallion guarantee stamp on the ballot validating the amount of Class 4 Second Lien Notes Claims held by such Nominee on behalf of the Beneficial Holder as of the Voting Record Date. Once you pre-validate a ballot, you must *immediately* forward the Solicitation Package to each applicable Beneficial Holder, including (i) the Pre-Validated Ballot, (ii) the Plan and Disclosure Statement, (iii) a postage pre-paid return envelope addressed to the Voting Agent, and (iv) clear instructions that the Beneficial Holder must return its completed and executed ballot to the Voting Agent before the Voting Deadline.

**Not Pre-Validated Ballot**. If you choose not to pre-validate ballots, you must *immediately* forward the Solicitation Package to each Beneficial Holder, including (a) the ballot, (b) the Plan and Disclosure Statement, (c) a return envelope addressed to you, its Nominee, and (d) clear instructions stating that the Beneficial Holder must return its ballot directly to you in sufficient time to allow you to execute this Ballot and return it to the Voting Agent before the Voting Deadline. Upon receipt of completed and executed ballots returned to you by the Beneficial Holder, you must compile and validate the Beneficial Holder's votes and other relevant information using the customer's name or account number. You must then execute this Ballot and transmit it to the Voting Agent by the Voting Deadline. You must retain such ballots in your files for a period of one (1) year after the effective date of the Plan (as you may be ordered to produce the Beneficial Holder ballots to the Debtors or the Bankruptcy Court).

*No* fees or commissions or other remuneration will be payable to you in your capacity as Nominee for soliciting votes on the proposals related to the Plan. The Debtors will, however, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the ballot and other enclosed materials to the Beneficial Holders.

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of, or in addition to, a Beneficial Holder ballot, and collecting votes from Beneficial Holders through online voting, by phone facsimile, or other electronic means.

[CUSIPs indicated on Exhibit 2 attached hereto]

On March 10, 2020, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

[CUSIPs indicated on Exhibit 2 attached hereto]

**IMPORTANT NOTICE REGARDING
<u>TREATMENT FOR CLASS 4</u>**

Claims in Class 4 consist of Second Lien Notes Claims.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, the Beneficial Holder(s) of Allowed Second Lien Notes Claims shall receive its Pro Rata Share of 7.25% of the New Common Equity, subject to the Full Equity Dilution.

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

4

[CUSIPs indicated on Exhibit 2 attached hereto]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Certification of Authority to Vote**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned (please check the applicable box).

☐   is a Nominee for Beneficial Holder(s) on account of the Class 4 Second Lien Notes Claims listed in Item 2 below;

☐   is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by the Beneficial Holder(s) or Nominee that is the registered Holder of the Class 4 Second Lien Notes Claims listed in Item 2 below; or

☐   has been granted a proxy (an original of which is annexed hereto) from (a) a Nominee; or (b) the Beneficial Holder that is the registered Holder of the Class 4 Second Lien Notes Claim listed in Item 2 below.

Accordingly, the undersigned hereby certifies that it has full power and authority to vote to accept or reject the Plan on behalf of such Beneficial Holder(s) on account of such Class 4 Second Lien Notes Claims.

5

[CUSIPs indicated on Exhibit 2 attached hereto]

**Item 2. Votes on Plan**. The undersigned transmits the following vote(s) of the Beneficial Holder(s) in respect of such Beneficial Holder's Class 4 Second Lien Notes Claim(s), and hereby certifies that the following Beneficial Holder(s), as identified by their respective customer account numbers set forth below, are a Beneficial Holder as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed Beneficial Holder ballots casting such votes.[2]

| CUSIP | Customer Account Number or Name of Each Beneficial Holder | Vote on the Plan of Reorganization | | Opt-Out Release Election |
|---|---|---|---|---|
| | | Accept the Plan | Reject the Plan | Indicate below if Beneficial Holder checked box in Item 3 |
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| 9. | | $ | $ | |
| 10. | | $ | $ | |
| | TOTAL | $ | $ | |

**IF YOU ARE ACTING AS A VOTING NOMINEE FOR MORE THAN TEN BENEFICIAL HOLDERS, PLEASE ATTACH ADDITIONAL SHEETS, AS NECESSARY.**

**Item 3. Optional Release Election**. Beneficial Holders who vote to reject the Plan in Item 2 of the Beneficial Holder ballot or abstain from voting on the Plan must check the box in Item 3 of the Beneficial Holder ballot if they elect **not** to grant the release contained in Article VIII.D of the Plan. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at the Beneficial Holder's option.  If a Beneficial Holder submits its Beneficial Holder ballot without this box in Item 3 checked, or if the Beneficial Holder does not submit a ballot by the Voting Deadline, the Beneficial Holder will be deemed to consent to the releases contained in VIII.D of the Plan to the fullest extent permitted by applicable law. If the Beneficial Holder voted to accept the Plan in Item 2 of the Beneficial Holder ballot, (i) the Beneficial Holder will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law and (ii) if the Beneficial Holder checked the box in Item 3 of the Beneficial Holder ballot, its election not to grant the releases will not be counted.

---

[2]    Indicate in the appropriate column the aggregate principal amount voted for each account, or attach such information to this Master Ballot in the form of the following table. Please note each Beneficial Holder must vote *all* of each such Beneficial Holder's Class 4 Second Lien Notes Claims to accept *or* to reject the Plan, and may *not* split such vote. Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or which indicates both an acceptance and a rejection of the Plan, shall not be counted.

[CUSIPs indicated on Exhibit 2 attached hereto]

**Item 4. Certification as to Transcription of Information from Item 4 as to Class 4 Second Lien Notes Claims Voted Through Other Ballots**. The undersigned certifies that it has transcribed in the following table the information, if any, that the Beneficial Holder ballot, identifying any Class 4 Second Lien Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

| CUSIP | Your Customer Account Number for Each Beneficial Holder That Completed Item 4 of the Beneficial Holder Ballot | Account Number | DTC Participant Number | Name of Holder | TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS: Principal Amount of Class 4 Second Lien Notes Claims Voted |
|---|---|---|---|---|---|
| 1. | | | | | $ |
| 2. | | | | | $ |
| 3. | | | | | $ |
| 4. | | | | | $ |
| 5. | | | | | $ |
| 6. | | | | | $ |
| 7. | | | | | $ |
| 8. | | | | | $ |
| 9. | | | | | $ |
| 10. | | | | | $ |

**Item 5. Acknowledgments**. By signing this Ballot, the undersigned certifies that:

1.    (i) it has received a copy of the Plan, the Disclosure Statement, the Beneficial Holder Ballot, and the other applicable solicitation materials, and it has delivered the same to the Beneficial Holders holding Class 4 Second Lien Notes Claims through the undersigned, (ii) it has received a completed and signed Beneficial Holder ballot from each such Beneficial Holder; (iii) it is the registered Holder of the securities being voted, or is the agent thereof; and (iv) it has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

