## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE | ) | IN PROCEEDINGS UNDER |
| | ) | CHAPTER 11 |
| FORESIGHT ENERGY LP, et al | ) | |
| | ) | CASE NO. 20-41308 |
| | ) | |
| Debtor(s). | ) | Jointly Administered |

### MOTION OF CORY LEITSCHUH FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant Cory Leitschuh ("Movant"), by and through his attorneys, and moves this Honorable Court for the entry of an Order lifting or modifying the automatic stay imposed by 11 U.S.C. § 362(a) (the "Automatic Stay") pursuant to 11 U.S.C. § 362(d)(1), FED. R. BANKR. P. 4001, and LOCAL BANKR. R. 4001-1. In support thereof, Movant respectfully states as follows:

### SUMMARY OF GROUNDS FOR REQUESTED RELIEF

1.      On or about March 10, 2020 (the "Petition Date"), Debtors Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy LP. and Patton Mining, LLC, together with their related Debtor affiliates, filed Voluntary Petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"). Debtors' cases have been jointly administered for procedural purposes under Case No. 20-41308.

2.      On April 23, 2015, Movant filed his original Complaint (since amended; hereinafter, the "Amended Complaint") in a certain state court cause of action for personal injury against, among other defendants, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, and Foresight Energy LP (collectively "Defendant-Debtors"), in the Circuit

1

Court, Fourth Judicial Circuit, Montgomery County, Illinois (the "State Court"), in the case styled *Cory Leitschuh, Plaintiff vs. Hillsboro Energy, LLC, et al., Defendants*, bearing Case No. 15-L-8 (the "Civil Suit"). In addition, Coal Field Transports, Inc. and J.H. Fletcher & Co. were named defendants in the Civil Suit, but those entities are not Debtors in these proceedings before the Bankruptcy Court. A true and accurate copy of the Amended Complaint in the Civil Suit has been attached hereto as Exhibit A and is incorporated herein by this reference.

3.     The Civil Suit stems from an event occurring on May 2, 2013, wherein Movant, while working as a roof bolter at the Deer Run Mine in Hillsboro, Illinois, sustained severe injuries to his body, including a serious brain injury, after a drill steel in the roof bolter he was operating bent, striking Movant on the head.

4.      The Civil Suit is pending jury trial.

5.     Civil Suit defendant J.H. Fletcher & Co. has filed a Third-Party Complaint against Debtor Patton Mining, LLC ("Patton" or "Debtor Patton"), which is also pending jury trial. A true and accurate copy of the Third-Party Complaint in the Civil Suit has been attached hereto as Exhibit B and is incorporated herein by this reference.

6.      The filing of Debtors' Voluntary Petitions under Chapter 11 of the Bankruptcy Code effectively stayed prosecution of Movant's cause of action and the third-party action in the Civil Suit.

*7.*     Prior to the Petition Date, Defendant-Debtors' insurance counsel had filed an answer to Movant's Amended Complaint in the Civil Suit, and the parties have conducted discovery and had active settlement discussions with insurance counsel.

8.     Upon information and belief, Defendant-Debtors are covered by a general liability insurance policy and/or policies, providing coverage for defense and liability expenses. It is further believed that Debtors' insurance coverage from this insurance policy and/or policies amounted to

aggregate limits of $50,000,000.00 and significant portions of if not all self-insured retention has been paid.

9.      Movant requests that the automatic stay be lifted, or otherwise modified, to allow Movant to pursue his cause of action in the Civil Suit, only to the extent that recovery of any judgment against the Defendant-Debtors shall be limited solely to the limits of liability provided for by Defendant-Debtors' applicable insurance policy and/or policies. Movant also requests that the automatic stay be lifted, or otherwise modified, to allow Civil Suit defendant and third party plaintiff, J.H. Fletcher & Co., to reduce its claim, if any, to judgment against Debtor Patton in the Civil Suit.

10.     Other than against insurance proceeds, the Movant will not seek the enforcement of any judgment against the Defendant-Debtors, or any other Debtor, without further order of this Court.

11.     To be clear, if the automatic stay is lifted or modified to allow Movant to proceed with the Civil Suit, then Movant's Claim[1] relating to judgment in the Civil Suit, if any, against Defendant-Debtors, or any other Debtor, shall be limited to recovery under Defendant-Debtors,' or any other Debtors,' applicable insurance policy and/or policies.  However, to the extent that Defendant-Debtors, or any other Debtor, is/are self-insured and/or to the extent that any recovery in the Civil Suit is in excess of the insurance policy and/or policies limits, said self-insured liability and/or excess recovery shall be filed as an amended Claim against the Defendant-Debtors' and/or any other Debtors' bankruptcy estate(s) ("Bankruptcy Estate").

---

[1] On April 15, 2020, Movant filed a Proof of Claim as to each of the Defendant-Debtors.

12.    Section 362(d) of the Bankruptcy Code requires relief from the automatic stay, "by terminating, annulling, modifying or conditioning such stay . . . for cause." *See* 11 U.S.C. § 362(d)(1).

13.    Good cause exists to allow Movant to proceed with his Civil Suit against the Defendant-Debtors, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, and Foresight Energy LP and to allow Movant to establish his rights, if any, to the proceeds of any insurance policy and/or policies.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b).  The statutory predicates for the relief sought are sections 105(a) and 362 of the Bankruptcy Code.

## ARGUMENT

15.    Upon information and belief, Defendant-Debtors, as well as Debtor Patton, are covered by a liability insurance policy and/or policies, providing coverage for defense and liability expenses related to the Civil Suit.

16.    It is assumed that the Defendant Debtors, as well as Debtor Patton, carry insurance with limits that would satisfy any potential judgment against them in the Civil Suit, either in full or in part.

17.    Section 362(d)(1) of the Bankruptcy Code authorizes this Court to grant relief from the automatic stay "[o]n request of a party in interest . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

18.    "Congress did not define cause; however, it contemplated relief from the automatic stay to allow litigation involving the debtor to proceed in another forum under appropriate circumstances." *In re Wintroub*, 283 B.R. 743, 745 (8th Cir. BAP 2002).

19.    In determining whether cause exists, a court "must balance the potential prejudice to the debtor, the bankruptcy estate and the other creditors associated with the proceeding in another forum against the hardship to the movant if it is not allowed to proceed in the other forum . . . The relevant factors which the [c]ourt must consider include judicial economy, trial readiness, the resolution of primary bankruptcy issues, the movant's chance of success on the merits, the costs of defense or other potential burdens to the estate, and the impact of the litigation on other creditors" *Id*. (the "*Wintroub* Factors").

20.    The courts in the Second Circuit, when considering whether to lift or modify the automatic stay to permit jury trial litigation in another forum when insurance is present, are guided by the factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990) (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286.

21.     While the *Sonnax* Factors are more extensive, they include the *Wintroub* Factors considered by the Eighth Circuit.  Further, the *Sonnax* opinion has been cited with approval in the Eighth Circuit as additional authority.  *See In re Blan*, 237 B.R. 737, 739-40 (8th Cir. BAP 1999).

22.     Not all of the factors are relevant in every case. *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002); *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999). The Court need not assign equal weight to each factor. *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009); *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

23.     The movant bears the initial burden of making a *prima facie* showing of "cause" for relief from the stay, but the ultimate burden of persuasion rests with the debtor to show an absence of "cause." *See Mazzeo*, 167 F.3d at 142; *Sonnax*, 907 F.2d at 1285; *cf.* 11 U.S.C. § 362(g)(2) (party opposing stay relief has burden of proof on all issues other than debtor's equity in subject property).

24.     In the instant proceeding, the relevant *Sonnax* Factors include: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; . . . (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; . . . (7) whether litigation in another forum would prejudice the interests of other creditors; . . . (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *Id.* at 1286.

25.    The first *Sonnax* Factor is whether relief would result in a partial or complete resolution of the issues. Relief here would result in a partial, if not complete, resolution of the Movant's Claim in that a jury in the personal injury matter would determine the extent of Movant's damages, with the claim being satisfied either in whole or in part by insurance proceeds.

26.    The second *Sonnax* Factor is lack of any connection with or interference with the bankruptcy case. While the Movant's Claim has a connection to the bankruptcy case as a result of the Claim being liquidated in the event of judgment, the state court proceeding will certainly not interfere with the administration of the bankruptcy case.

27.    The fourth *Sonnax* Factor (whether a specialized tribunal with the necessary expertise has been established to hear the cause of action); the fifth *Sonnax* Factor (whether the debtor's insurer has assumed full responsibility for defending it); the tenth *Sonnax* Factor (the interest of judicial economy and the expeditious and economical resolution of litigation); and the eleventh *Sonnax* Factor (whether the parties are ready for trial in the other proceeding), all weigh heavily in favor of permitting the Civil Suit litigation to proceed. Specifically, this jury trial case has been before the State Court since 2015; the defense has been assumed by Defendant-Debtors' and Debtor Patton's insurers; much of the discovery has been completed; and the case is ready for mediation or jury trial after completion of discovery. The State Court is the most efficient and appropriate place for the matter to be brought to conclusion.

28.    The seventh *Sonnax* Factor is whether litigation in another forum would prejudice the interests of other creditors. This factor, likewise, weighs in favor of granting the reasonable relief requested. As highlighted above, any risk to creditors can be addressed by conditioning recovery in the Civil Suit to insurance proceeds, with a resulting amended Claim being limited to the amount of the judgment not satisfied by the insurance coverage.

29.     Similarly, the twelfth *Sonnax* Factor, the impact of the stay on the parties and the balance of harms, favors the automatic stay being lifted or otherwise modified. The Civil Suit has been pending for almost five years and Movant would likely encounter significant hardship should the automatic stay remain in place with respect to prosecution of his Civil Suit.  As noted by the court in *In re Todd Shipyard*s, 92 B.R. 600, 603 (Bankr. D.N.J. 1988), "courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside, even where pre-petition causes of action are involved."  Should the stay remain in place, Movant likely will have to wait an inordinately long time to prosecute the claim, which arose in 2013.  This wait may effectively deny Movant an opportunity to litigate given the risk of aging evidence, loss of witnesses and crowded court dockets.  *See In re Brock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984).

30.     In the case at bar, Movant submits that there is sufficient cause for the Court to lift or otherwise modify the automatic stay so that Movant may proceed to prosecute his Civil Suit in the State Court.  The balancing factors demonstrate that Defendant-Debtors and the Bankruptcy Estate would encounter little prejudice, if any, should the stay be lifted or otherwise modified on the condition that Movant's recovery against Defendant-Debtors, or any other Debtor, would be first limited to the Defendant-Debtors,' or any other Debtor's, applicable insurance policies before filing an amended Claim in the Debtors' Bankruptcy Estate to the extent that any judgment exceeds Defendant-Debtors,' or any other Debtor's, applicable insurance coverage.

31.     Based on the foregoing, Movant submits that cause exists to lift or modify the automatic stay.

WHEREFORE, the premises considered, Movant Cory Leitschuh prays this Court enter an Order granting relief as follows:

a.   Granting Movant relief from the automatic stay provisions of 11 U.S.C. § 362(a) to prosecute any claims that he may have against Defendant-Debtors in the Civil Suit;

b.   Lifting or modifying the stay to allow the Civil Suit third-party plaintiff, J.H. Fletcher & Co., to reduce its claim, if any, to judgment against Debtor Patton Mining, LLC in the Civil Suit;

c.   Authorizing the State Court to conduct such hearings or other proceedings as may be necessary in the Civil Suit;

d.   Limiting Movant's Claim against Debtors and the Bankruptcy Estate to the recovery, if any, under Defendant-Debtors' applicable insurance policies, with any additional recovery not covered by insurance proceeds to be filed as an amended Claim by Movant against the Bankruptcy Estate; and

e.   For such other and further relief as this Court deems just and proper.


Dated:  April 17, 2020

Respectfully submitted,

GOLDENBERG HELLER & ANTOGNOLI, P.C.

By: */s/ Joel A. Kunin*, Esq.
    Joel A. Kunin
    2227 South State Route 157
    Edwardsville, IL 62025
    Telephone: 618.656.5150
    Facsimile: 618.656.6230
    Email: jkunin@ghalaw.com

    *Attorneys for Movant Cory Leitschuh*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing was served electronically this 17th day of April, 2020, via CM/ECF to all persons receiving notice through that system.  The undersigned further certifies that a true and correct copy of the foregoing was served this 17th day of April, 2020, on all parties on the Debtors' most recent Master Notice list dated April 7, 2020 (a) by email, where email addresses are provided and (b) by the United States Postal Service, postage fully prepaid, in the event the most recent Master Notice List does not include an email address.

**<u>/s/ Megan Biggs</u>**

FILED
Montgomery Co. Circuit Court
4th Judicial Circuit
Date: 2/7/2019 3:33 PM
Holly Lemons

**IN THE CIRCUIT COURT**
**FOURTH JUDICIAL CIRCUIT**
**MONTGOMERY COUNTY, ILLINOIS**

CORY LEITSCHUH,               )
                                    )
            Plaintiff,        )
                                      )
v.                               )     No. 15-L-8
                                    )
HILLSBORO ENERGY, LLC;     )
FORESIGHT ENERGY, LLC;      )     **PLAINTIFF DEMANDS**
FORESIGHT ENERGY SERVICES, LLC; )     **TRIAL BY JURY**
FORESIGHT ENERGY, LP;        )
COAL FIELD TRANSPORTS, INC.;   )
and J.H. FLETCHER & CO.,       )
                                    )
            Defendants.    )
_____

J.H. FLETCHER & CO.,        )
                                    )
            Third Party Plaintiff,    )
                                    )
v.                               )
                                    )
PATTON MINING, LLC,       )
                                    )
            Third Party Defendant.   )

**FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiff, Cory Leitschuh ("Plaintiff"), by and through his attorneys, Goldenberg Heller & Antognoli, P.C., and for his Complaint against the Defendants, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP, Coal Field Transports, Inc., and J. H. Fletcher & Co., states:

**BACKGROUND**

1.     This is an action for damages against Defendants, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP, and Coal Field

EXHIBIT A

Transport, Inc., for committing acts or omissions of negligence against the Plaintiff.  Liability is premised upon common law negligence and common law in-concert liability pursuant to Restatement (2d) of Torts, section 876 ("Persons Acting in Concert) and *Simmons v. Homatas*, 236 Ill. 2d 459 (2010).

2.     This is an action for damages against Defendant, J. H. Fletcher & Co., based in negligence, strict product liability, and in-concert liability pursuant to Restatement (2d) of Torts, section 876 ("Persons Acting in Concert") and *Simmons v. Homatas*, 236 Ill. 2d 459 (2010).

