## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE | ) | IN PROCEEDINGS UNDER |
| | ) | CHAPTER 11 |
| FORESIGHT ENERGY LP, et al | ) | |
| | ) | CASE NO. 20-41308 |
| | ) | |
| Debtor(s). | ) | Jointly Administered |

### MOTION OF TERRA PAYNE, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF WILLIAM DANIEL HANS PAYNE, DECEASED FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased ("Movant"), by and through her attorneys, and moves this Honorable Court for the entry of an Order lifting or modifying the automatic stay imposed by 11 U.S.C. § 362(a) (the "Automatic Stay") pursuant to 11 U.S.C. § 362(d)(1), FED. R. BANKR. P. 4001, and LOCAL BANKR. R. L.R. 4001-1. In support thereof, Movant respectfully states as follows:

### SUMMARY OF GROUNDS FOR REQUESTED RELIEF

1.   On or about March 10, 2020 (the "Petition Date"), Debtors Sugar Camp Energy LLC, Viking Mining LLC, Coal Field Construction Company LLC and M-Class Mining LLC together with their related Debtor affiliates, filed Voluntary Petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"). Debtors' cases have been jointly administered for procedural purposes under Case No. 20-41308.

2.   On February 17, 2016, Movant filed her Complaint (the "Complaint") in a certain state court cause of action for personal injury against, among other defendants, Sugar Camp

Energy LLC, Viking Mining LLC, and Coal Field Construction Company LLC (collectively "Defendant-Debtors"), in the Circuit Court, Second Judicial Circuit, Franklin County, Illinois (the "State Court"), in the case styled *Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, Plaintiff vs. J.H. Fletcher & Co, et. al Defendants*, bearing Case No. 16-L-11 (the "Civil Suit"). In addition, J.H. Fletcher & Co., Natural Resources Partners LP, and MC#1 Mine were named defendants in the Civil Suit. A true and accurate copy of the Complaint in the Civil Suit has been attached hereto as Exhibit A and is incorporated herein by this reference.

3.       The Civil Suit stems from an event occurring on order of the Franklin County May 2, 2013 wherein Daniel Payne, while walking beside a roof-bolting machine acting as a spotter for its driver at the MC#1 Mine and Viking Mine in Franklin County, Illinois, was crushed to death. Movant was appointed as Special Administrator of the Estate of William Daniel Hans Payne on January 12, 2015 by order of the Franklin County Probate Court

4.        The Civil Suit is pending jury trial.

5.       Civil Suit defendant J.H. Fletcher & Co. has filed a Third-Party Complaint against Debtor M-Class Mining, LLC ("M-Class" or "Debtor M-Class"), which is also pending jury trial. A true and accurate copy of the Third-Party Complaint in the Civil Suit has been attached hereto as Exhibit B and is incorporated by this reference.

6.       The filing of Debtors' Voluntary Petitions under Chapter 11 of the Bankruptcy Code effectively stayed prosecution of Movant's cause of action in the Civil Suit.

*7.*       Prior to the Petition Date, Defendant-Debtors' insurance counsel had filed an answer to Movant's Complaint in the Civil Suit and the parties have conducted discovery.

8.       Upon information and belief, Defendant-Debtors are covered by a general liability insurance policy and/or policies, providing coverage for defense and liability expenses. It is further

2

believed that Debtors' insurance coverage from this insurance policy and/or policies amounted to aggregate limits of $50,000,000.00 and significant portions if not all self-insured retention has been paid.

9.      Movant requests that the automatic stay be lifted, or otherwise modified, to allow Movant to pursue her cause of action in the Civil Suit, only to the extent that recovery of any judgment against the Defendant Debtors shall be limited solely to the limits of liability provided for by Defendant-Debtors' applicable insurance policy or policies. Movant also requests that the automatic stay be lifted, or otherwise modified, to allow Civil Suit defendant and third party plaintiff, J.H. Fletcher & Co., to reduce its claim, if any, to judgment against Debtor M-Class in the Civil Suit.

10.     Other than against insurance proceeds, the Movant will not seek the enforcement of any judgment against the Defendant-Debtors, or any other Debtor, without further order of this Court.

11.     To be clear, if the automatic stay is lifted or modified to allow Movant to proceed with the Civil Suit, then Movant's Claim[1] relating to judgment in the Civil Suit, if any,  against Defendant-Debtors, or any other Debtor, shall be limited to recovery under Defendant-Debtors' or any other Debtors', applicable insurance policy and/or policies. However, to the extent that Defendant-Debtors, or any other Debtor, is/are self-insured and/or to the extent that any recovery in the Civil Suit is in excess of the insurance policy and/or policies limits, said self-insured liability and/or excess recovery shall be filed as an amended Claim against the Defendant-Debtors' and/or any other Debtors' bankruptcy estate(s) ("Bankruptcy Estate").

---

[1] On April 15, 2020, Movant filed a Proof of Claim as to each of the Defendant-Debtorss.

12.     Section 362(d) of the Bankruptcy Code requires relief from the automatic stay, "by terminating, annulling, modifying or conditioning such stay . . . for cause." *See* 11 U.S.C. § 362(d)(1).

13.     Good cause exists to allow Movant to proceed with her Civil Suit against the Defendant-Debtors, Sugar Camp Energy LLC, Viking Mining LLC, and Coal Field Construction Company LLC and to allow Movant to establish her rights, if any, to the proceeds of any insurance policy or policies.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b).  The statutory predicates for the relief sought are sections 105(a) and 362 of the Bankruptcy Code.

## ARGUMENT

15.     Upon information and belief, Defendant-Debtors, as well as Debtor M-Class, are covered by a liability insurance policy and/or policies, providing coverage for defense and liability expenses related to the Civil Suit.

16.     It is assumed that the Defendant-Debtors, as well as Debtor M-Class, carry insurance with limits that would satisfy any potential judgment against them in the Civil Suit, either in full or in part.

17.     Section 362(d)(1) of the Bankruptcy Code authorizes this Court to grant relief from the automatic stay "[o]n request of a party in interest . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

18.    "Congress did not define cause; however, it contemplated relief from the automatic stay to allow litigation involving the debtor to proceed in another forum under appropriate circumstances." *In re Wintroub*, 283 B.R. 743, 745 (8th Cir. BAP 2002).

19.    In determining whether cause exists, a court "must balance the potential prejudice to the debtor, the bankruptcy estate and the other creditors associated with the proceeding in another forum against the hardship to the movant if it is not allowed to proceed in the other forum . . . The relevant factors which the court must consider include judicial economy, trial readiness, the resolution of primary bankruptcy issues, the movant's chance of success on the merits, the costs of defense or other potential burdens to the estate, and the impact of the litigation on other creditors" *Id*. (the "*Wintroub* Factors")

20.    The courts in the Second Circuit, when in considering whether to lift or modify the automatic stay to permit jury trial litigation in another forum when insurance is present are guided by the factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990) (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286.

21.     While the *Sonnax* Factors are more extensive, they include the *Wintroub* Factors considered by the Eighth Circuit.  Further, the *Sonnax* opinion has been cited with approval in the Eighth Circuit as additional authority.  *See In re Blan*, 237 B.R. 737, 739-40 (8th Cir. BAP 1999).

22.     Not all of the factors are relevant in every case. *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002); *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999). The Court need not assign equal weight to each factor. *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009); *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

23.     The movant bears the initial burden of making a *prima facie* showing of "cause" for relief from the stay, but the ultimate burden of persuasion rests with the debtor to show an absence of "cause." *See Mazzeo*, 167 F.3d at 142; *Sonnax*, 907 F.2d at 1285; *cf.* 11 U.S.C. § 362(g)(2) (party opposing stay relief has burden of proof on all issues other than debtor's equity in subject property).

