# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Foresight Energy LP, *et al.*, | ) Case No. 20-41308-659 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Related Docket No. 562 |

### LIMITED OBJECTION OF SIERRA CLUB AND PRAIRIE RIVERS NETWORK TO SECOND AMENDED JOINT PLAN OF REORGANIZATION

Sierra Club and Prairie Rivers Network, parties-in-interest herein (together, the "*Environmental Groups*"), by counsel, hereby file this limited objection to the *Second Amended Joint Chapter 11 Plan of Foresight Energy LP and its Affiliated Debtors* (as most recently modified at Dkt. 562, the "*Plan*") filed by the above-captioned debtors and debtors-in-possession (the "*Debtors*"), and, in support thereof, respectfully state as follows:

### LIMITED OBJECTION

1. On March 10, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("*Bankruptcy Code*").

2. The Environmental Groups and two of the Debtors, Sugar Camp Energy, LLC and Hillsboro Energy LLC (together, the "*Debtor Parties*"), are parties to a December 13, 2010 settlement agreement ("*Settlement Agreement*"), a copy of which is attached hereto as Exhibit A.

3. The Settlement Agreement resolved permit appeals that the Environmental Groups were pursuing before the Illinois Pollution Control Board as well as a notice of intent to sue that had been sent by the Environmental Parties.

4. The Settlement Agreement imposes various non-monetary performance obligations ("*Performance Obligations*") on the Debtor Parties. The work obligations imposed by the Settlement Agreement include, but are not limited to: operating and maintaining the "Pilot Engineered Wetlands Projects" ("*Wetlands Projects*"); conducting post-construction monitoring of the Wetlands Projects; making improvements to the Wetlands Projects as needed; constructing and maintaining new engineered wetlands, as needed, for any new refuse areas; and designing and implementing mitigation plans for any new refuse areas. The Environmental Groups have no ongoing obligations under the Settlement Agreement.

5. As the Performance Obligations are nonmonetary, and in fact many of them are reflected in governmental permits issued or modified pursuant to the Settlement Agreement, the Performance Obligations are not "claims" that can be discharged in bankruptcy. *See* 11 U.S.C. § 101(5) (defining claim as a "right to payment" or "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment"); *United States v. Apex Oil Co.*, 579 F.3d 734, 738 (7th Cir. 2009) (an order requiring cleanup of a groundwater plume was not a "claim"); *In re Mark IV Indus., Inc.*, 438 B.R. 460, 467-71 (Bankr. S.D.N.Y. 2010) (a regulatory obligation to clean up a contaminated former industrial site was not a "claim"); *see also In re Torwico Elecs., Inc.*, 8 F.3d 146, 151 n.6 (3d Cir. 1993) (an order requiring closure of a seepage pit was not a claim; the debtors "had no option to pay for the right to allow its wastes to continue to seep into the environment"); *In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2d Cir. 1991) ("Since there is no option to accept payment in lieu of continued pollution, any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a 'claim.'").

6. The Plan does not confirm that the Reorganized Debtors will continue to comply with the obligations imposed by the Settlement Agreement (including governmental permits modified in connection with same) or explain how they will do so. As such, the Environmental Groups have no way of assessing the treatment of the Settlement Agreement and the Performance Obligations under the Plan. Moreover, absent clarifying language, the Plan, including its release and injunction provisions, could be read or interpreted as impermissibly releasing the Reorganized Debtors from the Performance Obligations (or at least risk a dispute in the future). Until those issues are remedied, which can easily be done by adding clarifying language, the Plan does not meet the confirmation requirements of, without limitation, sections 1129(a)(1) and 1129(a)(3).

7. Before submitting this Objection, the Environmental Groups requested that Debtors modify the Plan by adding the following language:

> *Nothing in the Plan or the Confirmation Order shall release, discharge, or otherwise impair or preclude the enforcement of, the obligations of Sugar Camp Energy, LLC and/or Hillsboro Energy LLC (or their successor Reorganized Debtors) under that certain Settlement Agreement dated December 13, 2010 by and between Sugar Camp Energy, LLC, Hillsboro Energy LLC, Prairie Rivers Network, and Sierra Club.*

As the Debtors have not confirmed that the above language is acceptable (or proposed modified language acceptable to the Environmental Groups) the Environmental Groups were forced to file this limited objection.

8. Until the Plan is amended to make clear that the Reorganized Debtors will remain responsible for their obligations under the Settlement Agreement on and after the Effective Date, the Plan should not be approved.

Dated: June 19, 2020               Respectfully submitted,

                                   **Sierra Club and Prairie Rivers Network**

                                   By:   /s/ Matthew E. McClintock

4824-3870-4433, v. 6                              3

        Matthew E. McClintock, Esq. (pro hac vice)
        GOLDSTEIN & MCCLINTOCK LLLP
        111 W. Washington Street, Suite 1223
        Chicago, Illinois 60602
        Telephone: (312) 337-7700
        Facsimile: (312) 277-2310
        E-mail: mattm@goldmclaw.com

        *Counsel to Sierra Club and Prairie Rivers Network*