2.    it has properly disclosed: (i) the number of Beneficial Holders holding Class 4 Second Lien Notes Claims through the undersigned; (ii) the respective amounts of Class 4 Second Lien Notes Claims owned by each Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

3.    if it is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 4 Second Lien Notes Claims, it confirms and attests to each of the certifications in Item 5 of the applicable Beneficial Holder Ballot;

4.    each such Beneficial Holder has certified to it, or an intermediary Nominee, as applicable, that the Beneficial Holder is eligible to vote on the Plan; and

7

[CUSIPs indicated on Exhibit 2 attached hereto]

5.      it will maintain the Beneficial Holder ballots and evidence of separate transactions returned by the Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____

Name of Nominee

_____

Participant Number

_____

Name of Agent for Nominee

_____

Signature

_____

Name of Signatory and Title (if other than Nominee)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**PLEASE <u>EITHER</u> COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS**

8

[CUSIPs indicated on Exhibit 2 attached hereto]

**MAIL (OR THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, EMAIL, OR HAND DELIVERY TO:**

**Foresight Energy LP**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY  10165**

**Email: foresightenergyballots@primeclerk.com**

*If you would like to coordinate hand delivery of your master Ballot, please send an email to foresightenergyballots@primeclerk.com and provide the anticipated date and time of your delivery.*

**-OR-**

**SEND YOUR BENEFICIAL HOLDERS A PRE-VALIDATED BALLOT IN THEIR SOLICITATION PACKAGE FOR DIRECT RETURN TO THE VOTING AGENT AT THE ADDRESS ABOVE.**

---

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT **ON OR BEFORE <u>JUNE 16, 2020</u>, AT 4:00 PM,** PREVAILING CENTRAL TIME, (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THE VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.

---

[CUSIPs indicated on Exhibit 2 attached hereto]

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO FORESIGHTENERGYBALLOTS@PRIMECLERK.COM WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

To ensure that the votes of your Beneficial Holders count, you should have already done one of the following:  (a) delivered the Beneficial Holder ballots and the Solicitation Package to each Beneficial Holder with clear instructions on when to return such ballots to you to allow you to complete and return this Ballot so that the Voting Agent **actually receives** it prior to the Voting Deadline; or (b) if you are not submitting this Ballot, sent the Beneficial Holders the Pre-Validated Ballots in their Solicitation Package for direct return to the Voting Agent at:

---

**Foresight Energy LP**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY  10165**

**Attention: Foresight Energy Balloting**

**Email: foresightenergyballots@primeclerk.com**

---

**The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.      If neither the "Accept" nor "Reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted. If both the "Accept" and "Reject" box is checked in Item 2, the Ballot will not be counted.

3.      You must vote all your Class 4 Second Lien Notes Claims under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Class 4 Second Lien Notes Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

[CUSIPs indicated on Exhibit 2 attached hereto]

4.      If you abstained from voting on the Plan or voted to reject the Plan and, in each case, elect not to grant the releases contained in Article VIII.D of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at your option. If you submit your Ballot without the box in Item 3 checked or if you fail to submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

5.      If you vote to accept the Plan by checking the "Accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

6.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot, provided that, if both a paper Ballot and electronic Ballot are submitted timely on account of the same Class 4 Second Lien Notes Claim(s), the electronic Ballot shall supersede the paper Ballot.

9.      In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED.

13.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO  FORESIGHTENERGYBALLOTS@PRIMECLERK.COM

                                    [CUSIPs indicated on Exhibit 2 attached hereto]

WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

[CUSIPs indicated on Exhibit 2 attached hereto]

## Exhibit 1

*Plan Injunction, Releases, and Exculpation*

If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the exculpation and injunction provisions set forth in Articles VIII.E and F of the Plan, respectively.  If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan and do not check the box in Item 3 above, or (iii) vote to reject the Plan and do not check the box in Item 3 above, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Article VIII.D Releases by Holders of Claims and Interests*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the services of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, each of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all Released Claims; provided, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.D of the Plan do not release any post-Effective Date obligations of any party or Entity arising under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases contained in Article VIII of the Plan, which include, by reference, each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases contained in Article VIII of the Plan are:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the released claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases contained in Article VIII of the Plan against any of the Released Parties.

### Article VIII.E Exculpation

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct.

### Article VIII.F Injunction.

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and/or the Released Parties:

1. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

2. enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;

3. creating, perfecting or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests;

4. asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

5. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan.

2

### Exhibit 2

**Please check one box below to indicate the CUSIP/ISIN to which this master Ballot pertains (or clearly indicate such information directly on the master Ballot or on a schedule thereto). If you check more than one box below, you risk the votes being conveyed through this master Ballot being deemed defective and invalid.**

| Class 4 – Second Lien Notes Claims | | |
|---|---|---|
| ❑ | 2nd Lien 11.5% due 4/1/2023 (144A) | 345525AE9 / US345525AE90 |
| ❑ | 2nd Lien 11.5% due 4/1/2023 (REGS) | U34550AE0 / USU34550AE00 |

## **Exhibit B-3**

**Form of Beneficial Holder Ballot for Holders of Class 4 Second Lien Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BENEFICIAL HOLDER BALLOT FOR ACCEPTANCE OR
REJECTION OF THE DEBTORS' PLAN**

**CLASS 4:  SECOND LIEN NOTES CLAIMS**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
4:00 PM, PREVAILING CENTRAL TIME, ON JUNE 16, 2020 (THE
"UNDERLINE VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS**

---

This ballot (the "Ballot") is provided to you in your capacity as a Beneficial Holder,[1] as indicated by the records maintained by your Nominee,[2] to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Plan") for Foresight Energy LP ("Foresight") and certain of its affiliates (such affiliates, together with Foresight, the "Debtors"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of May 11, 2020 (the "Voting Record Date"), (a) a Beneficial Holder of a Second Lien Notes Claim (a "Holder") against the Debtors and (b) an "accredited investor" within the meaning of Rule 501 of the Securities Act of 1933, as amended (an "Eligible Holder"). Only Eligible Holders of Second Lien Notes Claims may vote to accept or reject the Plan using this Ballot. If you hold one or more Second Lien Notes Claims but you are not an Eligible Holder, you may not use this Ballot or any other ballot to vote to accept or reject the Plan.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended,

---

[1]    A "Beneficial Holder" is a beneficial owner of Class 4 Second Lien Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[2]    "Nominee" means the broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other such party in whose name your beneficial ownership in Class 4 Second Lien Notes Claims is registered or held of record on your behalf as of the Voting Record Date.