## ENTITIES INVOLVED

3.     Plaintiff is a natural person and a resident of the City of Sorento, State of Illinois.

4.     At all times herein mentioned, Defendant, Hillsboro Energy, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois.

5.     At all times herein mentioned, Patton Mining, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware, a resident of Illinois and the employer of Plaintiff.

6.     At all times herein mentioned, Defendant, Foresight Energy, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois.

7.     At all times herein mentioned, Defendant, Foresight Energy Services, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois

8.     At all times herein mentioned, Defendant, Foresight Energy, LP, was, and is, a master limited partnership that has units owned by residents of the State of Illinois.

9.      At all times herein mentioned, Defendant, Coal Field Transports, Inc., was, and is, a corporation existing under the laws of the State of West Virginia with its principal place of business in Beckley, West Virginia.

10.     At all times herein mentioned, Defendant, J. H. Fletcher & Co., was, and is, a corporation existing under the laws of the State of Delaware with its principal place of business in Huntington, West Virginia.

## FACTUAL ALLEGATIONS

11.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

12.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

13.     At all times relevant hereto, Patton Mining, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

14.     At all times relevant hereto, Patton Mining, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

15.     At all times relevant hereto, Defendant, Foresight Energy, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

16.     At all times relevant hereto, Defendant, Foresight Energy, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

17.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

18.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

19.     At all times relevant hereto, Defendant, Foresight Energy LP, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

20.     At all times relevant hereto, Defendant, Foresight Energy LP, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

21.     At all times relevant hereto, Defendant, Coal Field Transports, Inc., owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

22.     At all times relevant hereto, Defendant, Coal Field Transports, Inc., was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

23.     On May 2, 2013, Plaintiff, while working as a roof bolter at the Deer Run Mine in Hillsboro, Illinois, sustained severe injuries to his body, including a serious brain injury, all after the drill steel in the roof bolter he was operating bent, striking Plaintiff on the head.

24.     The roof bolter, described as Fletcher Model CHDDR-17-B S/N-2010035 ("roof bolter") which caused the Plaintiff's injuries lacked hydraulic drill guides, had excessive drill rotation speeds, and excessive hydraulic drill feed pressures.

25.     Defendant, J. H. Fletcher & Co., manufactured and sold the roof bolter to Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, and/or Coal Field Transports, Inc.

26.     Defendant, J. H. Fletcher & Co., assembled and/or installed the roof bolter that Plaintiff was operating at the time of his injuries at the Deer Run Mine in Hillsboro, Illinois.

27.     Prior to Plaintiff's injuries on May 2, 2013, J.H. Fletcher & Co., knew that the hydraulic drill guides had been removed from the roof bolter and that operation of the roof bolter without drill guides rendered it defective, unsafe and dangerous.

28.     Prior to Plaintiff's injuries on May 2, 2013, and with knowledge that the drill guides had been removed rendering the roof bolter defective, unsafe and dangerous, J.H. Fletcher & Co., voluntarily agreed to perform service, maintenance, repairs and/or adjustments to the roof bolter with the knowledge and/or expectation that it would be placed back into service in a defective, unsafe and dangerous condition and thereby create an unreasonable risk of injury.

29.     Prior to Plaintiff's injuries on May 2, 2013, and with knowledge that the drill rotation speeds and hydraulic drill feed pressures were repeatedly being readjusted and that these adjustments rendered the roof bolter defective, unsafe and dangerous to operate, J.H. Fletcher & Co., voluntarily agreed to perform service, maintenance, repairs and/or adjustments with the knowledge and/or expectation that the roof bolter would be placed back into service in a defective, unsafe and dangerous condition, and thereby create an unreasonable risk of injury.

30.     Patton Mining, LLC and Defendants, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP, Coal Field Transports, Inc., and J.H. Fletcher & Co., knew or should have known that the roof bolter that injured Plaintiff lacked hydraulic drill guides, had excessive drill rotation speeds, had excessive hydraulic drill feed pressures.

## COUNT I
## (HILLSBORO ENERGY, LLC)
## (NEGLIGENCE)

1-30.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-30 of his Complaint as though fully set forth herein.

31.     Upon information and belief, Defendant, Hillsboro Energy, LLC, was at all times relevant hereto, an "owner," "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

32.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

33.     Upon information and belief, at all times relevant hereto, Defendant, Hillsboro Energy, LLC, owned, operated and/or leased the roof bolter that caused Plaintiff's injuries.

34.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

35.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

36.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty to remove unsafe machinery and equipment from service.

37.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

38.     Defendant, Hillsboro Energy, LLC, breached the aforementioned duties in that it:

    a.  Failed to provide Plaintiff with a reasonably safe place to work;

    b.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner;

    c.  Removed the hydraulic drill guides on the roof bolter machine and thereby rendered it defective, unsafe and dangerous to operate;

    d.  Repeatedly readjusted rotational speeds and feed pressures in excess of safe limits and manufacturer's recommendations;

    e.  Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

    f.  Placed a defective, unsafe and dangerous roof bolter into service;

    g.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after the removal of hydraulic drill guides;

h.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after rotational speeds were adjusted outside the manufacturer's recommended range;

i.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after feed pressures were adjusted outside the manufacturer's recommended range;

j.  Provided substantial assistance in placing a defective, unsafe and dangerous roof bolter back into service by making arrangements to have it serviced, maintained, repaired and/or adjusted with knowledge that it created an unreasonable risk of harm to Plaintiff and others who operated it;

k.  Failed to remove the defective, unsafe and dangerous roof bolter from service;

l.  Offered incentives to miners based on increased speed and/or increased production at the mine when Defendant knew or should have known that such incentives encouraged miners to engage in unsafe practices that endangered themselves and other miners; and

m.  Failed to exercise ordinary care for Plaintiff's safety.

39.    As a direct and proximate result of Defendant, Hillsboro Energy, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against the Defendant, Hillsboro Energy, LLC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## COUNT II
## (FORESIGHT ENERGY, LLC)
## (NEGLIGENCE)

1-30.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-30 of his Complaint as though fully set forth herein.

40.    Upon information and belief, Defendant, Foresight Energy, LLC, was at all times relevant hereto, an "owner," "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

41.    At all times relevant hereto, Defendant, Foresight Energy, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

42.    At all times relevant hereto, Defendant, Foresight Energy, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

43.    At all times relevant hereto, Defendant, Foresight Energy, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

44.    At all times relevant hereto, Defendant, Foresight Energy, LLC, had the duty to remove unsafe machinery and equipment from service.

45.    At all times relevant hereto, Defendant, Foresight Energy, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

46.    Defendant, Foresight Energy, LLC, breached the aforementioned duties in that it:

   a.   Failed to provide Plaintiff with a reasonably safe place to work;

   b.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner;

   c.   Removed the hydraulic drill guides on the roof bolter machine and thereby rendered it defective, unsafe and dangerous to operate;

   d.   Repeatedly readjusted rotational speeds and feed pressures in excess of safe limits and manufacturer's recommendations;

   e.   Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

   f.   Placed a defective, unsafe and dangerous roof bolter into service;

   g.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after the removal of hydraulic drill guides;

    h.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after rotational speeds were adjusted outside the manufacturer's recommended range;

    i.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after feed pressures were adjusted outside the manufacturer's recommended range;

    j.   Provided substantial assistance in placing a defective, unsafe and dangerous roof bolter back into service by making arrangements to have it serviced, maintained, repaired and/or adjusted with knowledge that it created an unreasonable risk of harm to Plaintiff and others who operated it;

    k.   Failed to remove the defective, unsafe and dangerous roof bolter from service;

    l.   Offered incentives to miners based on increased speed and/or increased production at the mine when Defendant knew or should have known that such incentives encouraged miners to engage in unsafe practices that endangered themselves and other miners; and

    m.   Failed to exercise ordinary care for Plaintiff's safety.

47.     As a direct and proximate result of Defendant, Foresight Energy, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against FORESIGHT ENERGY, LLC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## <u>COUNT III</u>
## <u>(FORESIGHT ENERGY SERVICES, LLC)</u>
## <u>(NEGLIGENCE)</u>

1-30.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-30 of his Complaint as though fully set forth herein.

48.     Upon information and belief, Defendant, Foresight Energy Services, LLC, was at all times relevant hereto, an "owner," "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

49.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

50.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

51.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

52.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty to remove unsafe machinery and equipment from service.

53.     At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

54.     Defendant, Foresight Energy Services, LLC, breached the aforementioned duties in that it:

   a.   Failed to provide Plaintiff with a reasonably safe place to work;

   b.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner;

   c.   Removed the hydraulic drill guides on the roof bolter machine and thereby rendered it defective, unsafe and dangerous to operate;

   d.   Repeatedly readjusted rotational speeds and feed pressures in excess of safe limits and manufacturer's recommendations;

   e.   Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

f.  Placed a defective, unsafe and dangerous roof bolter into service;

g.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after the removal of hydraulic drill guides;

h.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after rotational speeds were adjusted outside the manufacturer's recommended range;

i.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after feed pressures were adjusted outside the manufacturer's recommended range;

j.  Provided substantial assistance in placing a defective, unsafe and dangerous roof bolter back into service by making arrangements to have it serviced, maintained, repaired and/or adjusted with knowledge that it created an unreasonable risk of harm to Plaintiff and others who operated it;

k.  Failed to remove the defective, unsafe and dangerous roof bolter from service;

l.  Offered incentives to miners based on increased speed and/or increased production at the mine when Defendant knew or should have known that such incentives encouraged miners to engage in unsafe practices that endangered themselves and other miners; and

m.  Failed to exercise ordinary care for Plaintiff's safety.

55.   As a direct and proximate result of Defendant, Foresight Energy Services, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against FORESIGHT ENERGY SERVICES, LLC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## COUNT IV
## (FORESIGHT ENERGY LP)
## (NEGLIGENCE)

1-30.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-30 of his Complaint as though fully set forth herein.

56.    Upon information and belief, Defendant, Foresight Energy, LP, was at all times relevant hereto, an "owner," "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

57.    At all times relevant hereto, Defendant, Foresight Energy LP, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

58.    At all times relevant hereto, Defendant, Foresight Energy LP, had the duty of providing the Plaintiff a reasonably safe place to work.

59.    At all times relevant hereto, Defendant, Foresight Energy LP, had the duty to maintain machinery and equipment in a safe operating condition.

60.    At all times relevant hereto, Defendant, Foresight Energy LP, had the duty to remove unsafe machinery and equipment from service.

61.    At all times relevant hereto, Defendant, Foresight Energy LP, had a duty to exercise ordinary care for Plaintiff's safety.

62.    Defendant, Foresight Energy LP, breached the aforementioned duties in that it:

    a.    Failed to provide Plaintiff with a reasonably safe place to work;

    b.    Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner;

    c.    Removed the hydraulic drill guides on the roof bolter machine and thereby rendered it defective, unsafe and dangerous to operate;

    d.    Repeatedly readjusted rotational speeds and feed pressures in excess of safe limits and manufacturer's recommendations;

e.  Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

f.  Placed a defective, unsafe and dangerous roof bolter into service;

g.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after the removal of hydraulic drill guides;

h.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after rotational speeds were adjusted outside the manufacturer's recommended range;

i.  Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after feed pressures were adjusted outside the manufacturer's recommended range;

j.  Provided substantial assistance in placing a defective, unsafe and dangerous roof bolter back into service by making arrangements to have it serviced, maintained, repaired and/or adjusted with knowledge that it created an unreasonable risk of harm to Plaintiff and others who operated it;

k.  Failed to remove the defective, unsafe and dangerous roof bolter from service;

l.  Offered incentives to miners based on increased speed and/or increased production at the mine when Defendant knew or should have known that such incentives encouraged miners to engage in unsafe practices that endangered themselves and other miners; and

m.  Failed to exercise ordinary care for Plaintiff's safety.

63.  As a direct and proximate result of Defendant, Foresight Energy LP's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against FORESIGHT ENERGY, LP, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## COUNT V
## (COAL FIELD TRANSPORTS, INC.)
## (NEGLIGENCE)

1-30.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-30 of his Complaint as though fully set forth herein.

64.    Upon information and belief, Defendant, Coal Field Transports, Inc., was at all times relevant hereto, an "owner," "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

65.    At all times relevant hereto, Defendant, Coal Field Transports, Inc., either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

66.    Upon information and belief, at all times relevant hereto, Defendant, Coal Field Transports, Inc., owned the roof bolter which caused Plaintiff's injuries.

67.    At all times relevant hereto, Defendant, Coal Field Transports, Inc., had the duty of providing the Plaintiff a reasonably safe place to work.

68.    At all times relevant hereto, Defendant, Coal Field Transports, Inc., had the duty to maintain machinery and equipment in a safe operating condition.

69.    At all times relevant hereto, Defendant, Coal Field Transports, Inc., had the duty to remove unsafe machinery and equipment from service.

70.    At all times relevant hereto, Defendant, Coal Field Transports, Inc., had a duty to exercise ordinary care for Plaintiff's safety.

71.    Defendant, Coal Field Transports, Inc., breached the aforementioned duties in one or more of the following ways:

    a.   Failed to provide Plaintiff with a reasonably safe place to work;

    b.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner;

    c.   Removed the hydraulic drill guides on the roof bolter machine and thereby rendered it defective, unsafe and dangerous to operate;

    d.   Repeatedly readjusted rotational speeds and feed pressures in excess of safe limits and manufacturer's recommendations;

    e.   Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

    f.   Placed a defective, unsafe and dangerous roof bolter into service;

    g.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after the removal of hydraulic drill guides;

    h.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after rotational speeds were adjusted outside the manufacturer's recommended range;

    i.   Failed to provide Plaintiff with appropriate task training to operate the roof bolter in a safe manner after feed pressures were adjusted outside the manufacturer's recommended range;

    j.   Provided substantial assistance in placing a defective, unsafe and dangerous roof bolter back into service by making arrangements to have it serviced, maintained, repaired and/or adjusted with knowledge that it created an unreasonable risk of harm to Plaintiff and others who operated it;

    k.   Failed to remove the defective, unsafe and dangerous roof bolter from service;

    l.   Offered incentives to miners based on increased speed and/or increased production at the mine when Defendant knew or should have known that such incentives encouraged miners to engage in unsafe practices that endangered themselves and other miners; and

    m.  Failed to exercise ordinary care for Plaintiff's safety.

    72.    As a direct and proximate result of Defendant, Coal Field Transports, Inc.'s, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment,

loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against COAL FIELD TRANSPORTS, INC., in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## COUNT VI
### (J. H. FLETCHER & CO.)
### (NEGLIGENCE)

1-72.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-72 of his Complaint as though fully set forth herein.