24.     In the instant proceeding, the relevant *Sonnax* Factors include: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; . . . (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; . . . (7) whether litigation in another forum would prejudice the interests of other creditors; . . . (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *Id*. At 1286.

25.     The first *Sonnax* Factor is whether relief would result in a partial or complete resolution of the issues. Relief here would result in a partial, if not complete, resolution of the Movant's claim in that a jury in the personal injury matter would determine the extent of Movant's damages, with the claim being satisfied either in whole or in part by insurance proceeds.

26.     The second *Sonnax* Factor is lack of any connection with or interference with the bankruptcy case. While the Movant's claim has a connection to the bankruptcy case as a result of the claim being liquidated in the event of judgment, the state court proceeding will certainly not interfere with the administration of the bankruptcy case.

27.     The fourth *Sonnax* Factor, (whether a specialized tribunal with the necessary expertise has been established to hear the cause of action); the fifth *Sonnax* Factor, (whether the debtor's insurer has assumed full responsibility for defending it); the tenth *Sonnax* Factor, (the interest of judicial economy and the expeditious and economical resolution of litigation); and the eleventh *Sonnax* Factor, (whether the parties are ready for trial in the other proceeding, all weigh heavily in favor of permitting the Civil Suit litigation to proceed). Specifically, this jury trial case has been before the State Court since 2016; the defense has been assumed by Defendant-Debtors' and Debtor M-Class's insurers; much of the discovery has been completed; and the case is ready for mediation/or jury trial after completion of discovery. The State Court is the most efficient and appropriate place for the matter to be brought to conclusion.

28.     The seventh *Sonnax* Factor is whether litigation in another forum would prejudice the interests of other creditors. This factor, likewise, weighs in favor of granting the reasonable relief requested. As highlighted above, any risk to creditors can be addressed by conditioning recovery in the Civil Suit to insurance proceeds, with a resulting amended claim being limited to the amount of the judgment not satisfied by the insurance coverage.

29.     Similarly, the twelfth *Sonnax* Factor, the impact of the stay on the parties and the balance of harms, favors the automatic stay being lifted or otherwise modified. The Civil Suit has been pending for more than four years and Movant would likely encounter significant hardship should the automatic stay remain in place with respect to prosecution of her Civil Suit.  As noted by the court in *In re Todd Shipyard*s, 92 B.R. 600, 603 (Bankr. D.N.J. 1988), "courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside, even where pre-petition causes of action are involved."  Should the stay remain in place, Movant likely will have to wait an inordinately long time to prosecute the claim, which arose in 2014.  This wait may effectively deny Movant an opportunity to litigate given the risk of aging evidence, loss of witnesses and crowded court dockets.  *See In re Brock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984).

30.     In the case at bar, Movant submits that there is sufficient cause for the Court to lift or otherwise modify the automatic stay so that Movant may proceed to prosecute her Civil Suit in the State Court.  The balancing factors demonstrate that Defendant-Debtors and the Bankruptcy Estate would encounter little prejudice, if any, should the stay be lifted or otherwise modified on the condition that Movant's recovery against Defendant-Debtors', or any other Debtor would be first limited to the Defendant-Debtors' applicable insurance policies before filing an amended claim in the Debtors' Bankruptcy Estate to the extent that any judgment exceeds Defendant-Debtors', or any other Debtor's, applicable insurance coverage.

31.     Based on the foregoing, Movant submits that cause exists to lift or modify the automatic stay.

WHEREFORE, the premises considered, Movant Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased prays this Court enter an Order granting relief as follows:

a.    Granting Movant relief from the automatic stay provisions of 11 U.S.C. § 362(a) to prosecute any claims that she may have against Defendant-Debtors in the Civil Suit;

b.    Lifting or modifying the stay to allow the Civil Suit third-party plaintiff, J.H. Fletcher & Co., to reduce its claim, if any, to judgment against Debtor M-Class Mining, LLC in the Civil Suit;

c.    Authorizing the State Court to conduct such hearings or other proceedings as may be necessary in the Civil Suit;

d.    Limiting Movant's Claim against Debtors and the Bankruptcy Estate to the recovery, if any, under Defendant-Debtors' applicable insurance policies, with any additional recovery not covered by insurance proceeds to be filed as an amended Claim by Movant against the Bankruptcy Estate; and

e.    For such other and further relief as this Court deems just and proper.

Dated:  April 17, 2020

Respectfully submitted,

GOLDENBERG HELLER & ANTOGNOLI, P.C.

By: */s/ Joel A. Kunin*, Esq.
      Joel A. Kunin
      2227 South State Route 157
      Edwardsville, IL 62025
      Telephone: 618.656.5150
      Facsimile: 618.656.6230
      Email: jkunin@ghalaw.com
      *Attorneys for Movant  Terra Payne, as Special*
      *Administrator of the Estate of William Daniel*
      *Hans Payne, Deceased*

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing was served electronically this 17th day of April, 2020, via CM/ECF to all persons receiving notice through that system.  The undersigned further certifies that a true and correct copy of the foregoing was served this 17th day of April, 2020, on all parties on the Debtors' most recent Master Notice list dated April 7, 2020 (a) by email, where email addresses are provided and (b) by the United States Postal Service, postage fully prepaid, in the event the most recent Master Notice List does not include an email address.

**<u>/s/ Megan Biggs</u>**

In the Circuit Court for the Second Judicial Circuit

Franklin County, Illinois

FILED

FEB 17 2016

Nancy Hobbs
FRANKLIN COUNTY
CIRCUIT CLERK

Terra Payne, as Special Administrator of the )
Estate of William Daniel Hans Payne, Deceased, )
)
Plaintiff,                    )
)
v.                            )
)
J.H. Fletcher & Co.;          )
Sugar Camp Energy LLC;        )
Natural Resources Partners LP; )
Viking Mining LLC;            )
Coal Field Construction Company LLC; )
MC#1 Mine;                    )
)
Defendants,                   )
)
and                           )
)
M-Class Mining LLC;           )
)
Respondent-in-Discovery.      )

No. 16 . L . 11

## COMPLAINT

### COUNT I

*[Strict product liability Wrongful Death action against Defendant J.H. Fletcher & Co.]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William
Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and,
pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against
the Defendant, J.H. Fletcher & Co., says:

1)   Terra Payne has been appointed as Special Administrator of the Estate of William
Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the
Franklin County Circuit Court in Case No. 15-P-01.

EXHIBIT A

2) At times relevant, J.H. Fletcher & Co. was a legal entity doing business in the manufacture of mining equipment for use in the mining industry, including the manufacture of this J.H. Fletcher & Co. double-boom roof-bolting machine, Model DDR-17-A, Serial Number 2008014.

3) This roof-bolting machine was purchased by Sugar Camp Energy LLC.

4) At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

5) At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

6) At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

7) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

8) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting this roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

9) This roof-bolting machine was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

10) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

11) At about 2:15 p.m., this machine had traversed to near the Viking Portal,

2

12)   Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

13)   The driver's field of view was limited by the configuration of the machine.

14)   As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

15)   This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

16)   This crushing action caused the death of Daniel Payne.