[CUSIPs indicated on Exhibit 2 attached hereto]

modified, or supplemented from time to time, the "Disclosure Statement"), which was included in the package (the "Solicitation Package") you are receiving with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Prime Clerk, LLC (the "Voting Agent") at no charge by: (i) visiting the Voting Agent's website at https://cases.primeclerk.com/foresightenergy, (ii) calling 646-998-7132 (international) or 877-720-6580 (domestic, toll free), or (iii) sending an electronic message to ForesightEnergyBallots@PrimeClerk.com with "Foresight" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://ecf.moed.uscourts.gov. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On March 10, 2020, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

[CUSIPs indicated on Exhibit 2 attached hereto]

**IMPORTANT NOTICE REGARDING**
**TREATMENT FOR CLASS 4**

Claims in Class 4 consist of Second Lien Notes Claims.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, the Holder(s) of Allowed Second Lien Notes Claims shall receive its Pro Rata Share of the 7.25% of the New Common Equity, subject to the Full Equity Dilution.

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

3

[CUSIPs indicated on Exhibit 2 attached hereto]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such Beneficial Holder) of a Second Lien Notes Claim in the aggregate unpaid **principal** amount inserted into the box below, without regard to any accrued but unpaid interest.

$

**Item 2. Votes on Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 4 below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Articles VIII.D, E and F of the Plan and attached hereto as <u>Exhibit 1</u>.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan and attached hereto as <u>Exhibit 1</u>.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Articles VIII.D, E and F of the Plan, respectively.**

**Vote of Holder of Second Lien Notes Claim on the Plan**. The undersigned Holder of a Class 4 Second Lien Notes Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election**. If you voted to reject the Plan in Item 2 above or if you abstained from voting on the Plan, check this box if you elect **not** to grant the

4

[CUSIPs indicated on Exhibit 2 attached hereto]

release contained in Article VIII.D of the Plan. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at your option.  If you submit your Ballot without this box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases contained in VIII.D of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐   The undersigned has (i) elected not to vote on the Plan or has voted to reject the Plan in Item 2 and (ii) elects **not** to grant the releases contained in Article VIII.D of the Plan.

**Item 4. Class 4 Second Lien Notes Claims Held in Additional Accounts**. By completing and returning this Ballot, the Beneficial Holder of the Second Lien Notes Claim identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Class 4 Second Lien Notes Claims owned by such Beneficial Holder as indicated in Item 1, except for the Second Lien Notes Claims identified in the following table (please use additional sheets of paper if necessary); and (b) **all** Ballots for Second Lien Notes Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the plan that the Beneficial Holder has indicated in Item 2 of this Ballot. **To be clear, if any Beneficial Holder holds Second Lien Notes Claims through one or more Nominees, such Beneficial Holder must identify all Second Lien Notes Claims held through each Nominee in the following table, and must confirm the same vote to accept or reject the Plan on all ballots submitted.**

ONLY COMPLETE THIS ITEM 4 IF YOU HAVE SUBMITTED OTHER BALLOTS

| CUSIP | Account Number | DTC Participant Number | Name of Holder[3] | Principal Amount of Class 4 Second Lien Notes Claims Voted |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

---

[3]   Insert your name if you are the Holder of record of the Class 4 Second Lien Notes Claim, or, if held in a street name, insert the name of your Nominee.

[CUSIPs indicated on Exhibit 2 attached hereto]

**Item 5. Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is an authorized signatory of such Beneficial Holder) of the Second Lien Notes Claim described in Item 1 as of the Voting Record Date, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) it has not submitted any other Ballots for other Class 4 Second Lien Notes Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____
Name of Beneficial Holder

_____
Signature

_____
Name of Signatory and Title (if other than the
Beneficial Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

[CUSIPs indicated on Exhibit 2 attached hereto]

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (OR THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT
COURIER, OR HAND DELIVERY TO THE VOTING AGENT OR YOUR NOMINEE,
AS APPLICABLE (SEE THE VOTING INSTRUCTIONS FOR MORE DETAILS).**

---

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS BALLOT **ON
OR BEFORE** <u>JUNE 16, 2020</u>, **AT 4:00 PM,** PREVAILING CENTRAL TIME, (AND IF THE
VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
CLASS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY
IN THE DISCRETION OF THE DEBTORS.

---

7

[CUSIPs indicated on Exhibit 2 attached hereto]

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO FORESIGHTENERGYBALLOTS@PRIMECLERK.COM WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Complete the Ballot by providing all the information requested. To ensure that your Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot by either of the following two methods, as applicable:

    **Return to Nominee**.  If you received this Ballot and a return envelope addressed to your Nominee, you must return your completed Ballot directly to your Nominee in accordance with the instructions provided by your Nominee, and, in any event, with sufficient time to permit your Nominee to deliver your vote(s) on a completed master ballot so that it is **actually received** by the Voting Agent before the Voting Deadline.

    **Return to Voting Agent**.  If you received this Pre-Validated Ballot and a return envelope addressed to the Voting Agent, you must deliver the Pre-Validated Ballot directly to the Voting Agent by using the return envelope provided or otherwise at the below address so as to be **actually received** by the Voting Agent before the Voting Deadline.

    <table>
    <tr><td align="center">

**Foresight Energy LP**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY  10165**

**Attention: Foresight Energy Balloting**

    </td></tr>
    </table>

    **The Voting Agent will tabulate all properly completed Ballots, including via a Nominee or a master ballot, received on or before the Voting Deadline**.

2.  If neither the "Accept" nor "Reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted. If both the "Accept" and "Reject" box is checked in Item 2, the Ballot will not be counted.

3.  You must vote all your Class 4 Second Lien Notes Claims under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Class 4 Second Lien Notes Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An

<div align="center">8</div>

<div align="right">[CUSIPs indicated on Exhibit 2 attached hereto]</div>

otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.    If you abstained from voting on the Plan or voted to reject the Plan and, in each case, elect <u>not</u> to grant the releases contained in Article VIII.D of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at your option. If you submit your Ballot without the box in Item 3 checked or if you fail to submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

5.    If you vote to accept the Plan by checking the "Accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

6.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot, provided that, if both a paper Ballot and electronic Ballot are submitted timely on account of the same Class 4 Second Lien Notes Claim(s), the electronic Ballot shall supersede the paper Ballot.

9.    In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.    PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED.

13.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 646-998-

[CUSIPs indicated on Exhibit 2 attached hereto]

7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO  <u>FORESIGHTENERGYBALLOTS@PRIMECLERK.COM</u> WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

[CUSIPs indicated on Exhibit 2 attached hereto]

## Exhibit 1

*Plan Injunction, Releases, and Exculpation*

If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the exculpation and injunction provisions set forth in Articles VIII.E and F of the Plan, respectively.  If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan and do not check the box in Item 3 above, or (iii) vote to reject the Plan and do not check the box in Item 3 above, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Article VIII.D Releases by Holders of Claims and Interests*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the services of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, each of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all Released Claims; <u>provided</u>, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.D of the Plan do not release any post-Effective Date obligations of any party or Entity arising under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases contained in Article VIII of the Plan, which include, by reference, each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases contained in Article VIII of the Plan are:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the released claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases contained in Article VIII of the Plan against any of the Released Parties.