73.    Defendant, J. H. Fletcher & Co., fabricated, designed, packaged, shipped, sold, serviced and/or distributed the roof bolter that caused Plaintiff's injuries.

74.    Defendant, J. H. Fletcher & Co., owed to Plaintiff a duty to use reasonable care in the manufacturing, fabricating, designing, packaging, shipping, selling, servicing and/or distributing the roof bolter that injured Plaintiff.

75.    Defendant, J. H. Fletcher & Co., breached the aforementioned duty in one or more of the following ways:

    a.    Designed and manufactured the roof bolter in a manner that allowed the drill steel to rotate at an excessive speed;

    b.    Serviced the roof bolter in a manner that allowed the drill steel to rotate at an excessive speed;

    c.    Designed and manufactured roof bolter in a way that positioned the operator where he could be struck with a drill steel;

    d.    Designed and manufactured the roof bolter without a guard or other device to prevent the operator from being struck by a drill steel;

e.   Designed and manufactured the roof bolter in a manner that would allow excessive drill feed pressures;

f.   Serviced the roof bolter in a manner that allowed excessive drill feed pressures;

g.   Designed and manufactured the roof bolter in a manner that would allow the joystick control to become stuck;

h.   Serviced the roof bolter in a manner that allowed the joystick control to become stuck;

i.   Failed to affix adequate warnings to the machine or provide warnings to the operator about excessive drill speed;

j.   Failed to affix adequate warnings to the machine or provide warnings to the operator about excessive drill feed pressures;

k.   Failed to affix adequate warnings to the machine or provide to warn the operator about the joystick control becoming stuck; and

l.   With knowledge that the roof bolter was rendered defective, unsafe and dangerous to operate due to the removal of the hydraulic drill guides, J.H. Fletcher & Co. serviced, maintained, repaired and/or made adjustments to the roof bolter with knowledge that the defective, unsafe and dangerous roof bolter would be placed into service and operated without drill guides;

76.    That as a direct and proximate result of Defendant, J. H. Fletcher & Co.'s, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against J.H. FLETCHER & CO., in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## COUNT VII
## (J. H. FLETCHER & CO.)
## (STRICT PRODUCTS LIABILITY)

1-76.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-76 of his Complaint as though fully set forth herein.

77.    At the time the product was designed, manufactured, distributed, supplied and/or put into the stream of commerce by Defendant, J. H. Fletcher & Co., it was in a defective condition and unreasonably dangerous when put to a reasonably anticipated use in the following respects:

   a.    The roof bolter was designed and manufactured in a manner that allowed the drill steel to rotate at an excessive speed;

   b.    The roof bolter was designed and manufactured in a way that positioned the operator where he could be struck with the drill steel;

   c.    The roof bolter was designed and manufactured without a guard or other device to prevent the operator from being struck by a drill steel;

   d.    The roof bolter was designed and manufactured in a manner that would allow excessive drill feed pressures;

   e.    The roof bolter was designed and manufactured in a manner that would allow the joystick control to become stuck;

   f.    There were no adequate warnings affixed to the machine or provided to the operator which would warn of excessive drill speed;

   g.    There were no adequate warnings affixed to the machine or provided to the operator which would warn of excessive drill feed pressures; and

   h.    There were no adequate warnings affixed to the machine or provided to the operator which would warn of the joystick control sticking.

78.     As a direct and proximate result of the aforesaid defective roof bolter, Plaintiff

sustained and suffered serious, permanent and progressive injury to his body, physical pain and

suffering, mental anguish and suffering, permanent physical impairment, loss of wages and

benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become

responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor

and against J.H. FLETCHER & CO., in an amount in excess of FIFTY THOUSAND DOLLARS

($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by

law.

**COUNT VIII**
**(HILLSBORO ENERGY, LLC)**
**(RESTATEMENT (2d) OF TORTS SEC. 876 "PERSONS ACTING IN CONCERT")**

1-78.    Plaintiff realleges and incorporates herein by reference the allegations contained

in paragraphs 1-78 of his Complaint as though fully set forth herein.

79.     As the owner, lessee and/or operator of the Deer Run mine, Hillsboro Energy,

LLC, controlled the method and manner in which the roof bolter was used in the mining

operations, including adjustments and modifications to the roof bolter.

80.     As the owner, lessee, user and/or operator of the roof bolter, Hillsboro Energy,

LLC, controlled the method and manner in which the roof bolter was to be used in the mining

operations, including adjustments and modifications to the roof bolter and/or directing,

encouraging and/or providing substantial assistance to others who made adjustments and

modifications to the roof bolter.

81.     Agents and servants of Hillsboro Energy, LLC, acting in the scope and course of

their agency, modified and/or adjusted the roof bolter and/or directed, encouraged and/or

provided substantial assistance to Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy

Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to modify and/or adjust

the roof bolter in one or more of the following ways:

      a.  Removed hydraulic drill guides when Hillsboro Energy, LLC, knew or should have known that removal of drill guides made the roof bolter defective, unsafe and dangerous to operate.

      b.  Allowed the rotational speed of the drill steel to operate in excess of safe and recommended speeds when Hillsboro Energy, LLC, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

      c.  Allowed the feed pressures to operate in excess of safe and recommended levels when Hillsboro Energy, LLC, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

82.    After one or more of these adjustments and/or modifications were made,

Hillsboro Energy, LLC, placed the roof bolter into service in a defective, unsafe and dangerous

condition, and/or directed, encouraged and/or provided substantial assistance to Patton Mining,

LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or

Coal Field Transports, Inc., to place the roof bolter into service in the defective, unsafe and

dangerous condition.

83.    The benefit to Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy,

LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc.,

of removing hydraulic drill guides and/or allowing rotational speed and/or feed pressures in

excess of the safe and recommended levels was to increase production, increase revenue,

decrease overhead expenses and thereby increase profits in exchange for increasing the risk of

personal injury to miners, including Cory Leitschuh, who operated the roof bolter.

84.    Plaintiff Cory Leitschuh was operating the roof bolter equipment that was

rendered defective, unsafe and dangerous by the removal of hydraulic drill guides and/or

allowing excess drill rotational speeds and/or allowing excess feed pressures.  However, agents and/or servants of Hillsboro Energy, LLC, failed to warn Plaintiff that operating the roof bolter in such condition was defective, unsafe and dangerous.

85.     As a consequence of Hillsboro Energy, LLC's, role in placing the defective, unsafe and dangerous roof bolter into service, and/or directing, encouraging and/or substantially assisting others in placing the defective, unsafe and dangerous roof bolter into service, a drill steel became bent and unbalanced which caused it to exit the chuck of the roof bolter while spinning at a dangerous rotational speed, and hit the face, head and/or body of Cory Leitschuh and/or caused him to fall to the ground.

86.     As a direct and proximate result of role of Defendant, Hillsboro Energy, LLC's conduct as set forth herein, Plaintiff sustained and suffered severe, permanent, progressive and disabling injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully, prays that this Court enter judgment in his favor and against Defendant, HILLSBORO ENERGY, LLC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

### COUNT IX
### (FORESIGHT ENERGY, LLC)
### (RESTATEMENT (2d) OF TORTS SEC. 876 "PERSONS ACTING IN CONCERT")

1-78.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-78 of his Complaint as though fully set forth herein.

87.    As the owner, lessee, operator of the Deer Run mine, and/or due to its legal relationship with Hillsboro Energy, LLC, as its owner, sole member and/or alter ego, Defendant, Foresight Energy, LLC, controlled the method and manner in which the roof bolter was used in the mining operations, including adjustments and modifications to the roof bolter.

88.    As the owner, lessee, operator of the Deer Run mine, and/or due to its legal relationship with Hillsboro Energy, LLC, as its owner, sole member and/or alter ego, Defendant, Foresight Energy, LLC, controlled the method and manner in which the roof bolter was to be used in the mining operations, including adjustments and modifications to the roof bolter and/or directing, encouraging and/or providing substantial assistance to others who made adjustments and modifications to the roof bolter.

89.    Agents and servants of Foresight Energy, LLC, acting in the scope and course of their agency, modified and/or adjusted the roof bolter and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Hillsboro Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to modify and/or adjust the roof bolter in one or more of the following ways:

     a.    Removed hydraulic drill guides when Foresight Energy, LLC, knew or should have known that removal of drill guides made the roof bolter defective, unsafe and dangerous to operate.

     b.    Allowed the rotational speed of the drill steel to operate in excess of safe and recommended speeds when Foresight Energy, LLC, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

     c.    Allowed the feed pressures to operate in excess of safe and recommended levels when Foresight Energy, LLC, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

90.    After one or more of these adjustments and/or modifications were made, Foresight Energy, LLC, placed the roof bolter into service in a defective, unsafe and dangerous

condition, and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to place the roof bolter into service in the defective, unsafe and dangerous condition.

91.    The benefit to Foresight Energy, LLC, Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., of removing hydraulic drill guides and/or allowing rotational speed and/or feed pressures in excess of the safe and recommended levels was to increase production, increase revenue, decrease overhead expenses and thereby increase profits in exchange for increasing the risk of personal injury to miners, including Cory Leitschuh, who operated the roof bolter.

92.    Plaintiff Cory Leitschuh was operating the roof bolter equipment that was rendered defective, unsafe and dangerous by the removal of hydraulic drill guides and/or allowing excess drill rotational speeds and/or allowing excess feed pressures.  However, agents and/or servants of Foresight Energy, LLC,  failed to warn Plaintiff that operating the roof bolter in such condition was defective, unsafe and dangerous.

93.    As a consequence of Foresight Energy, LLC's,  role in placing the defective, unsafe and dangerous roof bolter into service, and/or directing, encouraging and/or substantially assisting others in placing the defective, unsafe and dangerous roof bolter into service, a drill steel became bent and unbalanced which caused it to exit the chuck of the roof bolter while spinning at a dangerous rotational speed, and hit the face, head and/or body of Cory Leitschuh and/or caused him to fall to the ground.

94.    As a direct and proximate result of the role of Defendant, Foresight Energy, LLC, and its conduct as set forth herein, Plaintiff sustained and suffered severe, permanent,

progressive and disabling injuries to his body, physical pain and suffering, mental anguish and

suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity

and benefits, loss of capacity to enjoy life and has become responsible for past and future

medical bills.

WHEREFORE, Plaintiff respectfully, prays that this Court enter judgment in his favor

and against Defendant, Foresight Energy, LLC, in an amount in excess of FIFTY THOUSAND

DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses

allowed by law.

**COUNT X**
**(FORESIGHT ENERGY SERVICES, LLC)**
**(RESTATEMENT (2d) OF TORTS SEC. 876 "PERSONS ACTING IN CONCERT")**

1-78.   Plaintiff realleges and incorporates herein by reference the allegations contained

in paragraphs 1-78 of his Complaint as though fully set forth herein.

95.   As the owner, lessee, operator of the Deer Run mine, and/or due to its legal

relationship with Hillsboro Energy, LLC, as owner, parent organization and/or alter ego,

Defendant, Foresight Energy Services, LLC, controlled the method and manner in which the roof

bolter was used in the mining operations, including adjustments and modifications to the roof

bolter.

96.   As the owner, lessee, operator of the Deer Run mine, and/or due to its legal

relationship with Hillsboro Energy, LLC, as owner, parent organization and/or alter ego,

Defendant, Foresight Energy Services, LLC, controlled the method and manner in which the roof

bolter was to be used in the mining operations, including adjustments and modifications to the

roof bolter and/or directing, encouraging and/or providing substantial assistance to others who

made adjustments and modifications to the roof bolter.

Page **24** of **35**

97.    Agents and servants of Foresight Energy Services, LLC, acting in the scope and course of their agency, modified and/or adjusted the roof bolter and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to modify and/or adjust the roof bolter in one or more of the following ways:

a.    Removed hydraulic drill guides when Foresight Energy Services, LLC, knew or should have known that removal of drill guides made the roof bolter defective, unsafe and dangerous to operate.

b.    Allowed the rotational speed of the drill steel to operate in excess of safe and recommended speeds when Foresight Energy Services, LLC, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

c.    Allowed the feed pressures to operate in excess of safe and recommended levels when Foresight Energy Services, LLC, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

98.    After one or more of these adjustments and/or modifications were made, Foresight Energy Services, LLC, placed the roof bolter into service in a defective, unsafe and dangerous condition, and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to place the roof bolter into service in the defective, unsafe and dangerous condition.

99.    The benefit to Foresight Energy Services, LLC, Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., of removing hydraulic drill guides and/or allowing rotational speed and/or feed pressures in excess of the safe and recommended levels was to increase production, increase revenue, decrease overhead expenses and thereby increase profits in exchange for increasing the risk of personal injury to miners, including Cory Leitschuh, who operated the roof bolter.

100.     Plaintiff Cory Leitschuh was operating the roof bolter equipment that was rendered defective, unsafe and dangerous by the removal of hydraulic drill guides and/or allowing excess drill rotational speeds and/or allowing excess feed pressures. However, agents and/or servants of Foresight Energy Services, LLC, failed to warn Plaintiff that operating the roof bolter in such condition was defective, unsafe and dangerous.

101.     As a consequence of Foresight Energy Services, LLC's role in placing the defective, unsafe and dangerous roof bolter into service, and/or directing, encouraging and/or substantially assisting others in placing the defective, unsafe and dangerous roof bolter into service, a drill steel became bent and unbalanced which caused it to exit the chuck of the roof bolter while spinning at a dangerous rotational speed, and hit the face, head and/or body of Cory Leitschuh and/or caused him to fall to the ground.

102.     As a direct and proximate result of the  role of Defendant, Foresight Energy Services, LLC, and its conduct as set forth herein, Plaintiff sustained and suffered severe, permanent, progressive and disabling injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully, prays that this Court enter judgment in his favor and against Defendant, Foresight Energy Services, LLC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

<u>COUNT XI</u>
<u>(FORESIGHT ENERGY, LP)</u>
<u>(RESTATEMENT (2d) OF TORTS SEC. 876 "PERSONS ACTING IN CONCERT")</u>

1-78.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-78 of his Complaint as though fully set forth herein.

103.    As the owner, lessee, operator of the Deer Run mine, and/or due to its legal relationship with Hillsboro Energy, LLC, as owner, parent organization and/or alter ego, Defendant, Foresight Energy, LP, controlled the method and manner in which the roof bolter was used in the mining operations, including adjustments and modifications to the roof bolter.

104.    As the owner, lessee, operator of the Deer Run mine, and/or due to its legal relationship with Hillsboro Energy, LLC, as owner, parent organization and/or alter ego, Defendant, Foresight Energy, LP, controlled the method and manner in which the roof bolter was to be used in the mining operations, including adjustments and modifications to the roof bolter and/or directing, encouraging and/or providing substantial assistance to others who made adjustments and modifications to the roof bolter.