17)   At the time Daniel Payne was crushed by the front of this roof-bolting machine, one or more of the following unreasonably dangerous conditions existed in this product, which was a proximate cause in the death of Daniel Payne:

a)   the general design of the product restricted the field of view of the driver of the machine, and no cameras of visual devices were present on the machine which would allow the operator to detect the presence of an object, including a person, in one of the blind spots created by the machine design and configuration, located in proximity to the direction the machine was moving.

b)   the general design of the product restricted the field of view of the driver of the machine, and no audio detection devices were present on the machine which would alert the operator to detect the presence of an object, including a person, in one of the blind spots created by the machine design and configuration, located in proximity to the direction the machine was moving.

c)   included a propulsion system which, when a "split/combine" valve was placed in the "combine" position, made the steering sensitive and erratic and made the tramming of the machine difficult to control when both motors were in operation.

18)   These dangerous conditions existed in the product at the time it left the control of the manufacturer.

19)   This roof-bolting machine was being moved in the mines in the manner reasonably to be expected in light of its nature and intended function.

3

20) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

21) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

22) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

23) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

24) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

25) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

26) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for

4

judgment against Defendant J.H. Fletcher & Co. in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

Attorneys for the Plaintiff

COUNT II

*[Wrongful Death action against Defendant Sugar Camp Energy LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Sugar Camp Energy LLC, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

5

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12) At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

6

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18)  On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19)  This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20)  At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)  At about 2:15 p.m., this machine had traversed to near the Viking Portal,

7

22)  Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)  The driver's field of view was limited by the configuration of the machine.

24)  As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25)  This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)  This crushing action caused the death of Daniel Payne.

27)  One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)  failed to maintain the roof-bolting machine in a safe working condition;

b)  failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c)  failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d)  tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e)  failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f)  failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g)  failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

8

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

9

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Sugar Camp Energy LLC in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT III

*[Wrongful Death action against Defendant Natural Resources Partners LP]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Natural Resources Partners LP, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

10

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11

12) At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13) At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14) At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15) At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16) At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19) This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

12

20)  At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)  At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22)  Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)  The driver's field of view was limited by the configuration of the machine.

24)  As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25)  This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)  This crushing action caused the death of Daniel Payne.

27)  One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)  failed to maintain the roof-bolting machine in a safe working condition;

b)  failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c)  failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d)  tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e)  failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

14

34) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Natural Resources Partners LP in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT IV
*[Wrongful Death action against Defendant Viking Mining LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Viking Mining LLC, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

15

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10)  At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11)  At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12)  At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

17

18)  On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19)  This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20)  At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)  At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22)  Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)  The driver's field of view was limited by the configuration of the machine.

24)  As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25)  This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)  This crushing action caused the death of Daniel Payne.

27)  One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)  failed to maintain the roof-bolting machine in a safe working condition;

b)  failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c) failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d) tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e) failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33)  Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34)  As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a)  loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b)  loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c)  property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Viking Mining LLC in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT V
*[Wrongful Death action against Defendant Coal Field Construction Company LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Coal Field Construction Company LLC, says:

20

1)  Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2)  At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3)  At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4)  At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5)  At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6)  At times relevant, Coal Field Construction Company LLC (or, in the alternative, Coal Field Construction LLC) was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7)  At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8)  At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9)  At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10)  At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11)  At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12)  At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19) This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21) At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22) Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23) The driver's field of view was limited by the configuration of the machine.

24) As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25) This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26) This crushing action caused the death of Daniel Payne.

27) One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)  failed to maintain the roof-bolting machine in a safe working condition;

23

b) failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c) failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d) tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e) failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Coal Field Construction Company LLC in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT VI
*[Wrongful Death action against Defendant MC#1 Mine]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and,

25

pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, MC#1 Mine, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

26

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12) At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13) At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14) At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15) At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

27

16) At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19) This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21) At about 2:15 p.m., this machine had traversed to near the Viking Portal.

22) Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23) The driver's field of view was limited by the configuration of the machine.

24) As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25) This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26) This crushing action caused the death of Daniel Payne.

28

27)  One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)  failed to maintain the roof-bolting machine in a safe working condition;

b)  failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c)  failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d)  tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e)  failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f)  failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g)  failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h)  failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i)  through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28)  At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29)  On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

29

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant MC#1 Mine in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

30

COUNT VI

*[Respondent-in-Discovery Action against M-Class Mining LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to 735 ILCS 5/2-402, for her Complaint for Discovery against the Respondent, M-Class Mining LLC, says:

1)  Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2)  At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3)  At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4)  At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5)  At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6)  At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

31

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12) At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13) At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14) At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18)  On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19)  This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20)  At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)  At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22)  Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)  The driver's field of view was limited by the configuration of the machine.

24)  As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

33

25)  This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)  This crushing action caused the death of Daniel Payne.

27)  One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of one or more of the defendants was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)  failed to maintain the roof-bolting machine in a safe working condition;

b)  failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c)  failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d)  tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e)  failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f)  failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g)  failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h)  failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i)  through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28)  At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

34

29)   On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30)   At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31)   That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32)   Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33)   Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34)   As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

   a)   loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

   b)   loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

   c)   property damages, in the form of funeral bills and burial expenses.

35)   Based upon payment history, the widow is informed that the employer of Daniel Payne appears to be M-Class Mining LLC, and, if so, then Illinois law [820 ILCS 305/5(a)]

would not permit a direct civil action against the deceased's employer, except in defined circumstance.

36) However, M-Class Mining LLC is believed to be in a position where its personnel should have information essential to the determination of which entities properly may be named as defendants in a civil action, including but not limited to knowledge of the business and contractual relationships and authority and duties of the various coal mining entity defendants who may have had a part in the maintenance and repair of this roof-bolting machine, of the operation of the coal mine where this accident occurred, and of the training of the miners involved in this accident, and therefore M-Class Mining LLC would be a proper respondent-in-discovery.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to 735 ILCS 5/2-402 designates M-Class Mining LLC as a Respondent-in-Discovery, to provide responses to discovery initiated by the Plaintiff, including by deposition.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

PLAINTIFF DEMANDS A TRIAL BY JURY.

*Affidavit*

*The undersigned upon his oath swears that he is an attorney for Plaintiff, and that he has investigated this claim, and that he has the authority to execute this affidavit on behalf of the Plaintiff, and that it is his good faith belief that the damages in this cause could exceed the $50,000 statutory amount described in Illinois Supreme Court Rule 222(b).*

_____

"OFFICIAL SEAL"
WENDY L GREER
Notary Public, State of Illinois
My Commission Expires: 09/04/2019

Signed and sworn to before me this

_16th_ day of February, 2016.

_____
Notary Public

36

HOWERTON, DORRIS, STONE & LAMBERT
300 West Main Street
Marion, IL  62959

Phone:  (618) 993-2616
Fax:  (618) 997-1845
Email:  ddorris@hdslawfirm.com

*Attorneys for Plaintiff*

IN THE CIRCUIT COURT OF FRANKLIN COUNTY
SECOND JUDICIAL CIRCUIT
STATE OF ILLINOIS

TERRA PAYNE, as Special Administrator )
of the Estate of William Daniel Hans )
Payne, Deceased, )
                                     )
            Plaintiff, )
                                     )
vs.                                  )      Cause No.: 16-L-11
                                     )
J.H. FLETCHER & CO.; SUGAR CAMP )
ENERGY LLC; NATURAL RESOURCES )
PARTNERS LP; VIKING MINING LLC; )
COAL FIELD CONSTRUCTION )
COMPANY LLC; and MC#1 MINE, )
                                     )      Third Party Defendant Demands
            Defendants. )      Jury of Twelve

## DEFENDANT J.H. FLETCHER & CO.'S THIRD PARTY COMPLAINT AGAINST M-CLASS MINING LLC

COMES NOW, Defendant, J.H. Fletcher & Co., by and through its undersigned

attorneys, and for its Third Party Complaint against M-Class Mining LLC, states as follows:

1.      On February 17, 2016, Plaintiff filed her Complaint for strict product liability

wrongful death against, J.H. Fletcher & Co. (as well as other defendants).