*Article VIII.E Exculpation*

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct.

*Article VIII.F Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and/or the Released Parties:

1. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

2. enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;

3. creating, perfecting or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests;

4. asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

5. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan.

2

## <u>Exhibit 2</u>

**Please check one box below to indicate the CUSIP/ISIN to which this Ballot pertains (or clearly indicate such information directly on the Ballot or on a schedule thereto). If you check more than one box below, you risk the votes being conveyed through this Ballot being deemed defective and invalid.**

| Class 4 – Second Lien Notes Claims | | |
|---|---|---|
| ❑ | 2nd Lien 11.5% due 4/1/2023 (144A) | 345525AE9 / US345525AE90 |
| ❑ | 2nd Lien 11.5% due 4/1/2023 (REGS) | U34550AE0 / USU34550AE00 |

## Exhibit B-4

**Form of Ballot for Holders of Class 5 General Unsecured Claims**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR HOLDERS OF GENERAL**
**UNSECURED CLAIMS TO ACCEPT OR REJECT THE DEBTORS' PLAN**

**CLASS 5: GENERAL UNSECURED CLAIMS**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
4:00 PM, PREVAILING CENTRAL TIME, ON JUNE 16, 2020 (THE
"VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS**

---

This ballot (the "Ballot") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Plan") for Foresight Energy LP ("Foresight") and certain of its affiliates (such affiliates, together with Foresight, the "Debtors"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of May 11, 2020 (the "Voting Record Date"), a holder of a General Unsecured Claim (a "Holder") against the Debtors.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Disclosure Statement"), which was included in the package (the "Solicitation Package") you are receiving with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Prime Clerk, LLC (the "Voting Agent") at no charge by: (i) visiting the Voting Agent's website at https://cases.primeclerk.com/foresightenergy, (ii) calling 646-998-7132 (international) or 877-720-6580 (domestic, toll free), or (iii) sending an email to ForesightEnergyBallots@PrimeClerk.com with "Foresight Energy" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://ecf.moed.uscourts.gov. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error,

or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On March 10, 2020, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

**IMPORTANT NOTICE REGARDING
<u>TREATMENT FOR CLASS 5</u>**

Claims in Class 5 consist of General Unsecured Claims.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, the Holder(s) of General Unsecured Claims shall receive:

(i) **If Class 5 votes to accept the Plan.** Its Pro Rata share of $[●] in Cash.

(ii) **If Class 5 votes to reject the Plan.** Its Pro Rata share of $[●] in Cash.

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a General Unsecured Claim in the aggregate amount inserted into the box below.

$ 

**Item 2. Votes on Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 5 below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Articles VIII.D, E and F of the Plan and attached hereto as <u>Exhibit 1</u>.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan and attached hereto as <u>Exhibit 1</u>.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Articles VIII.D, E and F of the Plan, respectively.**

---

**Vote of Holder of General Unsecured Claim on the Plan**. The undersigned Holder of a General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election**. If you voted to reject the Plan in Item 2 above or if you abstained from voting on the Plan, check this box if you elect **not** to grant the release contained in Article VIII.D of the Plan. Election to withhold consent to the releases

4

contained in Article VIII.D of the Plan is at your option.  If you submit your Ballot without this box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐    The undersigned has (i) elected not to vote on the Plan or has voted to reject the Plan in Item 2 and (ii) elects **not** to grant the releases contained in Article VIII.D of the Plan.

**Item 4. Acknowledgments.** By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claim described in Item 1 as of the Voting Record Date, (iii) it has not submitted any other Ballots for other General Unsecured Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the same vote to accept or reject the Plan, and (iv) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title (if different than Holder)

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (OR THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT
COURIER, OR HAND DELIVERY TO:**

**Foresight Energy LP
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY  10165**

*If you would like to coordinate hand delivery of your Ballot, please send an email to
foresightenergyballots@primeclerk.com and provide the anticipated date and time of your
delivery.*

**<u>OR</u>**

**Submit your Ballot via the Voting Agent's online portal, at
https://cases.primeclerk.com/foresightenergy.  Click on the "Submit E-Ballot" section of
the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit
your customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**The Voting Agent's online portal is the sole manner in which Ballots will be accepted via
electronic or online transmission.  Ballots submitted by facsimile, email or other means of
electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot
ID# you receive, as applicable.**

**Holders of General Unsecured Claims who cast a Ballot using the Voting Agent's online
portal should NOT also submit a paper Ballot.**

---

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS BALLOT **ON
OR BEFORE <u>JUNE 16, 2020</u>, AT 4:00 PM,** PREVAILING CENTRAL TIME, (AND IF THE
VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
CLASS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY
IN THE DISCRETION OF THE DEBTORS.

---

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO FORESIGHTENERGYBALLOTS@PRIMECLERK.COM WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.  You may return the Ballot by either of the following two methods:

   **Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to the following address:

   <div style="border:1px solid black; text-align:center;">

   **Foresight Energy LP**
   **c/o Prime Clerk LLC**
   **One Grand Central Place**
   **60 East 42nd Street, Suite 1440**
   **New York, NY  10165**

   **Attention: Foresight Energy Balloting**

   </div>

   *If you would like to coordinate hand delivery of your Ballot, please send an email to foresightenergyballots@primeclerk.com and provide the anticipated date and time of your delivery.*

   **Use of Online Ballot Portal**.  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.primeclerk.com/foresightenergy.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

   **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.      If neither the "Accept" nor "Reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "Accept" and "Reject" box is checked in Item 2, the Ballot will not be counted.

3.      You must vote all your General Unsecured Claims under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different General Unsecured Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.      If you abstained from voting on the Plan or voted to reject the Plan and, in each case, elect <u>not</u> to grant the releases contained in Article VIII.D of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at your option. If you submit your Ballot without the box in Item 3 checked or if you fail to submit your Ballot by the Voting Deadline, you will be deemed to consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

5.      If you vote to accept the Plan by checking the "Accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII.D of the Plan to the fullest extent permitted by applicable law.

6.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot, provided that, if both a paper Ballot and electronic Ballot are submitted timely on account of the same General Unsecured Claim, the electronic Ballot shall supersede the paper Ballot.