105.    Agents and servants of Foresight Energy, LP, acting in the scope and course of their agency, modified and/or adjusted the roof bolter and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Hillsboro Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LLC and/or Coal Field Transports, Inc., to modify and/or adjust the roof bolter in one or more of the following ways:

     a.   Removed hydraulic drill guides when Foresight Energy, LP, knew or should have known that removal of drill guides made the roof bolter defective, unsafe and dangerous to operate.

     b.   Allowed the rotational speed of the drill steel to operate in excess of safe and recommended speeds when Foresight Energy, LP, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

      c.    Allowed the feed pressures to operate in excess of safe and recommended levels when Foresight Energy, LP, knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

106.    After one or more of these adjustments and/or modifications were made, Foresight Energy, LP, placed the roof bolter into service in a defective, unsafe and dangerous condition, and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LLC and/or Coal Field Transports, Inc., to place the roof bolter into service in the defective, unsafe and dangerous condition.

107.    The benefit to Foresight Energy, LP, Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LLC and/or Coal Field Transports, Inc., of removing hydraulic drill guides and/or allowing rotational speed and/or feed pressures in excess of the safe and recommended levels was to increase production, increase revenue, decrease overhead expenses and thereby increase profits in exchange for increasing the risk of personal injury to miners, including Cory Leitschuh, who operated the roof bolter.

108.    Plaintiff Cory Leitschuh was operating the roof bolter equipment that was rendered defective, unsafe and dangerous by the removal of hydraulic drill guides and/or allowing excess drill rotational speeds and/or allowing excess feed pressures.  However, agents and/or servants of Foresight Energy, LP, failed to warn Plaintiff that operating the roof bolter in such condition was defective, unsafe and dangerous.

109.    As a consequence of Foresight Energy, LP's, role in placing the defective, unsafe and dangerous roof bolter into service, and/or directing, encouraging and/or substantially assisting others in placing the defective, unsafe and dangerous roof bolter into service, a drill steel became bent and unbalanced which caused it to exit the chuck of the roof bolter while

spinning at a dangerous rotational speed, and hit the face, head and/or body of Cory Leitschuh and/or caused him to fall to the ground.

110.    As a direct and proximate result of the role of Defendant, Foresight Energy, LP, and its conduct as set forth herein, Plaintiff sustained and suffered severe, permanent, progressive and disabling injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully, prays that this Court enter judgment in his favor and against Defendant, Foresight Energy, LP, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

## COUNT XII
## (COAL FIELD TRANSPORTS, INC.)
## (RESTATEMENT (2d) OF TORTS SEC. 876 "PERSONS ACTING IN CONCERT")

1-78.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-78 of his Complaint as though fully set forth herein.

111.    As the owner, lessee and/or operator of the Deer Run mine, and/or due to sole member status of Patton Mining, LLC, Coal Field Transports, Inc., controlled the method and manner in which the roof bolter was used in the mining operations, including adjustments and modifications to the roof bolter.

112.    As the owner, lessee, user and/or operator of the roof bolter, and/or due to its sole member status of Patton Mining, LLC, Coal Field Transports, Inc., controlled the method and manner in which the roof bolter was to be used in the mining operations, including adjustments

and modifications to the roof bolter and/or directing, encouraging and/or providing substantial assistance to others who made adjustments and modifications to the roof bolter.

113.     Agents and servants of Coal Field Transports, Inc., acting in the scope and course of their agency, modified and/or adjusted the roof bolter and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to modify and/or adjust the roof bolter in one or more of the following ways:

   a.   Removed hydraulic drill guides when Coal Field Transports, Inc., knew or should have known that removal of drill guides made the roof bolter defective, unsafe and dangerous to operate.

   b.   Allowed the rotational speed of the drill steel to operate in excess of safe and recommended speeds when Coal Field Transports, Inc., knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

   c.   Allowed the feed pressures to operate in excess of safe and recommended levels when Coal Field Transports, Inc., knew or should have known that such modifications made the roof bolter defective, unsafe and dangerous to operate.

114.     After one or more of these adjustments and/or modifications were made, Coal Field Transports, Inc., placed the roof bolter into service in a defective, unsafe and dangerous condition, and/or directed, encouraged and/or provided substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., to place the roof bolter into service in the defective, unsafe and dangerous condition.

115.     The benefit to Coal Field Transports, Inc., Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP and/or Coal Field Transports, Inc., of removing hydraulic drill guides and/or allowing rotational speed and/or feed pressures in excess of the safe and recommended levels was to increase production,

increase revenue, decrease overhead expenses and thereby increase profits in exchange for increasing the risk of personal injury to miners, including Cory Leitschuh, who operated the roof bolter.

116.    Plaintiff Cory Leitschuh was operating the roof bolter equipment that was rendered defective, unsafe and dangerous by the removal of hydraulic drill guides and/or allowing excess drill rotational speeds and/or allowing excess feed pressures.  However, agents and/or servants of Coal Field Transports, Inc., failed to warn Plaintiff that operating the roof bolter in such condition was defective, unsafe and dangerous.

117.    As a consequence of Coal Field Transports, Inc., role in placing the defective, unsafe and dangerous roof bolter into service, and/or directing, encouraging and/or substantially assisting others in placing the defective, unsafe and dangerous roof bolter into service, a drill steel became bent and unbalanced which caused it to exit the chuck of the roof bolter while spinning at a dangerous rotational speed, and hit the face, head and/or body of Cory Leitschuh and/or caused him to fall to the ground.

118.    As a direct and proximate result of role of Defendant, Coal Field Transports, Inc., conduct as set forth herein, Plaintiff sustained and suffered severe, permanent, progressive and disabling injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully, prays that this Court enter judgment in his favor and against Defendant, Coal Field Transports, Inc., in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

Page **31** of 35

## COUNT XIII
## (J.H. FLETCHER & CO.)
## (RESTATEMENT (2d) OF TORTS SEC. 876 "PERSONS ACTING IN CONCERT")

1-118.  Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-118 of his Complaint as though fully set forth herein.

119.    Before Plaintiff's injury on May 2, 2013, J.H. Fletcher & Co., learned that the hydraulic drill guides had been removed from the roof bolter.

120.    Before Plaintiff's injury on May 2, 2013, J.H. Fletcher & Co., learned that the adjustments and modifications had been made to the roof bolter that allowed the rotational speed and feed pressures to be in excess of safe and recommended values.

121.    Prior to May 2, 2013, J.H. Fletcher & Co. knew that the roof bolter had been defective, unsafe and dangerous to operate, and further knew that Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP, and/or Coal Field Transports, Inc., intended to continue operating the roof bolter in a condition that was defective, unsafe and dangerous to operate in one or more of the following ways:

a.  The hydraulic drill guides had been removed.

b.  The rotational speed of the drill steel was repeatedly adjusted at speeds that were unsafe and in excess of J.H. Fletcher & Co.'s recommendations;

c.  The feed pressure was repeatedly adjusted at forces that were unsafe and in excess of J.H. Fletcher & Co.'s recommendations;

122.    J.H. Fletcher & Co., knew or should have known that operation of the defective, unsafe and dangerous roof bolter created an unreasonable risk of harm and constituted a breach of the duty to Plaintiff and other miners who operated the roof bolter.

123.    After learning of the modifications that created a defective, unsafe and dangerous condition with the roof bolter, J.H. Fletcher provided written and/or verbal instructions and on-site inspection, maintenance, service and/or repairs to the roof bolter with the understanding and

expectation that the roof bolter would be placed into service and operated at the Deer Run Mine in a defective, unsafe and dangerous condition.

124.    J.H. Fletcher's instructions, on-site inspections, maintenance, service and repairs to the roof bolter that was modified constituted encouragement and/or substantial assistance to Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP, and/or Coal Field Transports, Inc., in placing the defective, unsafe and dangerous roof bolter into service at the Deer Run Mine,

125.    By virtue of its aforementioned activities and conduct in reference to the roof bolter, J.H. Fletcher & Co., acted in concert with Patton Mining, LLC, Hillsboro Energy, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP, and/or Coal Field Transports, Inc., in placing a defective, unsafe and dangerous roof bolter into operation.

126.    On May 2, 2013, while operating the defective, unsafe and dangerous roof bolter, a drill steel became bent and unbalanced, exited the chuck of the equipment while spinning at a dangerous and excessive rotational speed, and hit the face, head and/or body of Cory Leitschuh and/or caused him to fall to the ground.

127.    As a direct and proximate result of the encouragement and/or substantial assistance of J.H. Fletcher & Co., in placing the defective, unsafe and dangerous roof bolter into operation in the Deer Run Mine, Plaintiff sustained and suffered severe, permanent, progressive and disabling injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

128.     By virtue of its role in providing instructions, inspections, maintenance, service and/or repairs which made the roof bolter defective, unsafe and dangerous in one or more of the following ways:

      a.   Removal of drill guides,

      b.   Modifications that allowed excess and dangerous rotational speed of drill steels,

      c.   Modifications that allowed excessive feed pressures,

J.H. Fletcher & Co. is liable to Plaintiff for providing encouragement and/or substantial assistance pursuant to Restatement (2d) of Torts, sec. 876 and *Simmons v. Homatas*, 236 Ill. 2d 459 (2010).

WHEREFORE, Plaintiff respectfully, prays that this Court enter judgment in his favor and against Defendant, J.H. Fletcher & Co., in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by law.

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Respectfully submitted,

**GOLDENBERG HELLER &
ANTOGNOLI P.C.**

By:    */s/ Thomas J. Lech*
       Thomas J. Lech  #6256261
       tlech@ghalaw.com
       2227 South State Route 157
       P.O. Box 959
       Edwardsville, IL  62025
       Telephone: (618) 656-5150
       *Attorney for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on February 7, 2019 the foregoing First Amended Complaint

was served upon all counsel of record via electronic mail at the e-mail addresses as set forth below:

Mr. John S. Sandberg
jsandberg@sandbergphoenix.com
Mr. Casey F. Wong
cwong@sandbergphoenix.com
Sandberg Phoenix & von Gontard, P.C.
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
***Attorneys for Defendants Hillsboro Energy,***
***Foresight Energy, LLC, Foresight Energy***
***Services, LLC, and Foresight Energy, LP***

Mr. Theodore J. MacDonald, Jr.
Theodore.MacDonald@heplerbroom.com
David J. Deterding
David.Deterding@heplerbroom.com
HeplerBroom LLC
One Metropolitan Square
211 North Broadway, Suite 2700
St. Louis, MO  63102
***Attorney for Defendant J.H. Fletcher & Co.***

Mr. John D. Flodstrom
jflodstrom@heylroyster.com
Heyl, Royster, Voelker & Allen
301 N. Neil Street, Suite 505
P.O. Box 1190
Champaign, IL 61824-1190
***Attorney for Patton Mining, LLC and***
***Coal Field Transports, Inc.***

By:     ***/s/   Thomas J. Lech***
        Thomas J. Lech #6256261
        **GOLDENBERG HELLER &**
        **ANTOGNOLI, P.C.**
        2227 South State Route 157
        Edwardsville, IL 62025
        Tel: (618) 656-5150
        Fax: (618) 656-6230
        tlech@ghalaw.com
        ***Attorneys for Plaintiff***

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY
FOURTH JUDICIAL CIRCUIT
STATE OF ILLINOIS

| | | |
|---|---|---|
| **CORY LEITSCHUH**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.: 15-L-8 |
| | ) | |
| **HILLSBORO ENERGY, LLC;** | ) | |
| **FORESIGHT ENERGY, LLC;** | ) | |
| **FORESIGHT ENERGY SERVICES,** | ) | |
| **LLC; FORESIGHT, LP;** | ) | |
| **COAL FIELD TRANSPORTS, INC.;** | ) | |
| **and J.H. FLETCHER & CO.,** | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| **J.H. FLETCHER & CO.,** | ) | |
| | ) | |
| Third Party Plaintiff | ) | |
| vs. | ) | Third Party Plaintiff Demands |
| | ) | Jury of Twelve |
| **PATTON MINING, LLC** | ) | |
| | ) | |
| Third Party Defendant | ) | |

## DEFENDANT J.H. FLETCHER & CO.'S THIRD PARTY COMPLAINT
## AGAINST PATTON MINING, LLC

COMES NOW, Defendant, J.H. Fletcher & Co., by and through its undersigned

attorneys, and for its Third Party Complaint against Patton Mining, LLC, states as follows:

1.      On April 23, 2015, Plaintiff filed his Complaint for personal injuries against, J.H.

Fletcher & Co. (as well as other defendants) claiming strict liability and negligence on the part of

J.H. Fletcher & Co.

1
EXHIBIT B

2.      Plaintiff alleges that J.H. Fletcher & Co. manufactured a roof bolter that was unreasonably dangerous, and the unreasonably dangerous condition of the roof bolter was the proximate cause of Plaintiff's injuries. *See Plaintiff's Complaint attached as Exhibit A.*

3.      Plaintiff further alleges that J.H. Fletcher & Co. was negligent in manufacturing, fabricating, designing, packaging, shipping, selling, servicing and/or distributing the roof bolter and that the negligence of J.H. Fletcher & Co. was the proximate cause of Plaintiff's injuries. *See Plaintiff's Complaint attached as Exhibit A.*

4.      J.H. Fletcher & Co. has denied liability to Plaintiff and has filed various affirmative defenses to Plaintiff's claims. *See J.H. Fletcher & Co.'s Answer and Affirmative Defenses attached as Exhibit B.*

5.      At all relevant times, Plaintiff was employed by Third Party Defendant, Patton Mining, LLC as a roof bolter.

6.      At all relevant times, Patton Mining, LLC required that Plaintiff work at the Deer Run Mine in Hillsboro, Illinois.

7.      At the time and place alleged in Plaintiff's Complaint, Patton Mining, LLC, by and through its employees, agents, servants, and/or subcontractors, was under a duty to exercise reasonable care to ensure that its employees could perform work in a reasonably safe manner and/or that any location at which it supplied employees was a safe working place for said employee.