2.      Plaintiff alleges that J.H. Fletcher & Co. manufactured a roof bolter that was

unreasonably dangerous, and the unreasonably dangerous condition of the roof bolter was the

proximate cause of Plaintiff's injuries. *See Plaintiff's Complaint attached as Exhibit A.*

3.      J.H. Fletcher & Co. has denied liability to Plaintiff and has filed various affirmative

defenses to Plaintiff's claims. *See J.H. Fletcher & Co.'s Answer and Affirmative Defenses*

*attached as Exhibit B.*

4.      At all relevant times, M-Class Mining LLC was a legal entity conducting coal

mining business in the State of Illinois, including in Franklin County, Illinois.

1
EXHIBIT B

5.      At all relevant times, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC #1 and as Viking Mine.

6.      At all relevant times, M-Class Mining LLC contracted with Sugar Camp Energy, LLC (the owner of a J.H. Fletcher roof bolting machine) to mine coal at the mining complex in Franklin County, Illinois.

7.      At all relevant times, M-Class Mining LLC was the employer of decedent Williams Daniel Hans Payne.

8.      In her Complaint, Plaintiff claims that her husband (Williams Daniel Hans Payne) was killed on May 14, 2014 due to the negligent design of the subject roof bolting machine and/or the negligence of the owners and operators of the mine, a group of entities that would include M-Class Mining LLC.

9.      At the time and place alleged in Plaintiff's Complaint, M-Class Mining LLC, by and through its employees, agents, servants, and/or subcontractors, was under a duty to exercise reasonable care to ensure that its employees could perform work in a reasonably safe manner and/or that any location at which it supplied employees was a safe working place for said employee.

10.     In the event that J.H. Fletcher & Co. is found liable to Plaintiff, which J.H. Fletcher & Co. denies, it pleads that on or before May 14, 2014, M-Class Mining LLC, by and through its employees, agents, representatives, and/or subcontractors, was negligent in one or more ways including, but not necessarily limited to:

      a.    Failed to maintain the roof-bolting machine in a
             safe working condition;

b.   Failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c.   Failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d.   Tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e.   Failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f.   Failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g.   Failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h.   Failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i.   Through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

3

11.     The foregoing negligent acts and/or omissions on the part of M-Class Mining LLC were a direct and proximate cause of any damages and injuries alleged to have been suffered by Plaintiff.

12.     In the event that J.H. Fletcher & Co. is found liable to Plaintiff, which J.H. Fletcher & Co. denies, then J.H. Fletcher & Co. is entitled to receive contribution from M-Class Mining LLC, pursuant to the Joint Tortfeasors Contribution Act (735 ILCS 100/1 et seq.), based upon the percentage to which M-Class Mining LLC's fault caused Plaintiff's damages and injuries.

**WHEREFORE**, Defendant J.H. Fletcher & Co. prays that judgment be entered in its favor and against M-Class Mining LLC as follows:

A) For Contribution for any sums which J.H. Fletcher & Co. is required to pay, if at all, over and above that sum equal to the percentage of fault for which it is found liable to Plaintiff, if any;

B) For a judgment of apportionment, apportioning fault, if any, between all defendants;

C) For an award of costs incurred herein; and

D) For such other relief as the Court deems just and proper under the circumstances.

HEPLERBROOM LLC

By: _____

Theodore J. MacDonald, Jr.   #03125246
David J. Deterding           #06296219
One Metropolitan Square
211 North Broadway, Suite 2700
St. Louis, Missouri 63102
314-241-6160 telephone
314-241-6116 facsimile
     -and-

4

FARRELL, WHITE & LEGG PLLC
Michael J. Farrell        ARDC#6320055
Tamela J. White          ARDC#6320058
914 Fifth Avenue
Huntington, WV 25701
304-522-9100 telephone
304-522-6162 facsimile
ATTORNEYS FOR DEFENDANT
J. H. FLETCHER & CO.

## PROOF OF SERVICE

The undersigned certifies that a complete copy of this instrument was served upon:

ATTORNEYS FOR PLAINTIFF
Douglas Dorris
Howerton, Dorris, Stone & Lambert
300 W. Main St.
Marion, IL 62959

DEFENDANT NATURAL RESOURCE
PARTNERS LP
Paul Petrusak
Law Office of Craig A. Hansen
701 Market St. #200
St. Louis, MO 63101

DEFENDANTS COAL FIELD CONSTRUCTION
COMPANY LLC, MC#1 MINE, SUGAR
CAMP ENERGY LLC, VIKING MINING LLC
John Sandberg
Sandberg Phoenix & von Gontard PC
600 Washington Ave 15th Floor
St. Louis, MO 63101

DEFENDANTS M CLASS MINING LLC
John Flodstrom
Heyl Royster
102 E. Main St. #300
P.O. Box 129
Urbana, IL 61803

by first class mail, postage prepaid, and by depositing in a U.S. Post Office mail box on January 9, 2017.

_Penny Meyer_

In the Circuit Court for the Second Judicial Circuit

Franklin County, Illinois

FILED

FEB 17 2016

Nancy ~~~~
FRANKLIN COUNTY
CIRCUIT CLERK

Terra Payne, as Special Administrator of the )
Estate of William Daniel Hans Payne, Deceased, )
)
    Plaintiff, )
)
v. )    No. 16 - L - 11
)
J.H. Fletcher & Co.; )
Sugar Camp Energy LLC; )
Natural Resources Partners LP; )
Viking Mining LLC; )
Coal Field Construction Company LLC; )
MC#1 Mine; )
)
    Defendants, )
)
and )
)
M-Class Mining LLC; )
)
    Respondent-in-Discovery. )

## COMPLAINT

### COUNT I
*[Strict product liability Wrongful Death action against Defendant J.H. Fletcher & Co.]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, J.H. Fletcher & Co., says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

RECEIVED FEB 26 2016

**EXHIBIT**

**A**

2) At times relevant, J.H. Fletcher & Co. was a legal entity doing business in the manufacture of mining equipment for use in the mining industry, including the manufacture of this J.H. Fletcher & Co. double-boom roof-bolting machine, Model DDR-17-A, Serial Number 2008014.

3) This roof-bolting machine was purchased by Sugar Camp Energy LLC.

4) At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

5) At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

6) At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

7) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

8) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting this roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

9) This roof-bolting machine was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

10) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

11) At about 2:15 p.m., this machine had traversed to near the Viking Portal,

2

12)   Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

13)   The driver's field of view was limited by the configuration of the machine.

14)   As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

15)   This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

16)   This crushing action caused the death of Daniel Payne.

17)   At the time Daniel Payne was crushed by the front of this roof-bolting machine, one or more of the following unreasonably dangerous conditions existed in this product, which was a proximate cause in the death of Daniel Payne:

  a)   the general design of the product restricted the field of view of the driver of the machine, and no cameras of visual devices were present on the machine which would allow the operator to detect the presence of an object, including a person, in one of the blind spots created by the machine design and configuration, located in proximity to the direction the machine was moving.

  b)   the general design of the product restricted the field of view of the driver of the machine, and no audio detection devices were present on the machine which would alert the operator to detect the presence of an object, including a person, in one of the blind spots created by the machine design and configuration, located in proximity to the direction the machine was moving.

  c)   included a propulsion system which, when a "split/combine" valve was placed in the "combine" position, made the steering sensitive and erratic and made the tramming of the machine difficult to control when both motors were in operation.