9.      In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED.

13.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 646-998-7132 (INTERNATIONAL) OR 877-720-6580 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO  FORESIGHTENERGYBALLOTS@PRIMECLERK.COM WITH "FORESIGHT ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Exhibit 1

*Plan Injunction, Releases, and Exculpation*

If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the exculpation and injunction provisions set forth in Articles VIII.E and F of the Plan, respectively.  If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan and do not check the box in Item 3 above, or (iii) vote to reject the Plan and do not check the box in Item 3 above, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Article VIII.D Releases by Holders of Claims and Interests*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the services of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, each of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all Released Claims; provided, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.D of the Plan do not release any post-Effective Date obligations of any party or Entity arising under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases contained in Article VIII of the Plan, which include, by reference, each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases contained in Article VIII of the Plan are:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the released claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases contained in Article VIII of the Plan against any of the Released Parties.

### Article VIII.E Exculpation

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct.

### Article VIII.F Injunction.

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and/or the Released Parties:

1. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

2. enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;

3. creating, perfecting or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests;

4. asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

5. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan.

2

## Exhibit C

**Opt-Out Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NON-VOTING STATUS NOTICE WITH**
**RESPECT TO IMPAIRED CLASSES PRESUMED TO**
**REJECT THE CHAPTER 11 PLAN OF REORGANIZATION OF**
**FORESIGHT ENERGY LP AND ITS AFFILIATED DEBTORS, AS MODIFIED**

**PLEASE TAKE NOTICE THAT:**

1.      On May [●], 2020, the United States Bankruptcy Court for the Eastern District of Missouri (the  "Bankruptcy Court") entered an order (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Disclosure Statement") as containing adequate information, as required under section 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and Its Affiliated Debtors* as amended, modified, or supplemented from time to time, the "Plan").[1]

2.      Copies of the Plan, the Disclosure Statement, the Disclosure Statement Order, and other documents and materials included in the Solicitation Package may be obtained by: (a) accessing the Debtors' website hosted by their voting agent, Prime Clerk LLC (the "Voting Agent"), at https://cases.primeclerk.com/foresightenergy; (b) writing to the Voting Agent at Foresight Energy LP, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (c) emailing foresightenergyballots@primeclerk.com; (d) calling the Voting Agent's toll-free information line with respect to the Debtors at 646-998-7132 (international) or 877-720-6580 (domestic, toll free); or (e) visiting the website maintained by the Bankruptcy Court at https://www.moeb.uscourts.gov.

3.      You are receiving this notice because, under the terms of Article III of the Plan your Interest(s) in the Debtors are Impaired and you will receive no distribution on account of such Interest(s) under the Plan.  Accordingly, pursuant  to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and are, therefore, not entitled to vote on the

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Order, as applicable.

Plan. Accordingly, this notice is being sent to you for informational purposes only.

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY[2] UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN BY SUBMITTING THE ATTACHED OPT-OUT FORM AS INSTRUCTED THEREIN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.[3] BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[2]   Under the Plan, "Releasing Parties" means: (a) any Released Party; (b) all Holders of Claims or Interests that are deemed to accept the Plan; (c) all Holders of Claims or Interests who either (i) vote to accept or (ii) receive or are deemed to receive a Ballot but abstain from voting on the Plan and do not elect on their Ballot to opt-out of the releases granted pursuant to Article VIII.D of the Plan; (d) all Holders of Claims or Interests entitled to vote who vote to reject the Plan that do not elect on their Ballot to opt-out of the release granted pursuant to Article VIII.D of the Plan; (e) Holders of Interests who do not opt-out of the release granted pursuant to Article VIII.D of the Plan; (f) all other Holders of Claims or Interests to the extent permitted by law; and (g) with respect to the foregoing clauses (a) through (f), each such Entity and its current and former Affiliates, and such Entities' their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), managed or advised accounts, funds or other entities, affiliated investment funds or investment vehicles, investment advisors, sub-advisors or managers, predecessors, successors and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

[3]   Under the Plan, "Released Parties" means: (i) the Debtors and the Reorganized Debtors; (ii) the Debtors' and the Reorganized Debtors' respective boards of directors and the members thereof; (iii) the DIP Agent; (iv) the DIP Lenders; (v) the First Lien Agents; (vi) the Consenting First Lien Lenders; (vii) the Consenting Second Lien Noteholders; (viii) the Backstop Parties; (ix) the Ad Hoc First Lien Group; (x) the Ad Hoc Crossover Group; (xi) Javelin Global Commodities (UK) Ltd.; (xii) Uniper Global Commodities UK Limited; and (xiii) with respect to each of the foregoing Entities in clauses (i) through (xii), each such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), managed or advised accounts, funds or other entities, affiliated investment funds or investment vehicles, investment advisors, sub-advisors or managers, predecessors, successors and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

Dated:    [●], 2020                     Respectfully submitted,
          St. Louis, Missouri
                                        ARMSTRONG TEASDALE LLP


                                        _/s/_____
                                        Richard W. Engel, Jr. (MO 34641)
                                        John G. Willard (MO 67049)
                                        Kathryn R. Redmond (MO 72087)
                                        7700 Forsyth Boulevard, Suite 1800
                                        St. Louis, Missouri  63105
                                        Tel:    (314) 621-5070
                                        Fax:    (314) 621-5065
                                        Email:  rengel@atllp.com
                                                jwillard@atllp.com
                                                kredmond@atllp.com

                                                - and -

                                        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                        Paul M. Basta (admitted *pro hac vice*)
                                        Alice Belisle Eaton (admitted *pro hac vice*)
                                        Alexander Woolverton (admitted *pro hac vice*)
                                        1285 Avenue of the Americas
                                        New York, New York  10019
                                        Tel:    (212) 373-3000
                                        Fax:    (212) 757-3990
                                        Email:  pbasta@paulweiss.com
                                                aeaton@paulweiss.com
                                                awoolverton@paulweiss.com

                                        *Counsel to the Debtors and Debtors in Possession*

### Third-Party Release Opt-Out Form

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND <u>RETURN THIS FORM TO THE DEBTORS VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON JUNE 16, 2020.</u> IF YOU FAIL TO TIMELY SUBMIT THIS FORM OR IF YOU SUBMIT THE FORM WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.**

<div style="border:1px solid black; text-align:center;">

☐ **<u>OPT OUT of the Third-Party Release</u>**

</div>

**<u>Article VIII.D of the Plan contains the following provision</u>:**

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the services of the **Released Parties**[4] to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, each of the **Releasing Parties**[5] (regardless of whether a

---

[4]    Under the Plan, "<u>Released Parties</u>" means: (i) the Debtors and the Reorganized Debtors; (ii) the Debtors' and the Reorganized Debtors' respective boards of directors and the members thereof; (iii) the DIP Agent; (iv) the DIP Lenders; (v) the First Lien Agents; (vi) the Consenting First Lien Lenders; (vii) the Consenting Second Lien Noteholders; (viii) the Backstop Parties; (ix) the Ad Hoc First Lien Group; (x) the Ad Hoc Crossover Group; (xi) Javelin Global Commodities (UK) Ltd.; (xii) Uniper Global Commodities UK Limited; and (xiii) with respect to each of the foregoing Entities in clauses (i) through (xii), each such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), managed or advised accounts, funds or other entities, affiliated investment funds or investment vehicles, investment advisors, sub-advisors or managers, predecessors, successors and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