8.      In the event that J.H. Fletcher & Co. is found liable to Plaintiff, which J.H. Fletcher & Co. denies, it pleads that on or before May 2, 2013, Patton Mining, LLC, by and through its employees, agents, representatives, and/or subcontractors, was negligent in one or more ways including, but not necessarily limited to:

2

a.  Failed to assess the competence and or capacity of Plaintiff to work with roof bolting machines;

b.  Failed to train Plaintiff to work safely with and roof bolting machines;

c.  Failed to inspect the workplace where Plaintiff was assigned to ensure that no hazards were present, and/or to ensure that any hazards were properly guarded;

d.  Failed to train Plaintiff to work around any hazards identified at the workplace where Plaintiff was assigned;

e.  Failed to supervise Plaintiff to ensure that he worked safely around any hazards identified at the workplace where he was assigned;

f.  Failed to properly maintain the subject roof bolter;

g.  Failed to ensure that all recommended safety devices were present on the subject roof bolter;

h.  Failed to properly train Plaintiff on how to safely operate the subject roof bolter.

9.  The foregoing negligent acts and/or omissions on the part of Patton Mining, LLC were a direct and proximate cause of any damages and injuries alleged to have been suffered by Plaintiff.

10.  In the event that J.H. Fletcher & Co. is found liable to Plaintiff, which J.H. Fletcher & Co. denies, then J.H. Fletcher & Co. is entitled to receive contribution from Patton Mining, LLC, pursuant to the Joint Tortfeasors Contribution Act (735 ILCS 100/1 et seq.), based upon the percentage to which Patton Mining, LLC's fault caused Plaintiff's damages and injuries.

**WHEREFORE**, Defendant J.H. Fletcher & Co. prays that judgment be entered in its favor and against Patton Mining, LLC as follows:

3

A) For Contribution for any sums which J.H. Fletcher & Co. is required to pay, if at all, over and above that sum equal to the percentage of fault for which it is found liable to Plaintiff, if any;

B) For a judgment of apportionment, apportioning fault, if any, between all defendants;

C) For an award of costs incurred herein; and

D) For such other relief as the Court deems just and proper under the circumstances.

HEPLERBROOM LLC

By:_____

Theodore J. MacDonald, Jr.    #03125246
David J. Deterding            #06296219
One Metropolitan Square
211 North Broadway, Suite 2700
St. Louis, Missouri 63102
314-241-6160 telephone
314-241-6116 facsimile
           -and-
FARRELL, WHITE & LEGG PLLC
Michael J. Farrell        ARDC#6320055
Tamela J. White           ARDC#6320058
914 Fifth Avenue
Huntington, WV 25701
304-522-9100 telephone
304-522-6162 facsimile
ATTORNEYS FOR DEFENDANT
J. H. FLETCHER & CO.

4

## **PROOF OF SERVICE**

The undersigned certifies that a complete copy of this instrument was served upon:

| | |
|---|---|
| <u>ATTORNEYS FOR **PLAINTIFF**</u><br>Thomas J. Lech<br>Goldenberg Heller Antognoli & Rowland, P.C.<br>2227 South State Route 157<br>P.O. Box 959<br>Edwardsville, IL 62025 | DEFENDANTS<br>**HILLSBORO ENERGY, LLC**<br>**FORESIGHT ENERGY, LLC**<br>**FORESIGHT ENERGY SERVICES, LLC**<br>**FORESIGHT ENERGY, LP**<br>AND<br><u>**COAL FIELD TRANSPORTS, INC.**</u><br>John S. Sandberg<br>Laura J. Gust<br>Sandberg, Phoenix & von Gontard, P.C.<br>600 Washington Avenue – 15th Floor<br>St. Louis, MO  63101-1313 |

by first class mail, postage prepaid, and by depositing in a U.S. Post Office mail box on January 9, 2017.

_____
Perry Meyer

IN THE CIRCUIT COURT
FOURTH JUDICIAL CIRCUIT
MONTGOMERY COUNTY, ILLINOIS

**FILED**

APR 2 3 2015

HOLLY LEMONS
Circuit Court Clerk
4TH Judicial Circuit

| | |
|---|---|
| CORY LEITSCHUH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15-L-8 |
| | ) |
| HILLSBORO ENERGY, LLC, PATTON | ) |
| MINING, LLC, FORESIGHT ENERGY, | ) |
| LLC, FORESIGHT ENERGY SERVICES, | ) |
| LLC, FORESIGHT ENERGY, LP, | ) |
| COAL FIELD TRANSPORTS, INC., and | ) |
| J. H. FLETCHER & CO., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Comes now the Plaintiff, Cory Leitschuh ("Plaintiff"), by and through his attorneys,

Goldenberg Heller Antognoli & Rowland, P.C., and for his Complaint against the Defendants,

Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy

Services, LLC, Coal Field Transports, Inc., Foresight Energy, LP, and J. H. Fletcher & Co.,

states:

## BACKGROUND

1. This is an action for damages against Defendants, Hillsboro Energy, LLC, Patton

Mining, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight Energy, LP,

and Coal Field Transport, Inc., for committing acts or omissions of negligence against the

Plaintiff.

2. This is an action for damages against Defendant, J. H. Fletcher & Co., based in

negligence and strict liability.

EXHIBIT
**A**

## PARTIES

3. Plaintiff is a natural person and a resident of the City of Sorento, State of Illinois.

4. At all times herein mentioned, Defendant, Hillsboro Energy, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois.

5. At all times herein mentioned, Defendant, Patton Mining, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois.

6. At all times herein mentioned, Defendant, Foresight Energy, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois.

7. At all times herein mentioned, Defendant, Foresight Energy Services, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois

8. At all times herein mentioned, Defendant, Foresight Energy Services, LP, was, and is, a master limited partnership which has units owned by residents of the state of Illinois.

9. At all times herein mentioned, Defendant, Coal Field Transports, Inc., was, and is, a corporation existing under the laws of the State of West Virginia with its principal place of business in Beckley, West Virginia.

10. At all times herein mentioned, Defendant, J. H. Fletcher & Co., was, and is, a corporation existing under the laws of the State of Delaware with its principal place of business in Huntington, West Virginia.

## FACTUAL ALLEGATIONS

11. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

12. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

13. At all times relevant hereto, Defendant, Patton Mining, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

14. At all times relevant hereto, Defendant, Patton Mining, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

15. At all times relevant hereto, Defendant, Foresight Energy, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

16. At all times relevant hereto, Defendant, Foresight Energy, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

17. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

18. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

19. At all times relevant hereto, Defendant, Foresight Energy LP, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

20. At all times relevant hereto, Defendant, Foresight Energy LP, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

21. At all times relevant hereto, Defendant, Coal Field Transports, Inc., owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

22. At all times relevant hereto, Defendant, Coal Field Transports, Inc., was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

23. On May 2, 2013, Plaintiff, while working as a roof bolter at the Deer Run Mine in Hillsboro, Illinois, sustained severe injuries to his body, including a serious brain injury, all after the drill steel in the roof bolter he was operating bent, striking Plaintiff on the head.

24. The roof bolter, described as Fletcher Model DDR-17-B S/N-2010035 ("roof bolter") which caused the Plaintiff's injuries lacked hydraulic drill guides, had excessive drill rotation speeds, and excessive hydraulic drill feed pressures.

25. Defendant, J. H. Fletcher & Co., manufactured and sold the roof bolter which caused the injuries to Plaintiff to Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, or Coal Field Transports, Inc.

26. Defendant, J. H. Fletcher & Co., assembled and/or installed the roof bolter which caused Plaintiff's injuries at the Deer Run Mine in Hillsboro, Illinois.

27. Defendants, Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Coal Field Transports, Inc., and J. H. Fletcher & Co., knew or should have known that the roof bolter which injured Plaintiff lacked hydraulic drill guides, had excessive drill rotation speeds, had excessive hydraulic drill feed pressures, and a worn joystick control.

## COUNT I (HILLSBORO ENERGY, LLC)

1-27. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

28. Upon information and belief, Defendant, Hillsboro Energy, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

29. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

30. Upon information and belief, at all times relevant hereto, Defendant, Hillsboro Energy, LLC, owned the roof bolter which caused Plaintiff's injuries.

31. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

32. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

33. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty to remove unsafe machinery and equipment from service.

34. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

35. Defendant, Hillsboro Energy, LLC, breached the aforementioned duties in that it:

a.    Failed to provide Plaintiff with a reasonably safe place to work;

b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d.    Failed to exercise ordinary care for Plaintiff's safety.

36.     As a direct and proximate result of Defendant, Hillsboro Energy, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

## COUNT II (PATTON MINING, LLC)

1-27.  Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

37.  Upon information and belief, Defendant, Patton Mining, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

38.  At all times relevant hereto, Defendant, Patton Mining, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

39.  At all times relevant hereto, Defendant, Patton Mining, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

40.  At all times relevant hereto, Defendant, Patton Mining, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

41.  At all times relevant hereto, Defendant, Patton Mining, LLC, had the duty to remove unsafe machinery and equipment from service.

42.  At all times relevant hereto, Defendant, Patton Mining, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

43.  Defendant, Patton Mining, LLC, breached the aforementioned duties in that it:

a.     Failed to provide Plaintiff with a reasonably safe place to work;

Page 6 of 15

b. Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c. Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d. Failed to exercise ordinary care for Plaintiff's safety.

44. As a direct and proximate result of Defendant, Patton Mining, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

## COUNT III (FORESIGHT ENERGY, LLC)

1-27. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

45. Upon information and belief, Defendant, Foresight Energy, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

46. At all times relevant hereto, Defendant, Foresight Energy, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

47. At all times relevant hereto, Defendant, Foresight Energy, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

48. At all times relevant hereto, Defendant, Foresight Energy, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

49. At all times relevant hereto, Defendant, Foresight Energy, LLC, had the duty to remove unsafe machinery and equipment from service.

50. At all times relevant hereto, Defendant, Foresight Energy, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

51. Defendant, Foresight Energy, LLC, breached the aforementioned duties in that it:

a.    Failed to provide Plaintiff with a reasonably safe place to work;

b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d.    Failed to exercise ordinary care for Plaintiff's safety.

52.    As a direct and proximate result of Defendant, Foresight Energy, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

## COUNT IV (FORESIGHT ENERGY SERVICES, LLC)

1-27.  Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

53.  Upon information and belief, Defendant, Foresight Energy Services, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

54. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

55. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

56. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

57. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty to remove unsafe machinery and equipment from service.

58. At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

59. Defendant, Foresight Energy Services, LLC, breached the aforementioned duties in that it:

a.    Failed to provide Plaintiff with a reasonably safe place to work;

b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d.    Failed to exercise ordinary care for Plaintiff's safety.

60.    As a direct and proximate result of Defendant, Foresight Energy Services, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment,

loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life

and has become responsible for past and future medical bills.

### COUNT IV (FORESIGHT ENERGY LP)

1-27.  Plaintiff realleges and incorporates herein by reference the allegations contained in

paragraphs 1-27 of his Complaint as though fully set forth herein.

61.  Upon information and belief, Defendant, Foresight Energy, LP, was at all times

relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in

Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

62.  At all times relevant hereto, Defendant, Foresight Energy LP, either controlled the

mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

63.  At all times relevant hereto, Defendant, Foresight Energy LP, had the duty of

providing the Plaintiff a reasonably safe place to work.

64.  At all times relevant hereto, Defendant, Foresight Energy LP, had the duty to

maintain machinery and equipment in a safe operating condition.

65.  At all times relevant hereto, Defendant, Foresight Energy LP, had the duty to remove

unsafe machinery and equipment from service.

66.  At all times relevant hereto, Defendant, Foresight Energy LP, had a duty to exercise

ordinary care for Plaintiff's safety.

67.  Defendant, Foresight Energy LP, breached the aforementioned duties in that it:

a.      Failed to provide Plaintiff with a reasonably safe place to work;

b.      Failed to maintain the roof bolter that injured Plaintiff in a safe

        operating condition;

c.      Failed to remove the unsafe roof bolter that injured Plaintiff from

Page 10 of 15

service; and

d.     Failed to exercise ordinary care for Plaintiff's safety.

68.   As a direct and proximate result of Defendant, Foresight Energy LP's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

### COUNT V (COAL FIELD TRANSPORTS, INC.)

1-27.  Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

69.  Upon information and belief, Defendant, Coal Field Transports, Inc., was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

70.  At all times relevant hereto, Defendant, Coal Field Transports, Inc., either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

71.  Upon information and belief, at all times relevant hereto, Defendant, Coal Field Transports, Inc., owned the roof bolter which caused Plaintiff's injuries.

72.  At all times relevant hereto, Defendant, Coal Field Transports, Inc., had the duty of providing the Plaintiff a reasonably safe place to work.

73.  At all times relevant hereto, Defendant, Coal Field Transports, Inc., had the duty to maintain machinery and equipment in a safe operating condition.

74.  At all times relevant hereto, Defendant, Coal Field Transports, Inc., had the duty to remove unsafe machinery and equipment from service.

75. At all times relevant hereto, Defendant, Coal Field Transports, Inc., had a duty to exercise ordinary care for Plaintiff's safety.

76. Defendant, Coal Field Transports, Inc., breached the aforementioned duties in that it:

a.    Failed to provide Plaintiff with a reasonably safe place to work;

b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d.    Failed to exercise ordinary care for Plaintiff's safety.

77. As a direct and proximate result of Defendant, Coal Field Transports, Inc.'s, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

## COUNT VI (J. H. FLETCHER & CO.-NEGLIGENCE)

1-76. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-76 of his Complaint as though fully set forth herein.

78. Defendant, J. H. Fletcher & Co., fabricated, designed, packaged, shipped, sold, serviced and/or distributed the roof bolter that caused Plaintiff's injuries.

79. Defendant, J. H. Fletcher & Co., owed to Plaintiff a duty to use reasonable care in the manufacturing, fabricating, designing, packaging, shipping, selling, servicing and/or distributing the roof bolter that injured Plaintiff.

80. Defendant, J. H. Fletcher & Co., breached the aforementioned duty in that:

a.  The roof bolter was designed and manufactured in a manner that allowed the drill steel to rotate at an excessive speed;

b.  The roof bolter was serviced in a manner that allowed the drill steel to rotate at an excessive speed;

c.  The roof bolter was designed and manufactured in a way that positioned the operator where he could be struck with a drill steel;

d.  The roof bolter was designed and manufactured without a guard or other device to prevent the operator from being struck by a drill steel.

e.  The roof bolter was designed and manufactured in a manner that would allow excessive drill feed pressures;

f.  The roof bolter was served in a manner that allowed excessive drill feed pressures;

g.  The roof bolter was designed and manufactured in a manner that would allow the joystick control to stick;

h.  The roof bolter was serviced in a manner that allowed the joystick control to stick;

i.  There were no adequate warnings affixed to the machine or provided to the operator which would warn of excessive drill speed;

j.  There were no adequate warnings affixed to the machine or provided to the operator which would warn of excessive drill feed pressures; and

k.  There were no adequate warnings affixed to the machine or provided to the operator which would warn of the joystick control sticking.