18)   These dangerous conditions existed in the product at the time it left the control of the manufacturer.

19)   This roof-bolting machine was being moved in the mines in the manner reasonably to be expected in light of its nature and intended function.

3

20) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

21) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

22) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

23) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

24) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

25) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

26) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for

4

judgment against Defendant J.H. Fletcher & Co. in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

Attorneys for the Plaintiff

## COUNT II

*[Wrongful Death action against Defendant Sugar Camp Energy LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Sugar Camp Energy LLC, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12) At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

6

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18)  On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19)  This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20)  At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)  At about 2:15 p.m., this machine had traversed to near the Viking Portal,

7

22)   Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)   The driver's field of view was limited by the configuration of the machine.

24)   As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25)   This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)   This crushing action caused the death of Daniel Payne.

27)   One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a)   failed to maintain the roof-bolting machine in a safe working condition;

b)   failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c)   failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d)   tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e)   failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f)   failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g)   failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

8

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

9

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Sugar Camp Energy LLC in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

## COUNT III

*[Wrongful Death action against Defendant Natural Resources Partners LP]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Natural Resources Partners LP, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

10

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11

12)  At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18)  On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19)  This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

12

20)   At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)   At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22)   Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)   The driver's field of view was limited by the configuration of the machine.

24)   As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25)   This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)   This crushing action caused the death of Daniel Payne.

27)   One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

    a)   failed to maintain the roof-bolting machine in a safe working condition;

    b)   failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

    c)   failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

    d)   tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

    e)   failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

13

f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

14

34)  As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a)  loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b)  loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c)  property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Natural Resources Partners LP in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT IV

*[Wrongful Death action against Defendant Viking Mining LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Viking Mining LLC, says:

1)  Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

15

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

16

10)  At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11)  At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12)  At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

17

18) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19) This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21) At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22) Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23) The driver's field of view was limited by the configuration of the machine.

24) As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25) This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26) This crushing action caused the death of Daniel Payne.

27) One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

    a) failed to maintain the roof-bolting machine in a safe working condition;

    b) failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

18

c) failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d) tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e) failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

19

33)  Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34)  As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a)  loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b)  loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c)  property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Viking Mining LLC in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT V

*[Wrongful Death action against Defendant Coal Field Construction Company LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, Coal Field Construction Company LLC, says:

20

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction Company LLC (or, in the alternative, Coal Field Construction LLC) was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7) At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

21

9)  At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10)  At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11)  At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12)  At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15)  At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

22

17) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19) This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21) At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22) Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23) The driver's field of view was limited by the configuration of the machine.

24) As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25) This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26) This crushing action caused the death of Daniel Payne.

27) One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

a) failed to maintain the roof-bolting machine in a safe working condition;

23

b) failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

c) failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

d) tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

e) failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30) At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31) That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

24

32) Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33) Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34) As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a) loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant Coal Field Construction Company LLC in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

COUNT VI
*[Wrongful Death action against Defendant MC#1 Mine]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and,

25

pursuant to the Illinois Wrongful Death Act [740 ILCS 180/1 *et seq.*], for her Complaint against the Defendant, MC#1 Mine, says:

1)  Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2)  At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3)  At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4)  At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5)  At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6)  At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

7)  At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

26

8) At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9) At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10) At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11) At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12) At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13) At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14) At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

15) At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

27

16)  At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17)  On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18)  On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19)  This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20)  At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21)  At about 2:15 p.m., this machine had traversed to near the Viking Portal.

22)  Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23)  The driver's field of view was limited by the configuration of the machine.

24)  As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

25)  This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26)  This crushing action caused the death of Daniel Payne.

27) One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of the Defendant was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

   a) failed to maintain the roof-bolting machine in a safe working condition;

   b) failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

   c) failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

   d) tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

   e) failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

   f) failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

   g) failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

   h) failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

   i) through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29) On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30)  At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31)  That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32)  Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33)  Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34)  As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a)  loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b)  loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c)  property damages, in the form of funeral bills and burial expenses.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to the Illinois Wrongful Death Act prays for judgment against Defendant MC#1 Mine in a fair and reasonable amount in excess of the statutory minimum of $50,000, plus the costs of suit.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

30

COUNT VI

*[Respondent-in-Discovery Action against M-Class Mining LLC]*

Now comes the Petitioner, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, by her attorneys Howerton, Dorris, Stone and Lambert, and, pursuant to 735 ILCS 5/2-402, for her Complaint for Discovery against the Respondent, M-Class Mining LLC, says:

1) Terra Payne has been appointed as Special Administrator of the Estate of William Daniel Hans Payne [hereinafter "Daniel Payne"] by an order issued January 12, 2015, from the Franklin County Circuit Court in Case No. 15-P-01.

2) At times relevant, Sugar Camp Energy LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

3) At times relevant, Sugar Camp Energy LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

4) At times relevant, it appears that these two mines shared surface infrastructure, with two separate access points for mine personnel and equipment.

5) At times relevant, Natural Resources Partners LP was a legal entity with energy business interests in various locations, and may have acquired an interest in Sugar Camp Energy LLC or the Sugar Camp mining complex in Franklin County, Illinois.

6) At times relevant, Coal Field Construction LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

31

7)  At times relevant, Viking Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, and may have been affiliated with and held interests in the mining operation involving MC#1 Mine and/or Viking Mine.

8)  At times relevant, MC#1 Mine was a legal entity conducting coal mining business in the State of Illinois, including Franklin County, and was involved with the mining operation at MC#1 mine and the Sugar Camp mining complex.

9)  At times relevant, M-Class Mining LLC was a legal entity conducting coal mining business in the State of Illinois, including in Franklin County, Illinois.

10)  At times relevant, M-Class Mining LLC appears to have held interests in, or be affiliated with, a mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

11)  At times relevant, it appears that Sugar Camp Energy LLC had contracted with M-Class Mining LLC to mine coal at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

12)  At times relevant, Sugar Camp Energy LLC was the owner of a certain roof-bolting machine, specifically a J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014.

13)  At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

14)  At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

32

15) At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

16) At times relevant, this Defendant had some control over the mining operations at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, either individually or in concert with or in the alternative to other defendants named in this complaint.

17) On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

18) On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting a roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

19) This roof-bolting machine was a 995-volt ac, 3-phase, J.H. Fletcher & Co. double-boom roof bolting machine, Model DDR-17-A, Serial Number 2008014, which was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

20) At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

21) At about 2:15 p.m., this machine had traversed to near the Viking Portal,

22) Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

23) The driver's field of view was limited by the configuration of the machine.

24) As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

33

25) This sudden movement caused the front of the roof-bolting machine to crush Daniel Payne between that machine and the coal rib.

26) This crushing action caused the death of Daniel Payne.