[5]    Under the Plan, "<u>Releasing Parties</u>" means, collectively, and in each case in its capacity as such: (a) any Released Party; (b) all Holders of Claims or Interests that are deemed to accept the Plan; (c) all Holders of Claims or Interests who either (i) vote to accept or (ii) receive or are deemed to receive a ballot but abstain from voting on the Plan; (d) all Holders of Claims or Interests entitled to vote who vote to reject the Plan that do not elect on their Ballot to opt-out of the release granted pursuant to Article VIII.D; (e) Holders of Interests who do not opt-out of the release granted pursuant to Article VIII.D; (f) all other Holders of Claims or Interests to the extent permitted by law; and (g) with respect to the foregoing clauses (a) through (g), each such Entity and its current and former Affiliates, and each such Entity's and its current and former Affiliates' current and former directors, managers, officers, principals,

Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all Released Claims; **provided**, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.D of the Plan do not release any post-Effective Date obligations of any party or Entity arising under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases contained in Article VIII of the Plan, which include, by reference, each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases contained in Article VIII of the Plan are:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the released claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases contained in Article VIII of the Plan against any of the Released Parties.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

members, employees, equity Holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals.

**Acknowledgments.** By signing this Opt-Out Form, the undersigned certifies that the undersigned has the power and authority to elect whether to grant the releases contained in Article VIII.D of the Plan and has elected not to be a Releasing Party under the Plan.

**Name of Holder** _____

**Signature**_____

**Title (if applicable)** _____

**Name of Institution** _____

**Street Address** _____

**City, State, Zip Code** _____

**Telephone Number**_____

**Email Address**_____

**Date Completed**_____

**PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) <u>PROMPTLY</u>, AND IN ANY EVENT
<u>NO LATER THAN 4:00 P.M. (PREVAILING CENTRAL TIME) ON JUNE 16, 2020</u>, VIA
FIRST CLASS MAIL (OR THE ENCLOSED REPLY ENVELOPE PROVIDED),
OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**Foresight Energy LP Opt-Out Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY  10165**

*If you would like to coordinate hand delivery of your Opt-Out Form, please send an email
to foresightenergyballots@primeclerk.com and provide the anticipated date and time of
your delivery.*

4

**<u>Exhibit D</u>**

**Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SUMMARY OF JOINT**
**CHAPTER 11 PLAN AND NOTICE OF HEARING TO**
**CONSIDER CONFIRMATION OF PLAN OF REORGANIZATION**

**TO:   ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS
AND PARTIES IN INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT:**

1.      On April 9 2020, Foresight Energy LP and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), filed the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Plan"), and a disclosure statement for the Plan (as amended, modified, or supplemented from time to time, the "Disclosure Statement")[1] pursuant to sections 1125 and 1126(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On May [●], 2020, the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") entered an order approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code.

2.      Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "Voting Agent"), at https://cases.primeclerk.com/foresightenergy.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at 646-998-7132 (international); 877-720-6580 (domestic, toll free), or sending an electronic mail message to the Voting Agent at ForesightEnergyInfo@PrimeClerk.com.  A chart summarizing the treatment provided by the Plan to each class of Claims and Interests is included in **Annex A**.

3.      Only Holders of First Lien Facility Claims (Class 3), Second Lien Notes Claims (Class 4), and General Unsecured Claims (Class 5) are entitled to vote to accept or reject the Plan.  All other classes of Claims or Interests are either presumed to accept or deemed to reject the Plan.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

4.      On May [●], 2020, the Debtors commenced solicitation of votes to accept the Plan from the Holders of Claims in Class 3, Class 4, and Class 5, each of record as of May 11, 2020.  **The deadline for the submission of votes to accept or reject the Plan is at 4:00 p.m. (prevailing Central Time) on June 16, 2020, unless such time is extended by the Debtors.**

### **Confirmation Hearing**

5.      A hearing to consider confirmation of the Plan, and any objections thereto, will be held on **June 23, 2020, at 10:00 a.m. (prevailing Central Time)** before the Honorable Kathy A. Surratt-States, United States Bankruptcy Judge, at the Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, 7th Floor – North Courtroom, St. Louis, Missouri 63102, or as soon thereafter as counsel may be heard (the "Confirmation Hearing").

6.      The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Confirmation Hearing, and notice of such adjourned date(s) will be available on the electronic case filing docket and the Debtors' website at https://cases.primeclerk.com/foresightenergy.

7.      Any objections to the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Federal Rules of Bankruptcy Procedure and the *Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Missouri*; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than June 16, 2020, at 4:00 p.m. (prevailing Central Time)** (the "Objection Deadline"):

i.      the Debtors, c/o Foresight Energy LP, One Metropolitan Square, 211 North Broadway, Suite 2600, St. Louis, Missouri 63102 (Attn: Cody E. Nett, Esq.);

ii.      counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn: Paul M. Basta, Esq., Alice Belisle Eaton, Esq., and Alexander Woolverton, Esq.), and (b) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, Missouri 63105 (Attn: Richard W. Engel, Jr., Esq., and John G. Willard, Esq.);

iii.      counsel to the Ad Hoc First Lien Group, Akin Gump Strauss Hauer & Feld LLP, 1 Bryant Park, New York, NY 10036 (Attn: Ira Dizengoff, Esq., and Brad Kahn, Esq.);

iv.      counsel to the Ad Hoc Crossover Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis Dunne, Esq., and Parker Milender, Esq.);

  v.  counsel to the Official Committee of Unsecured Creditors, Whiteford Taylor Preston LLP, 3190 Fairview Park Drive, Suite 800, Falls Church, VA 22042 (Attn: Christopher A. Jones, Esq.); and

  vi.  the Office of the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee"), 111 South 10th Street, Suite 6353, St. Louis, Missouri 63102 (Attn: Carole Ryczek, Esq.).