81.  That as a direct and proximate result of Defendant, J. H. Fletcher & Co.'s,

negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his

body, physical pain and suffering, mental anguish and suffering, permanent physical impairment,

loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life

and has become responsible for past and future medical bills.

### COUNT VII (J. H. FLETCHER & CO.-STRICT PRODUCT LIABILITY)

1-81.  Plaintiff realleges and incorporates herein by reference the allegations contained in

paragraphs 1-81 of his Complaint as though fully set forth herein.

82.  At the time the product was designed, manufactured, distributed, supplied and/or put

into the stream of commerce by Defendant, J. H. Fletcher & Co., it was in a defective condition

and unreasonably dangerous when put to a reasonably anticipated use in the following respects:

a.  The roof bolter was designed and manufactured in a manner that
allowed the drill steel to rotate at an excessive speed;

b.  The roof bolter was designed and manufactured in a way that
positioned the operator where he could be struck with the drill steel;

c.  The roof bolter was designed and manufactured without a guard or
other device to prevent the operator from being struck by a drill steel;

d.  The roof bolter was designed and manufactured in a manner that would
allow excessive drill feed pressures;

e.  The roof bolter was designed and manufactured in a manner that
would allow the joystick control to stick;

f.  There were no adequate warnings affixed to the machine or provided
to the operator which would warn of excessive drill speed;

g.    There were no adequate warnings affixed to the machine or provided

to the operator which would warn of excessive drill feed pressures; and

h.    There were no adequate warnings affixed to the machine or provided to

the operator which would warn of the joystick control sticking.

83.  As a direct and proximate result of the aforesaid defective roof bolter, Plaintiff

sustained and suffered serious, permanent and progressive injury to his body, physical pain and

suffering, mental anguish and suffering, permanent physical impairment, loss of wages and

benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become

responsible for past and future medical bills.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor

and against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS

($50,000.00) plus all interest as permitted by law as well as all costs and expenses allowed by

law.

Respectfully submitted,

GOLDENBERG HELLER
ANTOGNOLI & ROWLAND, P.C.

By

Thomas J. Lech  #6256261
tlech@ghalaw.com
2227 South State Route 157
P.O. Box 959
Edwardsville, IL  62025
Telephone: (618) 656-5150
*Attorney for Plaintiff*

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Page 15 of 15

IN THE CIRCUIT COURT
FOURTH JUDICIAL CIRCUIT
MONTGOMERY COUNTY, ILLINOIS

| | | |
|---|---|---|
| CORY LEITSCHUH, | ) | |
| | ) | **FILED** |
| Plaintiff, | ) | |
| | ) | **APR 2 3 2015** |
| v. | ) | No.  15-L-8 |
| | ) | HOLLY LEMONS |
| HILLSBORO ENERGY, LLC, PATTON | ) | Circuit Court Clerk |
| MINING, LLC, FORESIGHT ENERGY, | ) | 4TH Judicial Circuit |
| LLC, FORESIGHT ENERGY SERVICES, | ) | |
| LLC, FORESIGHT ENERGY, LP, | ) | |
| COALFIELD TRANSPORT, INC.,  and | ) | |
| J. H. FLETCHER & CO., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF PLAINTIFF'S COUNSEL
## PURSUANT TO SUPREME COURT RULE 222(b)

Thomas J. Lech, on oath, deposes and states as follows:

1.    I am the attorney for Plaintiff in the above-entitled cause.

2.    The money damages sought by Plaintiff in this action exceed $50,000.00.

_____
THOMAS J. LECH

Subscribed and sworn to before me this 21st day of April, 2015.

_____
NOTARY PUBLIC

CHERYL ALTHARDT
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 02, 2018

Thomas J. Lech  #6256261
GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C.
2227 South State Route 157
P.O. Box 959
Edwardsville, IL 62025
Email: tlech@ghalaw.com
P: 618-656-5150
F: 618-656-6230
*Attorney for Plaintiff*

Page 1 of 1

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY
FOURTH JUDICIAL CIRCUIT
STATE OF ILLINOIS

**FILED**

JUN 16 2015

HOLLY LEMONS
Circuit Court Clerk
4TH Judicial Circuit

| | | |
|---|---|---|
| CORY LEITSCHUH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.: 15-L-8 |
| | ) | |
| HILLSBORO ENERGY, LLC; PATTON | ) | |
| MINING, LLC; FORESIGHT ENERGY, | ) | |
| LLC; FORESIGHT ENERGY | ) | |
| SERVICES, LLC; FORESIGHT | ) | |
| ENERGY, LP; COAL FIELD | ) | |
| TRANSPORTS, INC.; and | ) | |
| J. H. FLETCHER & CO., | ) | |
| | ) | **DEFENDANT DEMANDS** |
| Defendants. | ) | **TRIAL BY JURY** |

## DEFENDANT J. H. FLETCHER & CO.'S
## ANSWER TO PLAINTIFF'S COMPLAINT

**COMES NOW** Defendant, J. H. Fletcher & Co. (hereinafter "Defendant"), by

and through its attorneys, and for its answer to Plaintiff's Complaint, states as follows:

## BACKGROUND

1. This is an action for damages against Defendants, Hillsboro Energy, LLC,

Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, Foresight

Energy, LP, and Coal Field Transport, Inc., for committing acts or omissions of

negligence against the Plaintiff.

**ANSWER:** **Defendant admits that Plaintiff has brought suit against the above
named entities. Defendant is without sufficient information to either
admit or deny the allegations contained in Paragraph 1 and,
therefore, denies the same.**

2. This is an action for damages against Defendant, J. H. Fletcher & Co.,

based in negligence and strict liability.

15-L-8

**EXHIBIT**

**B**

Page 1 of 35

**ANSWER:** **Defendant admits that it has been sued by Plaintiff. Defendant denies that it has any liability to Plaintiff.**

## PARTIES

3.       Plaintiff is a natural person and a resident of the City of Sorento, State of

Illinois.

**ANSWER:** **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 3 and, therefore, denies the same.**

4.       At all times herein mentioned, Defendant, Hillsboro Energy, LLC, was,

and is, a limited liability company existing under the laws of the State of Delaware and a

resident of Illinois.

**ANSWER:** **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 4 and, therefore, denies the same.**

5.       At all times herein mentioned, Defendant, Patton Mining, LLC, was, and

is, a limited liability company existing under the laws of the State of Delaware and a

resident of Illinois.

**ANSWER:** **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 5 and, therefore, denies the same.**

6.       At all times herein mentioned, Defendant, Foresight Energy, LLC, was,

and is, a limited liability company existing under the laws of the State of Delaware and a

resident of Illinois.

**ANSWER:** **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 6 and, therefore, denies the same.**

7.     At all times herein mentioned, Defendant, Foresight Energy Services, LLC, was, and is, a limited liability company existing under the laws of the State of Delaware and a resident of Illinois

**ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 7 and, therefore, denies the same.**

8.     At all times herein mentioned, Defendant, Foresight Energy Services, LP, was, and is, a master limited partnership which has units owned by residents of the state of Illinois.

**ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 8 and, therefore, denies the same.**

9.     At all times herein mentioned, Defendant, Coal Field Transports, Inc., was, and is, a corporation existing under the laws of the State of West Virginia with its principal place of business in Beckley, West Virginia.

**ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 9 and, therefore, denies the same.**

10.     At all times herein mentioned, Defendant, J. H. Fletcher & Co., was, and is, a corporation existing under the laws of the State of Delaware with its principal place of business in Huntington, West Virginia.

**ANSWER:     Defendant admits the allegations contained in paragraph 10.**

## FACTUAL ALLEGATIONS

11.     At all times relevant hereto, Defendant, Hillsboro Energy, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 11 and, therefore, denies the same.**

12.    At all times relevant hereto, Defendant, Hillsboro Energy, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 12 and, therefore, denies the same.**

13.    At all times relevant hereto, Defendant, Patton Mining, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 13 and, therefore, denies the same.**

14.    At all times relevant hereto, Defendant, Patton Mining, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 14 and, therefore, denies the same.**

15.    At all times relevant hereto, Defendant, Foresight Energy, LLC, owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 15 and, therefore, denies the same.**

16.    At all times relevant hereto, Defendant, Foresight Energy, LLC, was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 16 and, therefore, denies the same.**

17.    At all times relevant hereto, Defendant, Foresight Energy Services, LLC,

owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 17 and, therefore, denies the same.**

18.    At all times relevant hereto, Defendant, Foresight Energy Services, LLC,

was engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 18 and, therefore, denies the same.**

19.    At all times relevant hereto, Defendant, Foresight Energy LP, owned,

operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 19 and, therefore, denies the same.**

20.    At all times relevant hereto, Defendant, Foresight Energy LP, was

engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 20 and, therefore, denies the same.**

21.    At all times relevant hereto, Defendant, Coal Field Transports, Inc.,

owned, operated and/or controlled the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 21 and, therefore, denies the same.**

22.    At all times relevant hereto, Defendant, Coal Field Transports, Inc., was

engaged in the business of mining coal at the Deer Run Mine in Hillsboro, Illinois.

15-L-8

ANSWER:   **Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 22 and, therefore, denies the same.**

23.   On May 2, 2013, Plaintiff, while working as a roof bolter at the Deer Run Mine in Hillsboro, Illinois, sustained severe injuries to his body, including a serious brain injury, all after the drill steel in the roof bolter he was operating bent, striking Plaintiff on the head.

ANSWER:   **Defendant is of information and belief that Corey Leitschuh sustained an injury/injuries on or about May 2, 2013; as to the remaining allegations therein, defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 23 and, therefore, denies the same.**

24.   The roof bolter, described as Fletcher Model DDR-17-B S/N-2010035 ("roof bolter") which caused the Plaintiff's injuries lacked hydraulic drill guides, had excessive drill rotation speeds, and excessive hydraulic drill feed pressures.

ANSWER:   **Defendant is of information and belief, based upon a report from the United States Department of Labor, Mine Safety & Health Administration that a roof bolting machine with a serial number 2010035 was in use at the time Corey Leitschuh was reported to have had an accident. Defendant is of information and belief that serial number 2010035 was and had been materially modified from original equipment manufacturer specifications. Any and all allegation therein of liability as to this defendant is denied.**

25.   Defendant, J. H. Fletcher & Co., manufactured and sold the roof bolter which caused the injuries to Plaintiff to Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy Services, LLC, or Coal. Field Transports, Inc.

ANSWER:   **Any allegation that a roof bolting machine designed, manufactured and sold by this Defendant "caused the injuries to Plaintiff to Hillsboro Energy, LLC, Patton Mining, LLC, Foresight Energy, LLC, Foresight Energy LLC or Coal Field Transports, Inc." is denied. Defendant is of information and belief, based upon a report from the United States Department of Labor, Mine Safety & Health Administration that a roof bolting machine with a serial number**

2010035 was in use at the time Corey Leitschuh was reported to have
had an accident. Defendant has not been able to confirm product
identification and as such, Defendant is without sufficient information
to either admit or deny the allegations contained in Paragraph 25 and,
therefore, denies the same.

26.     Defendant, J. H. Fletcher & Co., assembled and/or installed the roof bolter

which caused Plaintiff's injuries at the Deer Run Mine in Hillsboro, Illinois.

**ANSWER:**     **Any allegation that "the roof bolter caused Plaintiff's injuries" is
denied. Defendant is of information and belief, based upon a report
from the United States Department of Labor, Mine Safety & Health
Administration that a roof bolting machine with a serial number
2010035 was in use at the time Corey Leitschuh was reported to have
had an accident. As to the remaining allegations therein, Defendant
has not been able to confirm product identification and as such,
Defendant is without sufficient information to either admit or deny
the allegations contained in Paragraph 26 and, therefore, denies the
same.**

27.     Defendants, Hillsboro Energy, LLC, Patton Mining, LLC, Foresight

Energy, LLC, Foresight Energy Services, LLC, Coal Field Transports, Inc., and J. H.

Fletcher & Co,, knew or should have known that the roof bolter which injured Plaintiff

lacked hydraulic drill guides, had excessive drill rotation speeds, had excessive hydraulic

drill feed pressures, and a worn joystick control.

**ANSWER:**     **All allegations within paragraph 27 directed to this defendant are
denied.  As to those allegations directed to a party other than this
defendant, no response is required by the Rules of Civil Procedure.
To the extent that a response is deemed necessary, defendant is of
information and belief that serial number 2010035 had been
materially modified; as to the remaining allegations therein,
Defendant is without sufficient information to either admit or deny
the allegations contained in Paragraph 27 and, therefore, denies the
same.**

### COUNT I (HILLSBORO ENERGY, LLC)

1-27.   Plaintiff realleges and incorporates herein by reference the allegations

contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

**ANSWER:** **Defendant incorporates its answers to Paragraphs 1 through 27 of Plaintiff's Complaint as though fully set forth herein.**

28.    Upon information and belief, Defendant, Hillsboro Energy, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 28 and, therefore, denies the same.**

29.    At all times relevant hereto, Defendant, Hillsboro Energy, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 29 and, therefore, denies the same.**

30.    Upon information and belief, at all times relevant hereto, Defendant, Hillsboro Energy, LLC, owned the roof bolter which caused Plaintiff's injuries.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 30 and, therefore, denies the same.**

31.    At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

ANSWER: **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 31 and, therefore, denies the same.**

32. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the

duty to maintain machinery and equipment in a safe operating condition.

ANSWER: **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 32 and, therefore, denies the same.**

33. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had the

duty to remove unsafe machinery and equipment from service.

ANSWER: **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 33 and, therefore, denies the same.**

34. At all times relevant hereto, Defendant, Hillsboro Energy, LLC, had a

duty to exercise ordinary care for Plaintiff's safety.

ANSWER: **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 34 and, therefore, denies the same.**

35. Defendant, Hillsboro Energy, LLC, breached the aforementioned duties in

that it:

a. Failed to provide Plaintiff with a reasonably safe place to work;

b. Failed to maintain the roof bolter that injured Plaintiff in a safe operating

condition;

c.   Failed to remove the unsafe roof bolter that injured Plaintiff from service;

and

d.   Failed to exercise ordinary care for Plaintiff's safety.

**ANSWER:**   **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 35 and all subparts thereto and, therefore, denies the same.**

36.   As a direct and proximate result of Defendant, Hillsboro Energy, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

**ANSWER:**   **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count I, Paragraph 36 and, therefore, denies the same.**

## COUNT II (PATTON MINING, LLC)

1-misnumbered paragraph 37, numbered as paragraph "27".      Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

**ANSWER:**   **Defendant incorporates its answers to Paragraphs 1 through 27 and through 37 of Plaintiff's Complaint as though fully set forth herein.**

38 [misnumbered as 37].      Upon information and belief, Defendant, Patton Mining, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the

aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and

federal mining laws and regulations.