27) One or more of the following negligent acts or omissions to act, or intentional or reckless acts or omissions, on the part of one or more of the defendants was a proximate cause for the roof-bolting machine to jerk suddenly and pin Daniel Payne against the coal rib:

    a)  failed to maintain the roof-bolting machine in a safe working condition;

    b)  failed to inspect the roof-bolting machine to determine that it was in a safe working condition;

    c)  failed to adjust the steering controls of the machine so that the machine was steering and tracking in a straight line;

    d)  tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

    e)  failed to detect a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming more difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

    f)  failed to remove a rope which tied in place a hydraulic control valve in the tramming circuit of this roof-bolting machine, making tramming difficult to control when the hydraulic systems for both tracks were combined for simultaneous operation;

    g)  failed to train properly the miners who would be using this machine on the safe methods for moving the machine to different locations in the mine, including using safer communication methods and not positioning themselves in dangerous locations around the moving machine;

    h)  failed to train properly its miners on communication and extraction methods to be used when a miner suffered serious underground injury, in order to provide timely care to the injured miner;

    i)  through its agents failed to provide timely care to an injured miner, which deprived the injured miner of his best chance to survive.

28) At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

29)   On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

30)   At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

31)   That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

32)   Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

33)   Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

34)   As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a)   loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b)   loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c)   property damages, in the form of funeral bills and burial expenses.

35)   Based upon payment history, the widow is informed that the employer of Daniel Payne appears to be M-Class Mining LLC, and, if so, then Illinois law [820 ILCS 305/5(a)]

35

would not permit a direct civil action against the deceased's employer, except in defined circumstance.

36)  However, M-Class Mining LLC is believed to be in a position where its personnel should have information essential to the determination of which entities properly may be named as defendants in a civil action, including but not limited to knowledge of the business and contractual relationships and authority and duties of the various coal mining entity defendants who may have had a part in the maintenance and repair of this roof-bolting machine, of the operation of the coal mine where this accident occurred, and of the training of the miners involved in this accident, and therefore M-Class Mining LLC would be a proper respondent-in-discovery.

WHEREFORE, the Plaintiff, Terra Payne, as Special Administrator of the Estate of William Daniel Hans Payne, Deceased, pursuant to 735 ILCS 5/2-402 designates M-Class Mining LLC as a Respondent-in-Discovery, to provide responses to discovery initiated by the Plaintiff, including by deposition.

HOWERTON, DORRIS, STONE & LAMBERT

By: _____

PLAINTIFF DEMANDS A TRIAL BY JURY.

*Affidavit*

*The undersigned upon his oath swears that he is an attorney for Plaintiff, and that he has investigated this claim, and that he has the authority to execute this affidavit on behalf of the Plaintiff, and that it is his good faith belief that the damages in this cause could exceed the $50,000 statutory amount described in Illinois Supreme Court Rule 222(b).*

_____

"OFFICIAL SEAL"
WENDY L GREER
Notary Public, State of Illinois
My Commission Expires: 09/04/2019

Signed and sworn to before me this
16th day of February, 2016.

_____
Notary Public

36

HOWERTON, DORRIS, STONE & LAMBERT
300 West Main Street
Marion, IL  62959

Phone:  (618) 993-2616
Fax:  (618) 997-1845
Email:  ddorris@hdslawfirm.com

*Attorneys for Plaintiff*

37

IN THE CIRCUIT COURT OF FRANKLIN COUNTY
SECOND JUDICIAL CIRCUIT
STATE OF ILLINOIS

FILED

MAR 23 2016

Nancy Webbe
FRANKLIN COUNTY
CIRCUIT CLERK

| | | |
|---|---|---|
| TERRA PAYNE, as Special Administrator<br>of the Estate of William Daniel Hans<br>Payne, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Cause No.: 16-L-11 |
| J.H. FLETCHER & CO.; SUGAR CAMP<br>ENERGY LLC; NATURAL RESOURCES<br>PARTNERS LP; VIKING MINING LLC;<br>COAL FIELD CONSTRUCTION<br>COMPANY LLC; and MC#1 MINE, | ) ) ) ) ) ) | |
| Defendants, | ) ) | **DEFENDANT DEMANDS<br>TRIAL BY JURY OF TWELVE** |
| and | ) ) | |
| M-CLASS MINING LLC, | ) ) | |
| Respondent-in-Discovery. | ) | |

### DEFENDANT J. H. FLETCHER & CO.'S
### ANSWER TO PLAINTIFF'S COMPLAINT

**COMES NOW** Defendant, J. H. Fletcher & Co. (hereinafter "Defendant"), by

and through its attorneys, and for its answer to Plaintiff's Complaint, states as follows:

COUNT I
*[Strict product liability Wrongful Death action against Defendant J.H. Fletcher & Co.]*

1)    Terra Payne has been appointed as Special Administrator of the Estate of

William Daniel Hans Payne [hereinafter "Daniel Payne"'] by an order issued January 12,

2015, from the Franklin County Circuit Court in Case No. 15-P-01.

> **ANSWER:    Defendant is without sufficient information to either admit or
> deny the allegations contained in this paragraph and,
> therefore, denies the same.**

16-L-11

EXHIBIT
**B**

2)     At times relevant, J.H. Fletcher & Co. was a legal entity doing business in the manufacture of mining equipment for use in the mining industry, including the manufacture of this J.H. Fletcher & Co. double-boom roof-bolting machine, Model DDR-17-A, Serial Number 2008014.

> **ANSWER:**    **No product identification has been made specific to this Complaint and the referenced accident; notwithstanding, it is admitted that J.H. Fletcher & Co. did manufacture a model CHDDR-13 roof bolting machine bearing serial number 2008014. Defendant denies the remainder of the allegations contained in this paragraph.**

3)     This roof-bolting machine was purchased by Sugar Camp Energy LLC.

> **ANSWER:**    **Based upon information available at this time, this allegation is denied.**

4)     At times relevant, this J.H. Fletcher & Co. double-boom roof bolting machine was being used in the mining operation at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine.

> **ANSWER:**    **This defendant is without knowledge or information sufficient to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

5)     At times relevant Daniel Payne (date of birth 7/14/1988) was employed as an underground coal miner.

> **ANSWER:**    **Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

6)    At times relevant, Daniel Payne was working underground at the mining complex in Franklin County, Illinois, involving two underground coal mines, designated as MC#1 Mine and as Viking Mine, and usually was assigned to the MC#1 Mine.

> **ANSWER:    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

7)    On May 14, 2014, Daniel Payne was working underground at "MC#1 Mine", a mine which had a dual purpose slope at the South portal and a shaft at the Viking portal.

> **ANSWER:    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

8)    On May 14, 2014, Daniel Payne had been assigned, along with fellow miner Kevin Fuller, with transporting this roof-bolting machine to the "No. 3 entry", starting from the "Viking TG (Tailgate) 1 equipment recovery area" near the 151 Crosscut, to the mouth of the section.

> **ANSWER:    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

9)    This roof-bolting machine was on dual crawler tracks with separate tram motors powered by separate hydraulic pumps.

> **ANSWER:    It is admitted that Serial Number 2008014 roof bolting machine as originally designed by Fletcher was a dual crawler track machine with a tram motor and hydraulic pump system.**

16-L-11

10)     At times relevant, Kevin Fuller was driving this roof-bolting machine as it was traveling along underground, in the process of relocating.

> **ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

11)     At about 2:15 p.m., this machine had traversed to near the Viking Portal

> **ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

12)     Daniel Payne was walking beside this roof-bolting machine while it was being moved, acting as a spotter for the driver.

> **ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

13)     The driver's field of view was limited by the configuration of the machine.

> **ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

14)     As this roof-bolting machine moved along near the "No. 89 crosscut", the front of the machine jerked to the left.

> **ANSWER:     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

15)     This sudden movement caused the front of the roof-bolting machine to

crush Daniel Payne between that machine and the coal rib.