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS. FAILURE TO FILE A TIMELY OBJECTION TO THE PLAN WILL RESULT, IF THE PLAN IS CONFIRMED, IN THE APPLICATION OF THE PROVISIONS SET FORTH ON ANNEX A, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED THEREIN, TO EACH OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS.  ANY PERSON THAT OPPOSES THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH ON SHOULD FILE A TIMELY OBJECTION TO THE PLAN IN ACCORDANCE WITH THIS NOTICE.**

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

Dated:    [●], 2020                     Respectfully submitted,
          St. Louis, Missouri
                                        ARMSTRONG TEASDALE LLP


                                        _/s/_____
                                        Richard W. Engel, Jr. (MO 34641)
                                        John G. Willard (MO 67049)
                                        Kathryn R. Redmond (MO 72087)
                                        7700 Forsyth Boulevard, Suite 1800
                                        St. Louis, Missouri  63105
                                        Tel:    (314) 621-5070
                                        Fax:    (314) 621-5065
                                        Email: rengel@atllp.com
                                                jwillard@atllp.com
                                                kredmond@atllp.com

                                                - and -

                                        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                        Paul M. Basta (admitted *pro hac vice*)
                                        Alice Belisle Eaton (admitted *pro hac vice*)
                                        Alexander Woolverton (admitted *pro hac vice*)
                                        1285 Avenue of the Americas
                                        New York, New York  10019
                                        Tel:    (212) 373-3000
                                        Fax:    (212) 757-3990
                                        Email: pbasta@paulweiss.com
                                                aeaton@paulweiss.com
                                                awoolverton@paulweiss.com

                                        *Counsel to the Debtors and Debtors in Possession*

## Annex A

**Selected Plan Provisions**

## **Summary of Plan Treatment**

The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class.

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote | Approx. Percentage Recovery |
|-------|-------------------|-----------|------------------------|---------------------|-----------------------------|
| 1 | Other Secured Claims | On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the applicable Debtor, with the consent of the Required First Lien Lenders: (i) Reinstatement of its Claims; (ii) payment in full in Cash of the unpaid portion of its Allowed Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, then such Allowed Other Secured Claim shall be paid in accordance with its terms); or (iii) the collateral securing its Allowed Other Secured Claim on the later of the Effective Date and the date such Other Secured Claims becomes an Allowed Claim or as soon thereafter as reasonable practicable. | Unimpaired | No (Presumed to Accept) | 100% |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, such Allowed Other Priority Claim shall be paid in accordance with its terms) or pursuant to such other terms as may be agreed to by the Holder of an Allowed Other Priority Claim and the Debtors. | Unimpaired | No (Presumed to Accept) | 100% |
| 3 | First Lien Facility Claims | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the First Lien Facility Claims, each Holder of an Allowed First Lien Facility Claim shall receive its Pro Rata share of 92.75% of the | Impaired | Yes | [●]% |

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote | Approx. Percentage Recovery |
|---|---|---|---|---|---|
| | | New Common Equity, subject to the Full Equity Dilution. | | | |
| 4 | Second Lien Notes Claims | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Second Lien Notes Claims, each Holder of an Allowed Second Lien Notes Claim shall receive its Pro Rata share of 7.25% of the New Common Equity, subject to the Full Equity Dilution. | Impaired | Yes | [●]% |
| 5 | General Unsecured Claims | *If Class 5 Accepts the Plan*: If Class 5 votes to accept the Plan as to all of the Debtors, then in full satisfaction, release and discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive at its option, either: (a) its Pro Rata share of $[●] in Cash or (b) other less favorable treatment agreed to by the Holder.<br><br>*If Class 5 Rejects the Plan:* If Class 5 votes to reject the Plan with respect to any Debtor, then in full satisfaction, release and discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive at its option, either: (a) its Pro Rata share of $[●] in Cash; or (b) other less favorable treatment agreed to by the Holder. | Impaired | Yes | [●]% |
| 7 | Intercompany Claims | On the Effective Date, each Intercompany Claim shall be Reinstated, cancelled, or otherwise settled to the extent determined to be appropriate by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required First Lien Lenders. | Impaired or Unimpaired | No (Presumed to Accept or Deemed to Reject) | 100% or 0% |
| 8 | Intercompany Interests | On the Effective Date, each Intercompany Interest shall be Reinstated, cancelled, or otherwise settled to the extent determined to be appropriate by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required First Lien Lenders. | Impaired or Unimpaired | No (Presumed to Accept or Deemed to Reject) | 100% or 0% |

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote | Approx. Percentage Recovery |
|-------|------------------|-----------|------------------------|---------------------|----------------------------|
| 9 | Interests in FELP and Interests in GP LLC | On the Effective Date, all Interests in GP LLC and all Interests in FELP shall be cancelled and discharged and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and each Holder of such Interests shall not be entitled to receive any distribution under the Plan on account of such Interests. | Impaired | No (Deemed to Reject) | 0% |

## Release, Injunction, and Related Provisions

Please be advised that the Plan contains certain release, exculpation, and injunction provisions substantially as follows:

Relevant Definitions

"*Exculpated Claim*" means any Released Claim, Cause of Action or any claim related to any act or omission derived from, based upon, related to or arising from the Debtors' in or out-of-court prepetition restructuring efforts, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or Filing of the Disclosure Statement, the Plan or any contract, instrument, release or other agreement or document (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, including: (a) the Plan, (b) the Disclosure Statement, (c) the Confirmation Order, (d) the DIP Facility, (e) the Exit Facility Credit Agreement, (f) the Exit Facility Backstop Agreement, (g) the New Organizational Documents, (h) the Restructuring Support Agreement (including the DIP Backstop Agreement), (i) the Management Incentive Plan, and (j) any Schedule of Rejected Executory Contracts and Unexpired Leases (items (d) through (j) hereof, as may be amended from time to time, the "*Restructuring Documents*"), or any other agreement or ancillary document contemplated by the Plan; provided, however, the foregoing shall not be deemed to release, affect or limit any of the rights and obligations of the Released Parties from, or exculpate the Released Parties with respect to, any of the Released Parties' obligations or covenants arising under the Restructuring Documents and any contracts, instruments, releases and other agreements or documents delivered in connection with or contemplated by, the foregoing.

"*Released Parties*" means:  (i) the Debtors and the Reorganized Debtors; (ii) the Debtors' and the Reorganized Debtors' respective boards of directors and the members thereof; (iii) the DIP Agent; (iv) the DIP Lenders; (v) the First Lien Agents; (vi) the Consenting First Lien Lenders; (vii) the Consenting Second Lien Noteholders; (viii) the Backstop Parties; (ix) the Ad Hoc First Lien Group; (x) the Ad Hoc Crossover Group; (xi) Javelin Global Commodities (UK) Ltd.; (xii) Uniper Global Commodities UK Limited; and (xiii) with respect to each of the foregoing Entities in clauses (i) through (xii), each such Entity and its Related Persons.

"*Releasing Parties*" means:  (a) any Released Party; (b) all Holders of Claims or Interests that are deemed to accept the Plan; (c) all Holders of Claims or Interests who either (i) vote to accept or (ii) receive or are deemed to receive a Ballot but abstain from voting on the Plan and do not elect on their Ballot to opt-out of the releases granted pursuant to Article VIII.D of the Plan; (d) all Holders of Claims or Interests entitled to vote who vote to reject the Plan that do not elect on their Ballot to opt-out of the release granted pursuant to Article VIII.D of the Plan; (e) Holders of Interests who do not opt-out of the release granted pursuant to Article VIII.D of the Plan; (f) all other Holders of Claims or Interests to the extent permitted by law; and (g) with respect to the foregoing clauses (a) through (f), each such Entity and its Related Persons.