ANSWER:    **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 38 [misnumbered as 37] and, therefore, denies the same.**

39 [misnumbered as 38].      At all times relevant hereto, Defendant, Patton

Mining, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro,

Illinois or retained the right to do so.

ANSWER:    **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 39 [misnumbered as 38] and, therefore, denies the same.**

40 [misnumbered as 39].      At all times relevant hereto, Defendant, Patton

Mining, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

ANSWER:    **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 40 [misnumbered as 39] and, therefore, denies the same.**

41 [misnumbered as 40].      At all times relevant hereto, Defendant, Patton

Mining, LLC, had the duty to maintain machinery and equipment in a safe operating

condition.

ANSWER:    **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit**

or deny the allegations contained in Count II Paragraph 41 [misnumbered as 40] and, therefore, denies the same.

42 [misnumbered as 41].    At all times relevant hereto, Defendant, Patton

Mining, LLC, had the duty to remove unsafe machinery and equipment from service.

**ANSWER:**   **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 42 [misnumbered as 41] and, therefore, denies the same.**

43 [misnumbered as 42].    At all times relevant hereto, Defendant, Patton

Mining, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

**ANSWER:**   **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 43 [misnumbered as 42] and, therefore, denies the same.**

44 [misnumbered as 43].    Defendant, Patton Mining, LLC, breached the

aforementioned duties in that it:

a.    Failed to provide Plaintiff with a reasonably safe place to work;

b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d.    Failed to exercise ordinary care for Plaintiff's safety.

**ANSWER:**   **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 44**

[misnumbered as 43] and all subparts thereto, and, therefore, denies the same.

45 [misnumbered as 44].    As a direct and proximate result of Defendant, Patton Mining, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count II Paragraph 45 [misnumbered as 44] and, therefore, denies the same.

## COUNT III (FORESIGHT ENERGY, LLC)

1 misnumbered 46, misnumbered as "27".    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

ANSWER:    Defendant incorporates its answers to Paragraphs 1 through 27 and through 45 [misnumbered as 44] of Plaintiff's Complaint as though fully set forth herein.

47 [misnumbered as 45].    Upon information and belief, Defendant, Foresight Energy, LLC, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit

15-L-8                                                                                           Page 13 of 35

or deny the allegations contained in Count III Paragraph 47 [misnumbered as 45] and, therefore, denies the same.

48 [misnumbered as 46].    At all times relevant hereto, Defendant, Foresight

Energy, LLC, either controlled the mining activities at Deer Run Mine in Hillsboro,

Illinois or retained the right to do so.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count III Paragraph 48 [misnumbered as 46] and, therefore, denies the same.

49 [misnumbered as 47].    At all times relevant hereto, Defendant, Foresight

Energy, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count III Paragraph 49 [misnumbered as 47] and, therefore, denies the same.

50 [misnumbered as 48].    At all times relevant hereto, Defendant, Foresight

Energy, LLC, had the duty to maintain machinery and equipment in a safe operating

condition.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count III Paragraph 50 [misnumbered as 48] and, therefore, denies the same.

51 [misnumbered as 49].    At all times relevant hereto, Defendant, Foresight

Energy, LLC, had the duty to remove unsafe machinery and equipment from service.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the

15-L-8                                                                                          Page 14 of 35

Rules of Civil Procedure. To the extent that a response is deemed
necessary, Defendant is without sufficient information to either admit
or deny the allegations contained in Count III Paragraph 51
[misnumbered as 49] and, therefore, denies the same.

52 [misnumbered as 50].     At all times relevant hereto, Defendant, Foresight

Energy, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

**ANSWER:**     **The allegations in this paragraph are expressly directed to a party
other than this defendant and as such, no response is required by the
Rules of Civil Procedure. To the extent that a response is deemed
necessary, Defendant is without sufficient information to either admit
or deny the allegations contained in Count III Paragraph 52
[misnumbered as 50] and, therefore, denies the same.**

53 [misnumbered as 51].     Defendant, Foresight Energy, LLC, breached the

aforementioned duties in that it:

a.     Failed to provide Plaintiff with a reasonably safe place to work;

b.     Failed to maintain the roof bolter that injured Plaintiff in a safe operating
condition;

c.     Failed to remove the unsafe roof bolter that injured Plaintiff from service;
and

d.     Failed to exercise ordinary care for Plaintiff's safety.

**ANSWER:**     **The allegations in this paragraph are expressly directed to a party
other than this defendant and as such, no response is required by the
Rules of Civil Procedure. To the extent that a response is deemed
necessary, Defendant is without sufficient information to either admit
or deny the allegations contained in Count III Paragraph 53
[misnumbered as 51] and all subparts thereto, and, therefore, denies
the same.**

54 [misnumbered as 52].     As a direct and proximate result of Defendant,

Foresight Energy, LLC's, negligence, Plaintiff sustained and suffered serious, permanent

and progressive injuries to his body, physical pain and suffering, mental anguish and

suffering, permanent physical impairment, loss of wages and benefits, loss of earnings

capacity and benefits, loss of capacity to enjoy life and has become responsible for past

and future medical bills.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count III Paragraph 54 [misnumbered as 52] and, therefore, denies the same.**

## COUNT IV (FORESIGHT ENERGY SERVICES, LLC)

1 misnumbered 55, misnumbered as "27".   Plaintiff realleges and incorporates

herein by reference the allegations contained in paragraphs 1-27 of his Complaint as

though fully set forth herein.

**ANSWER:** **Defendant incorporates its answers to Paragraphs 1 through 27 and through 54 [misnumbered as 52] of Plaintiff's Complaint as though fully set forth herein.**

56 [misnumbered as 53].      Upon information and belief, Defendant, Foresight

Energy Services, LLC, was at all times relevant hereto, an "operator" and/or "controller"

of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state

and federal mining laws and regulations.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 56 [misnumbered as 53] and, therefore, denies the same.**

57 [misnumbered as 54].      At all times relevant hereto, Defendant, Foresight

Energy Services, LLC, either controlled the mining activities at Deer Run Mine in

Hillsboro, Illinois or retained the right to do so.

**ANSWER:** The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 57 [misnumbered as 54] and, therefore, denies the same.

58 [misnumbered as 55].    At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty of providing the Plaintiff a reasonably safe place to work.

**ANSWER:** The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 58 [misnumbered as 55] and, therefore, denies the same.

59 [misnumbered as 56].    At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty to maintain machinery and equipment in a safe operating condition.

**ANSWER:** The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 59 [misnumbered as 56] and, therefore, denies the same.

60 [misnumbered as 57].    At all times relevant hereto, Defendant, Foresight Energy Services, LLC, had the duty to remove unsafe machinery and equipment from service.

**ANSWER:** The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 60 [misnumbered as 56] and, therefore, denies the same.

15-L-8                                                                                              Page 17 of 35

61 [misnumbered as 58].      At all times relevant hereto, Defendant, Foresight

Energy Services, LLC, had a duty to exercise ordinary care for Plaintiff's safety.

**ANSWER:**      **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 61 [misnumbered as 58] and, therefore, denies the same.**

62 [misnumbered as 59].      Defendant, Foresight Energy Services, LLC,

breached the aforementioned duties in that it:

a.      Failed to provide Plaintiff with a reasonably safe place to work;

b.      Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

c.      Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

d.      Failed to exercise ordinary care for Plaintiff's safety.

**ANSWER:**      **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 62 [misnumbered as 59] and all subparts thereto, and, therefore, denies the same.**

63 [misnumbered as 60].      As a direct and proximate result of Defendant,

Foresight Energy Services, LLC's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count IV Paragraph 61 [misnumbered as 60] and, therefore, denies the same.**

## COUNT V [Mislabeled as IV] (FORESIGHT ENERGY LP)

1 misnumbered 64, misnumbered as "27". Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-27 of his Complaint as though fully set forth herein.

**ANSWER:** **Defendant incorporates its answers to Paragraphs 1 through 27 and through 63 [misnumbered as 60] of Plaintiff's Complaint as though fully set forth herein.**

65 [misnumbered as 61].       Upon information and belief, Defendant, Foresight Energy, LP, was at all times relevant hereto, an "operator" and/or "controller" of the aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and federal mining laws and regulations.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 65 [misnumbered as 61] and, therefore, denies the same.**

66 [misnumbered as 62].       At all times relevant hereto, Defendant, Foresight Energy LP, either controlled the mining activities at Deer Run Mine in Hillsboro, Illinois or retained the right to do so.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 66 [misnumbered as 62] and, therefore, denies the same.**

67 [misnumbered as 63].      At all times relevant hereto, Defendant, Foresight

Energy LP, had the duty of providing the Plaintiff a reasonably safe place to work.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 67 [misnumbered as 63] and, therefore, denies the same.**

68 [misnumbered as 64].      At all times relevant hereto, Defendant, Foresight

Energy LP, had the duty to maintain machinery and equipment in a safe operating

condition.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 68 [misnumbered as 64] and, therefore, denies the same.**

69 [misnumbered as 65].      At all times relevant hereto, Defendant, Foresight

Energy LP, had the duty to remove unsafe machinery and equipment from service.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 69 [misnumbered as 65] and, therefore, denies the same.**

70 [misnumbered as 66].      At all times relevant hereto, Defendant, Foresight

Energy LP, had a duty to exercise ordinary care for Plaintiff's safety.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 70 [misnumbered as 66] and, therefore, denies the same.**

71 [misnumbered as 67].     Defendant, Foresight Energy LP, breached the aforementioned duties in that it:

    a.    Failed to provide Plaintiff with a reasonably safe place to work;

    b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

    c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

    d.    Failed to exercise ordinary care for Plaintiff's safety.

**ANSWER:**    **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 71 [misnumbered as 67] and, therefore, denies the same.**

72 [misnumbered as 68].     As a direct and proximate result of Defendant, Foresight Energy LP's, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

**ANSWER:**    **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure.  To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count V [mislabeled as IV] Paragraph 72 [misnumbered as 68] and, therefore, denies the same.**

### COUNT VI [Mislabeled as V] (COAL FIELD TRANSPORTS, INC.)

1 misnumbered 73, misnumbered as "27".   Plaintiff realleges and incorporates

herein by reference the allegations contained in paragraphs 1-27 of his Complaint as

though fully set forth herein.

**ANSWER:    Defendant incorporates its answers to Paragraphs 1 through 27 and
through 72 [misnumbered as 68] of Plaintiff's Complaint as though
fully set forth herein.**

74 [misnumbered 69].        Upon information and belief, Defendant, Coal Field

Transports, Inc., was at all times relevant hereto, an "operator" and/or "controller" of the

aforementioned Deer Run Mine in Hillsboro, Illinois within the meaning of state and

federal mining laws and regulations.

**ANSWER:    The allegations in this paragraph are expressly directed to a party
other than this defendant and as such, no response is required by the
Rules of Civil Procedure.  To the extent that a response is deemed
necessary, Defendant is without sufficient information to either admit
or deny the allegations contained in Count VI [mislabeled as V]
Paragraph 74 [misnumbered as 69] and, therefore, denies the same.**

75 [misnumbered 70].        At all times relevant hereto, Defendant, Coal Field

Transports, Inc., either controlled the mining activities at Deer Run Mine in Hillsboro,

Illinois or retained the right to do so.

**ANSWER:    The allegations in this paragraph are expressly directed to a party
other than this defendant and as such, no response is required by the
Rules of Civil Procedure.  To the extent that a response is deemed
necessary, Defendant is without sufficient information to either admit
or deny the allegations contained in Count VI [mislabeled as V]
Paragraph 75 [misnumbered as 70] and, therefore, denies the same.**

76 [misnumbered 71].        Upon information and belief, at all times relevant

hereto, Defendant, Coal Field Transports, Inc., owned the roof bolter which caused

Plaintiff's injuries.

**ANSWER:    The allegations in this paragraph are expressly directed to a party
other than this defendant and as such, no response is required by the
Rules of Civil Procedure.  To the extent that a response is deemed
necessary, Defendant is without sufficient information to either admit**

or deny the allegations contained in Count VI [mislabeled as V] Paragraph 76 [misnumbered as 71] and, therefore, denies the same.

77 [misnumbered 72].        At all times relevant hereto, Defendant, Coal Field

Transports, Inc., had the duty of providing the Plaintiff a reasonably safe place to work.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count VI [mislabeled as V] Paragraph 77 [misnumbered as 72] and, therefore, denies the same.

78 [misnumbered 73].        At all times relevant hereto, Defendant, Coal Field

Transports, Inc., had the duty to maintain machinery and equipment in a safe operating

condition.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count VI [mislabeled as V] Paragraph 78 [misnumbered as 73] and, therefore, denies the same.

79 [misnumbered 74].        At all times relevant hereto, Defendant, Coal Field

Transports, Inc., had the duty to remove unsafe machinery and equipment from service.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count VI [mislabeled as V] Paragraph 79 [misnumbered as 74] and, therefore, denies the same.

80 [misnumbered 75].        At all times relevant hereto, Defendant, Coal Field

Transports, Inc., had a duty to exercise ordinary care for Plaintiff's safety.

ANSWER:    The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit

15-L-8                                                              Page 23 of 35

or deny the allegations contained in Count VI [mislabeled as V] Paragraph 80 [misnumbered as 75] and, therefore, denies the same.

81 [misnumbered 76].          Defendant, Coal Field Transports, Inc., breached the

aforementioned duties in that it:

    a.    Failed to provide Plaintiff with a reasonably safe place to work;

    b.    Failed to maintain the roof bolter that injured Plaintiff in a safe operating condition;

    c.    Failed to remove the unsafe roof bolter that injured Plaintiff from service; and

    d.    Failed to exercise ordinary care for Plaintiff's safety.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count VI [mislabeled as V] Paragraph 81 [misnumbered as 76] and all subparts thereto, and, therefore, denies the same.**

82 [misnumbered 77].          As a direct and proximate result of Defendant, Coal

Field Transports, Inc.'s, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earnings capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

**ANSWER:** **The allegations in this paragraph are expressly directed to a party other than this defendant and as such, no response is required by the Rules of Civil Procedure. To the extent that a response is deemed necessary, Defendant is without sufficient information to either admit or deny the allegations contained in Count VI [mislabeled as V] Paragraph 82 [misnumbered as 77] and, therefore, denies the same.**

## COUNT VII [Mislabeled VI] (J. H. FLETCHER & CO.-NEGLIGENCE)

1 misnumbered 83, misnumbered as 1-76.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-76 of his Complaint as though fully set forth herein.