**ANSWER:     Defendant is without sufficient information to either admit or
deny the allegations contained in this paragraph and,
therefore, denies the same.**

16)     This crushing action caused the death of Daniel Payne.

**ANSWER:     Defendant is without sufficient information to either admit or
deny the allegations contained in this paragraph and,
therefore, denies the same.**

17)     At the time Daniel Payne was crushed by the front of this roof-bolting

machine, one or more of the following unreasonably dangerous conditions existed in this

product, which was a proximate cause in the death of Daniel Payne:

a)     the general design of the product restricted the field of view of the driver
of the machine, and no cameras of visual devices were present on the
machine which would allow the operator to detect the presence of an
object, including a person, in one of the blind spots created by the machine
design and configuration, located in proximity to the direction the machine
was moving.

b)     the general design of the product restricted the field of view of the driver
of the machine, and no audio detection devices were present on the
machine which would alert the operator to detect the presence of an
object, including a person, in one of the blind spots created by the machine
design and configuration, located in proximity to the direction the machine
was moving.

c)     included a propulsion system which, when a "split/combine" valve was
placed in the "combine" position, made the steering sensitive and erratic
and made the tramming of the machine difficult to control when both
motors were in operation.

**ANSWER:     Defendant denies the allegations contained in this paragraph,
including all subparts thereto.**

18)     These dangerous conditions existed in the product at the time it left the control of the manufacturer.

**ANSWER:**     **Defendant denies the allegations contained in this paragraph.**

19)     This roof-bolting machine was being moved in the mines in the manner reasonably to be expected in light of its nature and intended function.

**ANSWER:**     **Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

20)     At the time of his death on May 14, 2014, Daniel Payne was 25 years of age.

**ANSWER:**     **Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

21)     On June 4, 2011, Daniel Payne had married Terra Payne (whose date of birth is 5/20/1984), and at the time of his death Daniel Payne and Terra Payne were living together as husband and wife.

**ANSWER:**     **Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

22)     At the time of his death, Daniel had no children, living or deceased, although his wife Terra was pregnant with their first child.

**ANSWER:**     **Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

23)    That child, Trent Daniel Payne, was born alive and healthy on June 21, 2014, 38 days after his father's death, and survives his father as the only child of Daniel Payne.

> **ANSWER:    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

24)    Documented funeral and burial bills incurred as a result of the death of Daniel Payne total $14,085.50.

> **ANSWER:    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

25)    Therefore, under the Illinois Descent and Distribution Statute [755 ILCS 5/2-1(b)], and under the Illinois Wrongful Death Act [740 ILCS 180/2], the next-of-kin and beneficiaries of Daniel Payne for the purposes of a Wrongful Death Act claim are his widow, Terra Payne, and his minor son, Trent Daniel Payne.

> **ANSWER:    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

26)    As a result of this mining incident on May 14, 2014, and the death of Daniel Payne on that date, his wife and widow Terra Payne and his minor son Trent Daniel Payne suffered substantial pecuniary loss, as defined by the Illinois Wrongful Death Act, including:

a)    loss of money, benefits, goods, and services which Daniel Payne likely would have contributed on behalf of his wife and son;

b) loss of society which his wife and son would have received from Daniel Payne's continuing existence, including love, affection, care, attention, companionship, comfort, guidance, protection, moral training, and superintendence of education;

c) property damages, in the form of funeral bills and burial expenses.

**ANSWER:** **Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies the same.**

## COUNT II
*[Wrongful Death action against Defendant Sugar Camp Energy LLC]*

**1-34)** **Defendant makes no response to the allegations contained in Count II of Plaintiff's Complaint as they are not directed toward this Defendant. To the extent that any of these allegations are directed toward this Defendant, the same are hereby denied.**

## COUNT III
*[Wrongful Death action against Defendant Natural Resources Partners LP]*

**1-34)** **Defendant makes no response to the allegations contained in Count III of Plaintiff's Complaint as they are not directed toward this Defendant. To the extent that any of these allegations are directed toward this Defendant, the same are hereby denied.**

## COUNT IV
*[Wrongful Death action against Defendant Viking Mining LLC]*

**1-34)** **Defendant makes no response to the allegations contained in Count IV of Plaintiff's Complaint as they are not directed toward this Defendant. To the extent that any of these allegations are directed toward this Defendant, the same are hereby denied.**

### COUNT V
*[Wrongful Death action against Defendant Coal Field Construction Company LLC]*

**1-34)   Defendant makes no response to the allegations contained in Count V of Plaintiff's Complaint as they are not directed toward this Defendant.  To the extent that any of these allegations are directed toward this Defendant, the same are hereby denied.**

### COUNT VI (sic)
*[Respondent-in Discovery Action against M-Class Mining LLC]*

**1-36)   Defendant makes no response to the allegations contained in Count VI (sic) of Plaintiff's Complaint as they are not directed toward this Defendant.  To the extent that any of these allegations are directed toward this Defendant, the same are hereby denied.**

### AFFIRMATIVE DEFENSES

1.   Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose.  See 735 ILCS 5/13-202, 205, 213; and/or 810 ILCS 5/2-725, and the statutes of limitation and/or repose of any other state's laws held applicable to Plaintiff's claims.

2.   Plaintiff's alleged loss, damage, injury, harm, expense, diminution, or deprivation alleged, if any, was caused in whole or in part by the failure of Daniel Payne (hereinafter "Plaintiff Decedent") to exercise reasonable care and diligence to mitigate Plaintiff's alleged damages.

3.   To the extent supported by the facts of the case, the affirmative defense of failure to join an indispensable party is preserved.

4.      Any and all damages alleged in the Complaint may have been caused by misuse of the product, failure to use the product properly, or negligent use of the product, and therefore the risk was assumed.   The affirmative defenses of misuse, knowing encounter of / with an open and obvious hazard and/or situation, negligent use, negligent assumption of the risk and assumption of the risk are noted and preserved.

5.      Plaintiff's product liability causes of action are barred because, at the time the product left the control of Defendant, there was no practical and technically feasible alternative design or formulation available that would have prevented Plaintiff Decedent's alleged injuries and/or damages without substantially impairing the usefulness or intended purpose of the product.

6.      Some or all of Plaintiff's claims are barred by the doctrines concerning unavoidably unsafe products, including but not limited to, the operation of comments j and k to Section 402A of the Restatement (Second) of Torts and/or barred by the Restatement (Third) of Torts.

7.      Defendant's product, if any, was not defective in design or warning as of the date that it was placed into the stream of commerce and as such, the Complaint should be dismissed.  Therefore plaintiff's claims are barred as to this defendant.

8.      Defendant at all times discharged any duty to warn through appropriate and adequate warnings and use instructions.

9.      The affirmative defense of lack of product identification is noted and preserved, to the extent supported by the facts of this case.

10.     There was no breach of any duty and as such, the Complaint should be dismissed as to Defendant.  Any duty with respect to an original manufacturer and/or designer of equipment was discharged appropriately and within applicable standards and as such, Plaintiff's claims are barred as to it.

11.     Defendant's conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries and/or damages alleged by Plaintiff.

12.     The damages allegedly sustained by Plaintiff, if any, were not legally caused by Defendant, but instead were legally caused by unforeseeable intervening and superseding causes or circumstances.

13.     Plaintiff Decedent's injuries, to the extent legally recognized injuries exist, were due to the conduct of third parties outside of the control of this defendant and, therefore, this defendant should be dismissed from this action as a matter of law.

14.     Defendant's acts were at all times done in good faith and without malice, with respect to each and every purported cause of action in the Complaint.