"*Reorganized Debtors*" means all Debtors as reorganized pursuant to the Confirmation Order upon or after the Effective Date pursuant to the Plan, including any transferee thereof, by entity or asset transfer, merger, consolidation or otherwise, including in connection with any Restructuring Transaction, including, without limitation, Reorganized Foresight.

"*Required First Lien Lenders*" means, as of the date of determination, Consenting First Lien Lenders holding in excess of 60% of the aggregate principal amount of First Lien Facility Claims held by all Consenting First Lien Lenders.

"*Required Second Lien Noteholders*" means, as of the date of determination, Consenting Second Lien Noteholders holding in excess of 50% of the aggregate principal amount of Second Lien Notes Claims held by all Consenting Second Lien Noteholders.

A.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, including the Plan Supplement documents, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the Holder of such a Claim has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the Effective Date occurring.

B.      *Release of Liens*

Except as otherwise specifically provided in the Plan, the Confirmation Order or the Exit Facility Documents (including in connection with any express written amendment of any

mortgage, deed of trust, Lien, pledge, or other security interest under the Exit Facility Documents), on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. In addition, on or after the Effective Date, at the expense the Reorganized Debtors, the DIP Agent, the First Lien Agents, and the Second Lien Indenture Trustee shall execute and deliver all documents reasonably requested by the Debtors, the Reorganized Debtors or the Exit Facility Agent to evidence the release of such mortgages, deeds of trust, Liens, pledges and other security interests (including as required under the laws of other jurisdictions for non-U.S. security interests) and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

## C.    *Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the services of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date and to the fullest extent permitted by applicable law, the Debtors, the Reorganized Debtors, their Estates, and any Person seeking to exercise the rights of the Estates, including any successor to the Debtors and any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, matured or unmatured, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any claim against, or interest in, any Debtor or other Entity, based on or relating to, or in any manner arising from or in connection with, in whole or in part, the Debtors, their Affiliates, the Estates, the conduct of the Debtors' businesses, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases and any related adversary proceedings, the Reorganized Debtors, the Reorganized Debtors' businesses, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of claims and Interests prior to or in the Chapter 11 Cases, the First Lien Credit Agreement Documents, the Second Lien Notes Indenture Documents, the negotiation, formulation, preparation, dissemination, or filing of the Restructuring Support Agreement, any of the Restructuring Documents, or any related agreements, term sheets, instruments, or other documents contemplated by the foregoing or appropriate to effectuate the

foregoing, the pursuit of Confirmation, the pursuit of the occurrence of the Effective Date of the Plan, and any other act or omission, transaction, agreement, event, or other occurrence related or relating to the foregoing and taking place on or before the Effective Date of the Plan, except for any claim related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, gross negligence, or willful misconduct (all such claims and liabilities as described herein, collectively, the "*Released Claims*"); <u>provided</u>, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.C of the Plan do not release any post-Effective Date obligations of any party or Entity: (1) arising under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Renegotiated Contracts/Leases; or (2) expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor Release against any of the Released Parties.

**D**.    *Releases by Holders of Claims and Interests*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the services of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, each of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, discharged, and acquitted the Released Parties and their respective property from any and all Released Claims; <u>provided</u>, nothing in the foregoing shall result in any of the Debtors' or Reorganized Debtors' officers and directors waiving any Claims arising under employment or severance agreements (after giving effect to any modifications contemplated by the Plan) or indemnification Claims against the Debtors, Reorganized Debtors, any of the Debtors' or Reorganized Debtors' insurers, or any rights as beneficiaries of any insurance policies.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article VIII.D of the Plan do not release any post-Effective Date obligations of any party or Entity arising

6

under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases contained in Article VIII of the Plan, which include, by reference, each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases contained in Article VIII of the Plan are: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the released claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases contained in Article VIII of the Plan against any of the Released Parties.

## E.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct.

## F.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and/or the Released Parties:

     i.    commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;

     ii.    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;

     iii.    creating, perfecting or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests;

     iv.    asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before

the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

v.    commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan.

## **Exhibit E**

**Rejection Notice**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORESIGHT ENERGY LP, *et al.*, | ) | Case No. 20-41308-659 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF REJECTION OF
## EXECUTORY CONTRACT OR UNEXPIRED LEASE

**PLEASE TAKE NOTICE THAT:**

1.　　In accordance with Article V of the *Joint Chapter 11 Plan of Reorganization of Foresight Energy LP and its Affiliated Debtors* (as amended, modified, or supplemented from time to time, the "Plan"),[1] filed by Foresight Energy LP and its debtor affiliates (collectively, the "Debtors") on April 9, 2020, and in accordance with sections 365 and 1123 of the Bankruptcy Code, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party shall be deemed assumed, except for any Executory Contract or Unexpired Lease that (i) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, (ii) has been previously rejected by a Final Order, (iii) is the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date, or (iv) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

2.　　The Debtors hereby provide this "Notice of Rejection of Executory Contract or Unexpired Lease" (this "Notice") to communicate their intention to include on the Schedule of Rejected Executory Contracts and Unexpired Leases, to be filed with the Plan Supplement, the agreements identified on **Exhibit 1** attached hereto.

3.　　The Debtors, subject to the terms of the Plan, reserve the right to alter, amend, modify, or supplement any information set forth herein, including to add or delete any Executory Contract or Unexpired Lease set forth on **Exhibit 1**, at any time up to and including the Effective Date of the Plan.

4.　　Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be filed with the Court no later than 11:59 p.m., prevailing Central Time, on the date that is twenty-one (21) days following the Effective Date of the Plan.

---

[1]　　All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Dated:    [●], 2020
      St. Louis, Missouri

Respectfully submitted,

ARMSTRONG TEASDALE LLP


  /s/
_____
Richard W. Engel, Jr. (MO 34641)
John G. Willard (MO 67049)
Kathryn R. Redmond (MO 72087)
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri  63105
Tel:    (314) 621-5070
Fax:    (314) 621-5065
Email:  rengel@atllp.com
       jwillard@atllp.com
       kredmond@atllp.com

      - and -

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Paul M. Basta (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Alexander N. Woolverton (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
       aeaton@paulweiss.com
       awoolverton@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

**Exhibit 1**

| Contract/Lease | Contract/Lease Counter Party | Rejecting Debtor Entity | Contract Description/Property Address | Effective Rejection Date |
|---|---|---|---|---|
| | | | | [Effective Date of the Plan] |
| | | | | [Effective Date of the Plan] |
| | | | | [Effective Date of the Plan] |
| | | | | [Effective Date of the Plan] |