**ANSWER:**    **Defendant incorporates its answers to Paragraphs 1      through      82 [misnumbered as 77] of Plaintiff's Complaint as though fully set forth herein.**

84 [misnumbered 78].         Defendant, J. H. Fletcher & Co., fabricated, designed, packaged, shipped, sold, serviced and/or distributed the roof bolter that caused Plaintiff's injuries.

**ANSWER:**    **Defendant's investigation into this allegation is ongoing. At this time, Defendant has not been able to confirm that the roof bolter at issue was fabricated, designed, packaged, shipped, sold, serviced and/or distributed by Defendant. Defendant is of information and belief, based upon information from the United States Department of Labor, Mine Safety & Health Administration that a roof bolting machine with a serial number 2010035 was reported to have been in operation at the time of plaintiff's accident. Any and all allegations that a roof bolting machine, as originally designed by this Defendant "caused Plaintiff's injuries" is denied. Otherwise at this time, Defendant is without sufficient information to either admit or deny the allegations contained in Count VII, Paragraph 84 [misnumbered 78] and, therefore, denies the same.**

85 [misnumbered 79].         Defendant, J. H. Fletcher & Co., owed to Plaintiff a duty to use reasonable care in the manufacturing, fabricating, designing, packaging, shipping, selling, servicing and/or distributing the roof bolter that injured Plaintiff.

**ANSWER:**    **Defendant's investigation into this allegation is ongoing. At this time, Defendant has not been able to confirm that the roof bolter at issue was fabricated, designed, packaged, shipped, sold, serviced and/or distributed by Defendant. Defendant is of information and belief, based upon information from the United States Department of Labor, Mine Safety & Health Administration that a roof bolting machine with a serial number 2010035 was reported to have been in operation at the time of plaintiff's accident. Any and all allegations that a roof bolting machine, as originally designed by this Defendant "caused**

**Plaintiff's injuries" is denied. Otherwise at this time, Defendant is without sufficient information to either admit or deny the allegations contained in Count VII, Paragraph 85 [misnumbered 79] and, therefore, denies the same.**

86 [misnumbered 80].          Defendant, J. H. Fletcher & Co., breached the aforementioned duty in that:

  a.   The roof bolter was designed and manufactured in a manner that allowed the drill steel to rotate at an excessive speed;

  b.   The roof bolter was serviced in a manner that allowed the drill steel to rotate at an excessive speed;

  c.   The roof bolter was designed and manufactured in a way that positioned the operator where he could be struck with a drill steel;

  d.   The roof bolter was designed and manufactured without a guard or other device to prevent the operator from being struck by a drill steel.

  e.   The roof bolter was designed and manufactured in a manner that would allow excessive drill feed pressures;

  f.   The roof bolter was served in a manner that allowed excessive drill feed pressures;

  g.   The roof bolter was designed and manufactured in a manner that would allow the joystick control to stick;

  h.   The roof bolter was serviced in a manner that allowed the joystick control to stick;

  i.   There were no adequate warnings affixed to the machine or provided to the operator which would warn of excessive drill speed;

  j.   There were no adequate warnings affixed to the machine or provided to

the operator which would warn of excessive drill feed pressures; and

k.    There were no adequate warnings affixed to the machine or provided to the operator which would warn of the joystick control sticking.

**ANSWER:    Defendant denies all allegations contained in Count VII, paragraph 86 [misnumbered 80], including all subparts thereto.**

87 [misnumbered 81].          That as a direct and proximate result of Defendant, J. H. Fletcher & Co.'s, negligence, Plaintiff sustained and suffered serious, permanent and progressive injuries to his body, physical pain and suffering, mental anguish and suffering, permanent physical impairment, loss of wages and benefits, loss of earning capacity and benefits, loss of capacity to enjoy life and has become responsible for past and future medical bills.

**ANSWER:    Defendant denies the allegations contained in Count VII, paragraph 87 [misnumbered 81].**

## COUNT VIII [Mislabeled VII] (J. H. FLETCHER & CO.-STRICT PRODUCT LIABILITY)

1 misnumbered 88, misnumbered as 1-81.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-87 of his Complaint as though fully set forth herein.

**ANSWER:    Defendant incorporates its answers to Paragraphs 1      through      87 [misnumbered as 81] of Plaintiff's Complaint as though fully set forth herein.**

89 [misnumbered 82].          At    the    time    the    product    was    designed, manufactured, distributed, supplied and/or put into the stream of commerce by Defendant, J. H. Fletcher & Co., it was in a defective condition and unreasonably dangerous    when    put    to    a            reasonably    anticipated    use    in    the

following respects:

   a.   The roof bolter was designed and manufactured in a manner that allowed
        the drill steel to rotate at an excessive speed;

   b.   The roof bolter was designed and manufactured in a way that positioned
        the operator where he could be struck with the drill steel;

   c.   The roof bolter was designed and manufactured without a guard or other
        device to prevent the operator from being struck by a drill steel;

   d.   The roof bolter was designed and manufactured in a manner that would
        allow excessive drill feed pressures;

   e.   The roof bolter was designed and manufactured in a manner that would
        allow the joystick control to stick;

   f.   There were no adequate warnings affixed to the machine or provided to
        the operator which would warn of excessive drill speed;

   g.   There were no adequate warnings affixed to the machine or provided to
        the operator which would warn of excessive drill feed pressures; and

   h.   There were no adequate warnings affixed to the machine or provided to
        the operator which would warn of the joystick control sticking.

**ANSWER:   Defendant denies the allegations contained in Count VIII, paragraph
89 [misnumbered 82].**

   90 [misnumbered 83].        As a direct and proximate result of the aforesaid
defective roof bolter, Plaintiff sustained and suffered serious, permanent and progressive
injury to his body, physical pain and suffering, mental anguish and suffering, permanent
physical impairment, loss of wages and benefits, loss of earning capacity and benefits,
loss of capacity to enjoy life and has become responsible for past and future medical bills.

15-L-8                                                    Page 28 of 35

**ANSWER:**   **Defendant denies the allegations contained in Count VIII, paragraph 90 [misnumbered 83].**

91.     Each allegation and averment in the *ad damnum* clause as to this Defendant is denied.

92.     Each and every allegation in the Complaint not expressly admitted to herein is denied.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose. See 735 ILCS 5/13-202, 205, 213; and/or 810 ILCS 5/2-725, and the statutes of limitation and/or repose of any other state's laws held applicable to Plaintiff's claims.

2.     Plaintiff's alleged loss, damage, injury, harm, expense, diminution, or deprivation alleged, if any, was caused in whole or in part by Plaintiff's failure to exercise reasonable care and diligence to mitigate Plaintiff's alleged damages.

3.     To the extent supported by the facts of the case, the affirmative defense of failure to join an indispensable party is preserved.

4.     Any and all damages alleged in the Complaint may have been caused by misuse of the product, failure to use the product properly, or negligent use of the product, and therefore the risk was assumed.  The affirmative defenses of misuse, knowing encounter of / with an open and obvious hazard and/or situation, negligent use, negligent assumption of the risk and assumption of the risk are noted and preserved.

5.     Plaintiff's product liability causes of action are barred because, at the time the product left the control of Defendant, there was no practical and technically feasible alternative design or formulation available that would have prevented Plaintiff's alleged

15-L-8                                                                                          Page 29 of 35

injuries and/or damages without substantially impairing the usefulness or intended purpose of the product.

6.       Some or all of Plaintiff's claims are barred by the doctrines concerning unavoidably unsafe products, including but not limited to, the operation of comments j and k to Section 402A of the Restatement (Second) of Torts and/or barred by the Restatement (Third) of Torts.

7.       Defendant's product, if any, was not defective in design or warning as of the date that it was placed into the stream of commerce and as such, the Complaint should be dismissed. Therefore plaintiff's claims are barred as to this defendant.

8.       Defendant at all times discharged any duty to warn through appropriate and adequate warnings and use instructions.

9.       The affirmative defense of lack of product identification is noted and preserved, to the extent supported by the facts of this case.

10.      There was no breach of any duty and as such, the Complaint should be dismissed as to this defendant. Any duty with respect to an original manufacturer and/or designer of equipment was discharged appropriately and within applicable standards and as such, plaintiff's claims are barred as to it.

11.      Defendant's conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries and/or damages alleged by Plaintiff.

12.      The damages allegedly sustained by Plaintiff, if any, were not legally caused by Defendant, but instead were legally caused by unforeseeable intervening and superseding causes or circumstances.

13.     Plaintiff's injuries, to the extent legally recognized injuries exist, were due to the conduct of third parties outside of the control of this defendant and, therefore, this defendant should be dismissed from this action as a matter of law.

14.     Defendant's acts were at all times done in good faith and without malice, with respect to each and every purported cause of action in the Complaint.

15.     The injuries or damages allegedly sustained by Plaintiff can be attributed to several causes, and accordingly should be apportioned among the various causes according to the respective contribution of each such cause to the harm sustained, if any. If any liability is found against Defendant, any such liability being expressly denied, then said liability will constitute less than 25% of the total liability assigned to all persons liable, and as such, the liability of Defendant to Plaintiff for non-economic loss shall be limited, and shall not exceed Defendant's equitable share.

16.     Any verdict or judgment rendered against Defendant must be reduced by those amounts that have been paid to, or will, with reasonable certainty, replace or indemnify Plaintiff, in whole or in part, for any past or future claimed economic loss, from any collateral source, such as insurance, social security, workers' compensation or employee benefit programs.

17.     Defendant is entitled to the benefit of all defenses and presumptions contained in, or arising from, any rule of law or statute of any other state whose substantive law might control the action.

18.     Defendant further pleads that to the extent any award of prejudgment interest is sought on future damages, such an award violates the due process clause of the United States Constitution, the corresponding portion of the Illinois Constitution, and/or

the applicable provisions of the Constitution of any other State or Commonwealth of the United States whose laws might be deemed controlling in this action.

19.     The injuries, damages and losses alleged in the Complaint, none being admitted, were caused in whole or in part by the negligence of the Plaintiff and/or others, over whom Defendant exercised no control, had no opportunity to anticipate or right to control, and with whom Defendant had no legal relationship by which liability could be attributed to it because of the actions of the Plaintiff and/or others.

20.     Any injuries or damage allegedly sustained by Plaintiff were the direct and proximate result of Plaintiff's own contributory fault and/or negligence wherein Plaintiff's fault and/or negligence is more than 50%. As a result, Defendant is entitled to be dismissed with its costs pursuant to 735 ILCS 5/2-1116. Alternatively, if the trier of fact finds that the contributory fault on the part of Plaintiff is not more than 50% of the proximate cause of his alleged injuries, any damages allowed should be diminished in the proportion to the amount of fault attributable to Plaintiff pursuant to Section 2-1116.

21.     In the unlikely event that Defendant is found liable to the Plaintiff, Defendant is entitled to a credit or offset for any and all sums that the Plaintiff have received or may hereafter receive by way of any and all settlements arising from Plaintiff's claims and causes of action. Defendant alternatively asserts its right to a proportionate reduction of any damages based on comparative fault or the percentage of negligence attributable to Plaintiff or to any settling tortfeasor under Illinois law and/or the laws of any other State or Commonwealth of the United States whose laws may be deemed controlling in this case.

22.     Plaintiff's claims for damages against Defendant are speculative, remote, conjectural and without basis in law or fact.

23.     Plaintiff's claims are barred because the product may have been and/or was substantially modified and/or altered after it left Defendant's possession and control and, therefore the Complaint should be dismissed as to it.

24.     To the extent supported by the facts, Defendant asserts the failure of plaintiff or third parties to observe routine care and maintenance of the subject roof bolter, and so Defendant cannot be held liable and must be dismissed as a matter of law.

25.     To the extent supported by the facts, Defendant assert that plaintiff and/or a third party performed unauthorized alteration(s) and/or unauthorized modification(s) to the subject roof bolter and that such alteration(s) or modification(s) was a substantial cause of the occurrence that caused plaintiff's injury, and so Defendant cannot be held liable and must be dismissed as a matter of law.

26.     Defendant asserts that the subject roof bolter was reasonably safe for its intended use.

27.     The design and manufacture of the subject roof bolter complied with applicable federal and state statutes and regulations as of the date it was placed into the stream of commerce by this Defendant, if at all.

28.     Plaintiff's claims are barred, in whole or in part, by Section 402A of the Restatement (Second) of Torts because the subject roof bolter was not unreasonably dangerous and at the time of plaintiff's accident was substantially changed from the condition in which it was placed into the stream of commerce.

29.     The affirmative defenses of absence of reasonably available alternative design, feasibility, and/or lack of feasibility at the time the machine entered the stream of commerce are asserted.

30.     At all relevant times, Fletcher met the standards of a reasonably prudent designer, manufacturer and distributor of its product.

31.     To the extent supported by the facts of this case, Defendant assert that plaintiff's injuries, if any, were the result of pre-existing medical condition(s), anatomic anomaly(ies), or underlying medical condition(s).

32.     Defendant asserts that it did not borrow the services of any non-Fletcher employee and so is not liable for the unauthorized acts or omissions of any unrelated third party.

33.     Each and every affirmative defense envisioned by Rules 8 and 12 of the Illinois Rules of Civil Procedure is noted and preserved.

34.     Each and every affirmative defense recognized in common law and by statute or constitution is noted and preserved.

35.     Defendant hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves the right to amend this list to assert such defenses.

**WHEREFORE,** Defendant, J. H. Fletcher & Co., having fully answered Plaintiff's Complaint prays for Plaintiff's Complaint to be dismissed with prejudice, costs of suit, and any further relief this Court deems just and appropriate under the circumstances.

**DEFENDANT DEMANDS TRIAL BY JURY**

15-L-8                                                                                    Page 34 of 35

HEPLERBROOM LLC

By: _____

     Theodore J. MacDonald, Jr. #03125246
       e-mail: tjm@heplerbroom.com
     David J. Deterding    #06296219
       e-mail: dd3@heplerbroom.com
     One Metropolitan Square
     211 North Broadway, Suite 2700
     St. Louis, Missouri 63102
     314-241-6160 telephone
     618-656-0184 telephone
     314-241-6116 facsimile
ATTORNEYS FOR DEFENDANT
J. H. FLETCHER & CO.

## PROOF OF SERVICE

     The undersigned certifies that a complete copy of this instrument was served upon:

- Thomas J. Lech, Esq. Goldenberg Heller Antognoli & Rowland, P.C., 2227 South State Route 157, P.O. Box 959, Edwardsville, IL 62025; ATTORNEYS FOR PLAINTIFF

by first class mail, postage prepaid, and by depositing in a U.S. Post Office mail box, this 15th day of June, 2015.

15-L-8                                                           Page 35 of 35