15.     The injuries or damages allegedly sustained by Plaintiff Decedent's can be attributed to several causes, and accordingly should be apportioned among the various causes according to the respective contribution of each such cause to the harm sustained, if any.  If any liability is found against Defendant, any such liability being expressly denied, then said liability will constitute less than 25% of the total liability assigned to all persons liable, and as such, the liability of Defendant to Plaintiff for non-economic loss shall be limited, and shall not exceed Defendant's equitable share.

16.     Any verdict or judgment rendered against Defendant must be reduced by those amounts that have been paid to, or will, with reasonable certainty, replace or indemnify Plaintiff, in whole or in part, for any past or future claimed economic loss, from any collateral source, such as insurance, social security, workers' compensation or employee benefit programs.

17.     Defendant is entitled to the benefit of all defenses and presumptions contained in, or arising from, any rule of law or statute of any other state whose substantive law might control the action.

18.     Defendant further pleads that to the extent any award of prejudgment interest is sought on future damages, such an award violates the due process clause of the United States Constitution, the corresponding portion of the Illinois Constitution, and/or the applicable provisions of the Constitution of any other State or Commonwealth of the United States whose laws might be deemed controlling in this action.

19.     The injuries, damages and losses alleged in the Complaint, none being admitted, were caused in whole or in part by the negligence of the Plaintiff Decedent's and/or others, over whom Defendant exercised no control, had no opportunity to anticipate or right to control, and with whom Defendant had no legal relationship by which liability could be attributed to it because of the actions of the Plaintiff Decedent's and/or others.

20.     Any injuries or damage allegedly sustained by Plaintiff were the direct and proximate result of Plaintiff Decedent's own contributory fault and/or negligence wherein Plaintiff's fault and/or negligence is more than 50%. As a result, Defendant is entitled to be dismissed with its costs pursuant to 735 ILCS 5/2-1116. Alternatively, if the trier of

fact finds that the contributory fault on the part of Plaintiff Decedent is not more than 50% of the proximate cause of his alleged injuries, any damages allowed should be diminished in the proportion to the amount of fault attributable to Plaintiff pursuant to Section 2-1116.

21.    In the unlikely event that Defendant is found liable to the Plaintiff, Defendant is entitled to a credit or offset for any and all sums that the Plaintiff have received or may hereafter receive by way of any and all settlements arising from Plaintiff's claims and causes of action. Defendant alternatively asserts its right to a proportionate reduction of any damages based on comparative fault or the percentage of negligence attributable to Plaintiff Decedent or to any settling tortfeasor under Illinois law and/or the laws of any other State or Commonwealth of the United States whose laws may be deemed controlling in this case.

22.    Plaintiff's claims for damages against Defendant are speculative, remote, conjectural and without basis in law or fact.

23.    Plaintiff's claims are barred because the product may have been and/or was substantially modified and/or altered after it left Defendant's possession and control and, therefore the Complaint should be dismissed as to it.

24.    To the extent supported by the facts, Defendant asserts the failure of Plaintiff or third parties to observe routine care and maintenance of the subject roof bolter, and so Defendant cannot be held liable and must be dismissed as a matter of law.

25.    To the extent supported by the facts, Defendant asserts that Plaintiff Decedent and/or a third party performed unauthorized alteration(s) and/or unauthorized modification(s) to the subject roof bolter and that such alteration(s) or modification(s)

16-L-11                                                                    Page 13 of 15

was a substantial cause of the occurrence that caused Plaintiff Decedent's injury, and so Defendant cannot be held liable and must be dismissed as a matter of law.

26. Defendant asserts that the subject roof bolter was reasonably safe for its intended use.

27. The design and manufacture of the subject roof bolter complied with applicable federal and state statutes and regulations as of the date it was placed into the stream of commerce by this Defendant, if at all.

28. Plaintiff's claims are barred, in whole or in part, by Section 402A of the Restatement (Second) of Torts because the subject roof bolter was not unreasonably dangerous and at the time of Plaintiff Decedent's accident was substantially changed from the condition in which it was placed into the stream of commerce.

29. The affirmative defenses of absence of reasonably available alternative design, feasibility, and/or lack of feasibility at the time the machine entered the stream of commerce are asserted.

30. At all relevant times, Defendant met the standards of a reasonably prudent designer, manufacturer and distributor of its product.

31. Defendant asserts that it did not borrow the services of any non-J.H. Fletcher employee and so is not liable for the unauthorized acts or omissions of any unrelated third party.

32. Each and every affirmative defense envisioned by Rules 8 and 12 of the Illinois Rules of Civil Procedure is noted and preserved.

33. Each and every affirmative defense recognized in common law and by statute or constitution is noted and preserved.

34.    Defendant hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves the right to amend this list to assert such defenses.

**WHEREFORE,** Defendant, J. H. Fletcher & Co., having fully answered Plaintiff's Complaint prays for Plaintiff's Complaint to be dismissed with prejudice, costs of suit, and any further relief this Court deems just and appropriate under the circumstances.

**DEFENDANT DEMANDS TRIAL BY JURY OF 12**

HEPLERBROOM LLC

By: _____

Theodore J. MacDonald, Jr.    #03125246
e-mail: tjm@heplerbroom.com
David J. Deterding          #06296219
e-mail: dd3@heplerbroom.com
One Metropolitan Square
211 North Broadway, Suite 2700
St. Louis, Missouri 63102
314-241-6160 telephone
618-656-0184 telephone
314-241-6116 facsimile
ATTORNEYS FOR DEFENDANT
J. H. FLETCHER & CO.

## PROOF OF SERVICE

The undersigned certifies that a complete copy of this instrument was served upon:

- Douglas Dorris; Howerton, Dorris, Stone & Lambert, 300 W. Main St., Marion, IL 62959; ATTORNEYS FOR PLAINTIFF

by first class mail, postage prepaid, and by depositing in a U.S. Post Office mail box, this _____ day of March, 2016.

_____

16-L-11

Page 15 of 15

IN THE CIRCUIT COURT OF FRANKLIN COUNTY
SECOND JUDICIAL CIRCUIT
STATE OF ILLINOIS

TERRA PAYNE, as Special Administrator )
of the Estate of William Daniel Hans )
Payne, Deceased, )
 )
        Plaintiff, )
 )
vs. )     Cause No.: 16-L-11
 )
J.H. FLETCHER & CO.; SUGAR CAMP )
ENERGY LLC; NATURAL RESOURCES )
PARTNERS LP; VIKING MINING LLC; )
COAL FIELD CONSTRUCTION )
COMPANY LLC; and MC#1 MINE, )
 )
        Defendants. )
and )
 )
M-CLASS MINING LLC, )
 )
        Respondent-in-Discovery. )

## AFFIDAVIT

STATE OF MISSOURI     )
                  ) SS
CITY OF ST. LOUIS      )

      I, Theodore J. MacDonald, Jr., being first duly sworn upon my oath, depose and state that I have read the above and foregoing Defendant J. H. Fletcher & Co.'s Answer to Plaintiff's Complaint and that I have insufficient information to either admit or deny certain portions of Plaintiff's Complaint as designed on the day of the filing of this Answer.

Dated this 22 day of March, 2016.

                             _____
                             Theodore J. MacDonald, Jr.

      Subscribed and Sworn to before me, a Notary Public, this 22nd day of March, 2016.

                             _____
                           NOTARY PUBLIC

My Commission Expires:

                PENNY MEYER
              Notary Public-Notary Seal
              STATE OF MISSOURI
          Commissioned for St. Louis City
        My Commission Expires Oct. 27, 2018
             ID #14018695